**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Iris Weinstein Haggai, et al.,

                            Plaintiffs

v.

Nerdeen Kiswani, et al.,

                            Defendants.

Case No. 25-cv-02400-JAV

**DEFENDANT COLUMBIA-BARNARD A JEWISH VOICE FOR PEACE'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................ii

TABLE OF AUTHORITIES .........................................................................................iii

INTRODUCTION .......................................................................................................... 1

FACTUAL ALLEGATIONS ......................................................................................... 2

ARGUMENT ................................................................................................................. 6

   I.   Plaintiffs Fail to State a Claim ................................................................. 6

      A.   U.S. Citizen Plaintiffs Fail to State a Claim of Aiding and Abetting Under the ATA . 10

        i.   Plaintiffs fail to plausibly allege Defendants had general awareness of their alleged role in Hamas's acts ..................................................................................... 12

        ii.   Plaintiffs fail to allege Defendants provided "knowing and substantial" assistance to an international act of terrorism ........................................................................ 14

   II.   Defendants' Alleged Activities Constitute Protected First Amendment Speech.............. 17

   III.   Plaintiffs Lack Standing................................................................................ 25

   IV.   This Court Lacks Subject Matter Jurisdiction Over Non-Citizen Plaintiffs' Law of Nations Claim ............................................................................................................ 27

   V.   Plaintiffs Do Not, Because They Cannot, Tie the Protected Speech of Columbia-Barnard Jewish Voice for Peace Nor its Co-Defendants to Any of Plaintiffs' Injuries ........................ 29

   VI.   This Court Should Deny Leave to Amend the FAC Because Another Amendment Would Be Futile....................................................................................................... 31

MOTION TO STRIKE ................................................................................................. 32

   I.   LEGAL STANDARD............................................................................... 33

   II.   ARGUMENT............................................................................................ 34

      A.   The Court Must Strike Plaintiffs' Inflammatory and Irrelevant Accusations Trying to Tie Defendants to an Alleged Conspiracy from 1988 (FAC ¶¶ 3, 4, 5, 12, 46-65).............. 34

      B.   The Court Must Strike Plaintiffs' Inflammatory, Irrelevant, and Unsupported Description of Defendants as "Admitted Terrorists" (FAC ¶ 1) ........................................... 37

      C.   This Court Should Strike Plaintiffs' Irrelevant and Inflammatory Allegations Impugning the Sincerity of Defendants' Religious Beliefs and Ethnicity (FAC ¶¶ 63, 70). 38

CONCLUSION.............................................................................................................. 38

WORD CERTIFICATION ........................................................................................... A

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A & R Eng'g & Testing, Inc. v. City of Hous.*, 582 F. Supp. 3d 415 (S.D. Tex. 2022) ............... 22

*AJ Energy LLC v. Woori Bank*, 829 F. App'x 533 (2d Cir. 2020) ............................................... 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. passim

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196 (2d Cir. 1992) .......................... 25

*Atuahene v. City of Hartford*, 10 Fed. App'x. 33 (2d Cir. 2001) ................................. 7, 23, 29, 30

*Aziz v. Alcolac, Inc.*, 658 F.3d 388 (4th Cir. 2011) ................................................................. 3, 29

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 7, 26

*Bernhardt v. Islamic Republic of Iran,* 47 F.4th 856 (D.C. Cir. 2022) .................................. 12, 14

*Boos v. Barry*, 485 U.S. 312 (1988) ............................................................................................. 19

*Burnett v. Al Baraka Inv. & Dev. Corp. (In re Terrorist Attacks)*, 349 F. Supp. 2d 765 (S.D.N.Y.
2005) ........................................................................................................................................ 8, 10

*Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp.3d 414 (S.D.N.Y. 2019) ........................ 33

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) .............................................. 26, 27

*Cotarelo v. Vill. of Sleepy Hollow Police Dep't*, 460 F.3d 247 (2d Cir. 2006) ........................... 19

*Crawford v. Recovery Partners*, 2014 U.S. Dist. LEXIS 59310 (S.D.N.Y. Apr. 28, 2014)  7, 9, 29

*Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551 (S.D.N.Y. 2023) .................. 33, 34

*Ctr. for Bio-Ethical Reform v. Black*, 234 F. Supp. 3d 423 (W.D.N.Y. 2017) ............................ 20

*Denton v. Hernandez*, 504 U.S. 25 (1992) ..................................................................................... 7

*Doe v. Intel. Corp.*, No. 24-CV-6117 (JPO), 2024 U.S. Dist. LEXIS 193076 (S.D.N.Y. Oct. 22,
2024) ............................................................................................................................................ 19

*Elfbrandt v. Russell*, 384 U.S. 11 (1966) ..................................................................................... 22

*Elhanafi v. Fox Television Stations, Inc.,* 2012 WL 6569341 (Sup. Ct. Kings County, Dec. 17,
2012) ............................................................................................................................................ 36

*Gallop v. Cheney*, 642 F.3d 364 (2d Cir. 2011) ................................................................... 7, 9, 29

*Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.,* 2025 U.S. Dist.
LEXIS 84645 (D. Nev. 2025) ................................................................................................. 24, 29

*G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521 (S.D.N.Y. 2002) ............................... 34

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ................................................. 5, 11, 12, 15

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ..................................................... passim

*Horoshko v. Citibank, N.A.*, 373 F.3d 248 (2d Cir. 2004) ............................................................ 32

*In re Chiquita Brands Int'l., Inc. Alien Tort Statute & S'holder Derivative Litig.*, 792 F. Supp. 2d 1301 (S.D. Fla. 2011)...................................................................................................................... 28

*In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458 (S.D.N.Y. 2012) .................................. 33

*In re Terrorist Attacks on September 11, 2001*, 740 F. Supp. 2d 494 (N.D.N.Y. 2010) .............. 20

*J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107 (2d Cir. 2004) .............................................. 25

*Jesner v. Arab Bank, PLC*, 584 U.S. 241 (2018) ........................................................................... 27

*Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018) ............................................................................... 31, 32

*Koontz v. Watson*, 283 F. Supp. 3d 1007 (D. Kan. 2018)............................................................. 22

*Krys v. Pigott*, 749 F.3d 117 (2d Cir. 2014) ...................................................................... 7, 8, 31

*Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018) ......................................................... passim

*Low v. Robb*, No. 11-CV-2321, 2012 WL 173472 (S.D.N.Y. Jan. 20, 2012) ....................... 34, 37

*Lujan v. Defs. Of Wildlife,* 504 U.S. 555 (1992)........................................................... 25, 26, 27, 31

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000).............................................................. 25

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ........................................... 31

*Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633 (S.D.N.Y. 2001) ............. 34, 35, 38

*Moore v. Hadestown Broadway Ltd. Liab. Co.*, No. 23-CV-4837 (LAP), 2024 U.S. Dist. LEXIS 40245 (S.D.N.Y. Mar. 7, 2024) ......................................................................................... 17, 19

*Morse v. Weingarten*, 777 F. Supp. 312 (S.D.N.Y.1991)......................................... 33, 35, 36, 38

*Mwani v. Bin Ladin*, 2006 U.S. Dist. LEXIS 89483 (D.D.C. Sep. 28, 2006) ............................. 28

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982)....................................... 21, 22, 23, 25

*Nat'l Grp. for Communs. & Computs., Ltd. v. Lucent Techs., Inc.*, 2004 U.S. Dist. LEXIS 25265 (S.D.N.Y. Dec. 14, 2004). ............................................................................... 2, 10, 36, 37

*Nestle USA, Inc. v. Doe*, 593 U.S. 628 (2021)............................................................................... 27

*Noto v. United States,* 367 U.S. 290 (1961)................................................................................... 22

*Nye & Nissen v. U.S.*, 336 U.S. 613 (1949) ................................................................................... 11

*Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498 (S.D.N.Y. 2013) ................................. 33, 34, 35, 36

*Packingham v. North Carolina*, 582 U.S. 98 (2017) ..................................................................... 19

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244 (2d 2009) ........... 3, 28, 29

*Scales v. United States,* 367 U.S. 203 (1961) ............................................................................... 22

*Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019) ..................................... passim

*Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976) ............ 7, 9, 26, 29

*Sirer v. Aksoy,* 2023 WL 3166453 (S.D. Fla., May 1, 2023) ........................................ 36

*SM Kids, LLC. V. Google LLC*, 963 F.3d 206 (2d Cir. 2020) ...................................... 25

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) ........................................................ 27, 28

*Terrorist Attacks on September 11, 2001 v. Al Rajhi Bank (In re Terrorist Attacks on September 11, 2001)*, 714 F.3d 118 (2d Cir. 2013) ................................................. 27, 28

*Toto v. McMahan, Brafman, Morgan & Co.*, 1995 WL 46691 (S.D.N.Y. 1997) ........................ 35

*TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021) ...................................................... 36, 37

*Twitter v. Taamneh*, 598 U.S. 471 (2023) ............................................................ passim

*United States ex rel. Sisselman v. Zocdoc, Inc.*, No. 24-2807, 2025 U.S. App. LEXIS 8719 (2d Cir. 2025) ........................................................................................................ 32

*Van Der Linden v. Khan,* 535 S.W.3d 179 (Tex. App. 2017) ........................................ 36

*Volokh v. James*, 656 F. Supp. 3d 431 (S.D.N.Y. 2023) .............................................. 19

*Walker v. Schult*, 717 F.3d 119 (2d Cir. 2013) .......................................................... 7

*Weiss v. Nat'l Westminster Bank* PLC, 381 F. Supp. 3d 223 (E.D.N.Y. 2019) ...................... 12

*Winklevoss Cap. Fund, LLC v. Shrem*, 351 F. Supp. 3d 710 (S.D.N.Y. 2019) .......................... 33

*Yakoby, et al. v. The Trustees of the University of Pennsylvania*, 23 Civ. 4789, 2025 WL 1558522 (E.D. Pa. June 2, 2025) ................................................................. 2, 4

*Yates v. United States*, 354 U.S. 297 (1957) ............................................................ 22

*Young America's Found. v. Stenger*, No. 3:20-CV-822 (LEK/TWD), 2025 U.S. Dist. LEXIS 51099 (N.D.N.Y. Mar. 20, 2025) .......................................................... 19

## Statutes

18 U.S.C. § 2333(d)(2) ........................................................................................ 3, 11

28 U.S.C. § 1350 ................................................................................................ 27

## Rules

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 25

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 6

Fed. R. Civ. P. 12(f) ........................................................................................ 33, 34

# INTRODUCTION

Plaintiffs' 85-page first amended complaint ("FAC") should be dismissed in its entirety. Doc. 36. The FAC alleges only two causes of action, neither of which is, nor can be, properly pleaded. As an initial matter, Plaintiffs' entire case is based on the proposition that protected First Amendment speech *alone* can be the basis of a claim for aiding and abetting acts of international terrorism. Not a single case supports this legal principle; indeed, they all say the opposite: that even "vigorously promoting and supporting the political goals of [a] group" is protected activity and, thus, cannot be the basis of an Anti-Terrorism Act ("ATA") or Alien Tort Statute ("ATS") claim. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 39 (2010).

