# **EXHIBIT 9**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

               -against-

TAREK BAZROUK,

                      Defendant.

25-CR-203 (RMB)

**ORDER OF**
**DETENTION**

---

Following a careful *de novo* examination of the parties' written and oral submissions, the Court finds unequivocally that there is clear and convincing evidence that Defendant Tarek Bazrouk poses a danger to other persons and to the community and should be detained. *See* 18 U.S.C. § 3142(e). The Court also finds, by a preponderance of the evidence, that the Defendant is a flight risk.[1] *See id.*

    In reaching this remand conclusion, the Court in no way diminishes the presumption of Defendant's innocence of the crimes alleged in the Federal Indictment. *See United States v. Bellomo*, 944 F. Supp. 1160, 1163 (S.D.N.Y. Oct. 30, 1996) ("The issue now before the Court is whether there is a risk that [Defendant] will flee the jurisdiction or endanger others before the trial can be held, not whether he is guilty or innocent of the charges in the indictment.").

**Background**

    The Court has considered the applicable and pertinent submissions, relevant authorities, and the record herein, including (1) the Government's May 7, 2025 letter arguing for Defendant's detention; (2) defense counsel's May 9, 2025 written response seeking bail; (3) the Pretrial Services Report submitted on May 7, 2025 and the updated Pretrial Services Report submitted on

---

[1] Some of Defendant's recent arrests may be found on page 7 *et seq.*

1

May 13, 2025; (4) the transcript of the bail hearing before Magistrate Judge Stewart D. Aaron on May 7, 2025 proposing bail with conditions; and (5) the proceedings held on May 7, 2025, May 13, 2025, and May 20, 2025 before this Court which included, among other things, very helpful oral presentations by the Government and defense counsel. *See generally* Hr'g Tr. of Proceedings before Magistrate Judge Aaron, dated May 7, 2025 ("SDA Hr'g Tr."); Hr'g Tr. of Proceedings before Judge Berman, dated May 7, 2025 ("RMB 5/7/25 Hr'g Tr."); Hr'g Tr. of Proceedings before Judge Berman, dated May 13, 2025 ("RMB 5/13/25 Draft Hr'g Tr."); Hr'g Tr. of Proceedings before Judge Berman, dated May 20, 2025 ("RMB 5/20/25 Draft Hr'g Tr.").

As the Court concludes by clear and convincing evidence that Bazrouk presents a danger to others and to the community and, by a preponderance of the evidence, that Defendant Tarek Bazrouk is a flight risk, *see* 18 U.S.C. § 3142(e), **Defendant's current detention is hereby continued**.

Defendant was arrested on May 7, 2025 and was presented and arraigned before Magistrate Judge Aaron. Judge Aaron also issued a *Brady* Order and held a bail hearing. At the conclusion of the hearing, Judge Aaron set bail conditions, including home confinement. *See* SDA Hr'g Tr. at 43:14–16; *see also* Bail Disposition, dated May 7, 2025, at 1–2 (ECF No. 9). The Government (immediately) appealed Judge Aaron's bail decision.

This Court remanded Defendant on May 7, 2025, pending a further detention hearing and this written order. *See* RMB 5/7/25 Hr'g Tr.

**Defendant Bazrouk**

Defendant Tarek Bazrouk is 20 years old. *See* Pretrial Services Report, dated May 13, 2025, at 2. He was born in New York and is a U.S. citizen. *See id.* Bazrouk lives in a three bedroom apartment in Manhattan with his mother, father, siblings, his uncle, and grandmother.

*See id.* Defendant reported that he is "unemployed and [is] supported by his parents" and that his net worth is $3,000. *Id.*

Defendant Bazrouk has no criminal convictions. He does, however, have an extensive and troubling arrest record. He has a number of orders of protection in New York State courts; a drug case in Connecticut; *see* Hartford Police Dep't Unusual Occurrence Rep., dated December 18, 2024; the instant "Hate Crime" felonies in SDNY; and two New York State cases which parallel the Hate Crime cases.

