**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HAGGAI *et al*.,

             *Plaintiffs*

          *v.*

KISWANI *et al.*,

            *Defendants.*

Case No. 25-cv-02400-JAV

**<u>MEMORANDUM OF LAW IN SUPPORT OF MARYAM ALWAN'S MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT</u>**

Joseph Pace
J. Pace Law, PLLC
30 Wall Street, 8th Floor
New York, NY 10005
Tel: (917) 336-3948
jpace@jpacelaw.com

*Counsel for Maryam Alwan*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ i

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND .....................................................................................................3

    A.  October 7 and the Israel-Gaza War ..............................................................................3

    B.  The SAC's Allegations .................................................................................................4

STANDARDS OF REVIEW ....................................................................................................10

    A.  Rule 12(b)(6) ..............................................................................................................10

    B.  Rule 12(b)(5) ..............................................................................................................11

ARGUMENT ...........................................................................................................................11

  I.  THE COMPLAINT MUST BE DISMISSED AGAINST ALWAN IN HER
     INDIVIDUAL AND REPRESENTATIVE CAPACITY DUE TO PLAINTIFFS'
     FAILURE TO EFFECT PROPER SERVICE .........................................................12

    A. Plaintiffs Failed to Properly Serve Alwan ...................................................................12

    B. The Complaint Was Not Properly Served on Columbia SJP Via Alwan............13

  II. THE COMPLAINT FAILS TO STATE AN ATA AIDING-AND-ABETTING
     CLAIM...................................................................................................................14

    A. The Complaint Fails to State an ATA Claim Against Columbia SJP.................14

      i. The Acts of International Terrorism (First *Halberstam* Factor) ....................14

      ii. General Awareness (Second *Halberstam* Factor) ...........................................18

      iii. Knowing and Substantial Assistance (Third *Halberstam* Factor) ...............18

      iv. Plaintiffs' "Coordination" Theory Is Inadequately Pled and Legally
        Insufficient…………………………………………………………………24

    B. The Complaint Fails to State an ATA Claim Against Alwan in Her Individual
      Capacity ...................................................................................................................25

  III. THE COMPLAINT FAILS TO STATE AN ATS CLAIM ...................................27

CONCLUSION.......................................................................................................................28

# TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*AJ Energy L.L.C. v. Woori Bank,*
   829 F. App'x 533 (2d Cir. 2020) ................................................................. 9,23

*Allianz Ins. Co. v. Otero,*
   No. 01 Civ. 2598 (LMM)(HBP), 2003 U.S. Dist. LEXIS 1284 (S.D.N.Y. Jan. 29, 2003)  11

*Almog Meir Jan v. People Media Project,*
   No. 3:24-cv-05553-TMC, 2025 U.S. Dist. LEXIS 18021 (W.D. Wash. Jan. 31, 2025) .. 27

*Arpaio v. Obama,*
   797 F.3d 11 (D.C. Cir. 2015) ........................................................................ 17

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................................... 9

*Assets Recovery 23, L.L.C. v. Gasper,*
   No. 15 CV 5049 (RJD) (CLP), 2018 U.S. Dist. LEXIS 192374 (E.D.N.Y. Nov. 9, 2018)  10

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd.,*
   968 F.2d 196 (2d Cir. 1992) ........................................................................ 11

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................................... 20

*Bernhardt v. Islamic Republic of Iran,*
   47 F.4th 856 (D.C. Cir. 2022) ..................................................................... 18

*Boim v. Quranic Literacy Inst.,*
   291 F.3d 1000 (7th Cir. 2002) ..................................................................... 22

*Cenedella v. Metro. Museum of Art,*
   348 F. Supp. 3d 346 (S.D.N.Y. 2018) ......................................................... 23

*Colon v. Twitter, Inc.,*
   14 F.4th 1213 (11th Cir. 2021) ............................................................... 16,17

*Crawford v. Recovery Partners,*
   No. 12 Civ. 8520, 2014 U.S. Dist. LEXIS 59310 (S.D.N.Y. Apr. 28, 2014) .................... 9

*Crosby v. Twitter, Inc.,*
   921 F.3d 617 (6th Cir. 2019) ....................................................................... 17

*Def. for Child. Int'l-Palestine v. Biden*,
    714 F. Supp. 3d 1160 (N.D. Cal. 2024) ................................................................. *passim*

*Deluca v. AccessIT Grp., Inc.*,
    695 F. Supp. 2d 54 (S.D.N.Y. 2010) ............................................................................ 11

*Diaz v. Amber Transp., L.L.C.*,
    No. 15 Civ. 05820, 2016 U.S. Dist. LEXIS 45464 (S.D.N.Y. Apr. 4, 2016) .................. 10

*Dickerson v. Napolitano*,
    604 F.3d 732 (2d Cir. 2010) ...................................................................................... 10

*Gallop v. Cheney*,
    642 F.3d 364 (2d Cir. 2011) ................................................................................. *passim*

*Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.*,
    24-cv-00985-APG, 2025 U.S. Dist. LEXIS 84645 (D. Nev. May 5, 2025) ..................... 19

*Gonzalez v. Google L.L.C.*,
    2 F.4th 871 (9th Cir. 2021) ........................................................................................ 17

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) ................................................................................... 14

*Heldman v. Sobol*,
    962 F.2d 148 (2d Cir. 1992) ...................................................................................... 19

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ................................................................................................... 15,22

*In re DNTW Chtd. Accountants Sec. Litig.*,
    96 F. Supp. 3d 155 (S.D.N.Y. 2015) ........................................................................... 17

*In re Lyman Good Dietary Supplements Litig.*,
    No. 17-CV-8047 (VEC), 2018 U.S. Dist. LEXIS 131668 (S.D.N.Y. Aug. 6, 2018) ....... 25

*Jesner v. Arab Bank, Pub. Ltd. Co.*,
    584 U.S. 241 (2018) ................................................................................................... 26

*Khapesi v. City of N.Y.*,
    No. 13 Civ. 4391(KBF), 2014 WL 2605342 (S.D.N.Y. June 10, 2014) ...................... 7,8

*Krys v. Pigott*,
    749 F.3d 117 (2d Cir. 2014) ........................................................................................ 9

*Linde v. Arab Bank, Pub. Ltd. Co.*,
    882 F.3d 314 (2d Cir. 2018) ................................................................................... 15,24

*MacGregor v. Milost Glob., Inc.*,
    No. 17-CV-6691-LTS, 2018 U.S. Dist. LEXIS 142876 (S.D.N.Y. Aug. 22, 2018) .... 12,14

*Makhnevich v. Bd. of Managers of 2900 Ocean Condo.*,
    72 Misc. 3d 1208(A) (Sup. Ct. 2021) ................................................................. 12

*Malcolm v. Honeoye Falls-Lima Educ. Ass'n*,
    684 F. App'x 87 (2d Cir. 2017) ......................................................................... 12

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995) ......................................................................................... 21

*Mourtil v. Chi Ming Peng*,
    295 A.D.2d 582 (2d Dep't 2002) ...................................................................... 12

*N.Y. State Higher Educ. Servs. Corp. v. Perchik*,
    207 A.D.2d 1040 (4th Dep't 1994) ................................................................... 12

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ......................................................................................... 21

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) ......................................................................................... 21

*Nat'l Dev. Co. v. Triad Holding Corp.*,
    930 F.2d 253 (2d Cir. 1991) ............................................................................. 10

*Ofisi v. BNP Paribas, S.A.*,
    77 F.4th 667 (D.C. Cir. 2023) .................................................................. 15,21,24

*Ong v. Chipotle Mexican Grill, Inc.*,
    No. 16 Civ. 141(KPF), 2017 U.S. Dist. LEXIS 33170 (S.D.N.Y. Mar. 8, 2017) ........... 17

*Palisades Ests. EOM, L.L.C. v. Cnty. of Rockland*,
    No. 23-cv-4215(NSR), 2025 U.S. Dist. LEXIS 85721 (S.D.N.Y. May 5, 2025) ........... 23

*Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*,
    888 F. Supp. 2d 491 (S.D.N.Y. 2012) .............................................................. 17

*Poodry v. Tonawanda Band of Seneca Indians*,
    85 F.3d 874 (2d Cir. 1996) ......................................................................... 10,11

*Potter v. Inc. Vill. of Ocean Beach*,
    No. 24-2033-cv, 2025 U.S. App. LEXIS 8435 (2d Cir. Apr. 10, 2025) ...................... 10

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
    582 F.3d 244 (2d Cir. 2009) ............................................................................. 27

*Prescription Containers, Inc. v. Cabiles*,
  No. 12 Civ. 4805(CBA), 2014 U.S. Dist. LEXIS 40250 (E.D.N.Y. Feb. 14, 2014) ........ 12

*Retana v. Twitter, Inc.*,
  1 F.4th 378 (5th Cir. 2021) ........................................................................ 16

*Siegel v. HSBC N. Am. Holdings, Inc.*,
  933 F.3d 217 (2d Cir. 2019) ............................................................ 15,18,24

*Snyder v. Phelps*,
  562 U.S. 443 (2011) ................................................................................ 21

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004) ................................................................................ 26

*Steven Madden, Ltd. v. Jasmin Larian, L.L.C.*,
  No. 18 Civ. 2043, 2019 U.S. Dist. LEXIS 10423 (S.D.N.Y. Jan. 22, 2019) ................... 25

*Tang Cap. Partners, LP v. BRC Inc.*,
  661 F. Supp. 3d 48 (S.D.N.Y. 2023) ........................................................ 10,13

*Tel-Oren v. Libyan Arab Republic*,
  726 F.2d 774 (D.C. Cir. 1984) .................................................................... 26

*Terrorist Attacks on September 11, 2001 v. Al Rajhi Bank  (In re Terrorist Attacks on September 11, 2001)*,
  714 F.3d 118 (2d Cir. 2013) ...................................................................... 26

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023) .......................................................................... *passim*

*United States v. Delgado*,
  972 F.3d 63 (2d Cir. 2020) ........................................................................ 19

*United States v. Stevens*,
  559 U.S. 460 (2010) ................................................................................ 22

*United States v. Westchester Cnty.*,
  495 F. Supp. 2d 375 (S.D.N.Y. 2007) ........................................................... 11

*United States v. Williams*,
  553 U.S. 285 (2008) ................................................................................ 22

*Viet. Ass'n for Victims of Agent Orange v. Dow Chem. Co.*,
  517 F.3d 104 (2d Cir. 2008) ...................................................................... 26

*Weiss v. Nat'l Westminster Bank Pub. Ltd. Co.*,
  381 F. Supp. 3d 223 (E.D.N.Y. 2019) ........................................................... 18

**Statutes**

18 U.S.C. § 2331 .................................................................................................. 16

18 U.S.C. § 2333 .............................................................................................. 14, 15

18 U.S.C. § 2339B ...................................................................................... 15,22,24

N.Y. C.P.L.R. 308 .............................................................................................. 11

**Other Authorities**

Application of the Convention on the Prevention and Punishment of the Crime of Genocide (*South Africa v. Israel*), Order, Provisional Measures, 2024 I.C.J. _ ¶ 46 (Jan. 26, 2024) ...... 4

Application Instituting Proceeding, *South Africa v. Israel*, ICJ (filed Dec. 29, 2023) ............. 4

Congressional Research Service, "Israel and Hamas October 2023 Conflict: Frequently Asked Questions (FAQs)," R47754 (Oct. 20, 2023) ........................................................... 3

Congressional Research Service, "Israel and Hamas Conflict in Brief," R47828 (updated Oct. 4, 2024) ................................................................................................... 3

"Gaza Death Toll Has Been Significantly Underreported, Study Finds," CNN (Jan. 9, 2025) 4

Jamaluddine *et al*., "Traumatic Injury Mortality in the Gaza Strip from Oct 7, 2023, to June 30, 2024: A Capture-Recapture Analysis," THE LANCET, Vol. 405, Issue 10477, 469-477 (Feb. 8, 2025) ........................................................................................................ 4

Defendant Maryam Alwan hereby moves, pursuant to Federal Rules of Procedure 12(b)(1), 12(b)(5), and 12(b)(6) to dismiss all claims in the Second Amended Complaint ("SAC") against her, in her individual capacity and in her capacity as a purported representative of Columbia Students for Justice in Palestine ("Columbia SJP").

## PRELIMINARY STATEMENT

The instant Complaint is styled as an action under the Anti-Terrorism Act ("ATA") and Alien Tort Statute ("ATS") seeking to hold student protestors accountable for aiding and abetting Hamas's attacks in Gaza and Israel. In substance, however, it is a compilation of media talking points with a case caption.

To state an aiding-and-abetting claim, a plaintiff must allege that the defendant knowingly provided substantial assistance with the specific intent of facilitating the "act of international terrorism" that caused the plaintiff's injuries. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023). The SAC comes nowhere close. It claims that college protesters[1] at Columbia University provided "practical assistance" to Hamas's terrorist attacks in Israel and Gaza on October 7 and thereafter— not by providing money, personnel, or weapons, but by signing petitions and participating in campus demonstrations. Plaintiffs, however, do not even pretend to explain how the student Defendants' protest activities in New York City (virtually all of which *post*-date October 7) aided Hamas's terrorist activities, nearly 6,000 miles away, in Israel and Gaza. Nor do Plaintiffs allege that the student Defendants participated in protest activities with the intent of facilitating Hamas's terrorism, as is required under both the ATA and ATS. Instead, Plaintiffs concede that the students'

---

[1] The student groups—Columbia SJP, Columbia JVP, Columbia University Apartheid Divest, and Within Our Lifetime—are collectively referred to as "Associational Defendants." The Associational Defendants and their alleged representatives are collectively referred to as "Defendants." "Student Defendants" refers to all Defendants, minus Tarek Bazrouk.

purpose was to "sway public opinion" about the Israeli-Palestinian conflict—that is, that they were engaged in quintessential, First Amendment-protected activity.

Rather than plead the elements of an aiding-and-abetting claim, Plaintiffs fill their 90-page complaint with sensationalist and incendiary charges bereft of factual support. The opening paragraph accuses Defendants of openly "advertis[ing] themselves" as "Hamas' propaganda arm." But the SAC fails to identify any such "advertisement." Plaintiffs accuse the student groups of acting "in coordination with Hamas" and providing the "services" of a "retain[ed] . . . public relations firm." SAC ¶¶ 2, 5, 230. But they fail to plead a single *fact* supporting this outlandish assertion: they do not allege that Alwan or anyone within Columbia SJP had any contact whatsoever with Hamas, that they received any sort of compensation in exchange for this supposed retention, or that they responded to Hamas's directives as opposed to autonomously protesting Israeli actions that they—and much of the world community—regarded as illegal and unjust. They characterize the student groups' protest activities as "answer[ing] Hamas' call to action" and assert that the students had advanced warning of the October 7 attacks. But they offer no factual support for this inflammatory rhetoric, nor do they tie these clickbait allegations to a legal claim.

In a desperate bid to salvage this frivolous action, Plaintiffs' third iteration of the Complaint adds a new defendant, Tarek Bazrouk, who recently pled guilty to antisemitic hate crimes in the Southern District of New York. But the SAC fails to plead *a single fact* tying Bazrouk to Alwan or Columbia SJP. Bazrouk is neither a Columbia student nor a member of Columbia SJP. Neither Alwan nor any Columbia SJP member is alleged to have met, communicated with, provided support to, or expressed support for Bazrouk. Indeed, the SAC fails to plead a single fact suggesting that these Defendants were even aware of Bazrouk's existence. The addition of

Bazrouk is a transparent attempt to imply guilt by association—but the SAC doesn't even bother to plead an association.

