UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Iris Weinstein Haggai, *et al.*,<br><br>                       Plaintiffs,<br><br>     v.<br><br>Nerdeen Kiswani, *et al.*,<br><br>                       Defendants. | Case No.      1:25-cv-02400-JAV |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION OF COMMONWEALTH OF IOWA, STATE OF IOWA AND 20 OTHER STATES FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF**

Defendants Nerdeen Kiswani, Cameron Jones, Maryam Alwan, Mahmoud Khalil, Within Our Lifetime-United for Palestine, Columbia-Barnard Jewish Voice for Peace, Columbia University Apartheid Divest, and Columbia Students for Justice in Palestine (collectively "Defendants"), file this Memorandum of Law in Opposition to the twenty-one state Attorneys General's Motion for Leave to File a Brief as *Amici Curiae* ("the Motion"). Doc. 92-1.

## INTRODUCTION

Twenty-one Republican Attorneys General ("AGs") believe this Court needs to be reminded of the importance of upholding federal law. Such is the proclaimed basis upon which these political actors seek leave to file their *amicus* brief. Doc. 92-1 at 3 (claiming an interest "in ensuring that valid claims brought under material support statutes are allowed to be litigated"); *see also id.* at 2 ("states thus have an important interest in making sure that violations of material support statutes can be enforced"). These interests are irrelevant to the question before the court, which is whether Plaintiffs' allegations are sufficient to plead their causes of action.

Indeed, the AGs' proposed *amicus* brief is not actually about or directed at *this case* in particular. Rather, it is part of a concerted pressure campaign to silence and sanction the Palestine solidarity movement.[1] In fact, 16 of the 21 AG signatories to the proposed brief—

---

[1] This Court may take judicial notice that 16 of the 21 signatory AGs—and 19 of the 21 offices represented—made a similar attempt at intimidating and chilling the student speech last year, when they sent a letter lambasting the trustees of Brown University for negotiating with the campus chapter of Students for Justice in Palestine and directly threatening them with the loss of state funding (warning, in thinly veiled gangster terminology, "[o]thers have discovered to their detriment… profound financial consequences"). The proposed *amicus* brief here is yet another ploy in this overall political campaign by state AGs to chill student speech. This attempt by the AGs to exert political pressure by means of the authority of their office has no place in the

and 19 of the 21 offices represented—filed a substantially similar *amicus* brief in the case *Parizer v. AJP Educational Foundation Inc*, a case with similar allegations and the same causes of action as those in the present case. *Parizer, et al. v. AJP Educational Foundation, Inc. et al.*, No. 1:24-cv-00724-RDA-IDD (E.D. Va. Aug. 15, 2025), ECF No. 91.

The arguments in that *amicus* brief, repeated here, offered the Court no additional assistance in rendering its decision, a fact reflected in the Court granting Defendants' Motions to Dismiss without a single reference to the *amicus* brief. *Parizer*, No. 1:24-cv-00724-RDA-IDD. Because the political posturing in the proposed brief is no more useful or informative to this Court than it was in *Parizer*, the Motion should be denied.

Indeed, the AGs' ostensible purpose is entirely incongruous: elected state law enforcement officials without any responsibility for or experience in enforcing federal law, and without any interest *in this case*, attempting to influence the application of federal law by a federal district court. The AGs also do so in a case arising entirely in New York, a state whose Attorney General is conspicuously absent from the proposed *amicus* brief.

The proposed *amici*'s true purpose is transparent, partisan, improper, and wholly collateral. These elected officials are seizing – as they have attempted to no avail in other similar cases – on an opportunity to score political points in their respective electoral jurisdictions. With this *amicus* brief, the AGs pander to an audience other than *this Court*, and disparage Defendants in a manner and forum in which their pleadings are immune from the prospect of a defamation lawsuit. Such a political stunt has no place in this Court.

---

courtroom. "Letter from the State of Arkansas and 23 Other States Urging Rejection of the 'Brown Divest Now' Proposal," Arkansas Attorney General's Office (Aug. 26, 2024), available at https://tinyurl.com/4wp89m6a.

