**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HAGGAI *et al.*,

            *Plaintiffs*

          *v.*

KISWANI *et al.*,

           *Defendants*.

Case No. 25-cv-02400-JAV

<u>**REPLY IN FURTHER SUPPORT OF MARYAM ALWAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**</u>

Joseph Pace
J. Pace Law LLP
30 Wall Street, 8th Floor
New York, NY 10005
(917) 336-3948
jpace@jpacelaw.com

*Counsel for Maryam Alwan*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

    I.      THE SAC FAILS TO STATE AN ATA CLAIM AGAINST COLUMBIA SJP ........................ 2

        A.  Plaintiffs Fail to Plead General Awareness ................................................ 2

        B.  Plaintiffs Fail to Allege Knowing and Substantial Assistance ............................ 5

        C.  Plaintiffs' Claims are Independently Barred by the First Amendment ............... 10

    II.     PLAINTIFFS FAIL TO STATE AN ATA CLAIM AGAINST ALWAN ................................. 14

    III.    PLAINTIFFS FAIL TO STATE AN ATS CLAIM .................................................. 14

    IV.    PLAINTIFFS' ARGUMENTS IN OPPOSITION TO JUDICIAL NOTICE ARE MERITLESS ........ 15

    V.     THE COMPLAINT MUST BE DISMISSED FOR INSUFFICIENT SERVICE OF PROCESS ........ 17

        A.  Alwan Was Not Properly Served ...................................................... 17

        B.  Service on Columbia SJP via Alwan Was Improper ........................................... 19

CONCLUSION ................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

**Page(s)**

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
    823 F.3d 51 (2d Cir. 2016) .......................................................... 17

*Ashley v. Deutsche Bank AG.*,
    144 F.4th 420 (2d Cir. 2025) .................................................... *passim*

*Averbach v. Cairo Amman Bank*,
    No. 19-cv-0004(GHW), 2020 U.S. Dist. LEXIS 10902 (S.D.N.Y. Jan. 21, 2020) ......... 10

*Bernhardt v. Islamic Republic of Iran*,
    47 F.4th 856 (D.C. Cir. 2022) ....................................................... 9

*Cabrera v. Black & Veatch Special Projects Corps.* ,
    No. 19-cv-3833(EGS), 2021 U.S. Dist. LEXIS 152218 (D.D.C. July 30, 2021) ........... 10

*Chen ex rel. U.S. v. EMSL Analytical, Inc.*,
    966 F. Supp. 2d 282 (S.D.N.Y. 2013) .............................................. 18

*D'Augusta v. Am. Petro. Inst.*,
    117 F.4th 1094 (9th Cir. 2024) ..................................................... 16

*Eclectic Props. E., L.L.C. v. Marcus & Millichap Co.* ,
    751 F.3d 990 (9th Cir. 2014) ....................................................... 16

*Ellul v. Congregation of Christian Bros.*,
    No. 09 Civ. 10590(PAC), 2011 U.S. Dist. LEXIS 29887 (S.D.N.Y. Mar. 23, 2011) ....... 19

*Free Speech Coal., Inc. v. Paxton*,
    606 U.S. 461 (2025) .............................................................. 11,12

*Friend v. Gasparino*,
    61 F.4th 77 (2d Cir. 2023) ......................................................... 12

*Gerwaski v. Nevada*,
    No.: 2:24-cv-00985-APG-MDC, 2025 U.S. Dist. LEXIS 84645 (D. Nev. May 5, 2025)  7,11

*Haber v. United States*,
    823 F.3d 746 (2d Cir. 2016) ....................................................... 20

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) .................................................... 6,9,10

*Hawaii v. Trump*,
    859 F.3d 741 (9th Cir. 2017) ...................................................... 16

*Herrera v. Manna 2nd Ave. L.L.C.*,
No. 20-CV-11026(GHW), 2021 U.S. Dist. LEXIS 204341 (S.D.N.Y. Oct. 22, 2021) .... 19

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) ........................................................................................ 11

*Honickman v. BLOM Bank SAL*,
6 F.4th 487 (2d Cir. 2021) .......................................................................... 9

*In re Stillwater Capital Partners Inc. Litig.*,
853 F. Supp. 2d 441 (S.D.N.Y. 2012) .......................................................... 18

*Irizarry v. Balton L.L.C.*,
2023 N.Y. Slip Op. 31284(U) (Sup. Ct. 2023) .............................................. 20

*Jaffe & Asher v. Van Brunt* ,
158 F.R.D. 278 (S.D.N.Y. 1994) .................................................................. 17

*Kaplan v. Al Jazeera*,
No. 10 Civ. 5298, 2011 U.S. Dist. LEXIS 61373 (S.D.N.Y. June 7, 2011) ............... 13,14

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ................................................................................... 5

*Kramer v. Time Warner, Inc.*,
937 F.2d 767 (2d Cir. 1991) ........................................................................ 15

*Leisrael v. Educ. for A Just Peace in the Middle E.*,
66 F.4th 1007 (D.C. Cir. 2023) ................................................................... 9

*Licci v. Lebanese Canadian Bank, SAL*,
834 F.3d 201 (2d Cir. 2016) ........................................................................ 15

*Linde v. Arab Bank, Pub. Ltd. Co.*,
882 F.3d 314 (2d Cir. 2018) ........................................................................ 2

*Nat'l Dev. Co. v. Triad Holding Corp.*,
930 F.2d 253 (2d Cir. 1991) ....................................................................... 17,18

*Nat'l Inst. of Family & Life Advocates v. Becerra* ,
138 S. Ct. 2361 (2018) .............................................................................. 12

*Parizer v. AJP Educ. Found., Inc.*,
No. 1:24-cv-724 (RDA), 2025 U.S. Dist. LEXIS 158917 (E.D. Va. Aug. 15, 2025) ........ 7

*RKJW1 Doe v. Watchtower Bible & Tract Soc'y of N.Y., Inc.* ,
221 N.Y.S.3d 640 (2d Dep't 2024) .............................................................. 20

