UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

IRIS WEINSTEIN HAGGAI, on her own behalf : 
and on behalf of JUDITH LYNNE WEINSTEIN :
HAGGAI and GAD HAGGAI, JOHN DOE, :
RICHARD ROE, JANE MOE, SHLOMI ZIV, :        25 Cv. 2400 (JAV)
AYELET SAMERANO, on her own behalf and on :
behalf of YONATAN SAMERANO, :               Hon. Jeanette A. Vargas
TALIK GVILI, on her own behalf and on behalf of :
RAN GVILI, ROEE BARUCH, on his own behalf :
and on behalf of URIEL BARUCH, and :
JAMES POE, on his own behalf and on behalf of :
LEO POE, :
 :
                              Plaintiffs, :
 :
              – against – :
 :
NERDEEN KISWANI, individually and as the :
representative of WITHIN OUR LIFETIME- :
UNITED FOR PALESTINE, MARYAM ALWAN, :        :
individually and as the representative of :
COLUMBIA STUDENTS FOR JUSTICE IN :
PALESTINE, CAMERON JONES, individually :
and as the representative of COLUMBIA- :
BARNARD JEWISH VOICE FOR PEACE, and :
MAHMOUD KHALIL, individually and as the :
representative of COLUMBIA UNIVERSITY :
APARTHEID DIVEST, COLUMBIA :
STUDENTS FOR JUSTICE IN PALESTINE, and :
COLUMBIA-BARNARD JEWISH VOICE FOR :
PEACE, :
 :
                              Defendants. :

------------------------------------------------------------------x

## REPLY IN FURTHER SUPPORT OF MAHMOUD KHALIL'S
## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

DRATEL & LEWIS
29 Broadway Suite 1412
New York, New York 10006
(212) 732-0707
*Attorneys for Defendant Mahmoud Khalil*

TABLE OF CONTENTS

Table of Contents..................................................................................................................i

Table of Authorities............................................................................................................ii

Introduction........................................................................................................................1

FACTUAL BACKGROUND

I. The Complaint Fails to State an ATA Claim Against Mahmoud Khalil.....................................2

    A. The Elements of Aiding-and-Abetting Liability Under the ATA and JASTA...............2

        1. General Awareness.................................................................................3

        2. Knowing and Substantial Assistance...................................................6

            a. Nature of the Act Assisted.......................................................6

            b. Amount and Kind of Assistance...............................................8

            c. Presence At the Time of the Act.............................................13

            d. Alleged Relationship with Hamas...........................................13

            e. Mr. Khalil's State of Mind.....................................................13

    B. Plaintiff's ATA Claims are Barred by the First Amendment......................................15

        1. Plaintiff's First Amendment Arguments Fail...................................15

II. Plaintiffs Fail to Plead an ATS Claim......................................................................19

III. Service on CUAD via Mr. Khalil Was Improper....................................................20

TABLE OF AUTHORITIES

Cases

*Al Shimari v. CACI Premier Tech., Inc.*,
    684 F. Supp. 3d 481, 499 (E.D. Va. 2023)....................................................19

*Am. Ass'n of Univ. Professors v. Rubio*, No. CV 25-10685-WGY,
    2025 WL 2777659 (D. Mass. Sept. 30, 2025).........................................2, 15, 20

*Armstrong v. McAlpin*, 699 F.2d 79 (2d Cir. 1983).......................................15

*Ashley v. Deutsche Bank Aktiengesellschaft*,
    144 F.4th 420 (2d Cir. 2025)..........................................................6, 7, 8, 9, 14

*Averbach v. Cairo Amman Bank*, No. 19-CV-0004-GHW-KHP,
    2020 WL 486860, at *16 (S.D.N.Y. Jan. 21, 2020)....................................13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)..............................3, 5

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2d Cir. 1985)......................15

*Cabrera v. Black & Veatch Special Projects Corps.*,
    No. 19-CV-3833-EGS-ZMF, 2021 WL 3508091, at *27 (D.D.C. July 30, 2021)............13

*Cox v. Louisiana*, 379 U.S. 536 (1965)......................................................16

*Crawford v. Recovery Partners,*
    No. 12 CIV. 8520, 2014 WL 1695239 (S.D.N.Y. Apr. 28, 2014)......................4

*Edwards & Hanly v. Wells Fargo Sec. Clearance Corp.*, 602 F.2d 478 (2d Cir. 1979)...............15

*Edwards v. South Carolina*, 372 U.S. 229 (1963)..........................................16

*Finan v. Lafarge S.A.*, No. 22-CV-7831 (NGG) (PK),
    2025 WL 2504317 (E.D.N.Y. Aug. 29, 2025).....................................9

*Florida Star v. B.J.F.*, 491 U.S. 524 (1989)...............................................16

*Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461 (2025)....................................18

*Garrison v. Louisiana*, 379 U.S. 64 (1964)................................................16

*Gerwaski v. State ex rel. Bd. of Regents of the Nevada Sys. of Higher Educ.*, No. 2:24-CV-00985-APG-MDC, 2025 WL 1294107 (D. Nev. May 5, 2025)............1

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)............13, 14

*Herceg v. Hustler Mag., Inc.*, 814 F.2d 1017 (5th Cir. 1987)............16

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010)............18

*Honickman v. BLOM Bank SAL*, 6 F.4th 487(2d Cir. 2021)............4, 6, 18

*Hustler Mag., Inc. v. Falwell*, 485 U.S. 46 (1988)............16

*In re Welding Fume Prods. Liab. Litig.*, 526 F. Supp. 2d 775 (N.D. Ohio 2007)............15

*Kavanagh v. Zwilling*, 578 F. App'x 24 (2d Cir. 2014)............3

*Linde v. Arab Bank*, PLC, 882 F.3d 314, 329 (2d Cir. 2018)............3, 6, 14, 18

