## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Iris Weinstein Haggai, et al., | |
| Plaintiffs | Case No. 25-cv-02400-JAV |
| v. | |
| Nerdeen Kiswani, et al., | |
| Defendants. | |

**DEFENDANTS COLUMBIA-BARNARD A JEWISH VOICE FOR PEACE, NERDEEN KISWANI, AND WITHIN OUR LIFETIME'S MEMORANDUM OF LAW IN SUPPORT OF REPLY TO ITS MOTION TO DISMISS SECOND AMENDED COMPLAINT**

<u>**TABLE OF CONTENTS**</u>

**Page(s)**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................1

ARGUMENT ................................................................................................1

I.   Defendants' Speech and Independent Advocacy Remain Protected by the First Amendment, Despite Plaintiffs' References to Criminal Law ....................................1

    A. Defendants' speech is protected by the First Amendment....................................1

    B. Plaintiffs Ignore *NAACP v. Claiborne Hardware's* Prohibition on Guilt by Association.............................................................................................3

    C. Plaintiffs Fail to Allege an Agency Relationship or Ratification of Unlawful Acts ...........................................................................................4

II.  This Court should follow the recently dismissed similar cases *Parizer* and *Gerwaski* ................................................................................................6

    A. *Parizer* Found that Nearly the Exact Same Conduct and Speech Alleged Here Was Inadequate to Plead Aiding and Abetting Under the ATA)....................................6

    B. *Gerwaski* Held that the First Amendment Protected Nearly the Exact Same Conduct and Speech Alleged Here .........................................................................11

    C. Plaintiffs' Attempts to Distinguish Their Pleadings from *Parizer* and *Gewarski* Fail ...............................................................................................13

III. Plaintiffs Still Fail to Plead an ATA Claim, Ignoring the Controlling Precedent of *Twitter* and *Ashley* .................................................................................15

    A. Plaintiffs fail to plead general awareness.................................................17

    B. Plaintiffs fail to plausibly plead knowing and substantial assistance.................20

IV.  Plaintiffs fail to plead an ATS claim.........................................................25

V.   Leave to Amend Should Be Denied if Requested, and Dismissal Should Be With Prejudice ...........................................................................................26

CONCLUSION.............................................................................................27

WORD CERTIFICATION ...................................................................................29

# **TABLE OF AUTHORITIES**

**Page(s)**

## FEDERAL CASES

*Ashley v. Deutsche Bank Aktiengesellschaft*
 144 F.4th 420 (2d Cir. 2025) ..................................................................... *passim*

*Breazeale v. Victim Servs., Inc.*
 878 F.3d 759 (9th Cir. 2017) ................................................................................5

*Doe v. Mckesson*
 71 F.4th 278 (5th Cir. 2023), *cert. denied,* 144 S. Ct. 913 (2024) .......................5

*Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.*
 2025 U.S. Dist. LEXIS 84645 (D. Nev. May 5, 2025) ............................. *passim*

*Halberstam v. Welch*
 705 F.2d 472 (D.C. Cir. 1983) .............................................................. *passim*

*Hayden v. County of Nassau*
 180 F.3d 42 (2d Cir. 1999) ................................................................................27

*Helmann v. Code Pink*
 2:24-cv-5704, 2025 U.S. Dist. LEXIS 157027 (C.D.Ca Aug. 13, 2025) ........................*5, 6*

*Honickman v. BLOM*
 6 F.4th 487 (2d Cir. 2021) ...........................................................................15, 16

*Kaplan v. Lebanese Canadian Bank, SAL*
 999 F.3d 842 (2d Cir. 2021) ...................................................................15, 16, 24

*Kristensen v. Credit Payment Servs. Inc.*
 879 F.3d 1010 (9th Cir. 2018) .............................................................................5

*Licci v. Lebanese Canadian Bank, SAL*
 834 F.3d 201 (2d Cir. 2016) ..............................................................................26

*Linde v. Arab Bank, PLC*
 882 F.3d 314 (2d Cir. 2018) ...................................................................15, 16, 18

*NAACP v. Claiborne Hardware Co.*
 458 U.S. 886 (1982). ................................................................................1, 3, 4

*Nestle USA, Inc. v. Doe*
 593 U.S. 628 (2021) ........................................................................................8, 9

/ / /

*Newman v. AP*
    758 F. Supp. 3d 1357 (S.D. Fla. 2024) ...................................................................... *passim*

*Parizer v. AJP Educ. Fund, Inc.,*
    2025 U.S. Dist. LEXIS 158917 (E.D. Va Aug. 15, 2025) ......................................... *passim*

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*
    582 F.3d 244 (2d 2009) ....................................................................................................25

*StandWithUs Center for Legal Justice v. Code Pink*
    2:24-cv-6253 (C.D.Ca June 13, 2025) ...............................................................................5

*Twitter. Holder v. Humanitarian Law Project*
    561 U.S. 1 (2010) ..................................................................................................... *passim*

*Twitter v. Taamneh*
    598 U.S. 471 (2023) ................................................................................................. *passim*

*United States v. Al Safoo*
    2025 U.S. Dist. LEXIS 87114 (N.D.IL 2025) ...................................................................3

*United States v. Hendricks*
    950 F.3d 348 (6th Cir. 2020) .............................................................................................3

*United States v. Masel*
    54 F. Supp. 2d 903 (W.D. Wis. 1999) ............................................................................3, 4

*United States v. Mustafa*
    406 F. App'x 526 (2d 2011) ..............................................................................................2

*United States v. Osadzinski*
    97 F.4th 484 (7th 2024) ..................................................................................................2, 3

*United States v. Rahim*
    860 F. App'x 47 (5th 2021) ...............................................................................................3

*Zobay v. MTN Grp. Ltd.*
    695 F. Supp. 3d 301 (E.D.N.Y. 2023) ...............................................................17, 19, 21

## FEDERAL STATUTES AND REGULATIONS

18 U.S.C.
    § 2333(d)(2) ........................................................................................................................2
    § 2339B ....................................................................................................................... *passim*

/ / /
/ / /
/ / /

Federal Rules of Civil Procedure
    Rule 12(b)(1)................................................................................................28
    Rule 12(b)(6)................................................................................................28
    Rule 12(f)......................................................................................................28

## CONSTITUTIONAL AUTHORITIES

First Amendment ...................................................................................... *passim*

## INTRODUCTION

This Court should dismiss Plaintiff's case in its entirety with prejudice. Despite filing three operative complaints and a nearly 30,000-word opposition to Defendants' Motions to Dismiss, Plaintiffs still fail to sufficiently plead their claims. This history exposes Plaintiffs' real purpose: to stifle speech they disagree with. Other District Courts have recently dismissed similar cases brought by Plaintiffs' counsel, and this court should follow suit.

## ARGUMENT

Plaintiffs ignore Supreme Court precedent, which firmly protects Defendants' speech and independent advocacy under the First Amendment. Plaintiffs do not sufficiently allege Defendants' "general awareness" of playing some role in Hamas' military operations that injured Plaintiffs, nor do their inflammatory characterizations convert Defendants' protected speech into providing knowing and substantial assistance to those operations. Plaintiffs lean overwhelmingly on caselaw interpreting criminal material support statutes, which are inapplicable to the causes of action in this civil suit. This third attempt at a complaint, which the Court previously ordered to be the final amendment, should be dismissed with prejudice.

**I.    Defendants' Speech and Independent Advocacy Remain Protected by the First Amendment, Despite Plaintiffs' References to Criminal Law**

The United States Supreme Court's decision in *NAACP v. Claiborne Hardware Co.* demands dismissal of this case. 458 U.S. 886 (1982). Plaintiffs fail to allege agency liability or ratification of unlawful conduct by any of the Defendants that would permit them to overcome *Claiborne Hardware*'s clear prohibition on guilt by association.