Second, Plaintiffs do not, and cannot, plead any facts substantiating two necessary elements of their claims: (a) that Defendants' protected speech caused Plaintiffs' injuries, and (b) that Defendants meet the other elements of aiding and abetting liability–that their support of international terrorism was "knowing," "intentional" and "substantial." Plaintiffs have the audacity to claim Defendants knew about the October 7th, 2023 tragedy *before* it occurred but plead exactly zero facts that show how this would have even been possible.

The reason for this is clear: no such facts exist. When stripped of irrelevant statements and conclusory allegations, it is clear that Plaintiffs intend to use this Court to silence those who engage in protected First Amendment speech and activity. First Amendment freedoms have long been recognized as essential to a functioning democracy and are vital safeguards against tyranny, authoritarianism, and oppression.

Just two weeks ago, a District Court granted a motion to dismiss a similarly larded First Amended Complaint, commenting that "Plaintiffs' 111-page amended complaint sets out a wide variety of general allegations, complaints, historical and current events, and alleged antisemitic

incidents that allegedly took place not just on Penn's campus, but elsewhere in the United States and the world." *Yakoby, et al. v. The Trustees of the University of Pennsylvania*, 23 Civ. 4789, 2025 WL 1558522, at *1(E.D. Pa. June 2, 2025) *See also id.* ("[t]he amended complaint also includes sweeping allegations of ideological, philosophical, religious, and political concerns and grievances, that have nothing to do with a federal lawsuit").

The same is true here, and this Court should prevent Plaintiffs' dangerous attempt to unconstitutionally weaponize our legislature's anti-terrorism laws. "[B]ecause the mere assertion of a [terrorism] claim. . . has an almost inevitable stigmatizing effect on those named as defendants. . . courts should strive to flush out frivolous [terrorism] allegations at an early stage of the litigation." *Nat'l Grp. for Communs. & Computs., Ltd. v. Lucent Techs., Inc.*, 2004 U.S. Dist. LEXIS 25265, at *11-12 (S.D.N.Y. Dec. 14, 2004). Nor would another amendment save Plaintiffs' case, as not a single case supports their proposition that protected First Amendment activity substantially aids and abets acts of terrorism abroad.

Plaintiffs also lack standing. While standing is ordinarily a threshold issue, herein it is presented last because the analysis benefits from the dispositive context provided by the earlier points presented.

Accordingly, this frivolous case must be dismissed with prejudice.

## FACTUAL ALLEGATIONS

Plaintiffs include Israeli soldiers and families of hostages taken by Hamas on October 7th, 2023. Defendants are advocacy organizations and individuals who participate in civil society at a range of levels. Columbia-Barnard A Jewish Voice for Peace ("CB-JVP") is a local chapter affiliate of the national A Jewish Voice for Peace ("JVP"). JVP is a twenty-five-year-old community advocacy organization that works with Jewish communities to advocate for human

rights, equality, and dignity for all people in Palestine and Israel.[1] Plaintiffs accuse Defendants of violating the ATA and ATS, claiming their protected speech makes them "Hamas' propaganda arm." FAC ¶¶ 1, 6, 11.

However, to plead an ATA claim properly, Plaintiffs must include sufficient facts in their complaint to show Defendants (1) aided and abetted an international act of terrorism, (2) by knowingly providing (3) substantial assistance to this act, (4) participated consciously and culpably as something they wished to make succeed, and (5) that their acts actually caused Plaintiffs' injuries. *Twitter v. Taamneh*, 598 U.S. 471, 474, 490 (2023); 18 U.S.C. § 2333(d)(2). In addition, to sufficiently plead aiding and abetting under the ATS, noncitizen Plaintiffs must first show Defendants violated an international law norm. If they can establish that, they must then show Defendants' speech aided and abetted international terrorism by (1) knowingly providing practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) with the purpose of facilitating it. *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 259 (2d 2009); *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 401 (4th Cir. 2011).

Yet, nowhere in Plaintiffs' 85-page FAC, their second attempt at pleading, do they allege a single fact showing that *any* Defendant could be liable for either cause of action. Without any facts to support their claims, Plaintiffs in vain allege Defendants' political advocacy somehow amounts to the "provision of propaganda and recruiting services for Hamas." FAC ¶ 76. Indeed, the FAC fails to even acknowledge the Supreme Court's clear direction and guidance on the issue in *Holder*, 561 U.S. 1 ("independent advocacy" is not prohibited; Defendants may "speak and write freely" or "advocate.").

---

[1] A Jewish Voice for Peace, *Our Vision*, available at https://tinyurl.com/cemw6eb9.

Stripped of its rhetorical excess, the FAC fails to plead facts showing Defendants provided Hamas "substantial assistance" to an act of international terrorism by participating in it "consciously and culpably" as something they "'wish[ed] to bring about,' or sought 'by [their] action to make it succeed.'" *Twitter*, 598 U.S. at 474, 490. They also fail to show Defendants had any direct contact with Hamas, or knowingly and intentionally aided and abetted Hamas. *Id*. Instead, eleven paragraphs (nearly six pages) of the FAC detail irrelevant facts and history spanning several decades. The FAC lays out the long, irrelevant history of Israel and Hamas going all the way back to 1987 (¶¶ 39-47), the relationship between Hamas and nonparties (¶ 46), and the founding of nonparty organizations like the Muslim Brotherhood (¶¶ 46-47). Plaintiffs spend an inordinate amount of space expounding on long-past injuries and incidents, some dating as far back as 1993.

The FAC proceeds to detail the history of nonparties who were prosecuted for providing material support to Hamas nearly twenty-five years ago (¶¶ 48-51). This was well before the Organizational Defendants were founded and before some of the Individual Defendants were even born. Yet again, this long, irrelevant history contains no facts that could make Defendants liable for Plaintiffs' claims. In *Yakoby*, the Court remarked that "[i]t is unclear why Plaintiffs' counsel deemed it necessary to allege so many unrelated facts when doing so is directly contrary to federal pleading requirements,]" noting that "under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" 23 Civ. 4789, 2025 WL 1558522, at *1, *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009).

Here, the reason is clear: as discussed below, the multiple layers of extraneous material are designed to mask the FAC's abject insufficiency either to allege activity beyond protected

4

First Amendment expression, state a viable claim, or establish standing. In their attempt to fabricate a basis for liability, Plaintiffs make the unsubstantiated allegation that Defendants had "prior knowledge of the October 7 attack" and intentionally collaborated with and assisted Hamas. FAC ¶¶ 9, 104. This allegation is based on a single National Students for Justice in Palestine ("NSJP") Toolkit for activist—distributed on October 8th—that includes an image of paragliders, and a social media post announcing the first semester meeting. *Id.* ¶¶ 9, 99, 104. Plaintiffs admit the Toolkit was distributed "[on] October 8, 2023," but claim the Toolkit "included materials that appear to have been created before October 7" and that its timing was suspicious. *Id.* ¶¶ 9, 104. Plaintiffs also admit while "the precise timing [of Columbia SJP's social media post announcing their first semester meeting] is uncertain, Columbia SJP posted on Instagram 'We are back!!' a short time before the October 7 attack began." *Id.* ¶ 104.

Plaintiffs also make baseless allegations that Defendants purposefully assisted Hamas after October 7th. They allege Defendants knowingly and intentionally assisted Hamas through protected speech such as hosting rallies, campaigns, creating student programs, disseminating a toolkit, and chanting political slogans. *Id.* ¶¶ 61, 68-76, 116, 118, 158-171, 203-209. Plaintiffs then claim Hamas's unsolicited *post hoc* acknowledgment of the protests in the U.S. somehow shows Defendants acted at Hamas' direction. *Id.* ¶ 127.

Plaintiffs fail to plead any facts establishing that Defendants provided Hamas with "substantial assistance," which courts interpret by looking to factors such as the nature of the act encouraged, the amount and kind of assistance, Defendant's state of mind, presence at the time of the tort, and relationship to the principal. *Linde v. Arab Bank, PLC*, 882 F.3d 314, 317 (2d Cir. 2018), citing *Halberstam v. Welch*, 705 F.2d 472, 484-85 (D.C. Cir. 1983). *Twitter* clarified this requires showing defendants abetted the underlying tort, participating in the act "through

conscious, culpable conduct." *Twitter,* 598 U.S. at 492 (internal citations omitted). Instead, they refer to Defendants' protected speech, claiming these acts somehow substantially affected Hamas's activities in Gaza. All of the allegations cited in support of the FAC are protected by the First Amendment. Basing an ATA claim solely on this protected speech would be a dramatic deviation from the ATA's scope and intent. Protected speech cannot constitute culpable conduct – as *Holder* demands. Independent speech is protected and cannot alone support an ATA claim. *Holder* was very clear, the Court expressly disclaimed any "suggest[ion] that a regulation of independent speech would pass constitutional muster, even if the Government were to show that such speech benefits foreign terrorist organizations." *Holder* 561 U.S. at 39.

Plaintiffs allege they have suffered greatly since October 7th, 2023. But their injuries are not the result of Defendants' protected speech. This lawsuit is not the right remedy for Plaintiffs' injuries. If allowed to proceed, its only impact will be to undercut the Constitution and penalize students and organizations for engaging in constitutionally protected activity. This will chill speech on a pressing matter of public concern during a critical moment in our nation's history. This case must be dismissed.