**At the time of Defendant's Federal Hate Crimes arrest on May 7, 2025, law enforcement found weapons in Defendant's apartment, including an air soft (replica) gun, knives, shell casings, a taser, pepper spray, and brass knuckles and on May 7, 2025, law enforcement also retrieved from Defendant's apartment $500,000 in cash. Most recently, the Government uncovered and retrieved an additional $250,062.06 in cash, presumably from another compartment in Defendant's safe. Thus, the total cash recovered from the Defendant is $750,062.06.[2]**

According to the Government, Defendant traveled to the West Bank and Jordan for approximately three weeks in September and October 2024. *See* Gov't Letter, dated May 7, 2025,

---

[2] The timeline is as follows. At a conference with the parties on May 13, 2025, Government counsel advised that there might be more cash (in another part of the Defendant's safe) and that the Government had not yet completed its search. AUSA: "We think there's more I don't want to give an exact amount because we haven't gotten into that part of the safe yet but that is an incredible amount of money of cash to have on hand." RMB 5/13/25 Draft Hr'g Tr. at 18:12–15.

And, at a conference on May 20, 2025, in response to a question from the Court, the Government advised that the total amount of cash which had been located and retrieved was in excess of $750,000.00. And, by email, dated May 20, 2025, the Government confirmed that the total amount of cash retrieved from the Defendant's safe is, in fact, **$750,062.06.** That is, an additional $250,062.06 had been recovered from the safe, following the initial seizure of $500,000.

at 19 (ECF No. 5). It appears that Bazrouk has family in the Middle East, some of whom may belong to Hamas. *See id.*

### Three (3) Federal Offenses

Bazrouk is charged in the Southern District of New York with three separate "Hate Crimes," under 18 U.S.C. § 249(a)(1)(A), as follows: **Count 1** – On or about **April 15, 2024**, in the Southern District of New York and elsewhere, Bazrouk willfully caused bodily injury to a victim because of the victim's actual and perceived Jewish religion and national origin, *to wit*, Bazrouk kicked the victim in the chest at a protest event in downtown Manhattan causing injury to the victim. The victim was standing with individuals wearing "kippahs" (skullcaps), carrying Israeli flags, and singing Jewish songs; **Count 2** – On or about **December 9, 2024**, in the Southern District of New York and elsewhere, Tarek Bazrouk willfully caused bodily injury to a victim because of the victim's actual and perceived Jewish religion and national origin, *to wit*, Bazrouk punched the victim in the face at a protest event near an uptown university causing injury to the victim who was wearing a kippah, and had an Israeli flag draped around his shoulders; and **Count 3** – On or about **January 6, 2025**, in the Southern District of New York and elsewhere, Tarek Bazrouk willfully caused bodily injury to a victim because of the victim's actual and perceived Jewish religion and national origin, *to wit*, Bazrouk punched the victim in the face at a protest event at East 18th Street in Manhattan, causing injury to the victim. The victim was wearing an Israeli flag around his shoulders and a chain with a Jewish star around his neck.

Defendant has pled "not guilty" to all counts.

The Government asserts that there is video evidence, among other things, which supports the Defendant's guilt of all three felony hate crimes. *See* Gov't Letter at 18. Defendant faces a maximum penalty of 10 years for each of these three hate crimes. *See* SDA Hr'g Tr. at 7.

4

## Magistrate's Bail Conditions

Magistrate Judge Aaron ruled on May 7, 2025 as follows: "The Court finds the government has not met its burden of establishing by a preponderance of the evidence that the defendant is a flight risk. Among other things, I will note . . . he has appeared in state court as required. The Court also finds the government has not met its burden of establishing by clear and convincing evidence that defendant is a danger to the community. Again, I note the crimes alleged in the indictment did not involve the use of weapons." SDA Hr'g Tr. at 42:9–23.

Judge Aaron imposed the following bail conditions:

- A $150,000 bond signed by three financially responsible persons;

- travel restricted to the Southern and Eastern Districts of New York;

- surrender travel documents and no new applications;

- pretrial supervision as directed by SDNY Pretrial Services;

- Defendant to submit to urinalysis and, if positive, there will be a condition added of drug testing or treatment;

- home incarceration supported by GPS monitoring;

- avoid contact with any person who is or may become a victim or witness, unless in the presence of counsel; and

- Defendant's mother and father shall serve as third-party custodians for defendant. *See id.* at 42:25–43:16.

## Legal Standard(s)

Under 18 U.S.C. § 3142(e), "[i]f, after a hearing pursuant to the provision of subsection (f), the judicial officer finds that no condition or combination of conditions will reasonably assure

the appearance of the person as required and the safety of any other person and the community, he

shall order the detention of the person prior to trial."