This lawsuit is a cynical misuse of the ATA and ATS to muzzle political speech that Plaintiffs and the organizations representing them find objectionable. Indeed, the Complaint practically confesses this purpose with the remarkable assertion that speech acts designed to tarnish Israel's international standing are, themselves, "crimes against humanity . . . in violation of international law." SAC ¶ 237. There is no question that many consider the student Defendants' views and tactics offensive or misguided. But the Constitution protects speech about matters of public concern, no matter how distasteful some listeners might find the message; and calling protected political advocacy "terrorism" or a "crime against humanity" does not make it so.

Complaints must state legal claims. This one does not. It should be dismissed in its entirety.

## FACTUAL BACKGROUND

### A. October 7 and the Israel-Gaza War

On October 7, 2023, Hamas launched an attack on Israeli soil, killing approximately 1,200 people and taking over 200 hostages. SAC ¶ 7. In response, the Israeli Government "almost completely halted the supply of electricity, food, water, and fuel to Gaza, which before the conflict had already faced crisis-level economic and humanitarian conditions."[2] Accompanying these measures, senior Israeli officials openly issued statements widely interpreted as endorsing collective punishment and indiscriminate attacks against Palestinian civilians. For example, the deputy speaker of the Knesset Tweeted on October 7: "[n]ow we all have one common goal—

---

[2] *See* Congressional Research Service ("CRS"), "Israel and Hamas October 2023 Conflict: Frequently Asked Questions (FAQs)," R47754, at "Summary" (Oct. 20, 2023), attached to the Declaration of Joseph Pace as Exhibit 1.

erasing the Gaza Strip from the face of the earth. Those who are unable will be replaced."[3] An IDF

Major General told reporters that the IDF would "create a severe humanitarian crisis in Gaza."[4]

On October 9, 2023, Defense Minister Yoav Gallant announced that Israel was "imposing a

complete siege on Gaza. No electricity, no food, no water, no fuel. Everything is closed. We are

fighting human animals and we are acting accordingly." He then told IDF troops on the Gaza

border: "We will eliminate everything."[5]

On January 26, 2024, the International Court of Justice found it "plausible" that Israel was

violating the Genocide Convention. Application of the Convention on the Prevention and

Punishment of the Crime of Genocide *(South Africa v. Israel),* Order, Provisional Measures, 2024

I.C.J. ___ ¶ 46 (Jan. 26).  Four days later, a federal district court likewise found it "plausible that

Israel's conduct amounts to genocide." *See Def. for Children Int'l-Palestine v. Biden*, 714 F. Supp.

3d 1160, 1162-63, 1167 (N.D. Cal. 2024). By October 2024, 90% of Gaza's population had been

displaced,[6] the UN began warning of imminent, widespread famine,[7] and—according to some

estimates—more than 70,000 Gazans had been killed due to traumatic injury.[8]

---

[3] These statements are recounted, with citations to the public record, in Application Instituting Proceedings at 62, *South Africa v. Israel*, ICJ (filed Dec. 29, 2023), attached as Exhibit 3.

[4] *Id.* at 63

[5] *Id.* at 60-61.

[6] *See* CRS, "Israel and Hamas Conflict in Brief," R47828, at "Summary" (updated Oct. 4, 2024), attached as Exhibit 2.

[7] World Food Program, "New Gaza Food Security Assessment Sees Famine Risk Persisting Amid Ongoing Fighting and Restricted Aid Operations" (Oct. 17, 2024), attached as Exhibit 4.

[8] Jamaluddine *et al.*, "Traumatic Injury Mortality in the Gaza Strip from Oct 7, 2023, to June 30, 2024: A Capture-Recapture Analysis," THE LANCET, Vol. 405, Issue 10477, 469-477 (Feb. 8, 2025), attached as Exhibit 5; "Gaza Death Toll Has Been Significantly Underreported, Study Finds," CNN (Jan. 9, 2025), attached as Exhibit 6.

The humanitarian crisis in Gaza and the U.S. Government's support for Israel triggered protests around the world, including on college campuses throughout the United States. SAC nn.103, 108, 111.

### B.  The SAC's Allegations

Plaintiffs consist of individuals injured during the October 7 attacks, and the sister of an IDF soldier and two soldiers injured in Gaza during their post-October 7 deployments. SAC ¶¶ 13-21. Plaintiffs bring claims under the ATA and ATS, alleging that Columbia SJP and Alwan—along with several other student protest groups and their respective leaders—aided and abetted Hamas in carrying out the attacks that caused their injuries.

The SAC's aiding-and-abetting theory, however, lacks basic coherence. Plaintiffs allege that Defendants provided "practical assistance" to Hamas's international terrorist operations "before, during, and after October 7" by fostering a "mass culture of fear, threats, violence, and overt hatred on Columbia's campus" and by engaging in advocacy designed to "demonize Israel." SAC ¶¶ 257, 259. But apart from a single Instagram post announcing Columbia SJP's first meeting of the semester and Alwan's mere presence at two unremarkable protests, *id.* ¶¶ 67, 76, 105, the SAC fails to allege *any* pre-October 7 conduct by Columbia SJP or Alwan, let alone conduct that would qualify as aid to Hamas.

Plaintiffs' remaining allegations fare no better. They never explain how the student groups' post-October 7 protest activities in New York City assisted Hamas's military operations nearly 6,000 miles away in Gaza. The vast preponderance of allegations against the Associational Defendants—and the totality of the allegations against Columbia SJP and Alwan—describe lawful, First Amendment-protected, political activism. *See id.* ¶¶ 102-04, 112 (Columbia SJP signed petition supporting Palestinian "resistance"); *id.* ¶ 110, 117, 119, 128 (participated in rallies); *id.* ¶ 69 ("spearheaded . . . campaigns" calling for the boycott, sanctioning, and divestment

5

from Israel).[9] While the SAC alleges that some unidentified activists violated local laws, *see id.* ¶ 152 (trespass); *id.* ¶ 177 (vandalism); *id.* ¶ 186 (assault on janitor), and hate crimes by Bazrouk, *id.* ¶¶ 212-17, it does not plausibly allege that Columbia SJP authorized, planned, or participated in these actions, or that Alwan or Columbia SJP members interacted with or had any knowledge of Bazrouk's activities.[10] More fundamentally, the SAC fails to trace Plaintiffs' injuries in Israel and Gaza to any of these actions.

The SAC likewise fails to allege that Columbia SJP, Alwan, or any other Defendant engaged in these activities in order to assist the attacks that injured Plaintiffs, as required under the ATA and ATS. Plaintiffs allege, in conclusory fashion and via group pleading, that "Defendants provided this practical assistance with the purpose of facilitating Hamas' crimes

---

[9] The Complaint's sole allegations against Alwan are that she was the president or de facto president of Columbia SJP, represented the group during discussions with the administration, attended demonstrations, and was arrested during the clearing of the Encampment. SAC ¶¶ 23-30, 67, 76, 145.

[10] Many of the SAC's allegations of illegality and harassment are conclusory, belied by the documents cited in the SAC, or rely on impermissible group pleading. *See, e.g.,* SAC ¶¶ 8-21, 77, 93, 103, 105, 115, 129-31, 135, 139, 142, 147, 152, 154, 168, 207, 222, 226-27 (group pleading); *Farmer v. Cnty. of Westchester*, 2021 WL 4199944, at *7 (S.D.N.Y. Sept. 15, 2021) (dismissing complaint under Rule 8(a)(2) where "the vast majority of allegations" relating to the defendant were "jointly alleged against most of the other [d]efendants without providing any factual basis to distinguish their conduct"). For example, Plaintiffs allege that "Associational Defendants" "assault[ed] Jewish students," SAC ¶ 1, 11, but the Complaint furnishes no details about any such assaults nor does it attribute responsibility to anyone within Columbia SJP. The SAC recounts hateful and threatening antisemitic statements at protests, but fails to allege that they were uttered or endorsed by a Columbia SJP member. *See id.* ¶¶ 120 (alleging unidentified person shouted "Death to Jews"); *id.* ¶ 148 (alleging unidentified person called Jewish students "Al-Qassam's Next Target"). In fact, the SAC fails to plead that the individuals who made these remarks were even Columbia students. *See id.* nn.142 & 151, attached as Exhibits 10 & 11 (noting that many of the protestors on Columbia's campus were unaffiliated with the university). The SAC also claims that 109 protestors were arrested for "crimes committed at the encampment ranging from second degree assault, criminal possession of a weapon, burglary, and reckless endangerment." *Id.* ¶ 153. But, again, the SAC fails to plead that these individuals were associated with Columbia SJP; and the article cited in support of this allegation merely states that 45 people were arrested for "third degree criminal trespass," a class B misdemeanor, and that no weapons were found. *Id.* n.158, attached as Exhibit 12.

against humanity," *id.* ¶ 258, but the Complaint itself pleads that Alwan and Columbia SJP acted with a different set of constitutionally protected purposes in mind—namely, to "sway public opinion against Israel," promote divestment, undermine "Israel's public image," and "disrupt Israel's [foreign] relationships." *Id.* ¶¶ 3-4, 69.