Plaintiffs have more than sufficient legal counsel—they are represented by two major law firms (Greenberg Traurig, LLP, which employes nearly *3,000* attorneys, and Holtzman Vogel, which employs more than 50 attorneys) as well as the National Jewish Advocacy Center. The Court has also generously allotted Plaintiffs an exorbitant *30,000 words* in opposition to Defendants' motions to dismiss. Even in the abstract, it would be difficult to imagine that *amici* could contribute anything Plaintiffs themselves could not. In practice, the AGs' proposed *amicus* brief provides nothing of value for this Court to consider. Plaintiffs' 106-page Opposition to Defendants' Motion to Dismiss already attempts to articulate any legal arguments presented in the proposed amicus brief. Doc. 90.

As such, this Court should deny the Motion. Allowing the AGs to file the proposed brief would open the floodgates, inviting public officials from across the country to file copy-paste *amicus* briefs as a way to advance their political objectives and aspirations, by posturing against political movements they criticize. As detailed below, the proposed brief and motion fail to meet the requirements set forth by U.S. District Courts and should be rejected.

## LEGAL STANDARD

"District courts have broad discretion to permit or deny the appearance of *amici curiae* in a given case." *U.S. v. Ahmed*, 788 F.Supp. 196, n. 1 (S.D.N.Y. 1992) (denying leave to file an *amicus curiae* brief where "defendant's interests are adequately represented by his counsel" and "the additional memorandum of law would not aid this Court's evaluation of defendant's motion"). In fact, "There is no inherent right to file an *amicus curiae* brief with the Court. It is left entirely to the discretion of the Court." Despite the AGs' citation to *appellate* rules in support of their contention that they do not need this Court's permission to

file an *amicus* brief, "[t]here is no inherent right to file an *amicus curiae* brief with the Court. It is left entirely to the discretion of the Court." *Andersen v. Leavitt*, No. 03-cv-6115 (DRH) (ARL), at *5-6 (E.D.N.Y. Aug. 13, 2007), *citing Long v. Coast Resorts, Inc.,* 49 F. Supp. 2d 1177, 1178 (D. Nev. 1999).

"[T]he circumstances under which an *amicus* brief is considered 'desirable' are limited[.]" *Jamaica Hosp. Medical Center, Inc. v. United Health Group, Inc.*, 584 F.Supp.2d 489, 497 (E.D.N.Y. 2008) (citing *Citizens Against Casino Gambling in Erie County v. Kempthorne*, 471 F.Supp.2d 295 (W.D.N.Y. 2007), and denying leave to file *amicus curiae* brief). Instead, "'[a] court may grant leave to appear as an *amicus* if the information offered is 'timely and useful.'" *Andersen*, No. 03-cv-6115 (DRH) (ARL), at *2, quoting *Long*, 49 F. Supp. 2d at 1178.

Judged by those criteria, the AGs' proposed *amicus* brief is not useful, offers no new insights, and does not aid this Court. This District has looked to the Seventh Circuit's test for determining "when an *amicus* brief is useful." *Lehman XS Trust, Series 2006-GP2 v. Greenpoint Mortg. Funding, Inc.*, 2014 WL 265784, at *1 (S.D.N.Y. 2014) (denying leave to file an amicus curiae brief). That test is set forth in *Ryan v. Commodity Futures Trading Comm'n*, which provides that:

> An *amicus* brief should normally be allowed when a party is not represented competently or is not represented at all, when the *amicus* has an interest in some other case that may be affected by the decision in the present case ... or when the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide. Otherwise, leave to file an *amicus curiae* brief should be denied.

125 F.3d 1062, 1063 (7th Cir. 1997).; *see also C&A Carbone, Inc. v. County of Rockland, NY*, 2014 WL 1202699, at *3 (S.D.N.Y. 2014); *see also U.S. v. Ahmed*, 788 F.Supp. 196, n. 1 (denying leave to file an amicus curiae brief where "defendant's interests

are adequately represented by his counsel" and "the additional memorandum of law would not aid this Court's evaluation of defendant's motion").