*RKJW1 Doe v. Watchtower Bible & Tract Soc'y of N.Y., Inc.* ,
    2023 N.Y. Slip Op. 34072(U) (2023) ............................................................. 20

*Rosemond v. United States*,
    572 U.S. 65 (2014) ............................................................................ 6

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos* ,
    605 U.S. 280 (2025) ...................................................................... 5, 7

*Staehr v. Hartford Fin. Servs. Grp.*,
    547 F.3d 406 (2d Cir. 2008) ......................................................... 16

*Strategic Funding Source v. Hendon*,
    No. 10 Civ. 5935(PGG), 2011 U.S. Dist. LEXIS 174481 (S.D.N.Y. July 7, 2011) ........ 18

*Tabb v. Bd. of Educ.*,
    No. 1:17CV730, 2019 U.S. Dist. LEXIS 25596 (M.D.N.C. Feb. 19, 2019) .................. 16

*Ting Qiu Qiu v. Shanghai Cuisine, Inc.*,
    No. 18 Civ. 5448(ER), 2021 U.S. Dist. LEXIS 9633 (S.D.N.Y. Jan. 19, 2021) ............. 17

*Torres v. Madrid*,
    592 U.S. 306 (2021) ......................................................................... 5

*Turick v. Yamaha Motor Corp.*,
    121 F.R.D. 32 (S.D.N.Y. 1988) ..................................................... 20

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) .......................................................... *passim*

*United States v. Delgado*,
    972 F.3d 63 (2d Cir. 2020) ......................................................... 5,6

*United States v. Hansen*,
    599 U.S. 762 (2023) ......................................................................... 7

*United States v. Mills*,
    843 F.3d 210 (5th Cir. 2016) ....................................................... 15

*United States v. Osadzinski*,
    97 F.4th 484 (7th Cir. 2024) ....................................................... 13

*United States v. Rahim*,
    860 F. App'x 47 (5th Cir. 2021) ................................................. 13

*United States v. Safoo*,
    No. 18 CR 696, 2025 WL 1331682 (N.D. Ill. May 7, 2025) .......................... 13

*United States v. Samaria*,
  239 F.3d 228 (2d Cir. 2001) ............................................................................. 7

*United States v. Stevens*,
  559 U.S. 460 (2010) ......................................................................................... 12

*Wolfe v. Enochian BioSciences Den. ApS*,
  No. 2:21-cv-00053, 2022 U.S. Dist. LEXIS 38571 (D. Vt. Mar. 3, 2022) ...................... 17

*Yonce v. Miners Mem'l Hosp. Ass'n*,
  161 F. Supp. 178 (W.D. Va. 1958) .................................................................. 19

**Other**

Fed. R. Civ. P. 4 ......................................................................................... 18,20

Fed. R. Civ. P. 17 ............................................................................................ 19

18 U.S.C. § 2339B ........................................................................................... 12

Restatement (Second) of Torts § 876 cmt. d (1979) ................................................. 6

## PRELIMINARY STATEMENT

Plaintiffs have quietly abandoned their most incendiary allegations—that the students had prior knowledge of, or aided and abetted, the October 7 attacks—and acknowledged that no claim lies for domestic injuries flowing from the students' protest activities. These concessions alone render the vast majority of the Second Amended Complaint ("SAC") surplusage.

Plaintiffs' bloated, 92-page opposition offers rhetoric and a lengthy rehashing of the SAC's baseless allegations; but it provides zero explanation as to how the students' activism in New York aided the terrorist attacks in Gaza that caused Plaintiffs' injuries. Their late-breaking theory (that the students provided "advice and encouragement" to Hamas) inverts the SAC's storyline (that Hamas advised and encouraged the students). This new theory, like the old one, is factually and legally defective: the SAC doesn't allege that the students communicated *with* or directed any messaging *to* Hamas. Instead, it alleges public-facing speech, the conceded aim of which was to change domestic opinion about a matter of public concern. Half a century of Supreme Court precedent forecloses tort liability for such speech.

Unable to satisfy the *Twitter* standard, Plaintiffs flail. They contend that anyone who joined a demonstration after Hamas offered unsolicited praise of the global protest movement can be charged with knowingly facilitating Hamas's terrorist operations—a patently absurd theory that would sweep up pacifists and liberal Zionists opposed to Netanyahu's regime. Two federal courts have now dismissed functionally identical claims.[1] This Court should do the same.

---

[1] *See Gerwaski v. Nev. ex rel. Bd. of Regents of the NV Sys. of Higher Educ.,* 2025 U.S. Dist. LEXIS 84645, at *13 (D. Nev. May 5, 2025); *Parizer v. AJP Educ. Found., Inc.,* 2025 U.S. Dist. LEXIS 158917, at *13 (E.D. Va. Aug. 15, 2025).

<u>**ARGUMENT**</u>

**I.    THE SAC FAILS TO STATE AN ATA CLAIM AGAINST COLUMBIA SJP**

**A.  Plaintiffs Fail to Plead General Awareness**

To establish "general awareness," Plaintiffs must plausibly allege that the students played an actual "role in some illegal activity from which the terrorist attack [that injured plaintiffs] was foreseeable." *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420, 438 (2d Cir. 2025); *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018) (defendants must have played "a 'role' in Hamas's violent or life-endangering activities").[2] Absent such a role, there is nothing to be generally aware *of*.[3] Plaintiffs devote twenty pages to general awareness but never articulate this threshold requirement.