*Metge v. Baehler*, 762 F.2d 621 (8th Cir. 1985)............15

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982)............16

*Nestle USA, Inc. v. Doe*, 593 U.S. 628 (2021)............19

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)............16

*Parizer v. AJP Educ. Found., Inc.*, No. 1:24-CV-724 (RDA/IDD), 2025 WL 2382933 (E.D. Va. Aug. 15, 2025)............1, 19, 20

*Retana v. Twitter, Inc.*, 1 F.4th 378 (5th Cir. 2021)............10, 14

*Russell v. Marboro Books*, 18 Misc. 2d 166, 183 N.Y.S.2d 8 (Sup. Ct. 1959)............15

*Snyder v. Phelps*, 562 U.S. 443 (2011)............16, 17

*Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023)............6, 7, 8, 10, 14

Statutes

15 U.S.C.  §78j...................................................................................................15

18 U.S.C. § 2333.............................................................................................*passim*

18 U.S.C. § 2339B........................................................................................17, 18

28 U.S.C. § 1350.............................................................................................*passim*

Fed. R. Civ. P. 12(b)(6)........................................................................................4

Justice Against Sponsors of Terrorism Act, Pub. L. 114-222 (2016).....................*passim*

Rest., Torts, § 876..............................................................................................15

Rest., Torts, § 876(b) ........................................................................................14

U.S. Const. amend I...........................................................................................*passim*

Other Authorities

Abby Pender and Tori Newby, "Tensions rise at pro-Palestine demonstration,
        countered by supporters of Israel," The Daily Tar Heel, Oct. 13, 2023............................4

Amnesty International, "Amnesty International investigation concludes
        Israel is committing genocide against Palestinians in Gaza," December 5, 2024.............11

António Guterres (Secretary General of the United Nations), "Why Israel Must Reconsider
        Its Gaza Evacuation Order," *The New York Times*, Oct. 13, 2023...................................12

*Application of the Convention on the Prevention and Punishment
        of the Crime of Genocide in the Gaza Strip (South Africa v. Israel)*,
        "Application instituting proceedings and request for the
        indication of provisional measures," (29 December 2023)..........................................6, 11

Ciro Murillo and Christina De Paris, "Two years of global demonstrations in support of
Palestine," Armed Conflict Location & Event Data (ACLED), Oct. 3, 2025.............................10

Human Rights Watch, "Israel's Crime of Extermination,
        Acts of Genocide in Gaza," Dec. 19,2024....................................................................5, 11

iv

International Criminal Court, "ICC Pre-Trial Chamber I rejects
the State of Israel's challenges to jurisdiction and issues
warrants of arrest for Benjamin Netanyahu and Yoav Gallant," Nov. 21, 2024................6

Michael Young, "Sound, Fury, Nothing," Carnegie Middle East Center, Oct. 14, 2025...............6

Natali Bendavid, Scott Clement and Emily Guskin,
"Many American Jews sharply critical of Israel on Gaza, Post poll finds,"
*The Washington Post*, October 6, 2025............................................................................12

Physicians for Human Rights Israel, "Destruction of Conditions of Life:
A Health Analysis of the Gaza Genocide," July 2025......................................................11

Sondos Asem, "Top genocide scholars unanimous that Israel
is committing genocide in Gaza: Dutch investigation,"
Middle East Eye, May 17, 2025.......................................................................................6

"Supporters of Palestinians and Israel protest and pray around the world,"
Reuters, Oct. 13, 2023....................................................................................................5

U.N. Human Rights Council, *Legal analysis of the conduct of Israel in Gaza
pursuant to the Convention on the Prevention and
Punishment of the Crime of Genocide*, A/HRC/60/CRP.3, Sept. 16, 2025,.................5, 10

## Introduction

Plaintiffs, for the third time, fail to allege substantiated and sufficient facts to support any of their claims. Even taking each and every one of the fantastical allegations contained in the Second Amended Complaint ("SAC") (ECF # 66) as true, Plaintiffs' Anti-Terrorism Act ("ATA") and Alien Tort Statute ("ATS") claims fail as a matter of law.

Plaintiffs' Opposition to Mr. Khalil's Motion to Dismiss (*"Opposition"*) also renders little additional support to the SAC and silently shrinks away from their outlandish claims that Defendants, each of whom are students and activists in New York City, knew about the October 7, 2023, attacks *before* they occurred.

Instead, the *Opposition* reiterates, at length, the same set of insufficient allegations that, in their entirety, are accusations that Defendants engaged in core protected speech: non-inciting, non-violent, political speech in public fora, including demonstrations, pamphleting, and posting on social media. As a result, Plaintiffs fail to – because they cannot – force this protected political speech to fit the elements that their ATA and ATS claims require. Indeed, since Mr. Khalil filed his Motion to Dismiss (ECF # 80), two federal courts have dismissed near-identical claims.[1]

In addition, another federal court has recently found that the Department of Homeland Security violated the Constitution by using its power to target pro-Palestinian speakers engaging in First Amendment protected political speech in order to "strike fear into similarly situated non-

---

[1] *See Gerwaski v. State ex rel. Bd. of Regents of the Nevada Sys. of Higher Educ.*, No. 2:24-CV-00985-APG-MDC, 2025 WL 1294107 (D. Nev. May 5, 2025); *Parizer v. AJP Educ. Found., Inc.*, No. 1:24-CV-724 (RDA/IDD), 2025 WL 2382933 (E.D. Va. Aug. 15, 2025).

citizen pro-Palestinian individuals proactively (and effectively) curbing lawful pro-Palestinian speech." *Am. Ass'n of Univ. Professors v. Rubio*, No. CV 25-10685-WGY, 2025 WL 2777659, at \*54 (D. Mass. Sept. 30, 2025) ("*AAUP*").