### A.  Defendants' speech is protected by the First Amendment

Try as they might, Plaintiffs cannot subvert the First Amendment's protection of Defendants' alleged conduct. In their opposition, Plaintiffs desperately attempt to turn this case

1

into a criminal prosecution by making extensive, distracting references to caselaw interpreting 18 U.S.C. § 2339B. These references obfuscate the distinction between § 2339B's criminal liability standard and the civil liability requirements for their invoked causes of action. Even if the criminal material support standard applied, Defendants' speech falls squarely within the protections of *Holder* and *Twitter. Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010); *Twitter v. Taamneh,* 598 U.S. 471 (2023). Other district courts have recently found that some of the same exact speech alleged in this case shows only protected advocacy. *Infra* Section II.

Plaintiffs spill significant ink contorting caselaw interpreting § 2339 to make an end run around the First Amendment.[1] Plaintiffs cite five distinguishable *criminal* cases, which they claim renders Defendants' speech unprotected. Even if these cases applied—they do not—the defendant's conduct in each case went far beyond what is alleged here. *See, e.g., United States v. Mustafa,* 406 F. App'x 526, 530 (2d 2011) (convicted for, among other things, knowingly "provid[ing] instructions for making explosive devices and other weapons" for Foreign Terrorist Organization's ("FTO") benefit); *United States v. Osadzinski,* 97 F.4th 484, 486 (7th 2024) (convicted for creating computer program allowing ISIS and followers to rapidly duplicate propaganda videos, stay ahead of U.S.'s efforts to thwart organization's campaign, shared

---

[1] *Holder* in fact reaffirms Defendants' position that their speech is protected independent advocacy. *Holder*, 561 U.S. 1. Notably, *Holder* was decided before JASTA and its civil liability component was enacted. *Holder* concerned coordinated advocacy under the entirely separate culpability standard of 18 U.S.C. § 2339(B)'s criminal provision. *Id.*; JASTA, enacted in 18 U.S.C. § 2333(d)(2). Yet even before JASTA, *Holder* made clear that "[i]ndividuals who act entirely independently of the foreign terrorist organization to advance its goal and objectives shall not be considered to be working under the foreign terrorist organization's direction and control." *Holder*, 561 U.S. at 23. Defendants are not even "prevent[ed] from becoming members" of an FTO. *Id.* at 26. Even "vigorously promoting and supporting the political goals of [a] group" is protected activity and, thus, cannot be the basis of an Anti-Terrorism Act ("ATA") or Alien Tort Statute ("ATS") claim. *Id.* at 39. This is still true even if "such speech benefits foreign terrorist organizations." *Id.* Speech is not barred if it imparts only general or unspecialized knowledge. *Id.* at 27.

computer program with believed-ISIS supporters, taught them how to use it, and used program to disseminate large trove of ISIS media); *United States v. Rahim,* 860 F. App'x 47, 53 (5th 2021) (convicted for running and leading an entire ISIS-affiliated channel, recruited people to join ISIS, answered questions on behalf of ISIS, outlined targets, grew and mobilized a community of ISIS followers); *United States v. Al Safoo,* 2025 U.S. Dist. LEXIS 87114, *5-6 (N.D.IL 2025) (material support charge for posting pro-ISIS video with ticking bomb, detonator with various city landmarks behind it); *United States v. Hendricks*, 950 F.3d 348 (6th Cir. 2020) (convicted for conspiring and attempting to provide material support to an FTO). In addition, while the conduct in both *Osadzinski* and *Al Safoo* went clearly far beyond independent advocacy, both courts emphasized independent advocacy is protected, and *Osadzinski* extended the protection to expressing sympathy for an FTO's views. 97 F.4th at 493.

### B.  Plaintiffs Ignore *NAACP v. Claiborne Hardware*'s Prohibition on Guilt by Association

Plaintiffs concede "*Claiborne Hardware* 'stands for the well-known prohibition against 'guilt by association,'" Doc. 90 at 71 (*quoting United States v. Masel*, 54 F. Supp. 2d 903, 916 (W.D. Wis. 1999)), but then ignore swaths of the *Claiborne Hardware* opinion. "[M]ere advocacy of the use of force or violence does not remove speech from the protection of the First Amendment." *Claiborne Hardware*, 458 U.S. at 927. Even the statement, "if we catch any of you going in any of them racist stores, we're gonna break your damn neck," is protected speech. *Id.* at 902, 929. Plaintiffs' allegations fall far short of "mere advocacy of the use of force or violence," which, even if alleged, would still be protected. *Id.*

Plaintiffs' theory that even the loosest appearance of coordination can overcome *Claiborne Hardware*'s First Amendment protections would render nearly the entire Palestine solidarity movement liable for every military operation by Hamas in Gaza. Plaintiffs' bald

attempt to treat common slogans, political analysis, and similarly-timed independent protests as a basis for claiming the tens of thousands of people who participate are all liable for each other's acts violates the First Amendment. *Id.* at 919-20.

Plaintiffs point to others' conduct, including co-Defendant Bazrouk, and allege "guilt by association" on the part of co-Defendants. Defendants "cannot be found guilty (or civilly liable) simply because [they are alleged to have] associated with others who engaged in illegal conduct." *Masel*, 54 F. Supp. 2d at 916. No law or case suggests Defendants' First Amendment rights should be curtailed if their speech occurs at the same time and in the same manner as hundreds of third-party civil society groups solely because a singular third party who allegedly attended the same events acted unlawfully. *Claiborne Hardware*, 458 U.S. at 930. Simply repeating the conclusory statement that "Defendants are liable for aiding and abetting terror attacks" and "coordinated their activities with Hamas" does not strip Defendants of *Claiborne Hardware's* protection. Doc. 90 at 71, 73. Plaintiffs have not met their burden.

### C. Plaintiffs Fail to Allege an Agency Relationship or Ratification of Unlawful Acts

In their third attempt at a complaint, Plaintiffs add Defendant Bazrouk in a desperate last-ditch effort to connect the remaining Defendants to Hamas through agency liability. Yet this effort fails. Plaintiffs impermissibly argue guilt by association, ignoring *Claiborne Hardware*, and try and fail to impute agency liability for unknown actors or Defendant Bazrouk's alleged conduct acting as an "intermediary" between Hamas and the other Defendants.

All that Plaintiffs are able to allege is that Bazrouk attended a few rallies, which thousands of others attended, and that co-Defendant Within Our Lifetime joined many other organizations in posting about his detention and guilty plea. SAC, Doc. 66 ¶¶ 223-224. This is not enough to plead agency liability, nor that any Defendant ratified Bazrouk's alleged conduct.

In similar cases targeting Palestine-related speech, *StandWithUs Center for Legal Justice v. Code Pink* and *Helmann v. Code Pink*, brought by some of the same Plaintiffs' attorneys as in this case, the court rejected Plaintiffs' attempt to hold organizational entities liable for the acts of their alleged members. *StandWithUs*, 2:24-cv-6253 (C.D.Ca June 13, 2025), Doc. 131; *Helmann*, 2:24-cv-5704, 2025 U.S. Dist. LEXIS 157027 (C.D.Ca Aug. 13, 2025), Order Granting Defendant PYM's Motion to Dismiss.