## ARGUMENT

### I.    Plaintiffs Fail to State a Claim

Despite already amending their complaint and expanding it to 85 pages, Plaintiffs still fail to state a claim. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A claim is plausible on its face only if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Thus, Plaintiffs must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) (internal quotation marks omitted). Also, Plaintiffs may not rely on allegations that are "purely speculative." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 42-43 (1976); *see also Twombly*, 550 U.S. at 567 (discussing an "obvious alternative explanation" to the claim advanced).

On a Rule 12(b)(6) motion, though district courts must treat plausibly alleged facts as true, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013), "conclusory allegations of law, unsupported factual assertions, and unwarranted inferences" are *not* accepted as true. *Crawford v. Recovery Partners*, 2014 U.S. Dist. LEXIS 59310, at *7 (S.D.N.Y. Apr. 28, 2014) (quotation marks and citations omitted). Accordingly, courts may dismiss claims with well-pleaded facts if they are ultimately "clearly baseless." *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)). In doing so, a court may dismiss claims that are "implausible in light of factual allegations in the pleading itself." *Krys v. Pigott*, 749 F.3d 117, 133 (2d Cir. 2014).

Plaintiffs also may not group plead and "lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct" as this fails to "give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 Fed. App'x. 33, 34 (2d Cir. 2001) (internal citations omitted). In light of "the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular defendant, to ensure that he-or it-does indeed have fair notice of

[the claims]." *Burnett v. Al Baraka Inv. & Dev. Corp. (In re Terrorist Attacks)*, 349 F. Supp. 2d 765, 831 (S.D.N.Y. 2005).

Here, the FAC is devoid of any "factual content" that would allow this Court "to draw the reasonable inference that [Defendants are] liable" for any of Plaintiffs' injuries. *Iqbal*, 556 U.S. at 678. Instead, Plaintiffs rely on a mix of inferences without factual support, such as claiming Defendants substantially assisted Hamas, had "prior knowledge" of the attacks, and "answered Hamas's call." FAC ¶¶ 8, 105. They also rely on unsupported legal conclusions, chiefly, that Defendants "substantially assisted Hamas" by "disseminating propaganda." *Id.* ¶¶ 10,11, 92, 106, 107, 109, 159, 160, 167, 168, 174, 178, 180.

Contrary to the requisite elements of a viable cause of action, none of those unsupported, conclusory allegations sufficiently allege, even at the pleading stage, Defendants gave knowing and substantial assistance to Hamas' acts that harmed Plaintiffs. Let alone any direct communication or collaboration between Defendants and Hamas. Nor does inserting "Hamas" at every opportunity, absent some factual basis, serve as a substitute for allegations that meet the standard for stating a claim.

This Court should dismiss these claims as they are completely "implausible in light of [Plaintiffs'] factual allegations" in the FAC. *Krys*, 749 F.3d at 133. Plaintiffs would have this Court believe that Hamas forewarned thousands of young U.S. activists (or even one) of their plans for October 7th, 2023, before they carried them out. Yet somehow two of the most powerful and technologically advanced countries in the world, with pervasive military and law enforcement presence, did not learn this information. Indeed, the FAC is devoid of any facts establishing such a preposterous proposition, which would have entailed communications that

escaped the notice of Israel and/or its allies. Particularly when these states possess and implement the most powerful dragnet electronic surveillance tools.

More importantly, Plaintiffs do not even explain, much less establish, why Hamas would entrust these clandestine plans to a largely disconnected and uncoordinated group of college-age and U.S. based activists. No facts in the FAC support this absurd conclusory allegation. Plaintiffs' allegations of a several-years-long international conspiracy between foreign state actors and young American students who cycle through American universities every four years spanning back to the 1980's is "clearly baseless." *Gallop*, 642 F.3d at 368.

The "facts" Plaintiffs do plead either (a) simply repeat that Defendants acted for Hamas without any support for such claims or (b) allege that Hamas's recognition and support of student advocacy for Palestinian freedom and dignity equals direction and providing substantial assistance. *Simon*, 426 U.S. at 42-43. Particularly when this kind of support was expressed by millions of people the world over. Even in the light most favorable to Plaintiffs, these "conclusory allegations of law, unsupported factual assertions, and unwarranted inferences" are not accepted as true. *Crawford*, 2014 U.S. Dist. LEXIS 59310, at *7.

Indeed, in order to manufacture *any* kind of a connection between Defendants and Hamas, Plaintiffs had to *themselves* insert the word "Hamas" into Defendants' otherwise protected speech statements. Plaintiffs repeatedly put the word "Hamas" into brackets – a tacit acknowledgment that this was a connection made in Plaintiffs' own imaginations, not based on any form of reality. [2] FAC ¶¶ 100, 101, 147, 168. But Plaintiffs plead *no facts* to support this. The FAC does not show that any Defendant directly communicated with Hamas, acted

---

[2] In this same, deceptive manner, Plaintiffs quote six statements by Defendant Nerdeen Kiswani which purportedly show "pro-Hamas rhetoric." FAC ¶ 192. As stated below, rhetoric that is 'pro' an FTO is still protected by the First Amendment, and not a single one of the quoted statements even mentions Hamas whatsoever—they are all general expressions of support for resistance against Israel's ethnic cleansing of historic Palestine. *Id.* ¶¶ 193-98.

knowingly and intentionally to assist Hamas or the October 7 attacks, or took any action for or at the direction of Hamas.

Plaintiffs do not show how Defendants' protected speech was somehow "provision of propaganda and recruiting services for Hamas." *Id.* ¶¶ 61, 68-76, 158-171. None of these allegations permit the drawing of any "reasonable inference" of Defendants' liability for violating the ATA or the ATS. *Iqbal*, 556 U.S. at 678. Rather, these "extreme" allegations are meant to silence. *Nat'l Grp. for Communs. & Computs., Ltd.*, 2004 U.S. Dist. LEXIS 25265, at *11-12. "[T]he extreme nature of the charge of terrorism," *Burnett*, 349 F. Supp. 2d at 831, has an "inevitable stigmatizing effect" on Defendants, many of whom have not even begun their professional careers. *Nat'l Grp. for Communs. & Computs., Ltd.*, 2004 U.S. Dist. LEXIS 25265, at *11-12. This court must "flush out [these] frivolous allegations" at this stage and dismiss them. *Id.*[3]

## A. U.S. Citizen Plaintiffs Fail to State a Claim of Aiding and Abetting Under the ATA

U.S. citizen Plaintiffs charge Defendants with aiding and abetting terrorism under the ATA. This is an egregious expansion of the ATA, and this claim must be dismissed. The ATA allows U.S. nationals who are injured by international terrorism to sue anyone who "aids and abets, by knowingly providing substantial assistance" to an act of international terrorism, by participating in it "consciously and culpably" as something they "'wish[ed] to bring about,' or sought 'by [their] action to make it succeed.'" *Twitter*, 598 U.S. at 474, 490 (citing *Nye & Nissen*

---

[3] In *Yakoby*, the Court pointed out, that "Fed. R. Civ. P. 12(f) permits the court, on its own or on motion of a party, to 'strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter.'" 2025 WL 1558522, at *5. The Court added that "[i]t is the purpose of a Rule 12(f) motion 'to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.'" *Id.*, quoting *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 393, 402 (E.D. Pa. 2002). However, the Court also noted that "[m]otions to strike are generally not favored and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Id.*

*v. U.S.*, 336 U.S. 613, 619 (1949)). 18 U.S.C. § 2333(d)(2) (amended under the Justice Against Sponsors of Terrorism Act ("JASTA") adding civil remedies). Such "aiding and abetting liability" is governed by the legal framework in *Halberstam*, 705 F.2d 472 (cited approvingly by Congress when enacting JASTA as the legal framework for civil aiding and abetting liability), coupled with the rules applying the ATA in *Twitter.* 598 U.S. at 485, 490 (applying *Halberstam's* aiding and abetting standard to the ATA).

*Halberstam* sets forth three elements required to plead aiding and abetting: (1) "the party whom the defendant aids must perform a wrongful act that causes an injury"; (2) "the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides assistance"; and (3) "the defendant must knowingly and substantially assist the principal violation." 705 F.2d at 477. Yet mere independent advocacy, protected by the First Amendment, is a far cry from deliberate actions that "aid[] and abet[], by knowingly providing substantial assistance" to an act of international terrorism, by participating in it "consciously and culpably" as something they "'wish[ed] to bring about,' or sought 'by [their] action to make it succeed.'" *Twitter*, 598 U.S. at 474, 490; *Holder*, 561 U.S. at 39. As is "merely . . . knowing" of the wrongdoers conduct but "failing to stop them." *Twitter*, 598 U.S. at 503.

Plaintiffs uniformly fail to satisfy any of *Halberstam's* pleading requirements, let alone plausibly allege even mere knowledge of wrongful conduct. Plaintiffs certainly do not plausibly allege that Defendants' *post hoc* protected speech activity "consciously and culpably" aided Hamas' acts as something they "'wish[ed] to bring about,' or sought 'by [their] action to make it succeed.'" *Id.* at 474, 490. Defendants' First Amendment activity and speech is quite simply not sufficient. Plaintiffs fail to plausibly plead that Defendants' speech aided and abetted Hamas's activities in any way, much less to make those acts succeed. They further fail to plead

Defendants were aware of their alleged role in the underlying torts, or provided—knowingly or otherwise—any "substantial" assistance to the alleged acts of international terrorism. *Halberstam*, 705 F.2d at 477.

### i. Plaintiffs fail to plausibly allege Defendants had general awareness of their alleged role in Hamas's acts

Plaintiffs fail to sufficiently allege that Defendants "knowingly assumed a role in [the] terrorist activities or otherwise knowingly or intentionally supported" them in the conduct that harmed Plaintiffs. *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225-226 (2d Cir. 2019). This standard requires that a defendant be "aware that, by assisting the principal, it is itself assuming a role in terrorist activities." *Linde*, 882 F.3d at 329-30; *Siegel*, 933 F.3d at 224. However, Plaintiffs' allegations fail to establish that Defendants had *any* role in Hamas' activities at all, let alone that they were generally aware they even held a role supporting the October 7th attacks or Hamas' activities in general. More specifically, Plaintiffs fail to allege any of Defendants' activities caused Plaintiffs' injuries.