"A district court reviews *de novo* a magistrate judge's order of pretrial release or

detention." *United States v. Minnici*, 128 F. App'x 827, 828 n.1 (2d Cir. 2005) (citing *United

States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)). The burden is by a preponderance of the evidence

that the defendant presents a flight risk and by clear and convincing evidence that the defendant

presents a danger to others and the community. *See United States v. Mercedes*, 254 F.3d 433, 436

(2d Cir. 2001).

"The Defendant's financial resources, in combination with [other factors] . . . do bear

significantly on the flight risk analysis." *United States v. Maxwell*, 510 F. Supp. 3d 165, 174

(S.D.N.Y. 2020). And, where "the future misconduct that is anticipated concerns violent criminal

activity, no issue arises concerning the outer limits of the meaning of 'danger to the

community' . . . ." *United States v. Salerno*, 794 F.2d 64, 70 (1986), *rev'd on other grounds*, 481

U.S. 739 (1987).

"There is no requirement of a nexus between the charged conduct and the basis of a court's

conclusion that a defendant is a serious danger to the community." *Bellomo*, 944 F. Supp. at 1166.

"[W]e reject [defendant's] suggestion that his acts of 'domestic' violence do not support a finding

of dangerousness to the community. A willingness to strike loved ones offers probative evidence

of a tendency to violence and dangerousness toward others." *United States v. Quartermaine*, 913

F.2d 910, 917 (11th Cir. 1990).

"To be sure, [defendant] cannot be held because of his political beliefs, no matter how

abhorrent . . . . But the Court *can* consider such beliefs if they are probative of his motive or intent

to engage in dangerous conduct . . . . Such language can properly be considered as probative

6

evidence of his dangerousness." *United States v. Neefe*, No. 1:21-cr-567-RCL, 2022 WL 703999, at *6 (D.D.C. Mar. 9, 2022).

"[H]ome detention with electronic monitoring does not prevent flight; at best, it limits a fleeing defendant's head start." *United States v. Zarger*, No. 00–CR–773–S–1 JG, 2000 WL 1134364, at *1 (E.D.N.Y. Aug. 4, 2000).

**<u>Danger to Others and to the Community</u>**

A summary of the clear and convincing evidence of Defendant's danger to others and to the community is as follows:

- In 2023, Bazrouk appears to have assaulted his uncle with whom he lives. *See* New York City Police Dep't Compl. # 2023-018-001305, dated Feb. 18, 2023, at 1 (Defendant "struck [uncle] with a close fist in the back of the head repeatedly."); *see United States v. Rodriguez*, 950 F.2d 85, 88, 89 (2d Cir. 1991) ("[A] prior record of violence eases the government's burden of showing dangerousness" and "[need not] be connected to the activity charged in the indictment"); *see also Quartermaine*, 913 F.2d at 917.

- Defendant Bazrouk, as noted, is alleged to have individually assaulted three Jewish protesters on April 15, 2024, December 9, 2024, and January 6, 2025, respectively. *See United States v. Flores*, 856 F. Supp. 1400, 1408–09 (E.D. Cal. 1994) (finding that the nature of the charged offense is a hate crime, and together with defendant's prior acts of racially motivated and domestic violence, led to pretrial detention).

- Bazrouk was employed at an unlicensed drug factory in Connecticut ("Exotic Clouds"). *See United States v. Barone*, 387 Fed. App'x 88, 90 (2d Cir. 2010) ("dangerousness was clearly and convincingly evidenced by facts demonstrating both his readiness to

commit the charged murder for hire and his past commission of crimes involving or threatening violence . . . [i]n addition . . . to his involvement in a number of past uncharged crimes, notably, his financing of a narcotics transaction, his authorization of arson, and his use of violence in furtherance of extortion.").

- Law enforcement retrieved from Defendant's apartment $750,062.06 in cash and weapons which included an airsoft replica gun, shell casings, knives, a taser, pepper spray, and brass knuckles at the time of Bazrouk's arrest. *See* RMB 5/13/25 Draft Hr'g Tr. at 14:3–10; *see also Maxwell*, 510 F. Supp. 3d at 174.