Unable to establish any nexus between the student protest activities and the attacks that injured them, Plaintiffs spend 90 pages tarring the Associational Defendants as "Hamas's American propaganda firm." *Id.* ¶ 6. To that end, the Complaint asserts (using impermissible group pleading), that the Associational Defendants acted "in coordination with" and "followed orders from" Hamas. *Id.* ¶¶ 10, 93. But Plaintiffs offer zero factual support for these incendiary claims. They do not allege that any student Defendant communicated with or received remuneration from Hamas; nor do they allege a single fact supporting the inference that the student protesters were following foreign directives as opposed to making autonomous decisions to protest Israeli behavior they genuinely opposed.

Plaintiffs' coordination theory consists of a patchwork of vague and conclusory claims, rank speculation, and innuendo—much of which is belied by the documents on which the SAC relies. For example, the SAC insinuates that Hamas directed Columbia SJP's actions through intermediary organizations such as American Muslims for Palestine ("AMP") and National Students for Justice in Palestine ("NSJP"). According to Plaintiffs' convoluted narrative, AMP was founded in 2006 by individuals with ties to the "Palestine Committee," a coalition that included two organizations that were found liable for providing material support for Hamas. AMP, in turn, created NSJP to act as its "college campus brand"; and NSJP controls individual SJP chapters. *Id.* ¶¶ 47-64. This "interlocking chain of inferences built on inferences" breaks down at every link. *Khapesi v. City of New York*, 2014 WL 2605342, at *8 (S.D.N.Y. June 10, 2014). The

SAC does not allege that AMP coordinated its protest activity with Hamas, or that any Defendant knew of these amorphous ties between AMP and Hamas—indeed, Plaintiffs plead that AMP was formed to "hide" the relationship with Hamas. *Id.* ¶ 54. And the documents cited in the SAC contradict the control theory. *See id.* n.62 at 12-13, attached as Exhibit 8 (noting that SJP chapters are "autonomous" from NSJP); *id.* n.64, attached as Exhibit 9 (explaining that the SJP network has "no formal structure"; there is "nothing [national SJP] can do to stop a chapter that does not abide by [the national organization's] principles from using the SJP name"; there are "few guardrails around who participates in the network and what political positions [chapter members] advocate"; and that SJP chapters have taken a wide "range of positions in the aftermath of Oct. 7").

Plaintiffs also allege that Columbia SJP was doing Hamas's bidding by "enact[ing]" the so-called "NSJP Toolkit"—a messaging pamphlet circulated by non-party NSJP. *Id.* ¶¶ 94-106. But the SAC does not allege that Hamas created this pamphlet, that Columbia SJP knew of any Hamas involvement therewith, or that Columbia SJP followed the pamphlet rather than making independent decisions about what activism to engage in.[11]

The Complaint reaches peak absurdity with its claim "on information and belief" that the Associational Defendants had "prior knowledge of the October 7 attack." *Id.* ¶ 105. The notion that Hamas shared operational plans about an attack that blindsided Israeli and Western intelligence officials with hundreds, if not thousands, of American college students, is the sort of "fanciful, fantastic, [and] delusional" claim that courts must disregard on a motion to dismiss. *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (cleaned up). The "bases" for this belief only

---

[11] The SAC claims that Columbia SJP signed the "Towfan Al-Aqsa Statement" "[a]s directed by the NSJP Toolkit"; but Columbia SJP is alleged to have signed the statement the day *before* the Toolkit was even disseminated. *Compare* SAC ¶ 104 (Columbia SJP signed on October 7) *with* SAC ¶ 9 (Toolkit was distributed on October 8).

underscore the claim's frivolousness. Thus, Plaintiffs contend that the Toolkit's creators must have had advanced warning because the Toolkit depicted a paraglider, which Hamas had never used prior to October 7. SAC ¶ 105. But no Defendant is alleged to have played a role in the Toolkit's creation; and the Toolkit was distributed one to two days *after* the attack.[12] Second, Plaintiffs cite the fact that 83 organizations—82 of whom are non-parties in this action—had signed on to a statement about the attacks by 3pm PST, October 7, 2023. *Id.* But no Defendant is alleged to have played a role in drafting that statement which, in any event, was apparently circulated some 18 hours after the attacks had begun. Finally, the SAC seizes on the fact that Columbia SJP announced its first meeting of the semester, on Instagram, "a short time before the October 7 attack began." *Id.* Rather than explain how a mundane scheduling post evidences an international terrorist conspiracy, Plaintiffs cryptically label it "highly suggestive" and move on. *Id.*

Plaintiffs also attempt to infer coordination from the fact that Columbia SJP participated in protests that occurred shortly after Hamas's public calls for global action. *Id.* ¶¶ 116-19, 128. But the SAC fails to allege that the student protesters were even aware of these calls, much less that Defendants participated in protests *because* of them.

Unable to plead the most basic elements of an aiding-and-abetting claim, Plaintiffs tack on a new Defendant in the SAC: Bazrouk, who pled guilty to hate crimes in the Southern District of New York, traveled to the West Bank, and apparently bragged about having family members in Hamas. SAC ¶ 36. The SAC alleges that Bazrouk had "$750,000 . . . related to the efforts . . . of the remaining Defendants to support Hamas and enable its crimes," and that, "[o]n information

---

[12] The Complaint alleges that the Toolkit was distributed on October 8, 2023. Because the United States is 7 to 10 time zones later than Israel, the attacks were already underway by late evening on October 6 in the United States. *See* Compl. n.78 (ECF 1) (noting that the attacks started at 6:30am Israeli time on October 7).

and belief, Bazrouk acted as an intermediary through which the remaining Defendants indirectly communicated with Hamas." SAC ¶¶ 222, 226. Every aspect of these allegations is defective. They are couched in impermissible group pleading. They are wholly conclusory: the SAC doesn't elaborate on the meaning of the otherwise unintelligible phrase "$750,000 . . . related to the efforts . . . of the remaining Defendants to support Hamas and enable its crimes," nor does it detail those "efforts" or explain how they aided the specific terrorist attacks that injured the Plaintiffs. And they suffer from an even more glaring flaw: the SAC doesn't plead a single fact linking Bazrouk to Alwan or Columbia SJP. Neither Alwan nor any Columbia SJP member is alleged to have known of Bazrouk's existence, much less met him, communicated with him, or supported his activities. Like so much of the Complaint, the references to Bazrouk are lurid distractions that have no bearing on Plaintiffs' ATA and ATS claims.

## STANDARDS OF REVIEW

### A. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[13] A plaintiff is required to support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*.

On a Rule 12(b)(6) motion to dismiss, "conclusory allegations of law, unsupported factual assertions, and unwarranted inferences" are not accepted as true. *Crawford v. Recovery Partners*, 2014 U.S. Dist. LEXIS 59310, at *7 (S.D.N.Y. Apr. 28, 2014). Nor will the court "suspend

---

[13] Unless otherwise stated, all quotation marks and internal citations are removed.

common sense when analyzing the complaint." *AJ Energy LLC v. Woori Bank*, 829 F. App'x 533, 534 (2d Cir. 2020). A court may dismiss claims that are "implausible in light of factual allegations in the pleading itself," *Krys v. Pigott*, 749 F.3d 117, 133 (2d Cir. 2014), and may "dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are clearly baseless—that is, if they are fanciful, fantastic, or delusional." *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011). The Court may rely upon "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint, and consider matters of which judicial notice may be taken." *Potter v. Inc. Vill. of Ocean Beach*, 2025 U.S. App. LEXIS 8435, at *2 (2d Cir. Apr. 10, 2025). Where "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Tang Capital Partners, LP v. BRC Inc.*, 661 F. Supp. 3d 48, 58 (S.D.N.Y. 2023).