## ARGUMENT

### I. THE AGS' PROPOSED BRIEF FLUNKS ALL REQUIREMENTS FOR A TRIAL COURT AMICUS BRIEF AND SHOULD BE REJECTED

The AGs' proposed *amicus* brief fails in every required aspect for filing an *amicus* brief in this case. First, the proposed *amicus* brief fails to provide any unique information or perspective that could assist the Court. Second, the state AGs are state actors seeking to insert themselves into the federal courts applying federal laws. They do not assert *any* legitimate interest in any other case, or any interest in *this case*, in a district to which they are not connected. Finally, Plaintiffs are represented by multiple law firms (including more than one that has been initiating similar suits in other districts, including *Parizer* where the plaintiffs are represented by *both* Holtzman Vogel and Greenberg Traurig).

<u>The proposed amicus brief does not aid the Court or offer any new insights.</u> "The usual rationale for *amicus curiae* submissions is that they are of aid to the court and offer insights not available from the parties." *Auto. Club of N.Y., Inc. v. Port Authority of N.Y. and N.J.*, 2011 WL 5865296, at *1 (S.D.N.Y. Nov. 22, 2011) (citing *United States v. El–Gabrowny*, 844 F.Supp. 955, 957 n. 1 (S.D.N.Y.1994)); *see also In re Terrorist Attacks on September 11, 2001*, 2022 WL 985336, *1 (granting leave because the proposed *amicus curiae* brief "g[a]ve the Court information and insights that it would not otherwise have").

Here, the proposed *amicus* brief merely advocates a political position. A proposed *amicus* should demonstrate specialized interest and not merely advocate a position. *Ryan*, 125 F.3d at 1063 ("The vast majority of amicus curiae briefs are filed by allies of litigants

and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such *amicus* briefs should not be allowed. They are an abuse. The term '*amicus curiae*' means friend of the court, not friend of the party"). While there is no requirement that *amici* be completely disinterested in the outcome of the litigation, "the court should consider the partiality of a would-be *amicus*." *Auto. Club of N.Y., Inc.*, 2011 WL 5865296, at *2.

While acknowledging that "the role of an *amicus curiae* is to present unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide," *In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 2829691, at *1, the proposed *amicus* brief simply repeats Plaintiffs' arguments and utterly fails to "present unique information or perspective beyond" what the existing parties provide. Lacking any special or helpful context with respect to the facts of this case, the AGs gratuitously repeat them in conclusory fashion as a ground for this Court's decisions – an entirely inappropriate presentation for an *amicus* brief, in which advocacy is limited to specific legal principles that the parties themselves have not presented (or do not have an interest in presenting).

Yet the AGs claim to educate the Court on what it already knows and offer information that has no bearing on this case. The AGs aim to inform the Court as to why the ATA may be the only civil remedy available for some victims of terrorism. As a threshold matter, it does not matter whether the ATA is the only remedy available to Plaintiffs. That is not any excuse for relaxing the required factual and legal predicate regarding the elements of the cause of action that must be pleaded. That remedies are limited is a *legislative* issue, and does not affect judicial analysis whether the SAC is deficient.

Seeking to further educate this Court on something the Court already knows, the state-level AGs claim to inform the Court as to the meaning of *Twitter v. Taamneh,* 598 U.S. 471 (2023), a *federal* case this Court is perfectly competent to interpret and apply. Moreover, not only has the *Twitter* case already been extensively briefed by nearly every party, but proposed *amici* have not uncovered any new insights into that case which eluded counsel to the parties nor the Court. *See U.S. v. Yaroshenko*, 86 F.Supp.3d 289, 290-1 (S.D.N.Y. 2015) (an *amicus curiae* brief should "offe[r] a fresh perspective on an unsettled question of law that the actual parties to the litigation have not fully addressed"). In fact, their proposed submission betrays a tenuous grasp of the Supreme Court's material support jurisprudence. Thus, they cite *Fuld v. Palestine Liberation Org.*, 606 U.S. 1 (2025), for the proposition that "lower courts [must] effectuate Congress's validly enacted antiterrorism statutes." Doc. 92-1, at 17.  But as the AG's own brief acknowledges, "*Fuld* involved personal jurisdiction over certain foreign terror groups and applied the narrower Promoting Security and Justice for Victims of Terrorism Act rather than other antiterrorism statutes" and "is not directly on point." Doc. 92-1 at 17. In any event, their argument that courts should effectuate the antiterrorism status is a non sequitur: no party has argued otherwise. The proposed *amici* are state AGs responsible for law enforcement *in their own states*, lack federal law enforcement authority or responsibility, and do not litigate the statutes at issue herein.