Their principal argument is that everyone who participated in demonstrations after Hamas issued "pronouncements" of "gratitude" toward protestors "is generally aware of her role in Hamas's terror organization." Opp. 16. That contention is untenable on multiple levels. *First*, Plaintiffs must still plead that the conduct for which students were supposedly thanked— circulating petitions and organizing demonstrations in New York City—played an actual role in Hamas's "violent or life-endangering activities" from which the attacks that injured Plaintiffs

---

[2] Unless otherwise stated, all quotation marks and internal citations are removed, and all quotes are cleaned up.
[3] Plaintiffs' cases (at 15-17) confirm that the necessity of pleading a concrete "role" in the FTO's illegal operations. *See Ashley*, 144 F.4th at 439 (defendant knowingly provided bank services to fertilizer company which, in turn, supplied FTOs a critical ingredient for their bombs); *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 849-50, 866 (2d Cir. 2021) (defendant provided bespoke banking services to a "Hizbollah-linked" gang); *Raanan v. Binance Holdings Ltd.*, 2025 U.S. Dist. LEXIS 33874, at *59 (S.D.N.Y. Feb. 25, 2025) (defendant provided financial platform that Hamas used to solicit donations); *Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 314 (E.D.N.Y. 2023) (defendants funneled money, supplies, and communications technology to terrorist proxies).

foreseeably flowed. *Linde*, 882 F.3d at 329. Plaintiffs do not and cannot. *Second*, the "pronouncements" at issue consist of (i) generic, unsolicited praise directed at protestors worldwide, SAC ¶ 115, and (ii) a cryptic remark by a "Resistance 101" panelist claiming that Hamas considered the students' work "important" for the "resistance." Opp. 15-16. None credited the students with enhancing Hamas's *terrorist* capabilities.[4] Thus, even if one could reasonably infer a concrete contribution from "expressions of gratitude,"[5] these pronouncements would only establish that the protestors conferred some nebulous benefit on the Hamas organization. That is insufficient. *Ashley*, 144 F.4th at 438 (defendant must be aware of playing role in terror operations, not providing general support for FTO). *Third*, Plaintiffs' theory is preposterously overbroad: by their logic, anyone who joined a demonstration—pacifists and anti-war Zionists alike—would be charged with knowledge of participating in Hamas's terror operations. The ATA does not countenance such absurdities.

Plaintiffs' remaining arguments add nothing. They rehash the SAC's allegations that the students "heeded" Hamas's calls, "aligned themselves" with Hamas, and affiliated with individuals with "Hamas connections." *See* Opp. 18-31. These allegations are defective for reasons set forth in Alwan's motion to dismiss, none of which Plaintiffs attempt to address. *See* Alwan Memo. 6-10, 18, & n.10. And even if the Court suspended Rule 8 and took Plaintiffs' rhetoric and conclusory

---

[4] Plaintiffs' claim that "resistance" was a euphemism for "terrorism" is belied by the SAC, which acknowledges that "resistance" is a capacious term, widely understood as encompassing peaceful advocacy. SAC ¶¶ 91-92 (Hamas's "resistance" campaign focuses on "conveying information worldwide"); *id.* ¶ 96 (AMP/NSJP pamphlet: "Resistance comes in all forms—armed struggle, general strikes, and popular demonstrations").

[5] In fact, that is not a remotely reasonable inference. Public figures and entities express performative gratitude for any number of reasons orthogonal to the recipients' contribution—for example, to motivate, ingratiate, claim popular legitimacy, or garner media attention.

assertions at face value, they would at most establish that the students played a role in Hamas's efforts to sway *domestic* opinion—not that they played a role in illegal operations from which the attacks in Gaza foreseeably flowed, as is required to state an ATA claim.

### B.  Plaintiffs Fail to Allege Knowing and Substantial Assistance

Even if the SAC adequately pled general awareness, it would founder on the "knowing and substantial assistance" prong. *See Twitter*, 598 U.S. at 481, 503 (dismissing aiding-and-abetting claim despite plausible allegations that defendant social media companies knew ISIS exploited their platforms to recruit, fundraise, and spread propaganda); *accord Ashley*, 144 F.4th at 439 ("knowledge of one's role in terrorist activities by itself is insufficient to allege an aiding-and-abetting claim"). As explained in Alwan's motion to dismiss (at 20-21), the SAC fails to allege any assistance to the attacks that injured Plaintiffs, much less assistance rendered with the intent to facilitate those attacks. None of their arguments in response have merit.

Plaintiffs' argument (at 37-38) that the students provided "advice and encouragement" to Hamas is defective in every possible respect. First, this theory has no basis in the SAC: Plaintiffs' storyline (however deficiently pled) has always been that Hamas encouraged and advised the students, not the other way around. The SAC is devoid of allegations that the students communicated *with* Hamas, directed their messaging *to* Hamas, or otherwise provided that organization with anything that would qualify as advice or encouragement. Rather, the actions that form the basis of Plaintiffs' claims consist entirely of public-facing advocacy designed to alter popular opinion, which is the quintessence of First Amendment-protected speech. *See infra* Section II.C; Alwan Memo. 22.

Second, even with this newfangled theory, Plaintiffs still cannot articulate how the students' activities aided the terrorist attacks that caused Plaintiffs' injuries. Their principal

response—that the ATA doesn't require such a linkage, Opp. 45—is flat wrong. It contradicts *Twitter*'s holding that the defendant must have "hel[ped] another to complete [the attack's] *commission*," *id*. at 501 (emphasis in original), and the requirement that the plaintiff show a "discernible nexus" between the defendant's conduct and the plaintiff's injury. *Ashley*, 144 F.4th 420 (2d Cir. 2025) (citing *Twitter*, 598 U.S. at 501). It also violates hornbook aiding-and-abetting principles, which require the defendant to have actually "contributed towards [the] success of the crime." *United States v. Delgado*, 972 F.3d 63, 67 (2d Cir. 2020); *accord Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 145 S. Ct. 1556, 1565 (2025) (aiding and abetting requires an "affirmative act *in furtherance* of that offense") (emphasis added).