That ruling is directly relevant here because Mr. Khalil is identified in *AAUP* as one of those individuals targeted *for the very same speech at issue here*. *Id*. at \*14. Plaintiffs in this case appear to have the very same goal as DHS – to scare Defendants into silence because they engage in protected speech Plaintiffs dislike.  Just as in *AAUP*, here, too, their efforts should fail.

Mr. Khalil also respectfully joins in those portions of the other Defendants' replies that are specifically referenced in this reply.

For all the reasons outlined herein, this Court should dismiss with prejudice Plaintiffs' claims because they fail as a matter of law, and instead plainly seek to silence Mr. Khalil's core First Amendment speech.

## **FACTUAL BACKGROUND**

### I.    *The Complaint Fails to State an ATA Claim Against Mahmoud Khalil*

#### A.    *The Elements of Aiding-and-Abetting Liability Under the ATA and JASTA*

The elements of aiding and abetting liability under the ATA and the Justice Against Sponsors of Terrorism Act ("JASTA") have been discussed fully in Mr. Khalil's Motion to Dismiss ("*Khalil MTD*"), at 14-23, as well as in the Motions to Dismiss submitted by Mr. Khalil's co-defendants. *See* A Jewish Voice for Peace Motion to Dismiss ("*JVP MTD*") (ECF # 70), at 10-11, Alwan Motion to Dismiss ("*Alwan MTD*") (ECF # 72), at 14-15 Moreover, we adopt fully the legal analysis on aiding and abetting in Ms. Alwan's Reply ("*Alwan Reply*")

(ECF # 99), at 2-14, and provide here analysis pertaining specifically to Plaintiffs' allegations against Mr. Khalil and Columbia University Apartheid Divest ("CUAD").

### 1. *General Awareness*

Under the ATA, "[a]iding and abetting requires the secondary actor to be 'aware' that, by assisting the principal, it is itself assuming a 'role' in terrorist activities." *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018).

Plaintiffs make a number of unsubstantiated claims in their SAC and *Opposition* regarding Mr. Khalil's general awareness of his role in the alleged acts of terrorism. SAC ¶¶ 35, 189-193; *Opposition*, at 25-28. These allegations must be considered under the standard formulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007), in which the Court may "not accept as true conclusions unsupported by the facts alleged, legal conclusions, bald assertions, or unwarranted inferences." *Kavanagh v. Zwilling*, 578 F. App'x 24, 24 (2d Cir. 2014).

(a) Plaintiffs allege that Mr. Khalil, at the direction of Hamas, led a "Day of Resistance" protest on October 12, 2023, five days after the October 7 attack, and two days after Israeli Defense Minister Yoav Gallant's announcement of a complete siege of Gaza. Yet fail to allege any, much less sufficient facts demonstrating that Mr. Khalil, in fact, *led* the protest, was aware of Hamas's call to action, or that his alleged participation was in any way predicated on anything other than his moral conscience manifested through his exercise of First Amendment rights. Glaringly absent from Plaintiffs' assertions is that on this same day, and in the days both

preceding and following it, hundreds of pro-Palestinian demonstrations were held all over the United States,[2] and worldwide.[3]

(b)  Plaintiffs allege that at a virtual event, "Hamas repeatedly thanked Defendants for their efforts," and that a "Hamas surrogate stated . . . that his 'friends and brothers in Hamas' viewed Defendants 'work' as 'so important to the resistance in Gaza.'" *Opposition* at 3. Plaintiffs' then request that this Court make the insupportable inference that because CUAD co-hosted the event, "it is reasonable to infer that its *de facto* leader Mahmoud Khalil was aware of the content of the presentation." Such attenuated reasoning is precisely the kind of "unsupported factual allegation" and "unwarranted inference" that may not be accepted as true under Rule 12(b)(6)'s standard. *See Crawford v. Recovery Partners,* No. 12 CIV. 8520, 2014 WL 1695239, at *3 (S.D.N.Y. Apr. 28, 2014).

Even if it were plausibly alleged that Mr. Khalil was present at the event, and heard the sentence uttered by the speaker, it would be insufficient as a matter of law to prove general awareness, which, as the Second Circuit instructed in *Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021), requires Mr. Khalil be "so closely intertwined with [the FTO]'s violent terrorist activities" that he could understand that he "was playing a role in unlawful activities from which the [terror] attacks were foreseeable." *Id.* at 499.

(c)  Plaintiffs claim that in March 2025, CUAD "distributed the Hamas document 'Our Narrative... Operation Al-Aqsa Flood,'" and alleges that Mr. Khalil is the "*de facto* leader of

---

[2] Abby Pender and Tori Newby, "Tensions rise at pro-Palestine demonstration, countered by supporters of Israel," *The Daily Tar Heel*, Oct. 13, 2023, available at https://bit.ly/46WHcdP.

CUAD, and it is reasonable to infer that he knew about and approved CUAD's distribution of a flyer allegedly produced by Hamas in New York City." *Opposition* at 23. Both the allegation that Mr. Khalil is CUAD's "*de facto*" leader, and the allegation that he "knew about and approved" distribution of the flyer are "bald assertions" without factual support and, pursuant to *Twombly*, should not be accepted as true. *See Khalil MTD* at 24-25.

Even assuming *arguendo* these allegations are plausible, they are nonetheless insufficient to support the proposition that Mr. Khalil held a role in Hamas's commission of the alleged terrorist acts because "general awareness" requires that it was "foreseeable" from the distribution of informational flyers in New York City that the alleged terrorist acts in Gaza would follow – a connection the SAC is unsurprisingly unable to make.

Plaintiffs' further allege that Mr. Khalil's statements in public interviews "signal[] . . . his knowledge of his role in Hamas' terror enterprise." *Opposition* at 24. Notwithstanding, it is facially evident that Mr. Khalil was opining on the historical and current conditions in Palestine and Israel that created the pressure cooker that erupted on October 7. If Mr. Khalil's statements "echo", *id.*, those made by others, it would be the statements of the United Nations, Human Rights Watch, the International Court of Justice, the International Criminal Court, or the masses of journalists and scholars globally who have condemned the treatment of Palestinians by Israel both before and after October 7, 2023.[4]

---

[3] "Supporters of Palestinians and Israel protest and pray around the world," *Reuters*, Oct. 13, 2023, available at https://perma.cc/9JG6-PQJM.