In *Helmann*, the court held that to assert agency liability generally, a plaintiff "must allege that both the principal and the agent have manifested an assent that the principal has the right to control the agent." *Helmann,* 2025 U.S. Dist. LEXIS 157027 at 20. The court noted,

> [i]ndeed, courts have found more substantial allegations regarding a protest organizer's control over protestors insufficient to plead an agency relationship. . . . a Black Lives Matter protest [case] found that the plaintiff had not adequately plead an agency relationship between protest organizers and protestors despite allegations that the organizer 'organized the protest, was its leader, and often directed the protesters' movements.'

*Id.*, *citing Doe v. Mckesson*, 71 F.4th 278, 287 (5th Cir. 2023), *cert. denied,* 144 S. Ct. 913 (2024). The *Helmann* court also found Plaintiffs failed to show ratification, which is "'the affirmance of a prior act done by another,'" where "'the act is given effect as if done by an agent acting with actual authority.'" *Helmann*, 2025 U.S. Dist. LEXIS 157027  at 21, *citing Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting Restatement (Third) of Agency § 4.01). Even where the defendant admitted that some of its members were at the protest in question, and stated that as an organization it would continue to protest, the court rejected Plaintiffs' allegations of ratification as insufficiently pled. *Helmann,* 2025 U.S. Dist. LEXIS 157027 at 20-21. Ratification also requires a pre-existing relationship, which Plaintiffs cannot plausibly allege here. *See also Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766–67 (9th Cir. 2017) ("Although a principal is liable when it ratifies an originally unauthorized tort, the

principal-agent relationship is still a requisite, and ratification can have no meaning without it.").

Here, Plaintiffs fail to allege any agency liability or ratification of unlawful acts by any of the Defendants. Plaintiffs do not sufficiently allege that any Defendant served as an agent who "manifested an assent" that they as the principal have "the right to control [any] agent." *Helmann,* 2025 U.S. Dist. LEXIS 157027 at 20. Even if Defendants "organized [a] protest, was its leader, [or][] directed the protesters' movements," as in the Black Lives Matter protests discussed in *Helmann,* that would still be insufficient to impute agency liability or ratification. *Id.* Plaintiffs have not met their burden.

## II.    This Court should follow the recently dismissed similar cases *Parizer* and *Gerwaski*

Courts have recently dismissed extraordinarily similar cases, and this Court should do the same. The claims, allegations, and injuries in *Parizer v. AJP Educ. Fund, Inc.* and *Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.* mirror the claims, allegations, and injuries in this case. *Parizer,* 2025 U.S. Dist. LEXIS 158917 (E.D. Va Aug. 15, 2025),  Order Granting Defendants' Motions to Dismiss (without prejudice); *Gerwaski*, 2025 U.S. Dist. LEXIS 84645 *1 (D. Nev. May 5, 2025), Order Granting Defendants AJP Educational Foundation and SJP-UNLV's Motions to Dismiss. Plaintiffs' operative complaint is easily dismissed for the same reasons that were dispositive in *Parizer* and *Gerwaski,* and their bloated Opposition brief cannot save this case.

### A.    *Parizer* Found that Nearly the Exact Same Conduct and Speech Alleged Here Was Inadequate to Plead Aiding and Abetting Under the ATA

*Parizer* is a nearly identical case, alleging ATA and ATS claims against the *Parizer* defendants and brought by the exact same group of attorneys that brought this case. 2025 U.S. Dist. LEXIS 158917. *Parizer*'s dismissal is extraordinarily compelling here because the claims were based on much of the exact speech and conduct alleged here. *Id.*

The allegations in *Parizer* are based on the same October 7 Hamas attack and subsequent operations in Gaza. *Id*. Like here, the *Parizer* plaintiffs alleged American Muslims for Palestine was a continuation of a designated FTO. *Id.* at 7. They alleged defendants provided "ongoing, continuous, systemic, and material support for Hamas," and assisted Hamas's strategy of "propaganda and lies to influence public opinion and justify its horrendous actions" "before, during and after [] October 7." *Id.* at 12, 58. Plaintiffs alleged Hamas called for support through a "terror-by-propaganda" strategy, where defendants were "foot soldiers" for Hamas in the west. *Id.* at 15. Like here, plaintiffs alleged that within hours of the October 7 attack, defendants began a propaganda campaign across college campuses, using the same toolkit at issue in this case and signing the same "Al-Aqsa Statement," and organizing the same "Day of Resistance" actions allegedly coinciding with Hamas' call for protests. *Id.* at 16-22. Plaintiffs pointed to the same "Strike4Gaza" protests allegedly "responsive to Hamas's puppet masters, the IRGC." *Id.* at 24. Plaintiffs alleged defendants used the same speech and conduct at issue here: "Unity Intifada," "resistance," "PART of this movement, not in solidarity with this movement," "armed struggle," and "Glory to the Martyrs." *Id.* at 19-20. *Parizer* plaintiffs also alleged defendants' "events were violent affairs aimed at normalizing Hamas's rhetoric, terrorizing students, and forwarding the 'resistance,'" citing Columbia University, the campus at issue in this case, as one of the campuses where these events took place. *Id.* at 22. Further, like here, plaintiffs alleged "[d]efendants continue to provide crucial ongoing public relations services to Hamas to generate support for its ongoing terrorism." *Id.* at 23. Plaintiffs cited the exact same statements cited here made at Columbia University by a speaker that "his 'friends and brothers in Hamas" value and care about "the support they receive from American students protesting on their behalf." *Id.* at 29.

The *Parizer* court carefully considered these allegations, refused to draw the inferences suggested by plaintiffs because they were implausible, and dismissed all claims. This Court should do the same. Plaintiffs alleged all Defendants knew about the October 7 attack before it occurred "because, on October 8, 2023, NSJP responded to the attack with a document that included a clip-art style graphic of a paraglider," which the court rejected because it was "not reasonable." *Id.* at 61 (emphasis in original). The court reasoned, "[t]he primary difficulty here is that Plaintiffs do not seek to have the Court draw a single inference but rather a chain of inferences that become more and more attenuated one moves down the chain," "the further inferences leading to Plaintiffs' ultimate conclusion that Defendants both knew of the October 7, 2023 attack before it happened and contributed to the attack such that they may be held liable for it, are not supported by any non-conclusory factual allegations in the Amended Complaint." *Id.*

Analyzing Plaintiffs' ATS claim, the *Parizer* court found that it lacked subject matter jurisdiction because the plaintiffs failed to overcome the presumption against extraterritoriality—the alleged domestic conduct was insufficiently connected to the tortious conduct abroad. *Id.* at 49, citing *Nestle USA, Inc. v. Doe,* 593 U.S. 628, 634 (2021). The *Parizer* court dismissed the case reasoning,

> [a]lthough Plaintiffs conclude that Defendants have aided and abetted Hamas by providing it with 'material support despite knowledge of Hamas's terrorist activity both before, during, and after its October 7 terrorist attack,' Plaintiffs do not allege that any planning, preparation, funding, or execution of the October 7, 2023 attack or any violations of international law by Hamas occurred in the United States. None of the direct attackers are alleged to be citizens of the United States. . . . Plaintiffs do not allege sufficient facts allowing a plausible inference that Defendants' 'public relations' activities aided and abetted Hamas in carrying out the specific October 7, 2023 attack (or subsequent or continuing Hamas violations) that caused the Israeli Plaintiffs' injuries, and thus do not allege sufficient 'relevant' domestic conduct.

*Id.* at 58-69.