Unlike what Plaintiffs allege here, a defendant must at least be cognizant of "assuming a role" in the terrorist activities that harmed plaintiffs. *Weiss v. Nat'l Westminster Bank* PLC, 381 F. Supp. 3d 223, 231, 239 (E.D.N.Y. 2019). This means not just that a defendant "should have been aware of [their] role," but instead had "actual awareness" of that role. *Bernhardt v. Islamic Republic of Iran,* 47 F.4th 856, 867, n. 11 (D.C. Cir. 2022). For instance, in *Siegel*, plaintiffs alleged that HSBC aided and abetted Al-Qaeda's unlawful acts by providing hundreds of millions of dollars to an intermediate entity HSBC knew had ties to Al-Qaeda. 933 F.3d at 225-226. Plaintiffs also alleged that HSBC helped the intermediary entity violate banking regulations despite knowing the entity supported terrorist organizations. 933 F.3d at 225-226. Nevertheless, the court still dismissed the claim as plaintiffs "did not advance any non-conclusory allegation

that [the intermediary] received any of those funds or that HSBC knew or intended that [Al-Qaeda] would receive the funds." *Id.*

Here, Plaintiffs are only able to plead vague, temporal proximity that (1) Defendants continued exercising their First Amendment rights after October 7th, and (2) after October 7th, Hamas independently praised and encouraged Americans for exercising their First Amendment rights in advocating for human rights in Palestine. Plaintiffs specifically base their allegation that Defendants had "prior knowledge of the October 7 attack" and collaborated with Hamas on two facts. FAC ¶¶ 9, 104. The first is based on a single National Students for Justice in Palestine ("NSJP") Toolkit for activists distributed on *October 8th* that includes an image of paragliders. *Id.* ¶¶ 9, 99, 104. Plaintiffs even admit the Toolkit was distributed "[on] October 8, 2023." *Id.* ¶¶ 9, 99, 104. Trying to tie this *post*-October 7th Toolkit to some *pre*-October 7th knowledge, Plaintiffs claim this Toolkit "included materials that *appear to have been created before* October 7" and that this timing was suspicious. *Id.* ¶ 9. Aside from Plaintiffs' factually unsupported allegation that the Toolkit "appeared to have been created before October 7," Plaintiffs provide absolutely nothing to establish this. Or that the Toolkit somehow shows "prior knowledge" of an attack that took the world by surprise. The only other fact Plaintiffs plead apparently to show "general awareness" and "prior knowledge" of the October 7th attack is Defendant Columbia SJP's Instagram post announcing their first semester meeting, stating "We are back!!" *Id.* ¶ 104. But Plaintiffs themselves admit that "the precise timing [of Columbia SJP's social media post] is uncertain," but was posted "a short time before the October 7 attack began." *Id.* Yet Plaintiffs are completely silent on how an announcement of a student club meeting at the start of the fall semester shows "general awareness" and "prior knowledge" of Hamas' October 7th attack. Plaintiffs attempt to solve this problem by stating the social media account had been "dormant

for months" prior. *Id.* Meaning, the account was dormant over the summer break when students were not in school. This fails to save Plaintiffs' absurd allegation that these students, and not international powers, somehow had prior knowledge of the October 7th attack.

Moreover, even if Plaintiffs had not failed to properly tie Defendants to Hamas, the FAC would still be woefully insufficient. Plaintiffs do not adequately allege Defendants "knowingly assumed a role in [Hamas'] activities or otherwise knowingly or intentionally supported" them in the specific conduct Plaintiffs claim harmed them. *Siegel, Inc.*, 933 F.3d at 225-226. Plaintiffs do not show how Defendants' protest and exercise of their First Amendment rights suddenly translates to some general awareness that these protests were assisting Hamas' acts that harmed Plaintiffs. Or that the protests were assisting Hamas at all.

Even if Plaintiffs could credibly argue that Defendants knew protests were assisting Hamas, which they cannot, they must still show that Defendants had "actual awareness." *Bernhardt,* 47 F.4th at 867, n. 11. Meaning awareness such that Defendants were "aware that, by assisting [Hamas], it is itself assuming a role in terrorist activities." *Linde*, 882 F.3d at 329-330. Plaintiffs do not, and cannot, link Defendants' speech to even mere knowledge of any alleged "role" Defendants had in assisting Hamas' acts. Even less so that Defendants were "aware" that their First Amendment protected activities were allegedly assisting Hamas and "assuming a role in terrorist activities." Thus, Plaintiffs fall far short of the standard requiring that *these* Defendants knowingly or intentionally supported Hamas in the *specific acts* that caused Plaintiffs' injuries.

### ii.    Plaintiffs fail to allege Defendants provided "knowing and substantial" assistance to an international act of terrorism

The FAC fails to adequately plead Defendants gave any knowing and "substantial" assistance to the attacks that injured Plaintiffs. Plaintiffs allege insufficient facts to plead

Defendants aided and abetted Hamas in completing international terrorism through substantial assistance. *Twitter,* 598 U.S. 471. Indeed, Plaintiffs here allege far fewer facts pointing to Defendants' substantial assistance than those allegations deemed insufficient in *Twitter.* Aiding and abetting liability is limited to "conscious, voluntary, and culpable participation in another's wrongdoing" in order to help make it succeed, and that the act injured plaintiffs. *Id.* at 497-98. Meeting this standard requires a "strong showing of assistance and scienter." *Id.* at 498, 500. *Halberstam* identified six factors the Court may consider when determining whether assistance is "substantial": (1) nature of the act encouraged, (2) the amount [and kind] of assistance given by the defendant, (3) the defendant's presence or absence at the time of the tort, (4) the defendant's relation to the principal, (5) the defendant's state of mind, and (6) the period of the defendant's assistance. *Linde*, 882 F.3d at 317, citing *Halberstam*, 705 F.2d at 484-85. Plaintiffs fail on all fronts.

Plaintiffs fail to plausibly allege facts for *any* of the *Halberstam* factors. Plaintiffs' allegations fall well below other pleadings in terrorism cases that have been dismissed in the Second Circuit. In *Twitter*, Plaintiffs established that Twitter knew ISIS had committed a wrong, and knew that Twitter was "playing some sort of role in ISIS's enterprise." *Twitter*, 598 U.S. at 497. But Plaintiffs' pleading still failed because Plaintiffs did "not show that Defendants gave such knowing and substantial assistance to ISIS that they culpably participated in the [] attack." *Id.* Although plaintiffs alleged Twitter knew ISIS was able to upload content and connect with third parties on their platforms, the court dismissed the claims because this conduct was "mere passive nonfeasance," not affirmative misconduct. *Id.* A contrary holding would impute "liab[ility] for any sort of wrongdoing merely for knowing" of the wrongdoers conduct but

"failing to stop them. That conclusion would run roughshod over the typical limits on tort liability and take aiding and abetting far beyond its essential culpability moorings." *Id.* at 503.

Here, the FAC's allegations against Defendants' speech is even weaker than those failed pleadings in *Twitter.* The FAC does not show how any Defendants, through their protected speech, "gave such knowing and substantial assistance" to Hamas such that they "culpably participated" in Hamas' acts. *Id.* at 497. Defendants' *speech* acts also fall well below the *financial* acts of HSBC in *Siegel.* 933 F.3d 217. Plaintiffs have not alleged or "advance[d] any non-conclusory allegation" that Defendants sent any funds or similar tangible support to anyone associated with Hamas or any other Foreign Terrorist Organization ("FTO"). Or that Defendants purposefully assisted any entity tied to Hamas or any other FTO. Plaintiffs do not show how First Amendment activity in the U.S. could constitute *any* assistance to Hamas. Much less "knowing substantial assistance" to Hamas, or "culpably participat[ing]" in any attack. *Twitter*, 598 U.S. at 497-498, 500.[4] Simply labeling speech as "propaganda and recruiting services for Hamas" does not make it so, or explain how it is substantial assistance to the acts that caused Plaintiffs' injuries. FAC ¶ 76. The FAC does not specifically allege a tangible "act" of assistance, how that tangible assistance was given, or how much was given. Plaintiffs do not allege Defendants had any direct relationship with Hamas and are strangely focused on a meeting

---

[4] The FAC's allegations regarding "knowledge" are woefully deficient, as they are limited to the following:

(1) Sometime before October 7th, one defendant posted on social media announcing their first semester meeting (FAC ¶ 104); some distributed a toolkit that appeared to have been created before October 7th though it was distributed *on October 8th* (¶¶ 9, 104);

(2) On October 7th, Defendants issued a statement supporting "Palestinian resistance" and called for an "Emergency Rally," (¶ 105);

(3) After October 7th, Defendants distributed the NSJP Toolkit (¶ 9); called for protests and issued statements, sometimes coinciding with Hamas' calls to action and using similar language to Hamas (¶¶ 9, 90-93, 106-113, 167, 168, 172, 178, 180, 190, 193-198); used the words "resistance" and "Unity Intifada" (¶¶ 94, 95, 97, 100); used a paraglider image (¶¶ 99, 104); continued protests after Hamas praised the protests and called for more (¶¶ 114-122, 127-129, 130, 131, 133, 153, 155, 157, 159, 160-163, 179, 183-185, 187, 203, 204, 206); camped out on campus grounds and nonparties convicted of material support independently visited the encampment (¶¶ 138, 139, 147, 150).

with nonparties that occurred over twenty years ago – when most Defendants were either not yet born, or were under the age of ten. No Defendant is even alleged to have participated or been recruited. Finally, Plaintiffs plead no facts as to Defendants' state of mind or any specific time period when Defendants provided assistance. *Linde*, 882 F.3d at 317. The *Halberstam* factor test clearly weighs in favor of dismissal.