Additional details of Defendant's danger to others and to the community include the following:

(i)     Defendant Bazrouk is, as noted, charged with alleged crimes of violence while intentionally targeting Jewish victims on three (3) separate occasions. *See* Indictment, dated May 6, 2025, at 1–2 (ECF No. 2). Bazrouk kicked one victim in the chest at a protest event where the victim was standing with individuals wearing "kippahs" (skullcaps), carrying Israeli flags, and singing Jewish songs, causing injury to the victim. *See id.* at 1. Bazrouk punched another victim in the face at a protest event where the victim was also wearing a kippah, and had an Israeli flag draped around his shoulders, causing injury to the victim. *See id.* at 1–2. And, Bazrouk punched a third victim in the face at a third protest event where the victim was wearing an Israeli flag around his shoulders and a chain with a Jewish star around his neck. *See id.* at 2.

(ii)    The Court observes that Bazrouk allegedly committed the third hate crime assault against a Jewish victim in January 2025 i.e., **even after** he had been arrested for

substantially similar crimes in April 2024 and in December 2024. *See* Gov't Letter at 18.

(iii)   Bazrouk's alleged hate crimes "targeted Jews [who were] expressing their First Amendment rights, . . . and all [assaults] resulted in injury to the victims." *Id.*

(iv)   During each of the three alleged hate crime assaults (between April 2024 and January 2025) Bazrouk allegedly made his intentions clear: "Bazrouk wore a Hamas headband, aligning himself with a group dedicated to the murder of Jews." *Id.* According to the Government, "the timing of these assaults . . . demonstrates that this was not a momentary lapse in judgment for the defendant but a deliberate pattern of conduct to terrorize Jewish victims." *Id.*

(v)   According to the Government, the evidence against the Defendant is "overwhelming." *Id.* Defendant's alleged assaults "were witnessed by many bystanders, including the victims, and significant portions of the incidents were captured on video." *Id.* Bazrouk's text messages allegedly demonstrate that he committed hate crime assaults against persons he perceived to be Jewish. *See id.*

(vi)   The Government contends, as noted, that the evidence of Bazrouk's anti-Semitic animus and assaults is "overwhelming." *Id.* In addition, Bazrouk's statements and his text messages expressed hatred of Jews (e.g., "Allahu Akbar"; "Nazis"; "F- - - you, Nazi."). *Id.* at 1–4, 7; *see United State v. Johnson*, No. 22 Cr. 89, 2024 WL 181854, at *1 (S.D. Ohio, Jan. 17, 2024) (where defendant was detained pending trial after physically assaulting the victim because of his ethnicity and after shouting slurs).

(vii)    Defendant allegedly possessed materials "evidencing his support for organizations that have murdered thousands of Jews and Israelis, killed and wounded U.S. citizens, and repeatedly avowed that they want to destroy both the United States and Israel." *Id.* at 7.

(viii)    Bazrouk allegedly posted a photo of what appears to be a young boy on social media along with the following threatening message: "1 OF THE ZIONISTS HAVE BEEN FOUND[.] HE GOES TO [NAME OF SCHOOL] LOCATED AT [ADDRESS]" with hashtags, including "#found"; "#gethim"; and "#wanted." *Id.* at 6. This post may be said to "out" a Jewish student at a Jewish elementary school in the Bronx. *See id.*

In sum, the Court finds that Defendant Bazrouk presents a serious danger to others and to the community. *See Quartermaine*, 913 F.2d at 917.

### Connecticut Drug Crimes

(i)    Defendant Bazrouk was arrested in Hartford, Connecticut on December 18, 2024 -- which was only nine days after allegedly committing a hate crime assault -- and charged in Connecticut state court with two felonies and one misdemeanor, including **1-** operation of a "drug factory"; **2-** possession of a controlled substance, 1st offense; and **3-** possession with intent to sell/dispense hallucinogens. *See* Pretrial Services Report at 4. Defense counsel, while acknowledging the seriousness of these charges, advised the Court that in or about March 2025 Defendant was accepted into a Connecticut "diversion" program. *See* RMB 5/13/25 Draft Hr'g Tr. at 6:1–4. Counsel stated that "the fact of an arrest [unrelated to drugs] will not affect his ability to complete that diversionary program . . . and should he satisfactorily complete that program, it's my understanding that the case would be dismissed." *Id.* at 6:6–11.