## B. Rule 12(b)(5)

Rule 12(b)(5) provides for dismissal of an action for improper service of the complaint. Where, as here, a defendant seeks dismissal under Rule 12(b)(5), the plaintiff bears the burden to demonstrate adequate service. *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010). When deciding a Rule 12(b)(5) motion, a court "must look to matters outside the Complaint to determine whether or not it has jurisdiction." *Diaz v. Amber Transp.*, LLC, 2016 U.S. Dist. LEXIS 45464, at *5 (S.D.N.Y. Apr. 4, 2016). Without proper service, the court lacks personal jurisdiction over the defendant and the defendant may not be a party to the action." *Assets Recovery 23, LLC v. Gasper*, 2018 U.S. Dist. LEXIS 192374, at *15 (E.D.N.Y. Nov. 9, 2018). "Actual notice" is insufficient to cure an improper service. *National Development Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991).

## ARGUMENT

**I.    THE COMPLAINT MUST BE DISMISSED AGAINST ALWAN IN HER INDIVIDUAL AND REPRESENTATIVE CAPACITY DUE TO PLAINTIFF'S FAILURE TO EFFECT PROPER SERVICE**

### A.  Plaintiffs Failed to Properly Serve Alwan

In deciding a Rule 12(b)(5) motion, a court must "look to Rule 4, which governs the content, issuance, and service of a summons." *DeLuca v. Access IT Group, Inc*., 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). Under Rule 4(e), service may be effected by (1) leaving a copy at "the individual's dwelling," or (2) following state law procedures. Fed. R. Civ. P. 4(e)(2)(B) & 4(e)(1). New York service rules likewise require delivery of the complaint to the defendant's "dwelling place or usual place of abode." CPLR 308(2). Plaintiffs failed to do so here.

On March 26, 2025, a process server left the summons and complaint at Alwan's father's residence in Charlottesville, Virginia, incorrectly identifying it as "defendant's last known residence." *See* ECF No. 13. As Alwan's father informed the process server when rejecting service, Alwan has never resided at that address. Declaration of Majd Alwan ("Majd Decl.") ¶¶ 2-4; Declaration of Maryam Alwan ("Alwan Decl.") ¶¶ 3-4. As such, service is defective. *See, e.g., Allianz Ins. Co. v. Otero*, 2003 U.S. Dist. LEXIS 1284, at *6 (S.D.N.Y. Jan. 29, 2003) (service defective where the summons and complaint were left at "last known residence," rather than their "actual dwelling place or usual place of abode"); *Mourtil v. Chi Ming Peng*, 295 A.D.2d 582, 583 (2d Dep't 2002); *New York State Higher Educ. Servs. Corp. v. Perchik*, 207 A.D.2d 1040 (4th Dep't 1994) (service on defendant's father at address in which defendant deemed insufficient). Accordingly, the Complaint must be dismissed as to Alwan in her individual and representative capacity.

**B.  The Complaint Was Not Properly Served on Columbia SJP Via Alwan**

The representative capacity claims against Alwan must be dismissed for an additional reason: Alwan was not authorized to receive service on behalf of Columbia SJP.

Columbia SJP is an unincorporated association. SAC ¶ 39. Rule 4(h) provides that service on an unincorporated association may be completed (i) "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process," or (ii) by serving in accordance with state law. *See* Fed. R. Civ. P. 4(h)(1)(A)-(B) & 4(e)(1). *Malcolm v. Honeoye Falls-Lima Educ. Ass'n*, 684 F. App'x 87, 89 (2d Cir. 2017). New York law, in turn, requires that a plaintiff suing an unincorporated association serve process on the association's "president or treasurer . . . or their functional equivalents within the association."  *Makhnevich v. Bd. of Managers of 2900 Ocean Condo.*, 72 Misc. 3d 1208(A) (Sup. Ct. 2021); *Prescription Containers, Inc. v. Cabiles*, 2014 U.S. Dist. LEXIS 40250, at *24 (E.D.N.Y. Feb. 14, 2014). In either case, the person served must have occupied the relevant position within the association "at the time [she] was served." *MacGregor v. Milost Glob., Inc.*, 2018 U.S. Dist. LEXIS 142876, at *10 (S.D.N.Y. Aug. 22, 2018).

Alwan has never been a person authorized to accept service on Columbia SJP's behalf. The Complaint alleges that Alwan is the "president or de facto president of Columbia SJP," based on news reports describing her as a "leader" of or "prominent member" in Columbia SJP and cherry-picks portions of an affidavit that Alwan filed in another lawsuit. SAC ¶¶ 24-30. But informal, undefined leadership roles do not satisfy Rule 4(h)'s requirements, and the very affidavit Plaintiffs cite contradicts their characterization of her role. Alwan expressly stated that Columbia SJP "has a horizontal leadership structure where there are no officers, designated roles, or membership caps." NYCLU Alwan Aff. ¶ 7, attached as Exhibit 6; *Tang Capital Partners*, 661 F. Supp. 3d at

58 (where "document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control").

Plaintiffs' remaining allegations fare no better. They note that she "admitted to" participating in events and speaking with administrators and press on Columbia SJP's behalf. SAC ¶ 25. But the affidavit makes clear that she did this in her capacity as "a member of [Columbia] SJP," not as an officer. NYCLU Alwan Aff. ¶ 9. They cite her meetings with Columbia administrators, but other Columbia SJP members attended at least one such meeting,[14] and nothing in the affidavit suggests she had final decision-making authority. SAC ¶ 46. They point to her access to Columbia SJP's email and Instagram accounts, but the affidavit indicates multiple "members" had such access. NYCLU Alwan Aff. ¶ 30. Finally, Plaintiffs assert that Alwan "acted like a leader" when she "asked" Columbia SJP members to "take off their keffiyehs."[15] But Rule 4(h) does not allow service to be effected on anyone who "acts like a leader." *See also* Alwan Decl. ¶¶ 5-6 (attesting that she never had decision-making authority over Columbia SJP's operations or public statements).

Finally, even if Alwan had held an officer position during the 2023-2024 academic year (which she did not), she had completely disassociated from Columbia SJP by October 2024—months before service was attempted. Alwan Decl. ¶¶ 8-9; *MacGregor*, 2018 U.S. Dist. LEXIS 142876, at *10 (S.D.N.Y. Aug. 22, 2018) (granting Rule 12(b)(5) motion where the individual served was not an officer at the time of service). Accordingly, the representative claims against Alwan must be dismissed.

---

[14] The affidavit does not specify whether others were present at the remaining three meetings.

[15] According to her affidavit, Alwan made this suggestion as Columbia SJP members were leaving a library because a Columbia professor outside the building was yelling that the group should be "eradicated from campus" and she "feared for [the members'] safety." Alwan Aff. ¶ 14.

## II.    THE COMPLAINT FAILS TO STATE AN ATA AIDING-AND-ABETTING CLAIM

Section 2333(d) of the ATA imposes civil liability on a defendant "who aids and abets, by knowingly providing substantial assistance" to "an act of international terrorism" that is committed by a designated foreign terrorist organization ("FTO"). 18 U.S.C. § 2333(d)(2). When Congress enacted Section 2333(d), it pointed to *Halberstam v. Welch*, 705 F. 2d 472 (D.C. Cir. 1983), as "providing the proper legal framework for civil aiding and abetting and conspiracy liability." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 485 (2023).

To state an ATA aiding-and-abetting claim under the *Halberstam* framework, a plaintiff must allege that: (1) "the party whom the defendant aids [performed] a wrongful act"—*i.e.,* an "act of international terrorism"—"that cause[d] an injury"; (2) the defendant was "generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance," and (3) the defendant "knowingly and substantially assist[ed] the principal violation." 705 F.2d at 477.