<u>Second, the state AGs show no particular interest in this case and seek to insert themselves into the federal courts in districts they are not connected to</u>. Rather than offer this Court any unique insight that it could use to analyze the legal issues involved, the gravamen of the proposed brief amounts to nothing more than a rote recitation of the facts alleged in the SAC, coupled with a generic condemnation of Hamas. Indeed, the proposed

brief's factual claims rely *exclusively* on the unproven allegations set forth in the SAC, citing the SAC's conclusory allegations more than 30 times. It fails to include any nuanced or distinct assessment of the facts in this case nor of the applicable law. The AGs' claimed interest here amounts to nothing more than its declared generic desire to "hol[d] terrorists and their supporters accountable." Doc. 92-1 at 1. Such an interest could be equally claimed by any elected official anywhere in the country seeking to make a political statement against terrorism, and falls woefully short of the threshold requirement that proposed *amici* offer "unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Ryan*, 125 F.3d at 1063.

The AGs' own arguments for why they should be permitted to file an *amicus brief* fail to meet this most basic standard and show they have no particular interest in this case. They claim their contribution to the court's analysis lies in four arguments: (1) why states have an interest ensuring this case proceeds, (2) why the ATA may be the only method for victim compensation, (3) how the Court should apply *Twitter v. Taamneh,* and (4) why the ATA should be applied broadly. Doc. 92-1, at 5. None of these justify filing the proposed brief. *See Yaroshenko*, 86 F.Supp.3d at 290 (denying leave to file an amicus brief because "none of the three legal issues that [the would-be amicus] in its application says it intends to address requires further briefing").

Instead, the AGs' motion (and proposed brief) advances a series of straw men that are dispensed with easily. First, the AGs' motion asserts mere generic and common interests to all residents in this country subject to enforceable laws. The AGs claim the interests of the proposed *amici* lie in "holding terrorists and their supporters accountable," "making sure

that violations of material support statutes can be enforced," and "ensuring that valid claims brought under material support statutes are allowed to be litigated." Doc. 92-1 at 1-3.

These principles are not in dispute in this case. These are generic interests common to all residents of this country who benefit from having enforceable laws. An interest in the enforcement of anti-terrorism laws, without more, is pitifully insufficient to justify the involvement of *amici curiae* in a civil case such as the instant matter. Spouting a litany of truisms makes no contribution to the determinative issue: whether the SAC sufficiently pleads the two causes of action alleged.

Allowing the proposed *amicus* brief also risks encouraging identical submissions from any elected official wishing to make a political statement in opposition to the speech and political positions they dislike. All such *amici* would share the same interests proffered by the AGs, and none would have anything helpful to add to this case. Importantly, Defendants have not even asked this Court to ignore the material support statute that Plaintiffs claim is the basis for this case. Thus, this particular claimed interest is not even contested in this case.

In addition, the AGs make much of the fact that New York lacks a state-level corollary to the private right of action in the ATA, and state that as such "[t]he ATA is likely Plaintiffs' only avenue to receive compensation for the horrific crimes perpetrated against them." Doc. 92-1 at 11. Yet that is New York State's conscious choice, and the AGs' brazen effort to interfere with that legislative decision should not be countenanced. The proposed brief nonetheless concedes that "States are not precluded from prosecuting international terrorism… [a]nd these laws are effective." *Id.* at 6. Furthermore, the brief acknowledges that some states do indeed have "a private right of action for those injured by

terrorism—including by those providing material support for terrorists." *Id.* at 7. The fact that some states currently lack a state-level corollary to the ATA has no bearing whatsoever on whether the Complaint in this case pleads a viable claim ATA claim. This point is an irrelevant and insufficient justification for allowing the intervention of twenty-one state AGs as *amici curiae* in this case.