Unable to satisfy *Twitter*'s clear holding, Plaintiffs grasp at dicta. They cite *Twitter*'s statement (at 4, 36, 37) that a platform that "consciously and selectively chose to promote content provided by a particular terrorist group" could "*perhaps* . . . be said to have culpably assisted the terrorist attack." 598 U.S. at 502 (emphasis added); *see Torres v. Madrid*, 592 U.S. 306, 328-29 (2021) (Gorsuch, J., dissenting on other grounds) ("digressions speculating on how similar hypothetical cases might be resolved . . . are dicta"). That dicta, however, gets them nowhere: *Twitter*'s holding would still require this hypothetical plaintiff to establish either a "concrete nexus" between the promoted content and the injury, or show that the platform's aid was so "pervasive and systematic" as to permit the conclusion that the defendant "actually aided and abetted each tort of that [terrorist organization]." 598 U.S. at 502, 506; *Ashley*, 144 F.4th at 455; *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 379 (1994) ("it is to the holdings of . . . cases, rather than their dicta, that we must attend"). The SAC pleads neither.

Furthermore, Plaintiffs' own authorities confirm the necessity of a direct nexus between the encouragement and the injury-causing tort. Plaintiffs invoke the Restatement (at 35) for the

proposition that "[a]dvice or encouragement" may create liability equivalent to "participation or physical assistance"—but omit the next sentence, which requires that the "encouragement or assistance [be] *a substantial factor in causing the resulting tort*." Restatement (Second) of Torts § 876 cmt. d (emphasis added). Plaintiffs' reliance (at 35) on *Halberstam*'s statement that yelling "Kill Him" could constitute aiding and abetting likewise backfires. *Halberstam* was referencing a case in which the defendant stood beside an assailant during an assault and exhorted him to continue the beating. *Halberstam*, 705 F.2d at 481 (citing *Rael v. Cadena*, 93 N.M. 684, 604 P.2d 822 (1979)). *Rael* was thus everything this case is not: it involved speech on a matter of private concern, communicated face-to-face to an attacker, by a speaker who intended to incite imminent violence.[6] Finally, Plaintiffs cite *Rosemond v. United States*, 572 U.S. 65, 73 (2014), for the general proposition that someone can aid and abet through words of encouragement. But no one disputes that proposition. Plaintiffs simply haven't pled a viable encouragement-based theory of aiding and abetting here. *See also Delgado*, 972 F.3d at 77 n.10 ("*Rosemond* casts no doubt . . . [on the] requirement that an aider-and-abettor must *actually contribute* to the success of the underlying offense.") (emphasis added).

Plaintiffs' other attempts to establish a nexus fall flat. Their argument (at 46) that the Court should infer a causal nexus from "Hamas's expressions of gratitude," fails for reasons already explained: vague and unsolicited praise from an FTO cannot magically transform activists into

---

[6] In fact, where the modality of aiding-and-abetting is encouragement, courts virtually always require the speech to "take the form of a direct communication, or conduct in close proximity, to the tortfeasor." *Honghui Deng v. Bd. of Regents for the Nev. Sys. of Higher Educ.*, 2020 U.S. Dist. LEXIS 53930, at *10 (D. Nev. Mar. 25, 2020); *see e.g., United States v. Centeno*, 793 F.3d 378, 387 (3d Cir. 2015) (defendants present at the scene of an assault, "prohibited the victim's escape, or encouraged their friends to proceed in the assault"); 2 Wayne R. LaFave, *Substantive Criminal Law* § 13.2(a), at 464 n.55 (noting additional safeguards imposed by courts in accomplice-liability "cases involving, at best, encouragement of the crime").

terrorist accessories. *See supra* at Section I.A; *see also Parizer*, 2025 U.S. Dist. LEXIS 158917, at *28-30, 62 (rejecting identical argument). Their assertion (at 39-41) that the students provided aid by "distributing and promoting Hamas content" and "rally[ing] support for Hamas" is likewise unavailing, since neither of these is alleged to have assisted the attacks that injured Plaintiffs. *See also Gerwaski*, 2025 U.S. Dist. LEXIS 84645, at *3-5, 15 (dismissing aiding-and-abetting claim based on same conduct); *accord Parizer*, 2025 U.S. Dist. LEXIS 158917, at *18-28, 67-73.

Even if Plaintiffs could establish a direct, causal nexus, their claims would still fail because they don't plausibly allege that the students participated in protests to further Hamas's terrorist operations. To the contrary, the SAC proffers numerous alternative motives: to influence public opinion, promote divestment, and diplomatically isolate Israel. SAC ¶¶ 3-4, 68.

Plaintiffs make several abortive attempts to dig themselves out of the hole they pled themselves into. Their first contention—that "intent is not always required," Opp. 46 (citing *Ashley*, 144 F.4th at 438)—is patently wrong. *See Twitter*, 598 U.S. at 490 (defendants must have participated in the relevant attack "as something that they wishe[d] to bring about," or "sought by their action to make it succeed"); *Ashley*, 144 F.4th at 444 ("a JASTA claim requires intent to further a terrorist organization's terrorist activities"); *Smith & Wesson Brands, Inc.*, 605 U.S. at 291; *United States v. Hansen*, 599 U.S. 762, 778 (2023) (aiding-and-abetting claim based on "encouragement" requires that "the defendant specifically intend[ed] that a particular [wrongful] act be carried out"); *see also United States v. Samaria*, 239 F.3d 228, 234-35 (2d Cir. 2001) ("aiding and abetting is . . . a specific intent crime").

Second, Plaintiffs argue (at 46) that the SAC dispels the inference that the students were motivated by concern for Palestinian suffering, pointing to the allegations that the students "declared their support for Hamas, handed out Hamas propaganda, engaged in a public and private

interchange with Hamas and its allies, and repeatedly answered Hamas' calls for rallies." Each of these claims suffers from its own defect. Some are demonstrably false: no one in Columbia SJP is alleged to have "handed out Hamas propaganda,"[7] nor are any of the students alleged to have met publicly or privately with Hamas. Others, like the declaration of "support" for Hamas, rely on a linguistic sleight-of-hand that substitutes "terrorism" for "resistance"—an untenable elision given that the SAC itself acknowledges that students understood "resistance" to encompass lawful measures. SAC ¶¶ 91-92, 96. Yet others, like Plaintiffs' claim that the students were "answering Hamas's calls" are conclusory and rest on specious *post hoc ergo propter hoc* reasoning. Alwan Memo. 18. But even if taken at face value, these claims cannot establish the requisite intent because the SAC pleads the students did all of the above to change public opinion, not to "make [Hamas's terrorist operations] succeed." *Twitter*, 598 U.S. at 490.