[4] U.N. Human Rights Council, "Legal analysis of the conduct of Israel in Gaza pursuant to the Convention on the Prevention and Punishment of the Crime of Genocide," Sept. 16, 2025, A/HRC/60/CRP.3; Human Rights Watch, "Israel's Crime of Extermination, Acts of Genocide in

### 2. *Knowing and Substantial Assistance*

#### a. *Nature of the Act Assisted*

The courts in *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), *Linde*, *Honickman*, and *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420 (2d Cir. 2025) all concur that secondary tort liability exists only for a particular act of international terrorism, *not* terrorism writ large. The *Twitter* Court specified that "[a]iding and abetting is inherently a rule of secondary liability for *specific* wrongful acts." *Twitter*, 598 U.S. at 494 (emphasis added). The Court defined the inquiry succinctly: "[t]he key question . . . is whether defendants gave such knowing and substantial assistance to [the FTO] that they culpably participated in the [specified] attack." *Id.* at 497.

Applying *Twitter*, the Second Circuit in *Ashley* affirmed "the district court's dismissal of this claim because JASTA does not provide relief where a 'campaign' is alleged to be the 'act of international terrorism,'" *Ashley*, 144 F.4th, at 448, reasoning that "[t]his conclusion is supported by the statute's text . . . provid[ing] liability for injury suffered 'by reason of *an act* of international terrorism.'" *Id.* (emphasis in original) (citations omitted).

---

Gaza," Dec. 19, 2024, available at https://perma.cc/UKD9-ZSDL; *Application of the Convention on the Prevention and Punishment of the Crime of Genocide in the Gaza Strip (South Africa v. Israel)*, "Application instituting proceedings and request for the indication of provisional measures," (29 December 2023), available at https://www.icjcij.org/case/; International Criminal Court, "ICC Pre-Trial Chamber I rejects the State of Israel's challenges to jurisdiction and issues warrants of arrest for Benjamin Netanyahu and Yoav Gallant," Nov. 21, 2024, available at https://bit.ly/4qfstCf; Michael Young, "Sound, Fury, Nothing," Carnegie Middle East Center, Oct. 14, 2025, available at https://perma.cc/C3H5-KKX6; Sondos Asem, "Top genocide scholars unanimous that Israel is committing genocide in Gaza: Dutch investigation," *Middle East Eye*, May 17, 2025, available at https://perma.cc/D7TB-GPC8.

The Court in *Ashley* therefore refused Plaintiffs' ATA/JASTA "campaign" of terrorism theory, finding that such a definition would "sweep as broad as covering every terrorist attack carried out against Americans by the Taliban-al-Qaeda Campaign," and thus is "vast in scope and unlinked to any culpable conduct . . . contravene[ing] the statute's text and JASTA aiding-and-abetting framework*." Id.*

*Ashley* further instructs that even in the hypothetical scenario in which "a defendant may provide such systemic and intentional aid to an individual or organization" as to make that defendant "liable for each and every tortious act committed by the principal," a defendant under JASTA is liable for the "injury causing act, not an overall group of activity that may or may not have led to the plaintiff's particular injuries." *Id. Twitter* instructs that "it is not enough . . . that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." *Twitter,* 598 U.S. at 495.

Here, Plaintiffs re-allege three "acts of terrorism" in their Opposition:

1.     "[M]ilitary engagements between Hamas and Doe, Roe, and Moe's brother between October 7, 2023 and at least October 7, 2024;"

2.     "[T]error acts spanning October 7, 2023 to June 5, 2025;"

3.     "Hamas' kidnapping and murder of Iris's parents."

*Opposition* at 36.  *See also* SAC, at ¶ 235.

The first and second "acts" alleged by Plaintiffs, are in fact not "acts" under the ATA/JASTA at all because they plainly constitute the type of generalized "campaign" or "enterprise," rejected by *Ashley* and *Twitter* respectively. *Ashley*, 144 F.4th, at 448; *Twitter*, 598 U.S. at 506. Plaintiffs argue, absent any pleaded nexus or causation, that Mr. Khalil and the other

Defendants would be liable for any and all Hamas actions from October 7 onward. This is exactly the far-reaching secondary liability proscribed by *Twitter* and *Ashley*. *Id.*

Despite the length of Plaintiffs' SAC and *Opposition*, they do not specify any specific terror attacks committed by Hamas in the period following the initial October 7 attack (which pre-dates any factual allegations in the SAC or *Opposition* regarding Mr. Khalil); nor do they allege any specific "military engagement" between Hamas and the three IDF Plaintiffs,[5] how such "military engagement" in Gaza constitutes an international terror attack, or *any* nexus connecting Mr. Khalil and CUAD, and their alleged protected speech activities in New York City, to in any way effectuating these "military engagements" in occupied Palestine.

The third act is specific, but as discussed **post**, it fails because Plaintiffs do not plead *any facts at all* regarding this act, demonstrating that there is *no* nexus between Mr. Khalil's protected political speech activities and the abduction and deaths of Ms. Haggai's parents.