The *Parizer* court found the same conduct as alleged here—that Defendants engaged in

"ongoing," "continuous," "systemic" support for Hamas as "Hamas's public relations division"—were "vague" and "all very general and conclusory and do not specifically relate to the injuries complained of here." *Id.* at 57-58, compared to this case, SAC Doc. 66 ¶¶ 2, 89, 229, 240. The court further found "Plaintiffs do not plead specific facts adequate to 'draw a sufficient connection between the cause of action [Plaintiffs] seek—aiding and abetting [Hamas's October 7, 2023 attack] overseas—and [Defendants'] domestic conduct." *Id.* at 59, citing *Nestle*, 593 U.S. at 634. Here, Plaintiffs are unable to distinguish their pleadings from those of the *Parizer* plaintiffs with regard to domestic conduct, and fail to overcome the presumption against extraterritoriality that was dispositive in *Parizer*.

Addressing plaintiffs' ATA claim, citing *Twitter* and *Halberstam*, the *Parizer* court reasoned, "[t]he allegations fall short of showing that Defendants gave knowing and substantial assistance to Hamas's October 7, 2023 attack under the *Halberstam/Taamneh* framework." *Id.* at 72. Rejecting plaintiffs' chain of baseless inferences, the court explained, "[u]nder any theory, liability requires a connection between the alleged assistance and the specific act of international terrorism that injured plaintiffs; a failure to allege any "definable nexus" between the assistance provided and the wrongful act—"at minimum—drastically increases their burden to show that defendants somehow consciously and culpably assisted the attack." *Id.* at 70-71. "Plaintiffs' broad assertion that 'Defendants' support has been so systematic that Defendants aid and abet every wrongful act committed by Hamas and its affiliates' does not overcome this deficiency." *Id.* at 73. As made clear "[u]nder *Taamneh*, allegations of 'systemic' support do not circumvent the necessity to sufficiently allege 'defendants actually aided and abetted each tort of that enterprise."" *Id.*, citing *Twitter*, 598 U.S. at 506; Doc. 90 at 45.

Speaking directly to the same allegations in the instant case—that "Hamas applauded and

celebrated" the U.S. protests, or the speaker at a Columbia University event stating Hamas appreciated the "support" American student protests gave them—the *Parizer* court held that "[t]hose facts, even taken as true, do not support the inference that Defendants' actions specifically assisted with Hamas's October 7, 2023 attack or subsequent violations of international law." *Parizer*, 2025 U.S. Dist. LEXIS 158917 at 62. *Parizer* also dismissed Plaintiffs' argument that the NSJP toolkit, the same one at issue here, shows NJSP and Defendant organizations admit they are part of Hamas, finding the toolkit was not "an admission by NSJP that it is 'part of Hamas and works to further its evil ends.'" *Id.* at 65.

Just as in *Parizer*, Plaintiffs here fail to "allege any 'definable nexus' between the assistance provided and the wrongful act." *Id.* at 70-71. Plaintiffs fail to "show that defendants somehow consciously and culpably assisted the attack." *Id.* at 71 (internal quotations omitted). Even assuming Plaintiffs could allege an attenuated nexus, Plaintiffs have not shown "intentional aid that substantially furthered the tort," or prior knowledge of the October 7, 2023 attack. *Id.* at 72. The *Parizer* court already ruled the same chants, the same statement that Hamas appreciated the student protests, the same toolkit, same speech, and same alleged conduct "fall[s] short of showing that Defendants gave knowing and substantial assistance to Hamas's October 7, 2023 attack under the *Halberstam/Taamneh* framework." *Id. See also* Defendant Columbia-Barnard Jewish Voice for Peace, Motion to Dismiss the SAC, Doc. 70 at 10-18.

The *Parizer* plaintiffs failed to plausibly allege any definable nexus between defendants' alleged conduct and plaintiffs' claimed injuries. Those lawyers have failed again here. Plaintiffs do not identify any distinguishing factual allegation that would render the required nexus any more plausible here than it was in *Parizer*. Instead, Plaintiffs rely completely on the unsupported suggestion that the severity of their injuries and allegedly culpable mens rea of Defendants all-

but-eliminates the need for an actual definable nexus. Doc. 90 at 34-35. They mislead the Court, as their suggestion flies in the face of *Twitter* and *Halberstam*.

**B.  *Gerwaski* Held that the First Amendment Protected Nearly the Exact Same Conduct and Speech Alleged Here**

*Parizer* cited *Gerwaski v. Nev. Ex rel. Bd. Of Regents of the NV Sys. Of Higher Educ.*, another dismissed case that was substantially similar to this one. 2025 U.S. Dist. LEXIS 84645 *1. The plaintiff in *Gerwaski* also brought an ATA claim against several advocacy organizations based on the October 7 attacks. *Id.* As in this case, the *Gerwaski* plaintiffs pointed to the same exact NSJP toolkit at issue here, and claimed that some language mirrored Hamas' language, and that defendants were a "propaganda machine for Hamas and its affiliates across American college campuses," and "foot soldiers for Hamas's propaganda battle on university campuses." *Id.* at 3-4. As in this case, *Gerwaski* plaintiffs pointed to the same speech such as "from the river to the sea, Palestine will be free," "long live the intifada," "Day of Resistance," "armed struggle," claims of being "part of this battle," signing of the Al-Aqsa statement, and chanting. *Id.* at 4; *Gerwaski*, 2:24-cv-00985 (D. Nev. 2025), Second Amended Complaint ("SAC"), Doc. 79. Just as in this case, *Gerwaski* plaintiffs alleged "Defendants encouraged their members to exert political pressure. . . in service of Hamas's goals." *Gerwaski*, SAC, Doc. 79 ¶ 113.

The *Gerwaski* court found these same allegations did "not plausibly allege that [Defendants] provided substantial assistance to Hamas for its act of international terrorism . . . Even if vocal support from across the world could be substantial assistance for future acts of terrorism, Gerwaski does not allege any actions by the defendants that substantially assisted the October 7, 2023 act of international terrorism." 2025 U.S. Dist. LEXIS 84645 at 15. The Court held the same alleged conduct was protected by the First Amendment:

All the conduct alleged appears to take place in public areas and involves speech on the

> conflict between Israel and Palestine. . . This is a matter of public, rather than private
> concern. . . None of the speech described could be interpreted as likely to incite imminent
> lawless action or as a serious express of intent to harm any particular individual.

*Id.* at 21-22. The court found that while "[s]ome of the slogans [as used here] in this toolkit

mirror the messaging used by Hamas" – such as Defendants "chanted 'from the River to the Sea,

Palestine will be free' and 'long live the Intifada,'" and Hamas praised the U.S. protests, the

actual conduct alleged by defendants was still firmly protected speech. *Id.* at 4-5, 20-22.

Rejecting *Gerwaski's* allegations that Defendants knowingly provided support to Hamas

and identified as part of Hamas, the court reasoned,

> [plaintiff] alleges . . . that [d]efendants identify themselves as not just aligned with
> Hamas's terrorist activities, but 'PART of' them . . . But these conclusory statements are
> not plausibly supported by the factual allegations in the FAC. *Gerwaski* relies on the fact
> that NSJP claims to be part of the "Unity Intifada" movement and allegedly puts forth its
> messages in response to Hamas's rhetoric or vice versa. Id. at 20-21, 27. And Hamas has
> expressed that it is pleased and reinvigorated by the protests on American college
> campuses. Id. at 26-27. Even taking these allegations as true, they do not plausibly show
> that AMP and SJP-UNLV are providing personnel or service to Hamas rather than
> independent advocacy.

*Id.* at 22.