## II.    Defendants' Alleged Activities Constitute Protected First Amendment Speech

The FAC fails to state any claim because the alleged conduct is entirely protected by the First Amendment. A First Amendment defense results in dismissal when the facts and documents relied on in the complaint clearly involve creative expression and free speech. *See Moore v. Hadestown Broadway Ltd. Liab. Co*., No. 23-CV-4837 (LAP), 2024 U.S. Dist. LEXIS 40245, at *41-42 (S.D.N.Y. Mar. 7, 2024) (dismissing complaint because the conduct complained of was "creative expression" that was "apparent both from the face of the Amended Complaint and Exhibits" and the First Amendment defense was "properly raised" at the pleading stage). Courts are not required to abandon "common sense when analyzing the complaint" that on its face is based on protected speech. *AJ Energy LLC v. Woori Bank*, 829 F. App'x 533, 534 (2d Cir. 2020).

Here, Plaintiffs have not provided *a single fact* that Defendants even associated with Hamas. Even less that their speech aids and abets Hamas through "conscious, voluntary, and culpable participation in [their] wrongdoing" in order to help make it succeed. *Twitter,* 598 U.S. at 497-98. Regardless, Defendants vehemently contest any such allegations. Nonetheless, the ATA does not prohibit such association, nor does it abridge First Amendment rights. *Holder*, 561 U.S. at 39 ("[t]he statute does not penalize mere association with a foreign terrorist organization"). Critically, and fatally to the Plaintiffs' claims, the only actions attributed to Defendants in the complaint are core First Amendment actions: the dissemination of toolkits and

statements, publishing social media posts, calling for protests, and speech advocating their political perspective. Plaintiffs rely mainly on the following allegations to support their claims, some of which are alleged against all Defendants, others of which are alleged against specific Defendants:

(1)  Defendants announced their first meetings of the semester on Instagram before October 7th, FAC ¶ 104;

(2)  Defendants disseminated "the NSJP Toolkit" after October 7th, *id.* ¶¶ 9, 74, 93-96, 102;

(3)  Defendants used images that resemble graphics used by Hamas, such as paragliders, *id.* ¶¶ 99, 104;

(4)  Defendants used "aggressive, militant" speech, *id.* ¶ 67;

(5)  Defendants "obtained," "disseminated," and "followed" the "Our Narrative" document allegedly published by Hamas, *id.* ¶¶ 92, 190;

(6)  Defendants used "hateful, violent rhetoric," *id.* ¶¶ 112, 100, 101, 108, 109, 111, 113-118, 120, 121, 123, 145-147, 159, 162, 163, 168, 169, 172, 176, 180, 182, 193-198, 208;

(7)  Defendants promoted and called for protests on social media, *id.* ¶¶ 105, 109, 116, 118, 167, 172, 173, 183, 187, 204, 209;

(8)  Defendants hosted events, *id.* ¶¶ 130-134, 167;

(9)  Defendants participated in and promoted global days of action and protest, including the Strike 4 Gaza, *id.* ¶¶ 199-206;

(10)  Unidentified people attended protests that Defendants called for and waived flags, *id.* ¶ 208;

(11)  Defendants spoke at an event that also involved speakers allegedly associated with organizations that were criminalized months later, *id.* ¶ 130;

(12)    Defendants shared statements around the same time as Hamas' calls to action, *id.* ¶ 127;

(13)    Hamas independently called for protests and there were "parallels between Hamas's goals and the work of American student groups," *id.* ¶¶ 127, 129, 157;

(14)    Defendants camped out in tents on campus, *id.* ¶¶ 138.139,143, 147; and

(15)    Defendants protested inside campus buildings, *id.* ¶ 151.

All of these allegations constitute "creative expression" and speech on a matter of public concern, falling within the First Amendment defense. *Moore,* No. 23-CV-4837 (LAP), 2024 U.S. Dist. LEXIS 40245, at *41-42. *See Packingham v. North Carolina*, 582 U.S. 98, 108 (2017) ("to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights"); *Boos v. Barry*, 485 U.S. 312, 313, 322 (1988) ("[a]s a general matter . . . in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment."); *Cotarelo v. Vill. of Sleepy Hollow Police Dep't*, 460 F.3d 247, 252 (2d Cir. 2006) ("Generally, speech on any matter of political, social, or other concern to the community is protected by the First Amendment"); *Doe v. Intel. Corp.*, No. 24-CV-6117 (JPO), 2024 U.S. Dist. LEXIS 193076, at *10 n.4 (S.D.N.Y. Oct. 22, 2024) (Plaintiff's allegations of antisemitism against defendants include "a number of incidents that appear to primarily involve the exercise of First Amendment protected speech, such as distributing pamphlets, posting political statements on an online forum, and a student organization disinviting 'Zionists' from an event it hosted); *Volokh v. James*, 656 F. Supp. 3d 431, 445 (S.D.N.Y. 2023) (First Amendment generally protects individual right to engage in speech the public regards as hateful.); *Young America's Found. v. Stenger*, No. 3:20-CV-822 (LEK/TWD), 2025 U.S. Dist. LEXIS 51099, at *48-49 (N.D.N.Y. Mar. 20, 2025) ("Here, there is no real debate that both . . . lecture[s] and . . .

promotion of it during the Tabling Event . . . was protected speech"); *Ctr. for Bio-Ethical Reform v. Black*, 234 F. Supp. 3d 423, 428, 435 (W.D.N.Y. 2017) (finding "photo-murals with large, horrific images [] compar[ing] abortion to historically-recognized genocides" on a university campus was protected speech).

Even if the Court accepts Plaintiffs' unsupported premise that Defendants are advocating for the same cause as Hamas, Plaintiffs must still show Defendants' protected speech was "conscious, voluntary, and culpable participation" in Hamas' acts to help them succeed, and that those acts injured Plaintiffs. *Twitter,* 598 U.S. at 497-98. Plaintiffs allege, without factual support as to *these* Defendants, only that Defendants engaged in their own "independent advocacy" for their own purposes. *Holder*, 561 U.S. 1. But the government may not "regulat[e]. . . independent speech," even if the "such speech benefits foreign terrorist organizations." *Holder* 561 U.S. at 39. Engaging in independent advocacy falls far below "conscious, voluntary, and culpable participation in another's wrongdoing" in order to help make it succeed. *Twitter*, 598 U.S. at 497-98. *Even if* Plaintiffs *could* somehow meet their burden to show that Defendants' speech "also advanced the goals and objectives" of Hamas, Defendants' "independent activities on [and for their] own behalf" remain protected speech. *In re Terrorist Attacks on September 11, 2001*, 740 F. Supp. 2d 494, 519-20 (N.D.N.Y. 2010). Such speech falls well outside of the statutory scope underlying Plaintiffs' claims.

Instead, the FAC fails to plead sufficient facts to allege that Defendants and Hamas were even part of the same political movement. Nevertheless, Defendants' nonviolent conduct, as alleged by Plaintiffs, is still protected *even when that nonviolent conduct advances some of the same objectives as Hamas's violent conduct. See Holder*, 561 U.S. at 27 ("[i]ndividuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall

not be considered to be working under the foreign terrorist organization's direction and control")
(citation omitted).

For example, in *NAACP v. Claiborne Hardware Co.* the Supreme Court upheld the First
Amendment rights of Black Mississippi residents boycotting white owned businesses, even when
the boycotts contained "elements of criminality," including allegations of "physical force and
violence against persons and property...intimidation, threats, social ostracism, vilification. . .
[and] stationing of guards . . . in the vicinity of white-owned businesses." 458 U.S. 886, 888, 894
(1982). But when violent and nonviolent conduct occur as part of one activity, the Court ruled
the state may penalize only the violent conduct. 458 U.S. at 918. The Court in NAACP refused
to impose liability with "no evidence that the NAACP ratified—or even had specific knowledge
of—any of the acts of violence or threats." *Id*. at 930-31. The Court affirmed the NAACP's right
to boycott as "the right to associate does not lose all constitutional protection merely because
some members of the group may have participated in conduct or advocated doctrine that itself is
not protected." *Id.* at 908.

There must be clear proof that a defendant "specifically [intends] to accomplish [the aims
of the organization] by resort to violence." *Id*. at 909. "[O]therwise there is a danger" that
someone sympathizing with an organization's legitimate aims, but not intending to use violence
to accomplish them, might be punished for their "adherence to lawful and constitutionally
protected purposes, because of other and unprotected purposes which he does not necessarily
share." *Id*. at 909 (internal citations omitted). This blanket prohibition of association with a
group having both legal and illegal aims presents "a real danger that legitimate political
expression or association would be impaired." *Id.* at 918-919 (internal citations omitted). The
question is "purpose; not as to the relations of the speakers, but whether their utterances

transcend the bounds of the freedom of speech which the Constitution protects." *Id*. at 909. The

Court's position in *Claiborne* was consistent with a line of cases extending more than a decade

prior. *See, e.g., Elfbrandt v. Russell*, 384 U.S. 11, 15 (1966) ("[a] blanket prohibition of

association with a group having both legal and illegal aims would pose a real danger that

legitimate political expression or association would be impaired" (*citing Scales v. United States,*

367 U.S. 203, 229 (1961). *See also Noto v. United States,* 367 U.S. 290 (1961); *Yates v. United*

*States*, 354 U.S. 297, 326 (1957).

 Courts have consistently upheld *Claiborne Hardware's* principles in cases like this one

where the defendant advocates for peace and justice in Palestine and Israel. This conduct is

protected "for the same reason as boycotters' conduct in *Claiborne* was protected. . . . [where

plaintiffs] 'banded together' to express, collectively, their dissatisfaction with Israel and to

influence governmental action." *Koontz v. Watson*, 283 F. Supp. 3d 1007, 1022 (D. Kan. 2018).

Courts have found such

> actions intended to penalize or inflict economic harm on Israel could include conduct
> protected by the First Amendment, such as giving speeches, nonviolent picketing outside
> Israeli businesses, posting flyers, encouraging others to refuse to deal with Israel or
> Israeli entities, or sponsoring a protest which encourages local businesses to terminate
> business activities with Israel. Each of these actions might be intended to penalize or
> inflict economic harm on Israel or Israeli entities, and each of these activities falls under
> the protective shield of the First Amendment.

*A & R Eng'g & Testing, Inc. v. City of Hous.*, 582 F. Supp. 3d 415, 432 (S.D. Tex. 2022), citing

*Claiborne Hardware*, 458 U.S. 886.