The Government, on the other hand, argued that recent (2025) text messages recovered from the Defendant's phone suggest that the Defendant continued to be engaged in unlawful drug dealing after his Connecticut drug arrest. *See id.* at 44:1–5. The Government added that "this conduct has **not** been brought before the [Connecticut] diversion program and so the extent to which the defense is relying upon . . . those . . . two felony charges, and one misdemeanor charge going away, I'm not sure that is going to happen given the fact that after that arrest he continued with his criminal conduct thereafter." *Id.* at 45:11–16 (emphasis added).

(ii)    The Court's understanding is that the following items were seized during Defendant's Connecticut State arrest on December 18, 2024:

956 pre rolled marijuana cigarettes; 7 pounds of unpackaged marijuana; 146 packages of THC edibles; 31 boxes of marijuana weighing (3.5) grams each; 74 bags of marijuana weighing (3.5) grams each; 149 THC "vapes"; 6 THC "waxes"; 56 jars of marijuana each weighing (3.5) grams; and $1,858 in US currency. *See* Hartford Police Dep't Unusual Occurrence Rep., dated Dec. 18, 2024.

**Two New York State Cases and Several Orders of Protection**

(i)    There are two pending New York State assault cases in which Bazrouk is a Defendant. The two cases are in New York County Criminal Court under dockets numbered CR-036587-24NY and CR-002247-25NY. Defendant was initially charged in New York County Criminal Court for offenses which are substantially similar to Counts Two and Three of the instant Federal Indictment. The state court cases are currently calendared for June 30, 2025 and August 8, 2025, respectively.

(ii)     Defendant Bazrouk is (or has been) a respondent in at least three orders of protection, including one order of protection which was filed against him by his uncle. *See* Pretrial Services Report at 4; *see also* RMB 5/13/25 Draft Hr'g Tr. at 32:19–22. This order of protection is, according to defense counsel, "inactive." RMB 5/13/25 Draft Hr'g Tr. at 32:19–22. According to the New York City Police Department, the basis for the order of protection was an altercation which occurred on February 18, 2023 between the Defendant and his uncle and which took place in their (mutual) residence. *See* New York City Police Dep't Compl. # 2023-018-001305, dated Feb. 18, 2023, at 1. (Defendant Bazrouk "struck [his uncle] with a closed fist in the back of the head repeatedly." *Id.*)[3]

Two other orders of protection are currently active and were authorized by New York State Court Judges Hon. Robert Rosenthal, New York County Criminal Court, and Hon. Michelle Weber, New York County Criminal Court. *See* Pretrial Services Report at 4. These orders of protection were issued for the benefit of the alleged victims in the New York State Court assault cases. *See id.* at 3–4; *see supra* ¶ (i), at 11.

**Weapons**

(i)     Weapons, as noted, were seized during the search of Defendant's apartment on May 7, 2025. They include brass knuckles, several knives, pepper spray, a taser, shell casings, and an airsoft gun (i.e., "a replica firearm that fires small, spherical projectiles instead of bullets.") Gov't Letter at 13–14; RMB 5/13/25 Draft Hr'g Tr. at 14:5–6.

---

[3] On May 13, 2025, Defense counsel advised the Court as follows: "I would just note that the person at issue in that order [of] protection is in the courtroom here today[.]   It's Mr. Bazrouk's uncle[,] my client's uncle[,] he's here[,] he's supportive." RMB 5/13/25 Draft Hr'g Tr. at 32:19–22.

(ii)    According to the Government, images, messages, and other content found on Bazrouk's phone, indicate that Bazrouk has **"access to firearms, ammunition, and other weapons."** *Id.* at 10 (emphasis added); *see, e.g., id.* at 11 (Text message from Bazrouk on June 4, 2024: "I was about too [emoji of gun] someone"; "You know I gothcu and if I don't my gun do [crying laughter emoji]"; Text message from Bazrouk on April 19, 2024: "The yahoodi pages/If I ever see 1 of them ima boom them fr fr").

(iii)    The Government points out that Defendant's arrest in Hartford, Connecticut on December 18, 2024, occurred only nine days after one of the alleged Hate Crime assaults. "Your honor, taken together our position is that the Defendant because of his conduct and because of a dozen plus arrests . . . our position is that there is no combination of conditions that can assure the safety of the community . . . ." RMB 5/13/25 Draft Hr'g Tr. at 16:12–16.