Recognizing the "need to cabin aiding-and-abetting liability to cases of truly culpable conduct," the Supreme Court recently explained that ATA liability will only attach where the defendant's conduct amounts to "conscious, voluntary, and culpable participation in" "the act of international terrorism that injured the plaintiffs." *Twitter*, 598 U.S. at 489, 493, 497. Culpable participation in this context requires an "affirmative act" undertaken "with the intent of facilitating the offense's commission." *Id.* at 490. Aiding-and-abetting liability will not attach to "omissions, inactions, or nonfeasance." *Id*. at 489.

Unlike the criminal material support statute, 18 U.S.C. § 2339B, which prohibits any knowing provision of material support to an FTO, regardless of purpose, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 17 (2010), an ATA aiding-and-abetting claim will only lie where there

is a "nexus" between the aid and the specific attack that injured the plaintiff, and where the defendant "participate[d]" in the relevant attack "as something that they wishe[d] to bring about" or "sought by their action to make it succeed." *Id*. at 490, 498, 503; *id.* at 495 (It is "not enough . . . that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it."); *Ofisi v. BNP Paribas, S.A*., 77 F.4th 667, 675 (D.C. Cir. 2023) ("Aiding and abetting requires more than the provision of material support to a terrorist organization."); *accord Linde v. Arab Bank*, PLC, 882 F.3d 314, 329 (2d Cir. 2018); *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 224 (2d Cir. 2019).

Plaintiffs' attempt to plead an aiding-and-abetting claim fails at every turn.

### A.  The Complaint Fails to State an ATA Claim Against Columbia SJP

i.   The Acts of International Terrorism (First *Halberstam* Factor)

To state an ATA claim, the plaintiff must first identify (i) an "act of international terrorism," (ii) that was "committed, planned, or authorized" by an FTO, and that (iii) caused the plaintiffs' injuries. 18 U.S.C. 2333(a) & (d)(2). The Complaint only identifies two cognizable acts of international terrorism: the October 7 attacks and Hamas's military operations in Gaza thereafter. The vast majority of Plaintiffs' allegations, however, concern domestic student activities and their domestic consequences—*e.g.*, campus disruptions, property damage, and intimidation. None of those injuries give rise to an actionable claim under the ATA, for two reasons.[16]

---

[16] Moreover, six of the nine Plaintiffs couldn't claim injury from these protests under any law because they are not alleged to have stepped foot on Columbia's campus; and the three Plaintiffs who attend Columbia only purport to bring claims based on injuries flowing from "Hamas' acts of international terrorism." SAC ¶¶ 14-16.

*First*, campus protests are not "acts of international terrorism." To qualify as "international terrorism," the act must be "violent" or "dangerous to human life" and "occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries." 18 U.S.C. § 2331(1)(C). Protests and property damage fail the first requirement because they are neither violent nor life-threatening. The alleged assault by an unknown protestor against a janitor and the hate crimes by Bazrouk (which are not attributed to any Columbia SJP member) fail the second because they occurred entirely within the United States. Courts have consistently rejected attempts to transform domestic incidents into international terrorism. *See, e.g.*, *Colon v. Twitter, Inc.*, 14 F.4th 1213, 1218-22 (11th Cir. 2021) (nightclub shooting by individual who consumed ISIS content advocating lone actor attacks and pledged allegiance to ISIS did not "transcend national boundaries"); *accord Retana v. Twitter, Inc.*, 1 F.4th 378, 381 (5th Cir. 2021).

*Second*, the SAC fails to allege that an FTO "committed, planned, or authorized" any of the student protestors' activities. The SAC's incendiary claim that the "Associational Defendants . . . followed orders from[] Hamas," SAC ¶ 93, rests on group pleading and is devoid of any factual support. The SAC insinuates that Hamas directed the Associational Defendants' protest activities through AMP and NSJP, but the SAC fails to allege that AMP/NSJP coordinated with Hamas, thereby breaking the first link in the associational chain. Plaintiffs assert in a conclusory fashion that AMP/NSJP directed Columbia NSJP's actions, but the documents cited in support of that allegation demonstrate the precise opposite. *See* SAC nn.62, 64, attached as Exhibits 8 & 9 (describing SJP chapters' full autonomy from NSJP); *see also Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs,* 888 F. Supp. 2d 491, 506 (S.D.N.Y. 2012) (refusing to credit conclusory allegations of control).

17

Plaintiffs also rely on Hamas leaders' generic praise of the "protests at Columbia and across the United States" and the fact that some protests coincided with Hamas leaders' call for action. SAC ¶ 110. By Plaintiffs' logic, virtually every person who participated in pro-Palestinian protests did so in coordination with or at Hamas's behest. Courts, however, have refused to find FTO commission, planning, or authorization on far stronger facts. *See, e.g., Gonzalez v. Google LLC*, 2 F.4th 871, 911 (9th Cir. 2021), *vacated and remanded on other grounds* 2023 U.S. LEXIS 2059 (May 18, 2023) (complaint failed to allege that ISIS "committed, planned, or authorized" shooting in US, even though ISIS claimed responsibility for the attack, shooter pledged allegiance to ISIS, and shooter had confirmed face-to-face meetings with individuals with "links to terrorism"); *accord Crosby v. Twitter, Inc*., 921 F.3d 617, 626 (6th Cir. 2019); *Colon*, 14 F.4th at 1220.

What's more, Plaintiffs never plead that the student protesters were even aware of calls by FTO leaders, much less that those calls motivated their protest activity. Instead, Plaintiffs rely on specious *post hoc ergo propter hoc* reasoning—*i.e.*, the assumption that the FTO calls must have prompted the protests because the former preceded the latter. *See Ong v. Chipotle Mexican Grill, Inc.*, 2017 U.S. Dist. LEXIS 33170, at *35 (S.D.N.Y. Mar. 8, 2017) ("*post hoc, ergo propter hoc* pleading has been repeatedly rejected by the courts"); *In re DNTW Chtd. Accountants Sec. Litig.*, 96 F. Supp. 3d 155, 166 (S.D.N.Y. 2015); *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) ("Sheriff Arpaio's argument nonetheless suffers from the logical fallacy *post hoc ergo propter hoc* (after this, therefore because of this). Just as we do not infer that the rooster's crow triggers the sunrise, we cannot infer based on chronology alone that DACA triggered the migrations that occurred two years later.").

In short, Plaintiffs cannot state a claim based on the domestic injuries traceable to the student protestors' activities. Instead, they must show the Defendants aided and abetted the

October 7 attacks and/or Hamas's military operations in Gaza thereafter. They have failed to do so.

      ii.    <u>General Awareness (Second *Halberstam* Factor)</u>

To satisfy *Halberstam*'s general awareness requirement, it is not enough that the defendants understood they were generally supporting a terrorist organization; rather, the defendants must be cognizant of "assuming a role in terrorist activities" through their assistance. *Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 231, 239 (E.D.N.Y. 2019), *aff'd* 993 F.3d 144 (2d Cir. 2021); *Siegel*, 933 F.3d at 224. Moreover, the "inquiry is not whether a defendant should have been aware of its role"—rather, the plaintiff must establish "actual awareness." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 867 n.11 (D.C. Cir. 2022) (rejecting "extreme recklessness" standard for general awareness).

As detailed further below, the Complaint fails to allege that any Defendant provided any assistance whatsoever to Hamas, much less that the student protesters understood their domestic activism to be playing a role in Hamas's terrorist activities.

      iii.    <u>Knowing and Substantial Assistance (Third *Halberstam* Factor)</u>

The Complaint is devoid of any non-conclusory allegations that Columbia SJP (or any other Defendant) provided any aid whatsoever to Hamas, let alone that it "consciously, voluntarily, and culpably" provided aid with the intent of facilitating Hamas's attacks on October 7 and thereafter. *Twitter*, 598 U.S. at 489-90, 505.