Proposed *amici* argue that the ATA was intended to fill a gap whereby civil remedies were previously unavailable for international acts of terrorism. Doc. 92-1 at 8-9. Again, that is not a point in contention in this case, and proposed *amici*'s brief history of the ATA is not helpful in adjudicating the motions before the court. *See Yaroshenko*, 86 F.Supp.3d at 291 (denying leave to file *amicus curiae* brief where proposed *amicus* "seeks to comment on matters that have already been decided or that are not truly in issue").

<u>Finally, Plaintiffs' counsel also are competent to represent their clients' interests and require no assistance from outside parties</u>. Plaintiffs are represented by three law firms already, one of which employs nearly 3,000 attorneys. Proposed *amici* identify no shortcomings or lacunae in Plaintiffs' counsel that would require their intervention, nor any interest in pending related matters "that may be affected by the decision in the present case." *Ryan*, 125 F.3d at 1063.

II. **THE PROPOSED *AMICUS BRIEF* IS AN ATTEMPT TO INTIMIDATE, DEFAME, AND CHILL ACTIVIST SPEECH IN VIOLATION OF THEIR FIRST AMENDMENT RIGHTS AND MUST BE REJECTED**

The AGs' request bears all the hallmarks of an improper and transparent attempt to further their political interests by using their brief to denounce the student protest movement as an arm of Hamas. It does not present a genuine *amicus* brief offering perspective on legal issues the parties have not adequately addressed. The *amici*'s political opposition to the

views, speech, association, and protest activities of Defendants appears to have led them here. They aim to treat this litigation as an opportunity to publicly defame the Defendants, abuse the justice system, and pressure other arms of law enforcement to do their bidding.

The AGs' intervention here also raises serious First Amendment concerns. By filing a brief in their official capacities that brands Defendants' protected political advocacy as unlawful and dangerous, the AGs are not merely offering neutral legal analysis—they are using the authority of their offices to stigmatize one side of a political debate. State officials have broad latitude to express views, but when those views take the form of official filings that label lawful advocacy as "terrorist support," they risk chilling speech by creating a credible threat of future enforcement. *Cf. Nat'l Inst. for Family & Life Advocates v. James*, 746 F. Supp. 3d 100, 112–13 (W.D.N.Y. 2024) (finding injury where plaintiffs refrained from protected expression out of fear of civil enforcement by the Attorney General). In this way, the proposed *amicus* brief is not benign commentary; it is a state-sponsored signal that participation in disfavored advocacy could invite sanction. That is the very sort of viewpoint discrimination the First Amendment forbids.

Given the total lack of substantive legal or factual contributions, the only discernable purpose of the AGs' brief is to subject Defendant organizations and their members to "exposure, obloquy and public scorn," *Barenblatt v. United States*, 360 U.S. 109, 141 (1959) (Justice Black, dissenting)—in other words, to defame them. *Sheindlin v. Brady*, 597 F.Supp.3d 607, 624 (S.D.N.Y. 2022) ("a defamatory statement [i]s one that exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or ... induce[s] an evil opinion of one in the minds of right-thinking persons, and ... deprives one of ... confidence and friendly

intercourse in society.'") (quoting *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 177 (2d Cir. 2000)); *see also Cantu v. Flanigan*, 705 F.Supp.2d 220 (E.D. NY 2010) (defamatory content in an 'amicus brief').