Third, Plaintiffs argue (at 46) that swaying public opinion and Hamas terrorism are "goals [that] work together" because "Hamas intentionally commits terror acts to provoke a response from Israel that, Hamas hopes, it can misrepresent so that the public will blame Israel, not Hamas." This convoluted theory, however, merely explains why *Hamas* carries out terrorist attacks. It says nothing about the *students*' motivations for engaging in protest activities. This argument also collapses under its own weight: by Plaintiffs' logic, anyone who publicly criticizes the proportionality of Israel's response to Hamas's attacks is participating in Hamas's propaganda strategy and, by extension, aiding and abetting Hamas's terrorism.

---

[7] The sole allegation in this regard involves a New York Post article claiming a "Hamas Media Office" pamphlet was seen lying about during the Milstein Library occupation. SAC ¶ 191. Plaintiffs neither allege that Columbia SJP students participated in that occupation nor connect them to the pamphlet.

Having failed to plead "conscious, voluntary, and culpable participation" in Hamas terrorist operations in Gaza, *Twitter*, 598 U.S. at 493, Plaintiffs seek refuge in the *Halberstam* six-factor test. *But see id.* at 493, 497, 504 (eliminating the requirement that courts rigidly adhere to the six-factor test); *Leisrael v. Educ. for A Just Peace in the Middle E.,* 66 F.4th 1007, 1017 (2023) (no need to consider the six factors where the "factual allegations are so clearly deficient"). Every one of those factors, however, resolves against Plaintiffs.

Nature of the Act Assisted. This factor asks "whether the alleged aid . . . would be important to the nature of the injury-causing act." *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 500 (2d Cir. 2021); *see, e.g.*, *id.* (banking services to terrorist groups satisfy this factor because terrorist organizations require access to capital); *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 871 (D.C. Cir. 2022) (same); *Halberstam*, 705 F.2d at 484 (money-laundering services for serial burglars satisfy this factor because such services are "indisputably important" to disposing of stolen goods). Here, this factor requires a showing that the "aid" the students allegedly rendered—rhetorical and symbolic acts of solidarity on American campuses—was "important" to Hamas's ability to conduct military operations or hold hostages in Gaza. Plaintiffs do not even pretend that to be the case.

Amount and Kind of Assistance Required. This factor resolves against Plaintiffs because, for reasons already explained, the SAC doesn't allege that the students provided *any* assistance to the terrorist attacks that injured Plaintiffs.

Presence at the time of the tort. Plaintiffs don't allege that the students were present at the time of the attacks that injured them. *See Cabrera v. Black & Veatch Special Projects Corps.*, 2021 U.S. Dist. LEXIS 152218, at *85 (D.D.C. July 30, 2021) (finding that "geographic disconnects between the regions where Defendants worked and the locations of the attacks that injured

Plaintiffs" counsel against finding of substantial assistance); *accord Averbach v. Cairo Amman Bank*, 2020 U.S. Dist. LEXIS 10902, at *53 (S.D.N.Y. Jan. 21, 2020).

<u>Defendant's Relationship With the FTO</u>. This factor asks whether the defendant occupied a "position of authority [that gives] greater force to his power of suggestion." *Halberstam*, 705 F.2d at 484. Plaintiffs fail this test twice over. First, they fail to plausibly allege *any* relationship between Hamas and the student protestors. *See* Alwan Memo. 7-8. Second, even crediting their allegations, Plaintiffs' account of the relationship is fatally mismatched to their claim. Their advice-and-encouragement theory requires a showing that the students persuaded Hamas to commit terrorism *in Gaza*. But the relationship Plaintiffs describe runs in the opposite direction: they posit Hamas persuaded students to promote its message *in New York City*. *See, e.g.*, Opp. 43 (alleging that students followed Hamas's orders and disseminated Hamas's propaganda).

<u>Defendant's State of Mind</u>. This inquiry is designed to determine whether the defendant consciously provided aid with the "intent and desire to make the [unlawful] venture succeed." *Halberstam*, 705 F.2d at 488. As already explained, the SAC pleads a lawful motive (changing public opinion), and the judicially noticeable record discloses an obvious alternative explanation to the one posited in Plaintiffs' response (opposition to Israel's conduct in Gaza).

C.  <u>Plaintiffs' Claims are Independently Barred by the First Amendment</u>

The actions forming the basis of Plaintiffs' aiding-and-abetting claims consist entirely of protest chants, Instagram posts, and petition statements that were (i) directed at a general, domestic audience, (ii) concededly designed to change public opinion about a matter of public concern, and (iii) even crediting Plaintiffs' tendentious interpretation of that speech, constitute abstract advocacy of illegality. *See Gerwaski*, 2025 U.S. Dist. LEXIS 84645, at *22 (dismissing identical claims on First Amendment grounds because activities allegedly supporting Hamas took "place in

public areas and involve[d] speech on . . . a matter of public, rather than private concern"). Plaintiffs do not claim that the students' speech qualified as incitement. They also concede (at 60) that the First Amendment protects "independent speech and advocacy in favor of terrorists." Their sole answer to the First Amendment barrier is to assert that the students' speech is categorically unprotected speech because their advocacy was "coordinated" with Hamas. That rejoinder fails on both the law and the facts.

As to the law: Plaintiffs' contention that *Holder* stripped coordinated advocacy of its First Amendment status is wrong in every possible respect. *Holder* narrowly held that a criminal prosecution, pursuant to 18 U.S.C. § 2339B, would survive strict scrutiny if applied to "the particular forms of support that plaintiffs [sought] to provide to foreign terrorist groups"—*i.e.*, directly training FTOs on dispute resolution and teaching them to petition international bodies for relief. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 37-38 (2010). That holding is triply unhelpful to Plaintiffs.