### b.    *Amount and Kind of Assistance*

Plaintiffs' contention that the ATA does not require the alleged assistance to have furthered the terrorist attacks alleged is simply incorrect. *Opposition* at 45. Both *Twitter* and *Ashley* performed comprehensive analyses whether there existed a "nexus" between the "the act" and "the assistance" alleged. In *Ashley*, the Second Circuit upheld the district court's finding that

---

[5] Instead, Plaintiff John Doe alleges that he spent "100 consecutive days in and around Gaza fighting Hamas," and that "he was involved in gunfights and attacks by Hamas terrorists, each an act of international terrorism and collectively an ongoing act of international terrorism." SAC ¶ 14. Plaintiff Richard Roe asserts that "he participated in operations in Khan Yunis to dismantle Hamas leadership and infrastructure." SAC ¶ 15. Similarly, Plaintiff Jane Moe's younger brother "was deployed to Gaza, where he fought Hamas for over a year." SAC ¶ 16.

the complaint "failed to establish the necessary nexus between any Defendant and the alleged

terrorist activities that injured Plaintiffs." *Ashley*, 144 F.4th at 434.

Since *Ashley*, recent decisions have strictly interpreted the ATA's "nexus" or "causal-

connection requirement." for example, in August, in *Finan v. Lafarge S.A.*, No. 22-CV-7831

(NGG) (PK), 2025 WL 2504317 (E.D.N.Y. Aug. 29, 2025), the Court dismissed an ATA aiding-

and-abetting case, finding that Plaintiffs' allegations that "Defendant's payments to ISIS in

2013-2014 . . . assumed an outsized role in financing ISIS violence through at least the end of

2017," including monthly sums paid directly to ISIS of between $80,000 and $100,000, totaling

at least $1.65 million, were insufficient to support aiding-and-abetting liability because "the

ATA's pleading standard requires a more specific showing." *Id*. at *20. The *Finan* Court

concluded that the allegations "do not allege such culpable participation in the attacks at issue

here." *Id*.

In contrast, Plaintiffs' *Opposition*'s allegations against Mr. Khalil, and the majority of

Defendants, are limited to the organization of non-violent public demonstrations, the

dissemination of pamphlets, flyers, and postings, and public appearances in which Mr. Khalil

spoke about his political and ethical beliefs.

However, as in *Finan* and *Ashley,* these actions simply do not allege culpable

participation in any "acts" of terrorism Plaintiffs identify. These allegations, even when taken

cumulatively, do not form anything close to resembling a "substantial factor in causing" "terror

attacks" half-way around the world in Gaza, or in any way affecting the "military engagement"

of Hamas or Hamas's decision-making regarding hostage-taking.

Mr. Khalil's actions cannot constitute an "essential" part of any of Hamas's alleged terrorist acts. Nor does the SAC (or the *Opposition*) provide *any* "nexus" or "causal-connection," *Retana v. Twitter, Inc.*, 1 F.4th 378, 382 (5th Cir. 2021), between the protected political speech of Mr. Khalil – along with millions of concerned people from around the globe – and the alleged acts of terrorism. In short, even when taking every single factual allegation of the SAC as true, they cannot legally support a finding of "substantial assistance."

Indeed, Plaintiffs' construction of the statutory elements would create liability for *millions* of individuals across the globe who have protested – in multiple places, fora, and contexts, including college campuses – against Israel's conduct in Gaza before and/or after October 7, 2023. In fact, protests have occurred in 128 countries and territories,[6] totaling more than over 48,000 demonstrations globally, with 6,097 events in the United States and Canada alone.[7]

Last month, the United Nations Human Rights Council issued a report concluding that Israel has deliberately inflicted on Palestinians in Gaza conditions of life calculated to bring about its physical destruction by systematically destroying required medical services and shelter, destroying access to hygiene and sanitation, and the systematic expulsion from and destruction of homes and withholding of sufficient living accommodation. United Nations Human Rights Council, *Legal analysis of the conduct of Israel in Gaza pursuant to the Convention on the*

---

[6] Ciro Murillo and Christina De Paris, "Two years of global demonstrations in support of Palestine," Armed Conflict Location & Event Data (ACLED), Oct. 3, 2025, available at https://perma.cc/C9L7-SR4N.

[7] *Id.*

*Prevention and Punishment of the Crime of Genocide*, A/HRC/60/CRP.3, Sept. 16, 2025,

available at https://perma.cc/EV33-ZCGY ("*U.N. Commission Report, Sept. 16, 2025*")

Indeed, in closing, the report states, "[t]he Commission concludes that the State of Israel

bears responsibility for the failure to prevent genocide, the commission of genocide and the

failure to punish genocide against the Palestinians in the Gaza Strip." *U.N. Commission Report,*

*Sept. 16, 2025*, Para. 255. *See also Alwan MTD*, at 3-5 (noting near unanimity among

international human rights organizations and institutions, as well as internationally recognized –

including Israeli – genocide scholars, condemning Israel's actions in Gaza, and declaring it a

genocide). Human rights organizations across the globe have concurred in this determination,

including Amnesty International, Physicians for Human Rights Israel, and Human Rights Watch,

among others.[8]

As early as October 7, 2023, and contemporaneous with the demonstrations at issue in

this case, Israeli officials, including its President, Prime Minister, Ministers in Government,

Members of the State Security Cabinet, the War Management Cabinet, Knesset Members, Israeli

security forces officials and commanders made public statements that indicated their intention to

destroy Palestinians in Gaza as a group, and deny the Gaza population food and other

humanitarian aid. *U.N. Commission Report, Sept. 16, 2025*, at Paras. 111, 163-164 ("[Minister

of Defense Yoav] Gallant framed the siege as a measure of retribution, announcing 'a complete

---

[8] Amnesty International, "Amnesty International investigation concludes Israel is committing genocide against Palestinians in Gaza," Dec. 5, 2024, available at https://perma.cc/DX4R-D6X5; Physicians for Human Rights Israel, "Destruction of Conditions of Life: A Health Analysis of the Gaza Genocide," July 2025, available at https://perma.cc/5872-Z658; Human Rights Watch, "Israel's Crime of Extermination, Acts of Genocide in Gaza," Dec. 19, 2024, available at https://perma.cc/UKD9-ZSDL.

siege… no electricity, no water, no food, no fuel. We are fighting human animals, and we act accordingly.'").