Finally, Plaintiffs attempt to overcome *Gewarski*'s First Amendment holding—that the

same speech and advocacy at issue in this case was clearly protected—by asserting that

"coordination" is pled more in this case. As discussed elsewhere herein, coordination is

irrelevant in the context of Plaintiffs' invoked statutes, and has not been plausibly alleged

regardless. Plaintiffs' specific factual allegations do not permit a plausible inference that

Bazrouk coordinated *any* of his activities with Hamas, and certainly do not permit an inference

that Defendants—*through* Bazrouk—coordinated the speech and activism in question with

Hamas. Even if Plaintiffs' addition of Bazrouk as a Defendant permitted them to plausibly allege

some form of coordination with Hamas—which it does not—it still would not show any of the

required aiding and abetting elements. It does not show knowing and substantial assistance to the Hamas attacks that injured them, nor general awareness of playing some role in those attacks, nor any substantial effect on those attacks.

Just as in *Parizer*, the Court in *Gerwaski* found the same speech, acts, protests and underlying conduct at issue here was insufficient to plead liability under the ATA, and was in fact protected by the First Amendment. The conduct alleged here is protected for the same reasons.

### C.  Plaintiffs' Attempts to Distinguish Their Pleadings from *Parizer* and *Gewarski* Fail

Plaintiffs attempt to distinguish their pleadings from the inadequate pleadings in *Parizer* and *Gewarski* by pointing to four ostensibly distinct allegations: (1) that Plaintiffs claim damages from fighting in Gaza "for up to a year after October 7," (2) that Columbia SJP made its first social media post of the semester "shortly before October 7," (3) that Kiswani "urged" Hamas attacks before October 7, and (4) that Defendants "coordinated with Hamas" through co-defendant Bazrouk. Doc. 90 at 2, 5, 60.

These additions are inconsequential and do not distinguish *Parizer* or *Gewarski.* They show neither general awareness nor knowing and substantial assistance. They do not establish a plausible nexus of any sort between Defendants' alleged conduct and Plaintiffs' alleged injuries. They do not establish extraterritorial subject matter jurisdiction under the ATS. Finally, they do not strip the speech and advocacy in question of its First Amendment protection.

First, Plaintiffs misread the court's decision in *Parizer*. They assert their claims in this case are "wholly unlike other cases brought by victims of Hamas' crimes who were injured in discrete attacks that began and ended on October 7," Doc. 90 at 2, but the *Parizer* court specifically considered similarly-alleged damages due to ongoing Hamas military activities in

Gaza *after* October 7, 2023:

> Plaintiffs do make random allegations regarding 'ongoing' rocket attacks. But, Plaintiffs allegations in this regard are not specific and Plaintiffs, again, fail to connect any of these ongoing attacks to specific support provided by these Defendants such that this court could exercise subject matter jurisdiction [over the ATS claims] or such that this Court could conclude that Plaintiffs have plausibly alleged that *these* Defendants are responsible for and can be held liable for their injuries.

*Parizer*, 2025 U.S. Dist. LEXIS 158917 at fn. 9 (emphasis in original). Plaintiffs in the instant case equally fail to allege any nexus between Defendants' alleged conduct and the specific battles in which they were injured—this is as true of their post-October 7 injuries as it is of their injuries on October 7. This failure is fatal to their ATS claim because it deprives the court of extraterritorial subject matter jurisdiction, and it is fatal to their ATA claim because it still fails to show the required nexus.

Second, as addressed more at length in Columbia SJP's Motion to Dismiss, Doc. 70 at 14, Plaintiffs' allegation that a student organization published its first post of the semester an indeterminate "short time" before October 7 is utterly impertinent. The semester began in September. Plaintiffs' allegation simply means this post was published towards the beginning of the semester following a short hiatus during the summer semester, when students were not on campus. It does not, in any way, fortify Plaintiffs' claims that Defendants had prior knowledge of Hamas's October 7 attack and were generally aware of and substantially assisted Hamas's activities.

Third, as argued previously, Doc. 70 at fn. 2, Plaintiffs' cherry-picked quotes by Defendant Kiswani also show no general awareness of a role in the acts that injured Plaintiffs, knowing and substantial contributions to those acts, nor coordination with Hamas. Despite Plaintiffs' best efforts to curate a list of Kiswani's most damning tweets, not a single quote mentions Hamas *whatsoever*. The quotes show only a generalized moral and ethical stance

against Israel and its actions. Try as they may, Plaintiffs still cannot plausibly allege that Kiswani was generally aware of playing some alleged role in, provided knowing and substantial support to, nor had a substantial effect on the attacks that injured them.

Finally, as argued above, coordination is irrelevant in the context of this civil case, whether through Bazrouk or anyone else. Even if Plaintiffs did plausibly allege Defendants coordinated with Hamas through Bazrouk, they still fail to show how this "coordination" establishes Defendants had general awareness of some role they played in the attacks, and knowing and substantial assistance to the acts that injured Plaintiffs.

### III.    Plaintiffs Still Fail to Plead an ATA Claim, Ignoring the Controlling Precedent of *Twitter* and *Ashley*

Despite over one hundred pages of charged rhetoric and sophistry, Plaintiffs still fail to plausibly plead an ATA claim for the same reasons that proved dispositive in the cases cited above—they have failed to plead general awareness and knowing and substantial assistance. Instead, they cite extensively to irrelevant criminal law as a distraction from their inability to plausibly plead that student activism provided knowing and substantial assistance to Hamas' military operations in Gaza. Despite these distractions, the controlling framework for evaluating a civil claim for aiding and abetting under the ATA remains that set forth in *Halberstam* and *Twitter*, and reaffirmed in *Ashley*. *Twitter*, 598 U.S. 471; *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983); *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420 (2d Cir. 2025).

By blurring the lines between criminal material support and civil liability under the ATA, Plaintiffs do what the courts in Plaintiffs' cited cases *Kaplan, Linde* and *Honickman* expressly warned against. As made clear in *Kaplan,* "knowingly providing material support to an FTO, without more, does not as a matter of law satisfy the general awareness element." *Kaplan v. Lebanese Canadian Bank, SAL,* 999 F.3d 842, 860 (2d Cir. 2021), *citing Linde v. Arab Bank,*

*PLC*, 882 F.3d 314, 329-330 (2d Cir. 2018). As emphasized in *Honickman,* "*Linde* could not have been clearer: aiding and abetting 'requires more than the provision of material support to a designated terrorist organization.'" *Honickman v. BLOM*, 6 F.4th 487, 499 (2d Cir. 2021), quoting *Linde,* 882 F.3d at 329. Plaintiffs here attempt to do what the *Honickman* plaintiffs did, which the court rejected: "displace the aiding-and-abetting standard with the standard for criminal material support by making 'knowingly providing material support to an FTO, without more' sufficient 'as a matter of law' for the general awareness element." *Id.*, *citing Kaplan*, 999 F.3d at 860. *Honickman* forewarned, "[n]ot only would this erase *Linde*'s distinction between general awareness and criminal material support, but it would also evade *Halberstam*'s foreseeability standard." *Id.*

      Here, by citing to *criminal* cases, Plaintiffs essentially "erase *Linde's* distinction between general awareness and criminal material support," and "evade *Halberstam's* foreseeability standard." *Id*. In any event, Plaintiffs' claims still fail, as "aiding and abetting requires more than the provision of material support to a designated terrorist organization." *Id.* (internal citations omitted). Plaintiffs ask this court to "displace the aiding-and-abetting standard with the standard for criminal material support by making 'knowingly providing material support to an FTO, without more' sufficient 'as a matter of law' for the general awareness element." *Id*. It may not do so.