 Here, Plaintiffs have alleged ties to illegal activity even more tenuous than alleged in

*Clairborne Hardware*. Plaintiffs have provided only rank supposition rather than substantiated

*facts*, that Defendants have a direct connection to Hamas, claim to be part of the same group or

movement, and/or hold themselves out as one monolith just with different tactics. The FAC

presents absolutely no factual allegations showing Defendants are associated with Hamas, or "ratified—or even had specific knowledge of—any of the acts of violence or threats." *Id.* at 930-31. There are no such facts plead in the FAC because these ties do not exist. Defendants cannot be punished for their protected speech simply because a wholly separate and unconnected organization to Defendants, Hamas, allegedly engages in "elements of criminality." *Claiborne Hardware*, 458 U.S. at 888, 894. This is the case even when Hamas's acts include "physical force and violence against persons and property. . . intimidation, threats, social ostracism, vilification." *Id.* at 888, 894.

Plaintiffs cannot tie any of their alleged physical injuries to any Defendant because no such connection exists. Even if Plaintiffs' injuries are tied to others claiming to be part of the larger movement, Defendants' "right to associate does not lose all constitutional protection merely because some other groups "may have participated in conduct or advocated doctrine that itself is not protected." *Id.* at 908. "[T]here must be [and is no] clear proof that [the Defendants] specifically intend[] to accomplish the aims of the organization by resort to violence." *Id.* at 909. As Defendants will be punished for their "adherence to lawful and constitutionally protected purposes [such as protesting and engaging in charged speech], because of other and unprotected purposes [such as Hamas' acts]" that they do not share. *Id.* at 909. Plaintiffs simply lump Defendants in with potentially thousands of other unknown actors for misconduct committed by some of these thousands of people. This is impermissible group pleading. *Atuahene*, 10 Fed. App'x. at 34.

Last month, in a near identical civil under the ATA based on the same NSJP Toolkit and chants, a District Court found the same Toolkit and speech at issue here was protected under the First Amendment. *Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.,*

2025 U.S. Dist. LEXIS 84645 *1 (D. Nev. 2025) (dismissing an aiding and abetting terrorism

claim against Students for Justice in Palestine – UNLV and finding that the student organizing in

question was protected speech). The Court noted that while "[s]ome of the slogans in this toolkit

mirror the messaging used by Hamas" – such as Defendants chanted "From the River to the

Sea," "long live the Intifada," called for a "Unity Intifada," and Hamas praised the U.S. protests -

- it is all protected speech. *Gerwaski,* 2025 U.S. Dist. LEXIS 84645, *4-5, 20-22, 26.

> The court reasoned,

> [Plaintiff] alleges that AMP has "knowingly used or permitted the use of funds . . . to provide support to terrorists, terrorist organizations, terrorist activities, or family members of terrorists" and that "[d]efendants identify themselves as not just aligned with Hamas's terrorist activities, but 'PART of' them . . .." ECF No. 6 at 6, 21. But these conclusory statements are not plausibly supported by the factual allegations in the FAC. Gerwaski relies on the fact that NSJP claims to be part of the "Unity Intifada" movement and allegedly puts forth its messages in response to Hamas's rhetoric or vice versa. *Id.* at 20-21, 27. And Hamas has expressed that it is pleased and reinvigorated by the protests on American college campuses. *Id.* at 26-27. Even taking these allegations as true, they do not plausibly show that AMP and SJP-UNLV are providing personnel or service to Hamas rather than independent advocacy.

*Id.* at 22.

> Similarly, Defendants chanting these same chants the *Gerwaski* court upheld as protected

speech remain protected here. In addition, Plaintiffs' allegation that Defendants "obtained,"

"disseminated," and "followed" the "Our Narrative" document allegedly published by Hamas

does not equal acting at the direction of Hamas. Nor that these Defendants did so with the

purpose of substantially assisting the underlying torts. Rather, this speech and advocacy is still

firmly protected by the First Amendment. The "Our Narrative" document was published widely

by online publications, including both the Palestine Chronicle and the Jewish Chronicle. Neither

'obtaining' nor 'disseminating' a widely-posted account of the October 7th events supports the

allegation that Defendants intentionally assisted Hamas. The document is speech on the history

and political context of Palestine and October 7th. Defendants' protest activities cannot be plausibly construed as following Hamas's orders or directives based on the general encouragement expressed in the document. As such, they remain squarely within the protection of the First Amendment.

This lawsuit is a transparent assault on core First Amendment principles and an attempt to "punish" Defendants for their "lawful and constitutionally protected" speech. *Claiborne Hardware*, 458 U.S. at 909. The First Amendment is an insurmountable barrier to Plaintiffs' claims, which represent an attempt to silence dissent by tying Defendants up in court proceedings. Consequently, this Court should dismiss the FAC with prejudice.

## III.    Plaintiffs Lack Standing

Plaintiffs also lack standing to sue Defendants for their claimed injuries because they are not fairly traceable to Defendants' alleged conduct in any way. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004); *Lujan v. Defs. Of Wildlife,* 504 U.S. 555 (1992). A motion to dismiss "for lack of Article III standing challenges the subject-matter jurisdiction of a federal court. . . under Fed. R. Civ. P. 12(b)(1)." *SM Kids, LLC. V. Google LLC*, 963 F.3d 206 (2d Cir. 2020); Fed. R. Civ. P. 12(b)(1). Plaintiffs "asserting subject matter jurisdiction ha[ve] the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In a Rule 12(b)(1) facial jurisdictional challenge, while the court must accept the factual allegations of the complaint as true, *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992), it is "not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S.*, 386 F.3d at 110. The court "may not rely on conclusory or hearsay statements contained in the affidavits." *Id.*

To establish Article III standing, plaintiffs must at a minimum show they have (1) suffered injury in fact, (2) that it is fairly traceable to defendant's conduct, and (3) it is likely to be redressed by a favorable ruling. *Lujan,* 504 U.S. 555. Article III standing requires that "the plaintiff's injury be 'fairly... trace[able] to the challenged action of the defendant, and not... [t]he result [of] the independent action of some third party not before the court." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016), citing *Lujan*, 504 U.S. at 560. Standing is lacking when the traceability between plaintiffs' injuries and defendants' alleged conduct "is purely speculative," and courts must assess how direct the relation is between the harm and conduct. *Simon*, 426 U.S. at 42-43. Plaintiff may only sue a party that bears some responsibility for its injury. *Lujan*, 504 U.S. at 560-61.

In this case, nowhere in the 85-page FAC do Plaintiffs "fairly trace[]" any of their alleged injuries to Defendants' expressive activities and/or protected speech. *Lujan*, 504 U.S. at 560. Instead, Plaintiffs' "complaint attempts to plead facts that are merely consistent with a defendant's liability," and "stops [well] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. Plaintiffs "do not show a direct relationship" between Defendants' conduct and their injuries, including the killing of their loved ones.

Plaintiffs cannot establish or explain how any of Defendants' *post hoc* protected speech here in the U.S., such as camping out in tents at universities, holding rallies, and distributing fliers, somehow contributed to Hamas's "a. October 7 attack; b. [t]he holding of hostages in Gaza; c. [t]he theft and withhold of the bodies of the deceased; d. [r]ocket attacks against civilians; and e. [a]ttacks on Israeli soldiers." FAC ¶ 217. Again: this lawsuit is not the remedy for these alleged harms. Plaintiffs ignore the more plausible explanation that their injuries are

"the result of the independent action of some third party not before the court." *Carter*, 822 F.3d at 55, citing *Lujan*, 504 U.S. at 560.

## IV.    This Court Lacks Subject Matter Jurisdiction Over Non-Citizen Plaintiffs' Law of Nations Claim

This Court also lacks subject matter jurisdiction over non-citizen Plaintiffs' ATS claims as "terrorism" is not a universal international norm, nor one that Defendants' speech violated. Even if it were, Plaintiffs' generic allegations do not allege Defendants purposefully provided any practical assistance to Hamas to facilitate their acts, that had a substantial effect on Hamas' acts. Non-citizen Plaintiffs fail to overcome the strict bar against stretching the ATS to provide subject matter jurisdiction over their aiding and abetting terrorism claim.

There is no universal international norm against terrorism. The ATS provides jurisdiction over civil actions brought by an alien for a tort committed in violation of international law or U.S. treaties. 28 U.S.C. § 1350; *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 254 (2018). ATS affords subject matter jurisdiction over a narrow set of international law violations for international norms that are "specific, universal, and obligatory." *Jesner*, 584 U.S. at 258, citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004). Yet "no universal norm against 'terrorism' existed under customary international law," nor does it still. *Terrorist Attacks on September 11, 2001 v. Al Rajhi Bank (In re Terrorist Attacks on September 11, 2001)*, 714 F.3d 118, 125 (2d Cir. 2013).[5] "Terrorism" has never been clearly defined internationally, and thus it cannot satisfy *Sosa's* "specific, universal, and obligatory" requirements. *Sosa*, 542 U.S. at 732; *see also Mwani*

---

[5] Even if an ATS plaintiff bringing a claim outside of the original torts establishes a specific, universal obligatory norm, they must still show why the court should "bypass Congress' express limitation" and exercise 'judicial discretion'" to reach their cause of action, "rather than defer to Congress." *Nestle USA, Inc. v. Doe,* 593 U.S. 628, 636 (2021); *Jesner,* 584 U.S. at 267-68.

*v. Bin Ladin*, 2006 U.S. Dist. LEXIS 89483, at *10 n.2 (D.D.C. Sep. 28, 2006) ("law is seemingly unsettled with respect to defining terrorism as a violation of the law of nations.").

Even if such a norm were to exist, to plead aiding and abetting a violation of this international law norm under the ATS, a plaintiff must still show that a defendant "(1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) does so with the purpose of facilitating the commission of that crime." *Talisman*, 582 F.3d at 259 (internal citations omitted). *Talisman* made clear that "the mens rea standard for aiding and abetting liability in ATS actions is purpose rather than knowledge alone." *Id*.