(iv)    It appears to this Court that neither the three hate crimes set forth in the instant Federal Indictment, nor the New York and Connecticut State criminal cases against the Defendant, nor the orders of protection, have dissuaded Defendant Bazrouk from engaging in alleged unlawful drug distribution. *See id.* at 44:1–5. According to the Government, "[t]here are two separate text exchanges between the defendant and another individual in January of 2025. So that's approximately a month after [Bazrouk's drug] arrest in Hartford, Connecticut in December 2024. In both of those exchanges, it's very clear that the defendant is still (unlicensed) dealing in marijuana." *Id.*

**Flight Risk**

The bases for the Court's conclusion that Bazrouk poses a risk of flight by a preponderance of the evidence include the following:

(i)     Upon Bazrouk's Federal arrest on May 7, 2025, as noted, law enforcement seized from Bazrouk's family apartment an "airsoft gun" replica; shell casings from a (real) gun; brass knuckles; as taser; pepper spray; and three knives. *See* Gov't Letter at 13; RMB 5/13/25 Draft Hr'g Tr. at 14:5–6.

(ii)    **In addition, law enforcement has seized $750,062.06 in cash.** *See supra* at 3; *see also* RMB 5/20/25 Draft Hr'g Tr. According to defense counsel, this "was money that [Defendant] had earned in connection with an unlicensed smoke shop." SDA Hr'g Tr. at 26:13–14; *see also* Gov't Letter at 17. Defense counsel conceded that the "money has been seized. There's no ability at this point, no mechanism that I can think of for Mr. Bazrouk to obtain that money or put it to any use or purpose. It will be forfeited." RMB 5/13/25 Draft Hr'g Tr. at 38:11–13.

(iii)   Defense counsel also stated: "The fact that [the money] was seized and that Mr. Bazrouk is not going to re-obtain [the cash] . . . cuts against the idea that it presents so much of a risk of flight that he can't be bailed under some - - the most strict conditions available to pretrial services." *Id.* at 43:3–7.[4]

(iv)    It should also be noted that the Pretrial Services Report, dated May 7, 2025, and the updated Pretrial Services Report, dated May 13, 2025, do **not** include Defendant's

---

[4] As noted, at a conference with the parties on May 20, 2025, the Court inquired of the Government whether any additional funds had been recovered. The Government responded that the Defendant's safe had been opened; that an additional $250,062.06 had been retrieved; and that the total amount of cash seized by the Government from Bazrouk totals $750,062.06. *See* RMB 5/20/25 Tr.

$750,062.06 "stash" in whole or in part. This suggests that very pertinent information has been withheld from Pretrial Services or overlooked. In fact, the Pretrial Report shows that Defendant has a "net worth" of only $3,000 and that Defendant's "total assets" are said to be only $3,000. Pretrial Services Report at 2. The Pretrial Services Report also states that the Defendant is unemployed and is "supported by his parents." *Id.*

(v)   The Court finds that the Defendant's access to such significant amounts of cash and that these cash asset misrepresentations and omissions may well reflect an intention and an ability to flee. *See United States v. Sabhnani*, 493 F.3d 63, 76 (2d Cir. 2007) (where defendant's "ample means to finance flight[,]" together with other factors, "strengthen[ed] the case for detention").

**Foreign Travel**

(vi)   Lastly, "pertaining to travel, the Defendant reported that in the last 10 years, his sole travel has been to Jordan (in 2024) to visit family." Pretrial Services Report at 2. The record indicates that Defendant traveled to the West Bank and to Jordan for three weeks in September and October 2024. *See* Gov't Letter at 19. And, it is quite plausible that "given Bazrouk's criminal exposure, the strength of the evidence against him, and his overseas ties, Bazrouk poses a significant flight risk as well." *Id.* at 17–18; *see* Pretrial Services Report at 5.

In sum, the Court finds by a preponderance of the evidence that Defendant is a flight risk. *See Mercedes*, 254 F.3d at 436; *see also Sabhnani*, 493 F.3d at 76.

## Conclusion

Based upon the foregoing, the Court finds by clear and convincing evidence that the Defendant presents a danger to others and to the community, and by a preponderance of the evidence that the Defendant presents a risk of flight.

**Defendant's remand is continued.**

Date: May 21, 2025
New York, New York

**RICHARD M. BERMAN, U.S.D.J.**

16