Plaintiffs' assertion that Columbia SJP aided and abetted October 7 is empty rhetoric. Apart from an Instagram post announcing Columbia SJP's first meeting of the semester and Alwan's

peaceful attendance at two demonstrations,[17] the totality of the SAC's allegations about Columbia SJP *post-date* October 7. *See Gerwaski v. Nev. ex rel. Bd. of Regents of the NV Sys. of Higher Educ.*, 2025 U.S. Dist. LEXIS 84645, at *15 (D. Nev. May 5, 2025) (dismissing claim that AMP and SJP aided and abetted October 7 because "the defendants' conduct alleged in the [complaint] took place after this event.").

The SAC's allegations that Columbia SJP facilitated Hamas's terrorist operations after October 7 are equally deficient. Plaintiffs allege that Defendants provided "practical assistance" to Hamas by "instigat[ing] a mass culture of fear, threats, violence, and overt hatred on Columbia's campus to intimidate Columbia and other institutions, in an attempt to bend them to Hamas' will." SAC ¶¶ 256-58. This claim fails for three, independent reasons.

*First*, Plaintiffs make no effort to explain how the student protest activities (or even Bazrouk's lone-wolf, domestic assaults) in New York City facilitated Hamas's terrorist activities nearly 6,000 miles away *in Gaza*. They do not allege that the students provided tangible resources for use in the attacks or that the protests had any impact whatsoever on Hamas's ability or willingness to use military force. That alone is fatal to the aiding-and-abetting claim. *See Twitter*, 598 U.S. at 494-96 (requiring some "nexus" between the assistance and the attack that injured the plaintiff); *United States v. Delgado*, 972 F.3d 63, 67 (2d Cir. 2020) ("defendant's conduct [must have] actually contributed to the success of the crime that the defendant is charged with aiding and abetting, even if only at the margins . . . . [T]he quantum of assistance . . . cannot be zero."); *cf. Heldman v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992) ("To establish standing, a plaintiff must also demonstrate a causal nexus between the defendant's conduct and the injury.").

---

[17] The Complaint does not allege that Hamas directed, authorized, or had any knowledge of those two demonstrations, that the demonstrations were violent or contained inciting rhetoric, or that the protestors broke any laws. *See* SAC ¶¶ 67, 76.

*Second*, the Complaint pleads no facts supporting its conclusory claim that the student Defendants engaged in protest activity with the specific intent of furthering Hamas's terrorist acts abroad. *See* SAC ¶ 258; *Twitter*, 598 U.S. at 490 (plaintiff must allege that defendant "sought by their action to make [the terrorist attack] succeed"). The record discloses a far more obvious motivation—namely, that students were protesting about the unfolding humanitarian crisis, and what many international observers considered to be a genocide. *See, e.g.*, *Def. for Children Int'l-Palestine*, 714 F. Supp. 3d at 1162-63, 1167 (finding it "plausible that Israel's conduct amounts to genocide"); Exhibits 1-3. *See also Twombly*, 550 U.S. at 567 (claim is nonviable where "obvious alternative explanation" for defendants' conduct exists). Moreover, Plaintiffs repeatedly allege facts that negate the requisite *scienter*. According to the SAC, the goal of the "propaganda network" in which the student Defendants supposedly participated is to "sway public opinion against Israel," promote divestment, and to "destroy Israel's public image to both disrupt Israel's relationships in the West and prevent it from developing new relationships." SAC ¶¶ 3-4, 69. Whatever one thinks of the wisdom of those aims and tactics, they are wholly distinct, as a matter of law, from a desire to facilitate terrorism.

Moreover, even if the Court were to credit Plaintiffs' inflammatory claim that Columbia SJP intended to create a "mass culture of fear" to "bend [Columbia] to Hamas' will" (whatever that means), *id*. ¶ 257, the SAC would still fall short of pleading a claim. The ATA requires more than an intent to benefit an FTO in a general sense or promote its ideological agenda. Instead, Plaintiffs must allege that Defendants specifically intended to aid the international acts of terrorism—in Gaza and Israel—that caused Plaintiffs' injuries. *See Twitter*, 598 U.S. at 495, 503; *Ofisi*, 77 F.4th 675. The Complaint fails to do so.

*Third*, Plaintiffs' claims are independently barred by the First Amendment. Plaintiffs seek to hold student protestors liable for activities which—by the Complaint's own admission—are designed to influence public opinion about the Israeli-Palestinian conflict. SAC ¶¶ 3-4, 45, 69. Such speech on "matters of public concern" lie "at the heart of the First Amendment's protections" and is "entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (citing cases); *see also McIntyre v. Ohio Elections Comm'n*, 514 U. S. 334, 347 (1995) ("[A]dvocacy of a politically controversial viewpoint . . . is the essence of First Amendment expression"). The First Amendment prohibits private plaintiffs from using tort law to penalize such speech. *See Snyder*, 562 U.S. 443 (applying First Amendment to shield speech from IIED and civil conspiracy claims); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) (same, with tortious interference with business claim); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964) (same, with defamation).

The SAC fails to identify any speech that falls outside the First Amendment's ambit. Plaintiffs accuse Associational Defendants of hosting rallies "filled with . . . hateful, violent rhetoric." SAC ¶ 113.[18] It is axiomatic, however, that the First Amendment's protections extend to all speech on matters of public concern, no matter how "upsetting," "misguided," or "hurtful." *Snyder,* 562 U.S. at 458. The Complaint alleges that Associational Defendants circulated statements "glorifying Hamas," praising the "resistance," and calling for a "student intifada." SAC ¶¶ 162-63. But it is equally well-established that the First Amendment protects speech that endorses lawlessness and violence. *See, e.g.*, *NAACP*, 458 U.S. at 928 (First Amendment protects "'abstract teaching of the moral propriety . . . [of] a resort to force and violence'") (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 448 (1969)); *United States v. Williams*, 553 U.S. 285, 298-

---

[18] As explained above, the only non-protected activities identified in the SAC are domestic legal violations (*i.e.*, trespass, vandalism, and assaults) that do not implicate Alwan and Columbia SJP and which have no pled nexus to the international terrorist attacks that injured Plaintiffs.

300 (2008) ("abstract advocacy of illegality" is protected); *see also Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1026 (7th Cir. 2002) (individuals "may, with impunity, become members of Hamas, praise Hamas for its use of terrorism, and vigorously advocate the goals and philosophies of Hamas"); *Humanitarian Law Project*, 561 U.S. at 39 ("independent speech" may not be penalized "even if . . . such speech benefits foreign terrorist organizations").

Plaintiffs attempt to bypass the First Amendment by pleading that the student groups coordinated their activities with Hamas. Even if the SAC had plausibly alleged coordination (which, as explained below, it does not), that would not strip the student Defendants' speech of its First Amendment protections. The Supreme Court has recognized a few "well-defined and narrowly limited" categories of unprotected speech. *See United States v. Stevens*, 559 U.S. 460, 468 (2010) (listing defamation, fraud, incitement, and speech integral to criminal conduct). Coordinated advocacy has never been added to that list. Indeed, in *Holder v. Humanitarian Law Project*, the Supreme Court explicitly rejected the Government's argument that coordinated advocacy falls outside the First Amendment's ambit. Rather, the Court held that the Government could prosecute *some* forms[19] of coordinated advocacy under 18 U.S.C. § 2339B, but only after subjecting the statute to strict scrutiny. 561 U.S. at 26-39. Nothing in that case suggests that a private person, suing under an entirely different provision of law, can seek damages for coordinated advocacy regarding a matter of public concern.