Specifically, the act of falsely labeling someone a "terrorist," "potential terrorist," or "terrorist supporter"—especially where the speaker is a public official—is defamatory. *Van Der Linden v. Khan,* 535 S.W.3d 179, 198 (Tex. App. 2017) ("Khan alleges that falsely accusing someone of having admitted that he provided financial support to terrorists constitutes defamation per se. We agree"); *Elhanafi v. Fox Televison Stations, Inc.,* 2012 WL 6569341, *2 (Sup. Ct. Kings County, Dec. 17, 2012) (finding possible defamation where the public "might infer that plaintiffs are terrorists and/or terrorist sympathizers/abettors" based on Fox News story); *Sirer v. Aksoy,* 2023 WL 3166453, *2 (S.D. Fla., May 1, 2023) (finding defamation where "[d]efendant falsely stated that Plaintiff was a member of the Fethullah Terrorist Organization"); *TransUnion LLC v. Ramirez,* 594 U.S. 413, 433 (2021) (finding that "the harm from being labeled a 'potential terrorist' bears a close relationship to the harm from being labeled a 'terrorist'… the harm from a misleading statement of this kind [on a credit report] bears a sufficiently close relationship to the harm from a false and defamatory statement").

In this case, the proposed brief bluntly declares "Defendants here include the New York City branches of Hamas' American propaganda network with their leaders and one of their intermediaries to Hamas." Doc. 92-1 at 1. The brief repeatedly restates the conclusory and unproven allegations from the SAC and asserts them as facts. Doc. 92-1 at 8 ("the facts presented here are incredibly disturbing"); *see also Id.* at 1 ("Defendants should be held accountable for their material support of terrorism"). The proposed *amicus* brief's persistent

resort to that inflammatory, conclusory language further belies any legitimate purpose, and lays bare its intention to serve as political advocacy lacking any value in this case.

Granting the AGs entry into this case as *amici* on the plainly insufficient rationale proffered in their motion would allow them to subvert the objective and neutral role of the court. It would commit a very substantial act of viewpoint discrimination under the First Amendment, putting an enormously heavy thumb on the scale in favor pro-genocide speech and substantially chilling criticism of the genocide in Gaza.

Moreover, the AGs continue to choose the courts as their forum for disparagement because legal pleadings insulate the AGs from defamation claims. It is respectfully submitted that the Court should not permit that immunity to provide the opportunity for character assassination without accountability.

Consequently, the proposed *amici*'s proposed brief contains defamatory content, which directly prejudices and harms Defendants, and constitutes further reason for the Court to deny the AGs' Motion.

## CONCLUSION

For the foregoing reasons, the proposed *amicus* brief is "an abuse" and "should not be allowed." *Ryan*, 125 F.3d at 1063. Defendants respectfully oppose the proposed *amici*'s motion for leave to file the proposed *amicus* brief.

    Respectfully submitted,

    */s/ Collin Poirot*
    Collin Poirot
    2603 Oak Lawn, Suite 300
    Dallas, TX  75219
    (214) 392-2281
    cpoirot.law@gmail.com

Jonathan Wallace, Esq.
PO #728
Amagansett NY 11930
917-359-6234
Jonathan.wallace80@gmail.com

*Counsel for Defendant Nerdeen Kiswani*

**HADSELL STORMER RENICK & DAI LLP**

Bina Ahmad (admitted *pro hac vice*)
Dan Stormer (admitted *pro hac vice*)
Hanna Chandoo (admitted *pro hac vice*)
128 N. Fair Oaks Ave.
Pasadena, CA 91103
626.585.9600
bahmad@hadsellstormer.com
dstormer@hadsellstormer.com
hchandoo@hadsellstormer.com

*Attorneys for Columbia-Barnard A Jewish Voice for Peace*

**DRATEL & LEWIS**

Joshua L. Dratel
Amy E. Greer
29 Broadway, Suite 1412
New York, New York 10006
(212) 732-0707
jdratel@dratellewis.com

*Attorneys for Defendant Mahmoud Khalil*

**J. PACE LAW, PLLC**

Joseph Pace
30 Wall Street, 8th Floor
New York, NY 10005
Tel: (917) 336-3948
jpace@jpacelaw.com

*Attorney for Cameron Jones and Maryam Alwan*

## WORD CERTIFICATION

I certify that this document was prepared on a computer using word processing software which indicated that this document contains 3,984 words. This word count is in compliance with Local Civil Rule 7.1.

Collin Poirot