*First*, *Holder* confirmed that coordinated advocacy is First Amendment speech by analyzing plaintiffs' pre-enforcement challenge under strict scrutiny, *id.* at 26-28—a standard that is only "applicable to direct invasions of First Amendment rights." *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 469 (2025). If coordinated advocacy were unprotected, as Plaintiffs suppose, the Court would have applied rational basis review. *Id.* at 495 (regulation of unprotected speech subject to rational basis review).[8] And if, as Plaintiffs contend, the Court had intended to create an entirely new category of unprotected speech, it surely would have said so explicitly. *Nat'l*

---

[8] Although the *Holder* majority did not expressly invoke the term "strict scrutiny," the decision unmistakably applied that standard. *See, e.g.*, *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 771 (2018) (confirming that *Holder* applied strict scrutiny to § 2339B as applied to the provision of "specialized advice" to FTOs).

*Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2372 (2018) (describing the Court's reluctance to "mark off new categories of speech for diminished constitutional protection"); *accord United States v. Stevens*, 559 U.S. 460, 468-72 (2010). *Second*, as the Supreme Court recently confirmed, *Holder* "involved an unusual application of strict scrutiny, since [it] relied on the 'deference' due to the Executive's 'evaluation of the facts' in the context of "national security and foreign affairs." *Paxton*, 606 U.S. at 484 (quoting *Holder*, 561 U.S. at 484). Here, however, there is no Executive determination to defer to since the claim is brought by private persons under a civil statute, not federal prosecutors pursuant to § 2339B. And *third*, the students' public-facing advocacy bears no resemblance to the direct, specialized trainings that *Holder* held could be prosecuted under § 2339B.

Plaintiffs offer no viable response to any of these points. They quote a footnote from *Friend v. Gasparino* that "constitutional protection does not extend to . . . advice to foreign terrorist organizations." 61 F.4th 77, 89 n.4 (2d Cir. 2023). But the body of that opinion makes clear that the Second Circuit was simply explaining that there is no "First Amendment defense" to a § 2339B prosecution for giving such advice. *Id.* at 89. The instant action, however, doesn't involve a prosecution, and the SAC doesn't allege, even in conclusory fashion, that the students provided "advice" to Hamas. Plaintiffs' remaining authorities are inapposite for the same reason: every one of them involved First Amendment challenges to criminal prosecutions pursuant to § 2339B. *See* Opp. 61-62 (citing *United States v. Mehanna*, 735 F.3d 32, 49 (1st Cir. 2013); *United States. v. Osadzinski*, 97 F.4th 484, 487 (7th Cir. 2024); *Untied States v. Rahim*, 860 F. App'x 47, 50 (5th Cir. 2021); *United States v. Al Safoo*, 2025 WL 1331682 (N.D. Ill. May 7, 2025).[9]

_____

[9] The one non-criminal case in Plaintiffs' opposition—*In re Terrorist Attacks on September 11, 2001*, 740 F. Supp. 2d 494 (S.D.N.Y. 2010)—is inapposite for a different reason. In that case, the court found that the First Amendment didn't shield an alleged "al Qaeda front charity" that

Even if Plaintiffs' legal theory were viable, their claim would fail because they plead no facts supporting an inference that students coordinated with Hamas. *See* Alwan Mem. 17-18, 24. The strained defense of their coordination theory only underscores its hollowness.

*First*, Plaintiffs contend that anyone who protested on days coinciding with Hamas's call for action can be assumed to have followed Hamas's orders—an absurd claim that would transform every protestor into a Hamas collaborator. They offer nothing beyond specious *post hoc ergo propter hoc* reasoning to support an inference that Hamas's calls motivated the students, and they have no answer to the obvious alternative explanation (that students made autonomous decisions to protest Israeli actions they deemed unjust) except to insist that they deserve the inference of their choice. Opp. 46, 69-70. That is not how Rule 8 works. *Kaplan v. Al Jazeera*, 2011 U.S. Dist. LEXIS 61373, at *21 (S.D.N.Y. June 7, 2011) ("obvious alternative explanation" required dismissal of ATA claim). *Second*, Plaintiffs assert (at 64) that anyone who attended the "Resistance 101" training is plausibly a Hamas collaborator because one panelist was allegedly affiliated with Hamas. But they do not allege this speaker issued orders, much less that the students followed his directives. And the underlying supposition—that merely listening to a speaker implies agreement and collaboration—refutes itself. *Third*, Plaintiffs assert (at 64) that "Defendants are all part of the AMP/NSJP network." Alwan's motion to dismiss (at 7-8, 18) catalogued the myriad flaws in that allegation, none of which Plaintiffs address. *Fourth*, Plaintiffs claim (at 65) that an unidentified member of Columbia SJP "shared content from Telegram channels affiliated with foreign terrorist organizations." This is akin to arguing that anyone who reposts content from President Trump's

---

sponsored events for al Qaeda, disseminated al Qaeda literature, and "raised and laundered funds, performed reconnaissance missions, funded and facilitated al Qaeda training camps, and operated as a recruiting center." *Id.* at 519.

Truth Social account can plausibly be presumed to have coordinated with the White House—which is to say, facially absurd. *Finally*, Plaintiffs claim that "Defendants" (again, using impermissible group pleading) "coordinated with Hamas through Bazrouk and others like him." *Id.* at 65. But the SAC contains no such allegations: indeed, no one from the student groups are alleged to have met with, communicated with, or been aware of Bazrouk's existence.