Israel then embarked on a campaign of deliberate destruction of all civilian infrastructure in Gaza, including hospitals, bakeries, and universities, and forced displacement of more than one million civilians, all of which the United Nations at the time characterized as a "calamitous" human rights crisis in the making.[9]

Nor is opposition to Israel's conduct in Gaza divided by religious identification.  Earlier this month a *Washington Post* poll disclosed that "[m]any American Jews sharply disapprove of Israel's conduct of the war in Gaza, with 61 percent saying Israel has committed war crimes and about 4 in 10 saying the country is guilty of genocide against the Palestinians[.]"  Natali Bendavid, Scott Clement and Emily Guskin, "Many American Jews sharply critical of Israel on Gaza, Post poll finds," *The Washington Post*, October 6, 2025, available at https://perma.cc/AP8C-D2ED.

Thus, Plaintiffs' legal theory – that by speaking out against Israel's conduct in Gaza, Mr. Khalil aided and abetted Hamas – is unconscionable, and would, in addition to being directly contrary to the jurisprudence of the ATA/JASTA and ATS, and enable instrumentalization of the federal courts in an effort to silence the millions of U.S. residents who are speaking out on the issue, make those millions and a majority of American Jews "aiders and abettors" of Hamas.

---

[9] António Guterres (Secretary General of the United Nations), "Why Israel Must Reconsider Its Gaza Evacuation Order," *The New York Times*, Oct. 13, 2023, available at https://bit.ly/473IToo.

### c.    *Presence At the Time of the Act*

Plaintiffs do not and cannot allege that the student defendants were present at the time of the attacks that injured them or their family members. *See Cabrera v. Black & Veatch Special Projects Corps.,* No. 19-CV-3833-EGS-ZMF, 2021 WL 3508091, at *27 (D.D.C. July 30, 2021) (finding that "geographic disconnects between the regions where Defendants worked and the locations of the attacks that injured Plaintiffs" counsel against finding of substantial assistance); *accord Averbach v. Cairo Amman Bank,* No. 19-CV-0004-GHW-KHP, 2020 WL 486860, at *16 (S.D.N.Y. Jan. 21, 2020).

### d.    *Alleged Relationship with Hamas*

Plaintiffs also fail to allege the requisite plausible relationship between Hamas and Mr. Khalil. Instead, Plaintiffs offer circuitous, fanciful, and wholly uncorroborated allegations of relations between Hamas, NSJP, AMP, and Defendants through "rallies [held] at Hamas's behest," while referring to instances where Hamas publicly called for global demonstrations on general Telegram channels, *Opposition*, at 47, accessible and viewed by people the world over. Consequently, Plaintiffs fail this test. *See also Alwan Reply*, at 10.

### e.    *Mr. Khalil's State of Mind*

Assessing Mr. Khalil's state of mind involves analysis of the second *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) factor, the amount of assistance, *id*. at 492, and a determination whether the SAC sufficiently pleads Mr. Khalil's "conscious participation in the underlying tort," *id***.**, and whether he consciously provided aid with the "intent and desire to make the [unlawful] venture succeed." *Id.*, at 488.

As a threshold matter, Plaintiffs incorrectly state that intent "is not required for liability under the Antiterrorism Act." *Opposition* at 44. The *Ashley* Court clearly held that "[a] JASTA claim requires 'intent to further [a terrorist organization's] terrorist activities.'" *Ashley*, 144 F.4th at 444, *quoting Linde*, 882 F.3d at 330.

In addressing this factor, Plaintiffs also assert that because Hamas's terror crimes were "open and notorious" and Defendants "responded to public calls from Hamas," and "declared their complete support for Hamas to commit and continue its acts," they must therefore have provided "knowing assistance." This again confuses the general awareness element with the "knowing" portion of the "knowing and substantial assistance" element. The inquiry is whether Defendants knowingly gave *assistance* to Hamas.

Yet the SAC does not present any facts sufficient to illustrate that Mr. Khalil wanted, wished, intended, or otherwise consciously sought to assist Hamas in *any way*. Nor is any allegation made that Mr. Khalil believed that his protected political speech *could* assist Hamas in *any way*, let alone in committing any of the alleged injuries.

Therefore, neither the SAC nor *Opposition* fail to put forward *any* facts that Mr. Khalil intended or desired in any way to assist Hamas, and thus this element fails as a matter of law.[10]

---

[10] Regarding "proximate cause," while in *Linde* the Court rejected the application of "proximate cause" to aiding-and-abetting liability*, Linde*, 882 F.3d at 331, courts have begun to neologize terminology that reflects a requisite causal link between the secondary tortfeasor conduct and the primary tortfeasor's "act of terrorism," denominating it a "nexus" (*Twitter*, 598 U.S. at 506; *Ashley*, 144 F.4th at 438), a "relationship" (*Linde*, 882 F.3d at 331), and a "causal-connection" (*Retana*, 1 F.4th at 382). Some measure of causation is also consistent with the Comment accompanying clause (b) of §876 of the Restatement (Second) of Torts, cited by both *Twitter* and *Halberstam*, which explains, "[i]f the encouragement or assistance is a substantial factor in *causing* the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act." Restatement (Second) of Torts §876 (1979) (emphasis added).

**B.**     ***Plaintiff's ATA Claims are Barred by the First Amendment***

Recently, in *AAUP* the Court held that the Department of Homeland Security had "misused their sweeping powers" to "target non-citizen pro-Palestinians for deportation" including Mr. Khalil, "in order to strike fear into similarly situated pro-Palestinian individuals . . . curbing lawful pro-Palestinian speech and intentionally denying such individuals the freedom of speech that is their right." *AAUP*, 2025 WL 2777659 at *54.