      As argued extensively in Defendants' Motions to Dismiss, Plaintiffs cannot meet *Twitter'*s pleading requirement of showing general awareness and knowing and substantial assistance to the specific torts that injured them, nor can they plausibly allege that Defendants "so consciously 'participate[d]' in a series of tortious acts in order to 'make [each one] succeed.'" *Twitter,* 598 U.S. at 496. "It is not enough [for an aiding and abetting claim under the

ATA], as [P]laintiffs contend, that [] [D]efendant[s] have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the *actionable wrongs* that constitute it." *Id.* at 495. To properly plead an aiding and abetting claim under the ATA, Plaintiffs must show Defendants "aided and abetted (by knowingly providing substantial assistance)" to the specific act of international terrorism that injured them. *Id.*

## A. Plaintiffs fail to plead general awareness

Plaintiffs still cannot plausibly allege general awareness. Plaintiffs rely on *Zobay* to claim the general awareness standard is satisfied here. But *Zobay* is distinguishable because the conduct at issue was so much more culpable. *Zobay v. MTN Grp. Ltd.,* 695 F. Supp. 3d 301 (E.D.N.Y. 2023).[2]

In *Newman v. AP,* a case nearly identical to this one, brought by some of *the same Plaintiffs' attorneys as in this case*, the court distinguished *Zobay's* general awareness and knowing and substantial assistance analysis, finding plaintiffs' allegations insufficient. 758 F.

---

[2] *Zobay*, 695 F. Supp. 3d at 319 ("Leaked whistleblower documents have revealed that [defendant] MTN Group 'openly discussed circumventing U.S. sanctions to source American tech equipment for MTN Irancell [an organization Plaintiffs alleged provided tens of millions of dollars annually to support FTOs].'"); *Id.* ("[Defendant] MTN procured these technologies through U.S. agents. . . by knowingly evading U.S. sanctions"); *Id.* ("On March 7, 2017, [defendant] ZTE Corp. pleaded guilty to violating trade sanctions by sending U.S. origin goods to Iran" and signed a settlement agreement with OFAC admitting to "knowingly participating in a scheme of at least 251 transactions to illegally transfer over $39 million in embargoed U.S. goods to Iran."); *Id.* ("The OFAC Settlement Agreement details [defendant] ZTE Corp.'s attempted concealment of the scheme" which was "company-wide" to "evade trade sanctions by using third-party companies" to "to conceal and facilitate its business of shipping U.S.-origin goods to Iran."); *Id.* (Defendant ZTE's former general counsel "gave the FBI an affidavit in which he alleged that ZTE had plotted to cover up the Iran sales of U.S.-origin goods."); *Id.* ("Despite U.S. and Afghan government opposition, [defendant] MTN also supported the Taliban in Afghanistan by (1) issuing protection payments and (2) deactivating its cell towers at the Taliban's request."); *Id.* at 320 ("The Taliban asked MTN Group and other telecom companies to pay monthly protection fees in each province—usually in the range of $2,000 per tower—or else face attacks on its staff and network.").

Supp. 3d 1357, 1372-1373 (S.D. Fla. 2024). *Newman* was also brought by plaintiff victims of Hamas's October 7 attack. *Id.* Just as in this case, plaintiffs brought claims under the ATA for aiding and abetting international terrorism against AP, based on AP's publication of real time photos and articles about Hamas' conduct, including paying Gaza-based photojournalists who plaintiffs alleged were longstanding Hamas affiliates acting to further Hamas' goals and objectives. *Id.*

But *Newman* found AP defendants lacked both general awareness, and knowing and substantial assistance. *Id.* at 1370. Finding plaintiffs had not adequately alleged general awareness under the civil standard, the court stated

> [e]ven assuming the AP knew that [the Gaza photojournalist] had ties to Hamas through his social media posts and an anonymous tip from years prior, that is not enough to establish that the AP was aware of any role of their own in terrorist activities, specifically in the October 7 Attack. *See Linde,* 882 F.3d at 330 (comparing the "general awareness" requirement under JASTA's secondary liability provision from the *mens rea* required to establish material support in violation of 18 U.S.C. § 2339B, the latter "which requires only knowledge of the organization's connection to terrorism, not intent to further its terrorist activities or awareness that one is playing a role in those activities."). . . With respect to claims that Hamas used the AP's photos as a tool of propaganda, this allegation failed to suggest how the AP would have been aware that its publication of truthful images was in some way furthering Hamas's terrorist activities and mission.

*Id.* at 1369.

Here, like in *Newman,* "even assuming [Defendants] [associated with those they] knew [] had ties to Hamas through [their] social media posts and an anonymous tip from years prior, that is not enough to establish that the[y] [were] aware of any role of their own in terrorist activities, specifically in the October 7 Attack." *Id.* Plaintiffs try to skirt *Linde* by merging the criminal mens rea standard with the "general awareness" requirement for civil liability. Even alleging Defendants posted or promoted Hamas' propaganda is not enough to plead Defendants were aware they were "in some way furthering Hamas's terrorist activities and mission." *Id.*

In a last-ditch effort to save their complaint, Plaintiffs assert that Defendant Bazrouk's alleged conduct permits an inference of co-Defendants' general awareness merely because he attended protests, appeared in a social media photo, or because of co-Defendants' opposition to the criminal case against him. Doc. 90 at 29, 65. Yet try as they may, Defendants fail to plausibly allege Bazrouk coordinated any speech or activity with Hamas, even less that other Defendants had any interaction or contact with Hamas through Bazrouk.

Plaintiffs' allegation that Bazrouk was a member of or associated with WOL or other Defendants rests on (1) Bazrouk's attendance at protests, some of which Defendant organizations called for or led, and (2) Bazrouk's alleged appearance in a single WOL social media post, published in September 2021, showing numerous masked individuals at a protest. Doc. 66 at 213-18. Given Defendants' consistent protest activities, the multitude of people who have attended them, and the fact that the single social media photo is of masked individuals two years before any of Plaintiffs' injuries, these allegations simply cannot render plausible an inference that Bazrouk was a member of any Defendant organization during the relevant period. Nor certainly that Defendants conspired or coordinated with Hamas through Bazrouk. Even Plaintiffs' cited authority, *Zobay*, clarified that general awareness can only be shown via an intermediary where "(1) the defendant was aware of the intermediary's connection to the terrorist organization, and (2) the intermediary is 'so closely intertwined' with the terrorist organization's illegal activities that one can reasonably infer the defendant was generally aware of its role in terrorist activities." 695 F. Supp. 3d 301. Plaintiffs do not even attempt to plead that co-Defendants were aware of Bazrouk's alleged "connection" to Hamas, nor that Bazrouk was so closely intertwined with Hamas that this Court may plausibly infer general awareness by co-Defendants.

Finally, Plaintiffs claim to be unsure of whether Defendant Kiswani contests general awareness. Doc. 90 at 34 ("it does not appear that Kiswani or Within Our Lifetime challenges this element"). Defendant Kiswani joined and adopted all "Motions to Dismiss and to Strike filed by Co-Defendants," and certainly joins the arguments by co-Defendants that Plaintiffs have failed to plausibly allege general awareness. Doc. 70 ¶ 2.