Here, under the ATS there is "no universal norm against 'terrorism'" under customary international law. *In re Terrorist Attacks*, 714 F.3d at 125. Plaintiffs citing the International Convention for the Suppression of the Financing of Terrorism ("ICSFT") as a supposed norm also fails as courts have already held that the ICSFT "does not establish a universally accepted rule of customary international law." *In re Chiquita Brands Int'l., Inc. Alien Tort Statute & S'holder Derivative Litig*., 792 F. Supp. 2d 1301, 1318 (S.D. Fla. 2011). The many "disagreements, nonconsents, and divergent interpretations of the Financing Convention demonstrate that the prohibitions of the convention are disputed and not well-established." *Chiquita*, 792 F. Supp. at 1319. Thus, the ICSFT also fails *Sosa's* "specific universal, and obligatory" requirement. *Sosa*, 542 U.S. at 732.

Even if Plaintiffs could establish a universal norm, they never allege Defendants aided and abetted Hamas by providing any "practical assistance" such as financial support to Hamas as the ICSFT requires. Nor do Plaintiffs allege any of Defendants' acts had a substantial effect on Hamas' acts, or that Defendants even acted with any purpose of facilitating Hamas' acts. *Talisman*, 582 F.3d at 259. Plaintiffs plead no substantive facts, because they cannot, as to how

Defendants' independent advocacy, such as protests, constitutes purposefully giving "practical assistance" to, and having a "substantial effect" on, Hamas's military capabilities. *Talisman*, 582 F.3d at 259; *Aziz*, 658 F.3d at 401. Rather, Plaintiffs rely on vague "conclusory allegations of law, unsupported factual assertions, and unwarranted inferences" of "propaganda" and "recruitment." *Crawford*, 2014 U.S. Dist. LEXIS 59310 at *7. As *Talisman* made clear, there must be "purpose rather than knowledge alone." 582 F.3d at 259. Even if Plaintiffs were to show Defendants' speech had a substantial effect on Hamas's conduct, absent some showing that Defendants intentionally acted with "purpose" to facilitate Hamas' acts, it would still be firmly covered by the First Amendment. *Id.* at 259. As the Court in *Gerwaski* recently found, dismissing a similar claim, such allegations establish only independent advocacy, and not purpose. 2025 U.S. Dist. LEXIS 84645 at *21-22.

## V.    Plaintiffs Do Not, Because They Cannot, Tie the Protected Speech of Columbia-Barnard Jewish Voice for Peace Nor its Co-Defendants to Any of Plaintiffs' Injuries

Even after amending their first complaint, Plaintiffs still fail to sufficiently plead any claims against Defendant CB-JVP or its co-Defendants beyond the "purely speculative." *Simon*, 426 U.S. at 42-43. These Defendants' alleged actions are either valid First Amendment speech and advocacy, or "clearly baseless" accusations of "supporting terrorism." *Gallop*, 642 F.3d at 368.

Plaintiffs simply "lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct," thus failing to "give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene*, 10 Fed. App'x. at 34. Plaintiffs' entire case appears to be based on the following unsupported, conclusory allegations:
(1) CB-JVP and co-Defendants were "aggressive [and] militant [in their] approach" to activism

   (FAC ¶¶ 67, 192-198);

(2) CB-JVP and co-Defendants promoted protests on social media (¶¶ 109, 116, 118, 167, 172, 209);

(3) CB-JVP and co-Defendants shared statements around the same time as Hamas' public statements urging people to denounce the ongoing genocide (¶ 127);

(4) Hamas independently "dr[ew] parallels between Hamas's goals and the work of American student groups" like CB-JVP and co-Defendants (¶ 129); and

(5) CB-JVP and co-Defendants engaged in protected speech and advocacy (¶¶ 123, 172).

In other words, CB-JVP and co-Defendants were successful in getting their speech and views out to the public using social media and protected speech, and did not solicit or support Hamas in their advocacy. Plaintiffs plead no facts that plausibly render these First Amendment protected acts "terrorist propaganda" in service of Hamas. FAC ¶¶ 1, 167.

None of these allegations specify exactly what CB-JVP nor any other specific co-Defendant is alleged to have done. Rather, these allegations name several Defendants without specifying who is alleged to have done what. These vague, broad-sweeping allegations do not give these CB-JVP and co-Defendants "notice of what the plaintiff's claim[s are against them] and the ground upon which it rests." *Atuahene*, 10 Fed. App'x. at 34.

The FAC is also completely devoid of any facts plausibly alleging that these CB-JVP and co-Defendants' protected speech aided and abetted Hamas "by knowingly providing substantial assistance" to the acts that injured Plaintiffs. *Twitter*, 598 U.S. at 474, 490. Plaintiffs do not explain how CB-JVP and co-Defendants disseminating a toolkit, promoting protests on social media, sharing statements around the same time as Hamas' calls to action, and camping out in tents translates to "consciously and culpably" aiding and abetting unlawful acts to "make [them] succeed.'" *Id*. at 474, 490. Plaintiffs further fail to "advance any non-conclusory allegation,"

*Siegel*, 933 F.3d at 225-26, that this knowing assistance, speech and protest, was "substantial assistance." *Twitter*, 598 U.S. at 497; *Linde,* 882 F.3d at 317.

Finally, nowhere do Plaintiffs allege CB-JVP or co-Defendants' "act[s]," protesting, disseminating political fliers and information, and engaging in speech, actually "injured plaintiffs." *Twitter,* 598 U.S. at 497-98. Plaintiffs have failed to satisfy this basic constitutional minimum that Plaintiffs plausibly allege CB-JVP and co-Defendants' First Amendment speech and protest constituted such pervasive, systemic support for Hamas that they can be "fairly. . . trace[d]" to Plaintiffs' alleged harms. *Lujan*, 504 U.S. at 560-61. That is, Plaintiffs do not lay out any nonconclusory allegations that CB-JVP and co-Defendants' *speech* actually caused—by substantially assisting—"a. [the] October 7 attack; b. [t]he holding of hostages in Gaza; c. [t]he theft and withhold of the bodies of the deceased; d. [r]ocket attacks against civilians; and e. [a]ttacks on Israeli soldiers." FAC ¶ 217.

Plaintiffs' entire case against CB-JVP and co-Defendants is based on their clearly protected First Amendment activity, which Plaintiffs dislike. Plaintiffs utterly fail in this second attempt at a complaint to show that CB-JVP and co-Defendants culpably aided and abetted Hamas in such a substantial way that their speech and protests caused Plaintiffs' injuries.

## VI.   This Court Should Deny Leave to Amend the FAC Because Another Amendment Would Be Futile

"[I]t is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted). "Leave to amend may properly be denied if the amendment would be futile," *Krys*, 749 F.3d at 134 (citations omitted), be in "bad faith, [cause] undue delay, or undue prejudice to the opposing party." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018), citing *McCarthy*, 482 F.3d at 200. District courts have "no obligation" to provide Plaintiffs leave to amend their complaint if Plaintiffs "fail

to disclose what additional allegations [they] would make which might lead to a different result." *United States ex rel. Sisselman v. Zocdoc, Inc.*, No. 24-2807, 2025 U.S. App. LEXIS 8719, at *5-6 (2d Cir. 2025), citing *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004) (per curiam) (internal quotations omitted). Courts should deny their request when Plaintiffs merely offer "conclusory assertion[s]" that their amendment would cure any potential deficiencies. *Id.*

Plaintiffs cannot possibly cure the litany of deficiencies in the FAC. If Plaintiffs had evidence or concrete facts, they would have pleaded them in their original complaint or in their 85-page FAC. It is difficult to imagine that, after 85 pages, an 86th page (or thereafter) could fix all the dispositive flaws in the FAC. Thus, a second amendment will be futile and cause "undue delay." *Kim*, 884 F.3d at 105.

A subsequent amendment might also be in "bad faith" as Plaintiffs' claims appear at least partially motivated by a desire to chill and suppress Defendants' protected speech. *Id.* Allowing Plaintiffs a second amendment will cause "undue prejudice" to Defendants, who will have to once again move to dismiss the Second Amendment complaint and spend resources fighting a baseless case. *Id.* For these reasons, this Court should dismiss without leave to amend.

## **MOTION TO STRIKE**

Defendants' alleged conduct is firmly protected by the First Amendment. Because of this, Plaintiffs instead rely on impertinent, irrelevant, and inflammatory allegations to spuriously malign Defendants as part of a Hamas-led conspiracy. Plaintiffs apparently hope that the stigma and fear accompanying these allegations will make up for their inadequate pleadings. In this vein, Plaintiffs falsely portray Defendants' speech as antisemitic. Plaintiffs repeatedly impugn the sincerity of the religious beliefs and ethnicity of the Jewish student Defendants they seek to

tar as antisemites. Defendants move to strike these irrelevant, unsupportable, and prejudicial statements from the FAC pursuant to Federal Rule of Civil Procedure 12(f). Fed. R. Civ. P. 12(f).

## I.     LEGAL STANDARD

This Court should strike the FAC's allegations that are impertinent, scandalous, serve only to inflame the reader and prejudice Defendants. Under Fed. R. Civ. P. 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). *See generally Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 511 (S.D.N.Y. 2013) ("[a]lthough motions to strike are generally disfavored, allegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones"); *see also Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp.3d 414, 423 (S.D.N.Y. 2019) ("[f]ederal courts have discretion in deciding whether to grant motions to strike"); *Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y.1991) (striking references that were "immaterial and impertinent to the case" because they served "no purpose except to inflame the reader"); *Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 559-60 (S.D.N.Y. 2023) (striking content in the complaint where allegations of a 'coverup' of a Jewish burial site "'ha[d] no bearing on'" Plaintiff's claim of an antisemitic workplace, and "would prejudice the Defendants.").

To prevail in a Motion to Strike, the moving party "must demonstrate that '(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Winklevoss Cap. Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 721 (S.D.N.Y. 2019) (citing *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012); *see also Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633, 642 (S.D.N.Y.

2001). An allegation is prejudicial where it is "'amorphous, unspecific and cannot be defended against'" and "if publicized, 'harm [the defendant] in the public eye and could influence prospective jury members.'" *Low v. Robb*, No. 11-CV-2321, 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012) (quoting *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 556 (S.D.N.Y. 2002).