---

[19] *Humanitarian Law Project* rejected a pre-enforcement challenge to 18 U.S.C. § 2339B as applied to all coordinated advocacy; but in doing so, the Court refused to define what level of coordination was required before the First Amendment yielded to the Government's national security interests in bringing a material support prosecution. 561 U.S. at 38; *id.* at 39 ("All this is not to say that any future applications of the material-support statute to speech or advocacy will survive First Amendment scrutiny.")

iv.    <u>Plaintiffs' "Coordination" Theory Is Inadequately Pled and Legally
       Insufficient to State an Aiding-and-Abetting Claim</u>

Plaintiffs' coordination theory suffers from two separate defects. First, the Complaint never offers any factual support for this claim. As explained above, *supra* Section II(B)(i), it does not allege any contact between any student Defendant and Hamas,[20] or that the student Defendants were aware of Hamas's calls to protest. It alleges that Columbia SJP's messaging mirrored Hamas's; but even if that were true, courts will not infer coordination from the fact that two parties promote the same agenda. *See, e.g., Palisades Ests. EOM, LLC v. Cty. of Rockland*, 2025 U.S. Dist. LEXIS 85721, at *151-52 (S.D.N.Y. May 5, 2025) (fact that town and county officials made similar remarks disparaging refugees did not establish that they coordinated their refugee policies). And while the SAC tosses in an undeveloped allegation that the student groups had prior knowledge of October 7, it neither explains how that foreknowledge shows coordination, nor does it offer any facts supporting the fabulist notion that Hamas was widely disseminating plans about a secret military operation with thousands of American college students. *AJ Energy LLC*, 829 F. App'x at 534 (courts must not "suspend common sense when analyzing the complaint"); *Gallop*, 642 F.3d at 368 (even "well-pleaded facts" cannot be credited if they are "fanciful, fantastic, or delusional").

Plaintiffs posit a vast, heretofore-uncharged conspiracy between college activists and an international terrorist organization. The far more plausible explanation is that student protesters were moved by the ongoing humanitarian crisis in Gaza, not following foreign directives. *See*

---

[20] The SAC's allegations regarding Bazrouk do not cure this defect. It claims "on information and belief" and without any factual support that Bazrouk "at least indirectly communicated with Hamas." SAC ¶ 225. Even if these defects were overlooked and that conclusory allegation were treated as true, the SAC fails to allege that any of the student Defendants communicated with Bazrouk.

Exhibits 1-5; *Cenedella v. Metro. Museum of Art*, 348 F. Supp. 3d 346, 358 (S.D.N.Y. 2018) ("[A] plaintiff's complaint can be dismissed where there is an obvious alternative explanation to the facts underlying the alleged conspiracy among the defendants.").

Even if the SAC plausibly alleged coordination, it still wouldn't establish aiding-and-abetting liability. There is no civil cause of action under the ATA for "coordinated advocacy," nor does pleading coordination somehow relieve Plaintiffs of their obligation to plead that elements of aiding and abetting—namely, that the Defendants knowingly provided substantial aid to facilitate the terrorist attacks that injured Plaintiffs. Plaintiffs appear to assume that because coordinated advocacy with an FTO could in some instances result in criminal charges under 18 U.S.C. § 2339B, it necessarily satisfies the elements of aiding-and-abetting under the ATA. *See* SAC ¶ 230 ("It would be illegal for Hamas to directly retain a traditional public relations firm in the United States or hire enforcers to impose their will on American cities. Therefore, those are precisely the services that the Associational Defendants knowingly provide to Hamas."). Courts have uniformly rejected that precise proposition. *Linde*, 882 F.3d at 329 (noting that aiding and abetting has higher *mens rea* requirement than § 2339B); *Ofisi*, 77 F.4th at 675; *Siegel*, 933 F.3d at 224; *Twitter*, 598 U.S. at 503 (aiding and abetting requires more than "assistance to [the FTO's] activities in general").

## B. The Complaint Fails to State an ATA Claim Against Alwan in Her Individual Capacity

The SAC contains zero allegations of wrongdoing by Alwan. Instead, Plaintiffs attempt to manufacture liability based solely on her alleged leadership role in Columbia SJP. This theory fails three times over.

First, as demonstrated above, Columbia SJP is not alleged to have aided and abetted terrorism, and an officer cannot derive liability from an organization that has committed no wrong. Second, the SAC fails to plead that was the president or de facto president of Columbia SJP, and

the affidavit on which Plaintiffs rely confirms that Columbia SJP was a "horizontal" organization with no formally defined leadership roles. *See supra*, Section I(B). Third, even if Alwan led Columbia SJP and Plaintiffs had pled a claim against the group, that *still* wouldn't be enough to hold her individually liable. Black letter law prohibits imputing an organization's conduct to officers "merely by reason of [their] office." *In re Lyman Good Dietary Supplements Litig.*, 2018 U.S. Dist. LEXIS 131668, at *16 (S.D.N.Y. Aug. 6, 2018). Instead, a plaintiff must plead that the director or officer directly "participated in or directly oversaw the allegedly tortious conduct." *Id.*; *see also Steven Madden, Ltd. v. Jasmin Larian, LLC*, 2019 U.S. Dist. LEXIS 10423, at *13-15 (S.D.N.Y. Jan. 22, 2019) (dismissing claim against corporate officer where pleadings "contain[ed] no factual allegations as to [his] specific role in the purported infringement . . . but merely state[d] conclusory allegations that conflate[d] the Company's actions with [his] own.").

The SAC pleads no such personal involvement. The totality of the Complaint's allegations regarding Alwan are as follows: (1) she met with Columbia University administrators to discuss the protests, SAC ¶¶ 25-28; (2) she had non-exclusive access to Columbia SJP's email and Instagram account, *id.* ¶ 29; (3) she attended five demonstrations from 2022 to 2024, *id.* ¶¶ 67, 76, 114, 121; (4) she described an early protest as "cathartic," *id.* ¶ 123; (5) she stated that seeing a Columbia administration official standing with pro-Israel counter-protestors reminded her of "the ongoing surveillance and resistance by the administration to [pro-Palestine groups'] advocacy efforts," *id.* ¶ 122; (6) she "attended or [was] otherwise involved in 'Resistance 101,'" which allegedly featured speakers who expressed support for Hamas, *id.* ¶¶ 132-36;[21] and (7) she was one of the hundred-plus students arrested at the Encampment. *Id.* ¶ 144.

---

[21] For the record, Alwan did not plan or attend this event. Alwan Decl. ¶ 10. But even if she had, attending workshops is protected First Amendment activity.

None of these allegations remotely suggest Alwan aided Hamas or intended to facilitate terrorism. Indeed, the paucity of allegations as to Alwan is stunning. It does not allege that she: had contact with Hamas, took directives from AMP/NSJP, was aware of any relationship between Hamas and AMP/NSJP, participated in violent protests, endorsed the targeting of civilians, made anti-Semitic remarks, or engaged in anything beyond peaceful civil disobedience.

## III.    THE COMPLAINT FAILS TO STATE AN ATS CLAIM

To state an ATS aiding-and-abetting claim, a plaintiff must allege that the defendant "(1) provide[d] practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) [did] so with the purpose of facilitating the commission of that crime." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 259 (2d Cir. 2009). As demonstrated above, the SAC fails to allege any assistance that had any effect—much less a substantial effect—on Hamas's terrorist operations, or that any protest activities were undertaken with the intent of facilitating those operations. Likewise, for reasons already explained, Plaintiffs' ATS claims are independently barred by the First Amendment. *See Almog Meir Jan v. People Media Project*, 2025 U.S. Dist. LEXIS 18021, at *32 (W.D. Wash. Jan. 31, 2025) (dismissing ATS aiding-and-abetting claim predicated on statements praising Hamas).

Accordingly, the ATS claim must be dismissed.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the claims against Alwan in her individual capacity and in her capacity as a representative of Columbia SJP should be dismissed.

Dated: August 3, 2025
      New York, NY

Respectfully submitted,

<u>/S/  Joseph Pace</u>
J. PACE LAW, PLLC
30 Wall Street, 8th Floor
New York, NY 10005
Tel: (917) 336-3948
jpace@jpacelaw.com

*Counsel for Maryam Alwan*

## <u>CERTIFICATE OF COMPLIANCE</u>

    I certify that this Memorandum of Law contains 8,686 words, excluding the Table of Authorities and Table of Contents, and is in compliance with Individuals Rules and Practices ¶ 5(A). This certification is based on the word count function of Microsoft Word.

<u>/S/ Joseph Pace</u>