## II.     PLAINTIFFS FAIL TO PLEAD AN ATA CLAIM AGAINST ALWAN

Plaintiffs' perfunctory defense of this claim is tantamount to an abandonment. They concede that Alwan cannot be held liable by virtue of her supposed leadership role in Columbia SJP. They insist (at 51) that they are not seeking to "hold Alwan liable merely because she led Columbia SJP as a general matter," but because she "was a leader in the conduct alleged in the Complaint." But Plaintiffs don't bother specifying what aiding-and-abetting activities she is alleged to have led, and the one paragraph they cite to in opposition simply alleges that she was the "president or de facto president of Columbia SJP." Opp. 51 (citing SAC ¶ 24). They then rattle off the four things she is alleged to have personally participated in—attending a protest, a workshop, and participating in the "Encampment"—but don't even pretend to explain how those activities amounted to "conscious, voluntary, and culpable participation" in Hamas terrorist operations in Gaza. *Twitter*, 598 U.S. at 493.

## III.    PLAINTIFFS FAIL TO PLEAD AN ATS CLAIM

Plaintiffs plead neither an *actus reus* nor *mens rea*. As to the former, they argue that the "substantial effect" requirement can be satisfied where a defendant's conduct "enable[s]" or "facilitate[s]" the principal's violations suffices. Opp. 55 (citing *Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201, 218 (2d Cir. 2016)). That proposition does nothing for them, since Plaintiffs don't allege that the students did anything to enable or facilitate the attacks that injured them. *Compare Licci*, 843 F.3d at 218 (defendants "enabled and facilitated terrorist rocket attacks" by

wiring money that was used to carry out those attacks). Finally, for reasons already explained, Plaintiffs don't allege that the students acted with the "purpose" of facilitating Hamas's terrorist operations. *See also* Alwan Memo. 27.

## IV. PLAINTIFFS' ARGUMENTS IN OPPOSITION TO JUDICIAL NOTICE ARE MERITLESS

A key purpose of judicial notice is to prevent plaintiffs from using "selected and misleading portions" of the public record to pursue harassment litigation and extract "nuisance settlements," *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)—in short, to screen out lawsuits like this one. Plaintiffs ask this Court to accept that students joined the protests not because they genuinely opposed Israeli policy and tactics, but because Hamas commanded them to do so. Accepting the plausibility of that narrative requires blinking reality and ignoring the statements by Israeli officials endorsing collective punishment, the reports of mass civilian casualties and starvation, and the findings of possible genocide—all of which supply an obvious alternative explanation for the protests.[10]

Plaintiffs contend (at 90) that judicial notice is inappropriate because the death toll, state of food security, and genocide findings are "hotly debated."[11] This misapprehends Alwan's request. Alwan has not sought judicial notice that these figures, reports, and characterizations were *true*, but rather that they were in the public domain and part of the public discourse. Their publicity is not subject to reasonable dispute. *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425-26 (2d Cir. 2008) (courts may judicially notice that information is in the public domain); *Hawaii v. Trump*,

---

[10] To be clear: while judicial notice of these facts is mandatory, Fed. R. Evid. 201(c)(2), the Court needn't take judicial notice to dismiss the complaint, since the allegations within the SAC's four corners fail to establish any of the elements of an aiding-and-abetting claim.

[11] Plaintiffs do not dispute that a humanitarian crisis exists in Gaza, *see* ECF Nos. 73-1, 73-2, nor do they contest that Israeli officials made the statements attributed to them in the ICJ filings. ECF No. 73-3.

859 F.3d 741, 773 n.14 (9th Cir. 2017) (taking judicial notice that politician made certain statements).

Plaintiffs' relevance challenge fares no better. It is well-established that "[w]hen considering plausibility, courts must also consider an 'obvious alternative explanation' for defendant's behavior," *Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 567), and equally well-established that courts may judicially notice public events that supply such explanations. *D'Augusta v. Am. Petro. Inst.*, 117 F.4th 1094, 1104 (9th Cir. 2024) (judicially noticing the COVID-19 pandemic because it provided an "obvious alternative explanation" for allegedly collusive behavior); *see also Tabb v. Bd. of Educ.*, 2019 U.S. Dist. LEXIS 25596, at *27 (M.D.N.C. Feb. 19, 2019) (taking judicial notice of schools' specialized focus where it provided an "obvious alternative explanation" for staffing decisions forming the basis of a race discrimination claim).

Plaintiffs' final argument—that the Court cannot consider the exhibits without converting Alwan's motion into one for summary judgment—misstates the law. *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016) (court may consider judicially noticeable documents "without converting [a] motion to dismiss into a motion for summary judgment" where a document "is publicly available and its accuracy cannot reasonably be questioned"). For these reasons, the Court should grant Alwan's request for judicial notice.

## V.    THE COMPLAINT MUST BE DISMISSED FOR INSUFFICIENT SERVICE OF PROCESS

### A.  Alwan Was Not Properly Served

Plaintiffs fail to offer a viable defense of their method of service on Alwan. They cite the rule (at 78) that a defendant who has multiple "dwelling houses or usually places of abode" may be served at any of them. But the place of service must have still "sufficient indicia of

16

permanence," *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991), such as "maintaining a living space, listing the address on one's driver's license, or otherwise holding the location out as one's address." *Ting Qiu Qiu v. Shanghai Cuisine, Inc.,* 2021 U.S. Dist. LEXIS 9633, at *8 (S.D.N.Y. Jan. 19, 2021). None of those indicia are present here.

Alwan never resided at McKinley Lane, only visited a two to three times per year, and never spent more than two weeks there. Alwan Decl. ¶¶ 3–4, ECF No. 72-1. This pales in comparison to the extensive ties defendants had to the place of service in the cases Plaintiffs cite. *See Jaffe & Asher v. Van Brunt*, 158 F.R.D. 278, 280 (S.D.N.Y. 1994) (service valid where defendant "stays at that address when he is in the New York area, and maintains a private bedroom, clothes and a phone line at that address"; "receives mail there"; "represented to [plaintiff] and others" that the property was his residence; requested plaintiff bill him at that address; and listed property address on his letter head); *Wolfe v. Enochian BioSciences Den. ApS*, 2022 U.S. Dist. LEXIS 38571, at *11 (D. Vt. Mar. 3, 2022) (defendant "periodically resides" at property; identifies the property as his address in business registry and on tax filings; and maintained control over the property).