The Court warned that "[i]f 'terrorist' is interpreted to mean 'pro-Palestine' or 'anti-Israel,' and 'support' encompasses pure political speech, then core free speech rights have been imperiled." *Id*. at *53.

**1.**     ***Plaintiffs' First Amendment Arguments Fail***

Here, because Plaintiffs have not sufficiently alleged an aiding-and-abetting claim, the Court need not reach the First Amendment question to dismiss Plaintiffs' claims. Even so, the First Amendment independently bars those claims.

---

The Comment adds, "[i]n determining liability, the factors are the same as those used in determining the *existence of legal causation* when there has been negligence or recklessness." *Id.* (emphasis added).  Many common law cases relying on *Restatements* §876 in imposing aiding-and-abetting liability support the link between causation and injury. *See, e.g., In re Welding Fume Prods. Liab. Litig*., 526 F. Supp. 2d 775, 807 (N.D. Ohio 2007) ("in order for the assistance to be 'substantial,' the assistance 'must be the proximate cause of plaintiffs' harm'"); *Metge v. Baehler*, 762 F.2d 621, 624 (8th Cir. 1985) ("appellants had the burden of showing that the secondary party proximately caused the violation"); *Russell v. Marboro Books*, 18 Misc. 2d 166, 183 N.Y.S.2d 8 (Sup. Ct. 1959). An independent line of cases applying securities law and Section 10(b) similarly cite common law aiding and abetting and *Restatement* §876. *See, e.g.*, *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir. 1985) ("[i]n alleging the requisite 'substantial assistance' by the aider and abettor, the complaint must allege that the acts of the aider and abettor proximately caused the harm to the corporation on which the primary liability is predicated"). *See also Armstrong v. McAlpin*, 699 F.2d 79, 92 (2d Cir. 1983) (defendant "cannot be held liable as an aider and abettor unless his financial advice was a proximate cause of the churning and the fund's resultant losses"); *Edwards & Hanly v. Wells*

The First Amendment affords speech, especially political speech, a higher level of protection than other types of actions: "the opportunity for free political discussion" is "a basic tenet of our constitutional democracy." *Cox v. Louisiana*, 379 U.S. 536, 552 (1965). *See also Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964) ("speech concerning public affairs is more than self-expression; it is the essence of self-government").

The Supreme Court itself has emphasized that political protests are an exercise of "basic constitutional rights in their most pristine and classic form." *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963). *See also NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 908 (1982) ("[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly"); *Alwan Reply* at 10-11; *JVP Reply* at 4-5.

As discussed in Mr. Khalil's Motion to Dismiss, if the protections afforded by the First Amendment conflict with tort laws, the constitutional importance of the First Amendment right to "freedom of speech," compels tort liability to yield. *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964); *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46 (1988); *Snyder v. Phelps*, 562 U.S. 443, 452 (2011); *Herceg v. Hustler Mag., Inc.*, 814 F.2d 1017 (5th Cir. 1987); *Florida Star v. B.J.F.*, 491 U.S. 524 (1989).

The application of constitutional scrutiny in these speech-tort cases is instructive.  For example, in *Sullivan*, the Court held that "libel can claim no talismanic immunity from

---

*Fargo Sec. Clearance Corp.*, 602 F.2d 478, 484 (2d Cir. 1979).

constitutional limitations. It must be measured by standards that satisfy the First Amendment."
*New York Times*, 376 U.S. at 269.

Similarly, in *Snyder*, the Court recognized that the primary question is whether "the
threat of liability" poses "the risk of a reaction of self-censorship on matters of public import."
*Snyder*, 562 U.S. at 452 (citations and quotations omitted).

Consequently, holding Mr. Khalil liable herein under a tort theory not generally
repugnant to the constitution, nevertheless would violate the First Amendment in the
circumstances herein:  when applied to speech of public import, which his expression
indisputably constitutes.

Here, Plaintiffs' argument is tautological:  if expression violates the statute, then it is not
protected by the First Amendment.  However, that ignores the binding fundamental principle the
cases discussed above establish:  that the First Amendment protection *overrides* the liability a
tort statute might otherwise impose for conduct not within the ambit of the First Amendment.

Also, as explained in the *Alwan Reply*, at 10, when political speech is burdened by a
private cause of action courts should engage in a First Amendment strict scrutiny analysis
requiring the Plaintiff to prove that the restriction furthers a compelling interest and is narrowly
tailored to achieve that interest. *See also Khalil MTD*, at 10.

Plaintiffs' *Opposition*, at 60-65, also devote inordinate space to a distraction: the
elements of 18 U.S.C. §2339B, which, as the Second Circuit has emphasized in a series of cases,
are distinct from those of §2333 aiding-and-abetting liability.  *See Kaplan v. Lebanese Canadian*

17

*Bank, SAL,* 999 F.3d 842, 860 (2d Cir. 2021), *Linde*, 882 F.3d at 329, *Honickman*, 6 F.4th at 499. *See also Alwan Reply*, at 11-13.[11]

In so doing, Plaintiffs misapprehend the purpose of Mr. Khalil's discussion (in his motion to dismiss, at 10-12), of *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), which was *not* to apply the elements of §2339B to §2333 aiding-and-abetting liability, but rather to demonstrate that, even in the context of terrorism – even foreign terrorism – the First Amendment provides an extraordinarily broad swath of protection that encompasses all of the SAC's allegations against Mr. Khalil.