### B.  Plaintiffs fail to plausibly plead knowing and substantial assistance

Even if this Court finds Plaintiffs plausibly allege general awareness, they must also independently plead "knowing and substantial assistance." *Twitter* made clear that the "'knowing' subelement [was not] a carbon copy of the antecedent element of whether the defendants were 'generally aware' of their role." *Twitter*, 598 U.S. at 503-04. Instead, "'the knowledge and substantial assistance' components should be considered relative to one another as part of a single inquiry designed to capture conscious and culpable conduct." *Id.* (internal citations omitted). "[T]he 'knowing' part of that inquiry is therefore designed to capture the defendants' state of mind with respect to their actions and the tortious conduct" and is "not the same general awareness that defines *Halberstam*'s second element." *Id.*

This case is comparable in this regard to *Newman* and *Ashley,* in which the courts found that the plaintiffs had not sufficiently pled aiding and abetting liability because they failed to plausibly allege substantial support, and failed to allege conscious and culpable conduct. *Newman*, 758 F. Supp. 3d 1357; *Ashley*, 144 F.4th 420. The court in *Newman* found plaintiffs failed to allege AP provided substantial assistance. *Newman*, 758 F. Supp. 3d at 1371; *Halberstam*, 705 F.2d 472. Plaintiffs argued that because Hamas's campaign "was extraordinarily blameworthy, even relatively trivial aid could count as substantial," and that AP's assistance was "not generally available to the public *as is a social media platform.*" *Newman*,

758 F. Supp. 3d at 1371 (emphasis added). But the court disagreed and noted that even "promoting an FTO's content," as alleged in *Twitter*, failed to adequately plead substantial assistance. 598 U.S. at 498. *Newman* distinguished itself from cases like *Zobay* where plaintiffs alleged specific amounts of money or other assistance that went to terrorist groups. *Newman*, 758 F. Supp. 3d at 1371; *Zobay*, 695 F. Supp. 3d at 348.

Here, like *Newman,* Plaintiffs' allegations that Defendants used their publicly available social media platforms to "encourage" Hamas is not enough. Plaintiffs' allegations of Defendants' speech, chants and social media posts using similar language to Hamas "is a far cry from [*Zobay's*] active business partnership." *Newman*, 758 F. Supp. 3d at 1372-1373. Even if Plaintiffs sufficiently alleged Defendants "promot[ed] [Hamas'] content" as alleged in *Twitter*, that still fails to adequately plead substantial assistance. 598 U.S. at 498.

Plaintiffs attempt to argue that "encouragement and advice" alone can qualify as knowing and substantial assistance, yet identify no decision upholding a civil ATA or ATS claim on that basis. Plaintiffs do not even plausibly allege *advice*. At best, they allege broad, generalized statements opposing the genocide, and not encouragement of any specific tort. *See, e.g.,* Doc. 90 at 37-38. In support of their argument, Plaintiffs cite *Rosemond v. United States*, a distinguishable *criminal drug sale case* whose finding was not based on encouragement alone. 572 U.S. 65 (2014). *Halberstam* has already considered that while "[s]uggestive words may also be enough to create joint liability," words alone do not create liability, but rather "*when they plant the seeds of action* and are *spoken by a person in an apparent position of authority*." 705 F.2d at 481-482 (emphasis added). Meaning they "spark" the tortious conduct. *Id.* at 484. Plaintiffs do not plausibly allege that any Defendant "plant[ed] the seeds of action," or that any of them were "in an apparent position of authority" when speaking. *Id.*

Despite Plaintiffs citing *Ashley* to support their theory, the facts and holding in *Ashley* finding defendants not liable for aiding and abetting terrorism is much more closely aligned to Defendants' position than Plaintiffs'. *Ashley*, 144 F.4th 420. *Ashley* establishes that even where plaintiffs plead significant general awareness, the claim still fails if they do not plead knowing and substantial assistance through conscious and culpable conduct. The *Ashley* court found defendant banks were generally aware of their indirect role in a bank customer organization's bombmaking operation, continuing to provide the companies banking services after learning the "Companies' product was the source for the explosive materials used by [the terrorist organization]." *Ashley,* 144 F.4th at 440. The court further found that Defendant bank "certainly became generally aware of its connection" when a Lieutenant told them the product was the source for the explosive materials the terrorist organization used, that the materials caused 80 percent of American bomb casualties in Afghanistan, that the companies refused to cooperate with efforts to prevent smuggling the materials into Afghanistan, and defendants' banking services were "crucial to allow the Companies to produce the amount of fertilizer necessary to 'sustain' the Syndicate's attacks." *Id.* But after this meeting, even though "SCB was generally aware that its banking services would play a role (albeit indirectly) in the Syndicate's use of CAN bombs against Americans, especially because the Companies had rebuffed the U.S. Government's efforts to prevent traffickers from diverting CAN to Afghanistan," defendant banks continued to offer banking services to the organizations. *Id.*

Yet despite all of this vast general awareness and continuing to offer "critical" banking services to the terrorist organization, the court still affirmed granting defendants' motion to dismiss, finding that defendant banks did not consciously and culpably seek to make the bombings succeed. The court reasoned, citing *Twitter,* "*it is not enough to say that the defendant*

*assisted the terrorist organization's 'activities in general*,'" and "the complaint offers *no discernable nexus* between the money laundering and the attacks committed against Plaintiffs." *Id.* at 444, *citing Twitter,* 498 U.S. at 501, 503 (emphasis added). The court noted, "we know from *Twitter* that knowledge of one's role in terrorist activities by itself is insufficient to allege an aiding-and-abetting claim." *Ashley,* 144 F.4th at 440, *citing Twitter,* 498 U.S. at 497, 501. Just like in *Twitter, Ashley* "plaintiffs' allegations were insufficient to plead knowing and substantial assistance," and do not allege defendant banks "consciously and culpably sought to make the [organization's] bombings succeed." *Id.* "Plaintiffs allege sweeping theories of international criminal conspiracies spanning different continents and terrorist organizations without ever persuasively tying those theories to the terrorist attacks here." *Id.* at 439. While the banks' "continued services demonstrate knowledge, acquiescence, carelessness, indifference, lack of concern," they do not demonstrate "interested cooperation, stimulation, instigation." *Id.* at 443 (internal citations omitted). "Without something more to indicate a willingness to aid the [organization's] terrorist activities, Plaintiffs' aiding-and-abetting claim against [defendant] for its banking services to the Companies fails." *Id.* "[W]ith allegations that require making significant assumptions to establish a connection to [] terrorist activities, [the *Ashley* court] decline[d] to endorse" plaintiffs' theory. *Id.* at 446.

Here, Plaintiffs cannot even allege Defendants provided a service like banking, had any knowledge their conduct "was the source of for the explosive materials" such that they were critical to sustaining Hamas's acts, nor gave critical services knowing they played a role in Hamas' acts. *Id.* at 440. Even if Plaintiffs could, which they cannot, establish Defendants' acts show "continued service[] demonstrate[ing] knowledge acquiescence, carelessness, indifference, lack of concern," they do not demonstrate "interested cooperation, stimulation, instigation." *Id.*

at 443. There is no "discernible nexus" between Defendants' acts and Hamas' acts. *Id.* at 444. Instead, "Plaintiffs allege sweeping theories of international criminal conspiracies spanning different continents and terrorist organizations [going back decades] without ever persuasively tying those theories to the terrorist attacks here." *Id.* at 439. This was not enough in *Ashley,* and it is still not enough here.

Though Plaintiffs seek refuge in *Kaplan* and its ruling denying defendants' motion to dismiss, they gloss over a critical fact in *Kaplan*: that the defendant banks gave "special treatment" to the organizations they were accused of supporting. *Kaplan,* 999 F.3d 842. The *Ashley* court distinguished *Kaplan*, reasoning that in *Kaplan* it "held that the plaintiffs sufficiently stated a claim premised on the bank's role in money laundering. Not only were the bank's clients clearly and publicly identified as part of the terrorist organization, but the bank *violated sanctions laws* and *granted exemptions to obscure* the substance of deposits, including for a client known to provide financial support to suicide bombers' families." *Ashley,* 144 F.4th at 446-447, *citing Kaplan*, 999 F.3d at 858, 865 (emphasis added).