## II.    ARGUMENT

The below statements in the FAC "have no real bearing on the case," *Oram*, 979 F. Supp. 2d at 511, and only serve to "prejudice the Defendants." *Crosby*, 695 F. Supp.3d at 559-60. Each allegation described below is immaterial and unrelated to the pleaded causes of action, could not be supported by any admissible evidence, and clearly prejudices the Defendants. Though motions to strike are often disfavored, Rule 12(f) exists for a reason. Fed. R. Civ. P. 12(f). Rule 12(f) protects parties from the kind of inflammatory, prejudicial, wholly unresponsive—and frankly dangerous—allegations proffered by Plaintiffs here. *Id*. This Court should therefore strike the below paragraphs from the FAC.

### A.    The Court Must Strike Plaintiffs' Inflammatory and Irrelevant Accusations Trying to Tie Defendants to an Alleged Conspiracy from 1988 (FAC ¶¶ 3, 4, 5, 12, 46-65)

Defendants move to strike paragraphs 3, 4, 5, 12, and 46-65 of the FAC. These paragraphs are "scandalous matter" baselessly alleging a relationship between several non-parties. These non-parties include Hamas, the Palestine Committee, American Muslim Society, the Islamic Association for Palestine, the Holy Land Foundation for Relief and Development, and others, and the allegation is based on a recorded meeting from 1993. Fed. R. Civ. P. 12(f); *see e.g.* FAC ¶¶ 36-55.

These allegations must be stricken as "they have no real bearing" on whether Plaintiffs are able to prove their claims. Instead, they relate to an alleged conspiracy between non-parties more than thirty years before Plaintiffs' injuries or Defendants' alleged conduct even occurred. *Oram,* 979 F. Supp. 2d at 511; *see e.g. Toto v. McMahan, Brafman, Morgan & Co.*, 1995 WL 46691, *16-7 (S.D.N.Y. 1997) (striking complaint's references to alleged criminal tax fraud, a criminal indictment against a non-party, and Defendants' status as unindicted co-conspirators, in civil RICO claim; allegations were irrelevant to those specific elements and clearly prejudicial to Defendants due to their criminal overtones). Moreover, even if Plaintiffs could somehow plausibly allege that Hamas was directing Defendants through this decades-old, alleged conspiracy agreement—which, again, is not the case—these sections would still be irrelevant to their pleaded causes of action and therefore strikable. As explained above and in the briefs filed by co-Defendants, the aiding and abetting cause of action requires knowing participation in a specific tort so as to make it succeed. Where Plaintiffs make no attempt to even allege that Defendants knew about this supposed conspiracy, the claim that non-parties conspired without Defendants' knowledge is still utterly irrelevant to the pleaded causes of action.

Plaintiffs' allegations are also impossible to prove or disprove with admissible evidence. Indeed, not one connective strand in this fictitious spiderweb is plausibly based in fact. There is no "evidence in support of the[se] allegation[s]. . . [that would] be admissible" as they are made against non-parties and "have no bearing on the issues in the case." *Metrokane, Inc.,* 160 F. Supp. 2d at 642. Every alleged link in this concocted web has been directly refuted numerous times in other cases. This entire fabricated "immaterial and impertinent" history is only included for the purpose of defaming Defendants as somehow genealogically linked to alleged terrorist progenitors and a conspiracy from 1988. *Morse*, 777 F. Supp. at 319.

Finally, these allegations are included solely to "inflame the reader." *Id.* They are presented to "prejudice" Defendants with "criminal overtones" by labeling them as terrorists and associating them with a history of criminal liability and prosecutions. *Oram*, 979 F. Supp. 2d at 511. Plaintiffs' allegations prejudice Defendants by suggesting they are already guilty of a global terrorism conspiracy with Hamas and the Iranian Revolutionary Guard Corps simply by virtue of Defendants' falsely imputed origins. Numerous courts have held that falsely labeling someone a "terrorist," "potential terrorist," or "terrorist supporter" is so stigmatizing, scandalizing, and prejudicial as to constitute defamation. *See e.g.*, *Van Der Linden v. Khan,* 535 S.W.3d 179, 198 (Tex. App. 2017) ("Khan alleges that falsely accusing someone of having admitted that he provided financial support to terrorists constitutes defamation per se. We agree"); *Elhanafi v. Fox Television Stations, Inc.,* 2012 WL 6569341, *2 (Sup. Ct. Kings County, Dec. 17, 2012) (finding possible defamation where the public "might infer that plaintiffs are terrorists and/or terrorist sympathizers/abettors" based on Fox News story); *Sirer v. Aksoy,* 2023 WL 3166453, *2 (S.D. Fla., May 1, 2023) (finding defamation where "[d]efendant falsely stated that Plaintiff was a member of the Fethullah Terrorist Organization"); *TransUnion LLC v. Ramirez,* 594 U.S. 413, 433 (2021) (finding that "the harm from being labeled a 'potential terrorist' bears a close relationship to the harm from being labeled a 'terrorist'… the harm from a misleading statement of this kind [on a credit report] bears a sufficiently close relationship to the harm from a false and defamatory statement").

Because the mere assertion that Defendants are aiding and abetting terrorism "has an almost inevitable stigmatizing effect on those named as defendants," it is clearly prejudicial. *Nat'l Grp. for Communs. & Computs., Ltd.*, 2004 U.S. Dist. LEXIS 25265, at *11-12. This Court "should strive to flush out" this kind of frivolous and irrelevant accusation "at an early stage of

the litigation." *Id.* (applying this principal in the context of a RICO claim). Plaintiffs' improper

pleadings impose a significant burden on this Court while prejudicing Defendants by baselessly

tarring them as puppets for a designated FTO. These allegations are prejudicial because they

would harm Defendants in the public eye and would clearly influence prospective jury members.

*Low*, 2012 WL 173472, at *9. These allegations must be stricken.

### B.  The Court Must Strike Plaintiffs' Inflammatory, Irrelevant, and Unsupported Description of Defendants as "Admitted Terrorists" (FAC ¶ 1)

Plaintiffs scandalously claim that Defendants "advertise themselves" as "Hamas's

propaganda arm" and are "admitted terrorists." FAC ¶ 1. These descriptions must be stricken

from the complaint under Rule 12(f). First, they are irrelevant to Plaintiffs' causes of action.

Whether Defendants describe themselves one way or another has no implication for whether they

participated in the specific underlying torts that allegedly caused Plaintiffs' injuries. More

importantly, Plaintiffs have zero admissible evidence in support of these plainly false statements.

Plaintiffs have filed and quoted myriad posts and documents they allege to be published by

Defendants and unrelated non-parties, yet not one of these publications supports Plaintiffs'

patent misrepresentation. No Defendant has ever "advertise[d]" itself as a propaganda arm of

Hamas, and no Defendant has ever "admitted" to being a terrorist. If Plaintiffs were able to

support this blatant misrepresentation of Defendants' statements with admissible evidence, they

certainly would have done so. They cannot however, because these statements are plainly false

and fabricated. Finally, "the harm from being labeled a 'potential terrorist' bears a close

relationship to the harm from being labeled [an actual or admitted] 'terrorist,'" and is clearly

defamatory, stigmatizing, and prejudicial. *TransUnion LLC v. Ramirez,* 594 U.S. at 433. These

claims in the FAC are irrelevant to Plaintiffs' causes of action, unsupportable by any—

nonexistent—admissible evidence, and serve solely to defame Defendants and prejudice them in the eyes of the public, this Court and potential jurors. They must be stricken from the FAC.

### C. This Court Should Strike Plaintiffs' Irrelevant and Inflammatory Allegations Impugning the Sincerity of Defendants' Religious Beliefs and Ethnicity (FAC ¶¶ 63, 70)

Defendants move to strike all references to members of JVP or CB-JVP which impugn them as fake Jews. FAC ¶¶ 63, 70. The sincerity of JVP members' religious beliefs are beyond question, and regardless "have no bearing on the issues in the case." *Metrokane, Inc.*, 160 F. Supp. 2d at 642. Whether Plaintiffs consider members of JVP to be 'real' Jews is irrelevant to the causes of action. Regardless, there is no "evidence in support of the[se] allegation[s]. . . [that would] be admissible." *Id*. Plaintiffs' sole purpose in impugning that sincerity is to "prejudice" Defendants, *id.*, to defame them as people who lie about their faith and should not be accepted as part of the Jewish community. *Morse*, 777 F. Supp. at 319. These false accusations serve to simply "inflame the reader" against these allegedly fake Jews. *Id*.

Plaintiffs' repeated suggestion that the Judaism of JVP members is fraudulent in some way, or insincere—calling them "ostensibly Jewish" (FAC ¶ 63) and "allegedly Jewish" (¶ 70)—and is not relevant in any way to the pleaded causes of action. It is included solely to prejudice the Defendants. Plaintiffs' religious and ethnic gatekeeping has no place in this Court and reveals Plaintiffs' true motivation: Jewish Zionists are acceptable, but anyone who deviates from that political perspective is a fake Jew and a supporter of terrorism. These allegations must be stricken from the complaint.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendant CB-JVP respectfully requests that the Court dismiss the FAC in its entirety with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P.

12(b)(1), and strike the prejudicial and irrelevant sections of the FAC identified above under Fed.

R. Civ. P. 12(f).

Dated: June 19, 2025                    Respectfully submitted,

                                        */s/ Bina Ahmad*
                                        Bina Ahmad (admitted *pro hac vice*)
                                        Dan Stormer (admitted *pro hac vice*)
                                        Hanna Chandoo (corrected *pro hac vice* forthcoming)
                                        HADSELL STORMER RENICK & DAI LLP
                                        128 N. Fair Oaks Ave.
                                        Pasadena, CA 91103
                                        626.585.9600
                                        dstormer@hadsellstormer.com
                                        hchandoo@hadsellstormer.com
                                        bahmad@hadsellstormer.com

                                        Attorneys for Columbia-Barnard A Jewish Voice for Peace

**<u>WORD CERTIFICATION</u>**

I certify that this document was prepared on a computer using word processing software which indicated that this document contains 12,093 words. This word count is in compliance with the Court's Order, Doc. 50, permitting a brief with a maximum number of 13,000 words.

Bina Ahmad