Plaintiffs next assert (at 79) that service should be deemed proper because Alwan received notice and suffered no prejudice. Courts have uniformly rejected such no-harm-no-foul defenses to insufficient service. *National Development Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991). Moreover, in both cases Plaintiffs cite, the court remarked on the absence of prejudice only after confirming that service was proper, or that the defect was "minor." *In re Stillwater Capital Partners Inc. Litig.*, 853 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) (describing repeated service attempts); *Strategic Funding Source v. Hendon*, 2011 U.S. Dist. LEXIS 174481, at *15 (S.D.N.Y. July 7, 2011) (noting defendant's concession that he received summons and complaint

at the place he resided). There is nothing minor about serving Alwan at a place in which she has never resided.

The Court should also deny Plaintiffs' belated request to extend the service deadline and order service through counsel. Rule 4(m) provides for dismissal where a plaintiff fails to serve the complaint within 90 days of filing (here, by June 23, 2025). Fed. R. Civ. P. 4(m). While Rule 4(m) directs a court to extend that deadline for good cause, such cause will only be found in "exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 306 (S.D.N.Y. 2013). An attorney's inadvertence, neglect, or mistake is not good cause. *Id.*

Plaintiffs' counsel have offered no explanation for waiting more than 70 days after the service deadline lapsed to request an extension or alternative service. Accordingly, the request must be denied. *See Herrera v. Manna 2nd Ave. LLC*, 2021 U.S. Dist. LEXIS 204341, at *8 (S.D.N.Y. Oct. 22, 2021) ("Plaintiffs' counsel's inadvertence to not request leave to file a waiver of service or an extension of time to serve Segota until after the ninety-day deadline had already passed and when he knew the identity of Segota's counsel . . . is not good cause.").

### B. Service on Columbia SJP via Alwan Was Improper

Plaintiffs concede (at 81) that, to effect service on Columbia SJP via Alwan, Alwan must have been the president, treasurer, or its functional equivalent *at the time of service*. But Alwan's declaration (ECF No. 72-1) confirms that she occupied no such roles, and the affidavit cited in the SAC confirms that Columbia SJP "has a horizontal leadership structure" with "no officers."[12]

---

[12]    Plaintiffs (at 82) dismiss the Alwan affidavit's description of Columbia SJP's horizontal arrangement as "aspirational." But having relied on that affidavit in the SAC, Plaintiffs are bound by its contents. *Tang Capital Partners, LP v. BRC Inc.*, 661 F. Supp. 3d 48, 58 (S.D.N.Y. 2023)

Plaintiffs insist that *someone* must be capable of receiving service, otherwise unincorporated associations could avoid litigation by not formally appointing leadership. This argument rests on the faulty premise that all unincorporated entities are susceptible to suit. *But see Ellul v. Congregation of Christian Bros.*, 2011 U.S. Dist. LEXIS 29887, at *8 (S.D.N.Y. Mar. 23, 2011) (Order of the Sisters of Mercy lacked requisite "structure and purpose" to be sued as an entity); *Yonce v. Miners Mem'l Hosp. Ass'n*, 161 F. Supp. 178, 186 (W.D. Va. 1958) (fund not a suable entity under Rule 17(b) because it failed to satisfy requirements of unincorporated association—*e.g.,* that members be "subject to certain rules or by-laws," and "customarily subject to discipline for violations or non-compliance with the rules of the association."). Plaintiffs' argument merely acknowledges the reality that Columbia SJP is likely not a suable entity to begin with. Plaintiffs remain free to sue individual Columbia SJP members, but not to use the shortcut they seek here.

None of Plaintiffs' cases are to the contrary. In *Irizarry v. Balton LLC*, 2023 NY Slip Op 31284(U) (Sup. Ct. 2023), service of process was permitted on condo board via its members. But Columbia SJP has no "board" to serve. *RKJW1 Doe v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 221 N.Y.S.3d 640 (2nd Dept. 2024), is likewise inapposite. In that case, the defendant had an eight-person Governing Body with a "chairman," and the plaintiffs served all eight. *RKJW1 Doe v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 2023 NY Slip Op 34072(U), ¶ 6 (Sup. Ct. 2023).

Plaintiffs' request for discovery should likewise be denied. Once service is contested, "the plaintiffs have the burden of . . . establish[ing] the agency of the person or entity receiving

---

("a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true"). Their fact-free characterization of the affidavit's description as "aspirational," made for the first time in opposition to a motion to dismiss, is not entitled to any weight.

process." *Turick v. Yamaha Motor Corp.*, 121 F.R.D. 32, 33 (S.D.N.Y. 1988). Plaintiffs have not offered any evidence refuting Alwan's sworn statement that she didn't hold a role in Columbia SJP at the time of service, nor have they made any showing of due diligence to ascertain a proper recipient under Rule 4(h) or New York law. *See Haber v. United States*, 823 F.3d 746, 754 (2d Cir. 2016) (upholding denial of jurisdictional discovery that was "based entirely on conclusory and implausible allegations"). Accordingly, the SAC should be dismissed against both Alwan and Columbia SJP for failure to effect proper service.

## CONCLUSION

For the foregoing reasons, the SAC should be dismissed in its entirety, with prejudice.

Dated: October 17, 2025
      New York, NY

                          Respectfully submitted,

                          /S/ Joseph Pace
                          J. PACE LAW PLLC
                          30 Wall St, 8th Floor
                          New York, NY 10005
                          (917) 336-3948
                          jpace@jpacelaw.com

## **CERTIFICATE OF COMPLIANCE**

I certify that this Reply contains 6,332 words, excluding the Table of Authorities and Table of Contents, and is in compliance with this Court's September 22, 2025 Order (ECF Nos. 98) because the total word count of Defendants' reply submissions is less than 25,000 words. This certification is based on the word count function of Microsoft Word.

/S/ Joseph Pace