*Holder* explicitly stated that, "[a]ll this is not to say that any future applications of the material-support statute to speech or advocacy will survive First Amendment scrutiny." *Holder*, 561 U.S. at 39. Thus, Plaintiffs' contention that a strict scrutiny analysis need not be conducted here is entirely without merit.[12]

---

[11] Plaintiffs also, in their *Opposition*, at 73-74, claim *Holder* undermines application of strict scrutiny. As a threshold matter, as noted above, Plaintiffs erroneously conflate the elements of §2339B with those of the statutes at issue herein. In addition, adopting the discussion in the *Alwan Reply*, at 11, the Supreme Court's recent decision in *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 469 (2025) found that *Holder* "involved an unusual application of strict scrutiny, since [it] relied on the 'deference' due to the Executive's 'evaluation of the facts' in the context of "national security and foreign affairs." *Id.* at 2310. Here there is no Executive determination. Moreover, *Holder* explicitly stated that, "[a]ll this is not to say that any future applications of the material-support statute to speech or advocacy will survive First Amendment scrutiny." *Holder*, 561 U.S. at 39. Thus, Plaintiffs' contention that a strict scrutiny analysis need not be conducted here is entirely without merit.

[12] The brief *amici curiae* filed by Attorneys General from several states does not warrant comment because it does not contribute anything to the legal or factual discussion relevant to the

## II.     *Plaintiffs Fail to Plead an ATS Claim*

Plaintiffs fail to plead the elements of an ATS claim. The recent District Court decision in *Parizer v. AJP Educ. Found., Inc.*, No. 1:24-CV-724 (RDA/IDD), 2025 WL 2382933 (E.D. Va. Aug. 15, 2025) is extraordinarily instructive here because in that case Plaintiffs' pleaded nearly identical facts and made the same ATS claim.

As in that case, Plaintiffs here do not plead specific facts adequate to "draw a sufficient connection between the cause of action [Plaintiffs] seek—aiding and abetting [Hamas's actions] overseas and [Defendants'] domestic conduct." *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 634 (2021) (emphasis added). *See also Al Shimari v. CACI Premier Tech., Inc.*, 684 F. Supp. 3d 481, 499 (E.D. Va. 2023) (emphasizing "significant domestic conduct that is directly related to plaintiffs' claims").

Addressing nearly identical factual allegations, the *Parizer* Court found that

Plaintiffs do not allege sufficient facts allowing a plausible inference that Defendants' "public relations" activities aided and abetted Hamas in carrying out the specific October 7, 2023 attack (*or subsequent or continuing Hamas violations*) that caused the [] Plaintiffs' injuries, and thus do not allege sufficient "relevant" domestic conduct.

*Parizer*, WL 2382933 at *18 (emphasis added).

Plaintiffs' attempt to distance themselves from *Parizer* by contending "*Parizer* found that the plaintiffs were primarily injured in discrete terror attacks that began and ended on October 7." *Opposition*, at 59.  Such a reading is patently incorrect. *Parizer* held that, as above, "[Plaintiffs' factual allegations], even taken as true, do not support the inference that Defendants'

---

Court's determination of Mr. Khalil's motion to dismiss.

19

actions specifically assisted with Hamas's October 7, 2023 attack ***or subsequent violations of***

***international law.***" *Parizer,* WL 2382933 at *19 (emphasis added).

Thus, the *Parizer* Court dismissed Plaintiffs' nearly identical ATS claims because the

"the presumption against extraterritoriality bars" courts from "exercising jurisdiction" over such

claims. *Id.* at *20. This Court should follow suit.

Mr. Khalil further joins his co-Defendants' replies, *Alwan Reply* at 14, *JVP Reply* at 7-11.

### III.    *Service on CUAD via Mr. Khalil Was Improper*

Plaintiffs do not contest that CUAD is not a suable entity, and in fact concede that

"CUAD is not a formal entity." *See Opposition*, at 83. Mr. Khalil relies on his Motion to

Dismiss, at 29, outlining that CUAD "as an organization has 'no legal existence separate and

apart from its individual members.'"

Moreover, Plaintiffs, in their *Opposition*, at 84, concede that to effect service on CUAD,

Mr. Khalil must be an "officer" or a "functional equivalent." However, as described in Mr.

Khalil's Motion to Dismiss, at 24-26, Plaintiffs have failed to allege that Mr. Khalil was anything

more than a "public face and *de facto* president of CUAD," *id.*, at 24, and even those allegations

are not substantiated by any reliable source.[13]

As a coalition of over 80 student groups with a horizontal structure, no officers or

"functional equivalents" exists at all with respect to CUAD. *Khalil MTD*, at 28. Plaintiffs have

---

[13]   In *AAUP*, the Court repeatedly expressed alarm that mere "online suggestions" in "anonymous articles" published by Canary Mission, the shadowy website and "database" which targets pro-Palestinian protesters, and which Plaintiffs' rely on heavily for their allegations that Defendants were "pro-Hamas," were used by DHS as the basis for its discriminatory targeting. *Id.*

not provided *any* further factual support to the contrary, or that Mr. Khalil could therefore be an officer or "functional equivalent."

To address the legal merits of proper service, Mr. Khalil incorporates the legal analysis in Ms. Alwan's Reply, at 16-20, as it applies to Mr. Khalil and CUAD.

Dated: 17 October, 2025
      New York, New York

                                        /s/ Joshua L. Dratel
                                        JOSHUA L. DRATEL
                                        Dratel & Lewis
                                        29 Broadway, Suite 1412
                                        New York, New York 10006
                                        (212) 732-0707
                                        jdratel@dratellewis.com
                                        *Attorneys for Defendant*
                                        Mahmoud Khalil

*Of Counsel*
Joshua L. Dratel
Amy E. Greer
Jacob C. Eisenmann

21

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME

LIMITATION, TYPEFACE REUIREMENTS

AND TYPE STYLE REQUIREMENTS


This memorandum complies with the type-volume limitation of Local Rule 7.1(c). This Memorandum of Law contains 5,791 words, excluding the parts exempted by the Court's Individual Rules.

This Memorandum of Law complies with the typeface requirements because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 12.


Dated: 17 October, 2025
New York, New York


  /s/ Joshua L. Dratel
JOSHUA L. DRATEL
Dratel & Lewis
29 Broadway, Suite 1412
New York, New York 10006
(212) 732-0707
jdratel@dratellewis.com