Here, Defendants are not alleged to have given any "special treatment" to Hamas anywhere near the scale of deliberately "circumventing sanctions imposed in order to hinder terrorist activity.'" *Id.* at 443, *citing Kaplan,* 999 F.3d at 866. At best, Plaintiffs allege Defendants read a speech by an FTO member, or declared abstract support for "the Palestinian resistance." Doc. 90 at 37, 39. This same conduct was already alleged and dismissed as inadequate in *Parizer* and *Gewarski*, and Plaintiffs have not and cannot allege any conduct close to "violat[ing] sanctions law," or "grant[ing] exemptions to obscure" the conduct of someone "known to provide financial support to suicide bombers' families." *Ashley,* 144 F.4th at 445.

/ / /

**IV.    Plaintiffs fail to plead an ATS claim**

Plaintiffs still fail to properly plead aiding and abetting under the Alien Tort Statute. Even if the Court finds Plaintiffs sufficiently allege a universal international norm, by simply substituting the word "terrorism" with "crimes against humanity," they still cannot meet the aiding and abetting standard set in *Presbyterian Church of Sudan v. Talisman Energy, Inc.* 582 F.3d 244 (2d 2009). To sufficiently plead aiding and abetting a violation of an international norm, a plaintiff must show defendants (1) knowingly, meaning with purpose and not knowledge alone, provided practical assistance to the principal which had a *substantial effect* on the perpetration of the crime, and (2) with the purpose of facilitating it. *Id.* at 259. Straining to satisfy the conduct requirement, Defendants cite the concurring, and thus nonbinding, opinion in *Khulumani v. Barclay Nat'l Bank Ltd.* to dress up vague allegations of "encouragement" and "moral support" as culpable conduct under the ATS. 504 F.3d 254 (2d Cir. 2007). Plaintiffs cannot reach this threshold. They simply repeat conclusory allegations, some improperly raised in their Opposition for the first time, that "Defendants support Hamas by encouraging and advising Hamas to commit its crimes. . . [with] propaganda and recruiting services," yet with no specific allegations as to what of Defendants' conduct did this, how Defendants' speech and protest advised or encouraged Hamas, and what exactly Defendants encouraged or advised. Doc. 90 at 55-56. Plaintiffs still have not stated what exactly this purposeful "practical assistance" was, and if it was simply Defendants' speech, how that speech had a "substantial effect" on Hamas' acts. *Talisman,* 582 F.3d at 259.

Plaintiffs are additionally unable to satisfy the mens rea prong of aiding and abetting liability under the ATS because they cannot show "purposeful" assistance. Instead, Plaintiffs simply import the aiding and abetting standards from the ATA. Even if the ATA standards were

relevant here, which they are not, as shown above, Plaintiffs clearly do not sufficiently plead an ATA claim. Plaintiffs point to *Licci* in support of the intent prong of their ATS claim. *Licci v. Lebanese Canadian Bank, SAL,* 834 F.3d 201, 218-219 (2d Cir. 2016). *Licci* found plaintiffs' allegations that defendants assisted an FTO *by carrying out wire transfers between the FTO's controlled bank accounts that defendant banks knew were FTO accounts and knew this assisted the FTO in committing its crimes,* combined with knowing who the FTO was, was sufficient to allege acting with purpose to facilitate the FTO's crimes. *Id.* at 218-219 (emphasis added). Here, unlike in *Licci,* Plaintiffs do not show any such direct aid such as wire transfers to actors known to be part of Hamas. Plaintiffs fail to plausibly allege purposeful assistance to the acts that harmed them, and fail to articulate how that assistance had a "substantial effect" on those underlying torts.

Finally, as argued above, Plaintiffs' ATS claim should be dismissed for the same reasons given in *Parizer*. Most importantly, because the alleged domestic speech and activism in support of "the Palestinian resistance" is insufficient to overcome the strict presumption against exercising subject matter jurisdiction over the extraterritorial acts that injured Plaintiffs. Plaintiffs allege no additional facts that would render the presumption any less applicable in this case, and their claim must be dismissed for lack of subject matter jurisdiction.

## V.     Leave to Amend Should Be Denied if Requested, and Dismissal Should Be With Prejudice

As the Court already stated in its Order, Plaintiffs should not be granted "any further opportunity to amend the complaint to address issues raised by the motions to dismiss." Doc. 64 at 1. Plaintiffs have filed three complaints, filing the SAC after having the benefit of reading Defendants' first motions to dismiss the FAC. FAC, Doc. 36; JVP Motion to Dismiss the FAC Doc. 55; SAC, Doc. 66. As the *Ashley* court held:

> Plaintiffs ask that if we find fault with any of their factual allegations, we allow them leave to amend their complaint. We decline to allow Plaintiffs who, after filing two complaints together totaling over 1,200 pages, failed to state a claim for relief, and who have largely failed to provide any specific explanation as to how they would fix their complaint. *See, e.g.*, *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ('[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied.').

*Ashley,* 144 F.4th at 448.

Here, Plaintiffs have "filed [three] complaints together totaling over [254] pages," as well as a near 30,000 word opposition to Defendants' motions to dismiss. *Ashley,* 144 F.4th at 448. Compl., Doc. 1; Doc. 36; Doc. 66; Doc. 90. And yet just as in *Ashley,* Plaintiffs object to this court denying them leave to amend their complaint once more. Doc. 90 at 87-88. It is improbable that Plaintiffs will be able to "provide any specific explanation as to how they would fix their complaint." *Ashley,* 144 F.4h at 448. After three complaints and two oppositions to Defendants' motions to dismiss, Plaintiffs cannot possibly "demonstrate that [they] would be able to amend [their] complaint in a manner which would survive dismissal." *Hayden,* 180 F.3d at 53.

Because Plaintiffs have repeatedly failed to plead a plausible entitlement to relief against Defendants, and because there is no basis in fact or law for their claims, these cases should be dismissed and dismissal should be with prejudice.

/ / /

/ / /

/ / /

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants CB-JVP, Within Our Lifetime, and Nerdeen Kiswani respectfully request that the Court dismiss the SAC in its entirety with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1), and strike the prejudicial and irrelevant sections of the SAC identified above under Fed. R. Civ. P. 12(f).


Dated: October 17, 2025    Respectfully submitted,

            */s/ Bina Ahmad*
            Bina Ahmad (admitted *pro hac vice*)
            Dan Stormer (admitted *pro hac vice*)
            Hanna Chandoo (admitted *pro hac vice*)
            HADSELL STORMER RENICK & DAI LLP
            128 N. Fair Oaks Ave.
            Pasadena, CA 91103
            626.585.9600
            bahmad@hadsellstormer.com
            dstormer@hadsellstormer.com
            hchandoo@hadsellstormer.com

            Attorneys for Columbia-Barnard A Jewish Voice for Peace

            */s/ Collin Poirot*
            Collin Poirot, Esq.
            2603 Oak Lawn Ave., Ste. 300
            Dallas, TX 75219
            214.392.2281
            cpoirot.law@gmail.com

            Jonathan Wallace, Esq.
            PO #728
            Amagansett NY 11930
            917.359.6234
            jonathan.wallace80@gmail.com


            Attorneys for Defendant Kiswani

## **WORD CERTIFICATION**

I certify that this document was prepared on a computer using word processing software which indicated that this document contains 8,830 words. This word count is in compliance with the Court's Order, Doc. 98, permitting Defendants' briefs to be a collective maximum of 25,000 words.


Dated: October 17, 2025            Respectfully submitted,

*/s/ Bina Ahmad*
Bina Ahmad (admitted *pro hac vice*)
Dan Stormer (admitted *pro hac vice*)
Hanna Chandoo (admitted *pro hac vice*)
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Ave.
Pasadena, CA 91103
626.585.9600
bahmad@hadsellstormer.com
dstormer@hadsellstormer.com
hchandoo@hadsellstormer.com