**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IRIS WEINSTEIN HAGGAI *et al.,* | **No. 25-Civ-2400** |
| *Plaintiffs,* | |
| v. | |
| NERDEEN KISWANI *et al.*, | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS JONES AND ALWAN'S
JOINT MOTION FOR SANCTIONS**

Joseph Pace
PACE FREEMAN LLP
30 Wall Street, 8th Floor
New York, NY 10005
Tel: (917) 336-3948
joseph@pacefreeman.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... i

INTRODUCTION ................................................................................................... 1

FACTS AND PROCEDURAL HISTORY ............................................................. 3

LEGAL STANDARD ............................................................................................. 6

    A. Rule 11 ...................................................................................................... 6

    B. The Court's Inherent Power and Section 1927 ....................................... 7

ARGUMENT ......................................................................................................... 7

    I.     THE COURT SHOULD SANCTION PLAINTIFFS' COUNSEL FOR THEIR
          REPEATED VIOLATIONS OF  RULE 11 ......................................................... 7

    A. This Action Was Brought for an Improper Purpose ................................. 7

    B. Plaintiffs' Claims are Legally Frivolous ................................................ 14

    C. Plaintiffs' Factual Claims Are Utterly Lacking in Support ................... 21

    D. Monetary Sanctions, Including Attorney's Fees, and an Apology Letter are
    Warranted .................................................................................................. 24

    II.    THE COURT SHOULD IMPOSE SANCTIONS UNDER § 1927 AND THE
          COURT'S INHERENT AUTHORITY ............................................................. 26

CONCLUSION .................................................................................................... 27

CERTIFICATION ............................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**

*Ammann v. Sharestates, Inc.,*
　　2024 U.S. Dist. LEXIS 50808 (E.D.N.Y. Mar. 21, 2024) ..................................16, 25, 26

*An v. Despins,*
　　2023 U.S. Dist. LEXIS 134571 (S.D.N.Y. Aug. 2, 2023) ...................................................9

*Ashley v. Deutsche Bank AG.,*
　　144 F.4th 420 (2d Cir. 2025) ...................................................15, 17, 18, 19

*Bakken Res., Inc. v. Edington,*
　　2019 U.S. Dist. LEXIS 55936 (S.D.N.Y. Mar. 29, 2019) ...................................................8

*Boim v. Quranic Literacy Inst.,*
　　291 F.3d 1000 (7th Cir. 2002) ...............................................................................11 n.2

*Caisse Nationale de Crédit Agricole-CNCA v. Valcorp, Inc.,*
　　28 F.3d 259 (2d Cir. 1994)...............................................................................28

*Cameau v. Nat'l Recovery Agency, Inc.,*
　　2018 U.S. Dist. LEXIS 168227 (E.D.N.Y. Sept. 28, 2018)...............................................26

*Canel v. Art Inst. of Chi.,*
　　2025 U.S. Dist. LEXIS 30309, at *25 (N.D. Ill. Feb. 20, 2025) ......................................30

*Chauvet v. Local 1199, Drug, Hosp. & Health Care Emples. Union,*
　　1996 U.S. Dist. LEXIS 17080 (S.D.N.Y. Nov. 14, 1996)...............................................18

*Craig v. City of New York,*
　　2022 U.S. Dist. LEXIS 110649 (E.D.N.Y. June 22, 2022) ...............................................23

*Easy Fin., LLC v. Churchill Mra Funding I LLC,*
　　2024 U.S. Dist. LEXIS 160020 (S.D.N.Y. Sept. 5, 2024)...............................................26

*Edmonds v. Seavey,*
　　2009 U.S. Dist. LEXIS 111915 (S.D.N.Y. Dec. 2, 2009) ...............................................8

*Eisemann v. Greene,*
　　204 F.3d 393 (2d Cir. 2000)...............................................................................31

*Elhanafi v. Fox Television Stations, Inc.,*
　　966 N.Y.S.2d 345 (N.Y. Sup. Ct. 2012) ...............................................................28

*Enmon v. Prospect Cap. Corp.,*
　　675 F.3d 138 (2d Cir. 2012)...............................................................................8

*Eyal Yakoby v. Trs. of the Univ. of Pa.,*
　　2025 U.S. Dist. LEXIS 103709  (E.D. Pa. June 2, 2025) ...............................................30

*Fracht FWO Inc. v. TPR Holdings LLC,*
　　2022 U.S. Dist. LEXIS 57355 (S.D.N.Y. Mar. 29, 2022) ...............................................14

*Gassman v. Cook Cty.,*
　　2025 U.S. Dist. LEXIS 199304 (N.D. Ill. Oct. 8, 2025)...............................................30

*Gerber v. Herskovitz,*
   2022 U.S. Dist. LEXIS 14186 (E.D. Mich. Jan. 25, 2022)..............................................10

*Gerwaski v. Nev. ex rel. Bd. of Regents of the NV Sys. of Higher Educ.,*
   2025 U.S. Dist. LEXIS 84645 (D. Nev. May 5, 2025)................................................11, 30

*Goldman v. Barrett,*
   825 F. App'x 35 (2d Cir. 2020) ...................................................................................21

*Hoatson v. N.Y. Archdiocese,*
   2007 U.S. Dist. LEXIS 9406 (S.D.N.Y. Feb. 8, 2007)...................................................12

*In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.,*
   712 F. Supp. 2d 255 (S.D.N.Y. 2010) ...........................................................................21

*In re Terrorist Attacks on September 11, 2001,*
   740 F. Supp. 2d 494 (S.D.N.Y. 2010) ...........................................................................11

*Jan v. People Media Project,*
   2025 U.S. Dist. LEXIS 18021 (W.D. Wash. Jan. 31, 2025)...........................................11

*Jones v. Combs,*
   759 F. Supp. 3d 534 (S.D.N.Y. 2024) .............................................................................7

*Jones v. Haynes,*
   2025 U.S. Dist. LEXIS 219146 (S.D.N.Y. Oct. 10, 2025) ..............................................32

*Junwu Gong v. Sarnoff,*
   2023 U.S. Dist. LEXIS 148971 (S.D.N.Y. Aug. 22, 2023) ...................................8, 23, 29

*Katzman v. Victoria's Secret Catalogue,*
   167 F.R.D. 649 (S.D.N.Y. 1996) .........................................................................8, 13, 14

*Kingvision Pay-Per-View Ltd. v. Ramierez,*
   2005 U.S. Dist. LEXIS 15015 (S.D.N.Y. July 28, 2005) ................................................21

*Kiobel v. Millson,*
   592 F.3d 78 (2d Cir. 2010).............................................................................................21

*Kopmar v. Ass'n of Legal Aid Attys.,*
   2025 U.S. Dist. LEXIS 134446 (S.D.N.Y. July 15, 2025) ..............................................11

*Landau v. Corp. of Haverford Coll.,*
   789 F. Supp. 3d 401 (E.D. Pa. 2025) ...................................................................11, 30, 31

*Lavi v. Unrwa USA Nat'l Comm., Inc.,*
   2025 U.S. Dist. LEXIS 153757 (D. Del. Aug. 8, 2025) ............................................29, 30

*LCS Grp., LLC v. Shire LLC,*
   2019 U.S. Dist. LEXIS 43255 (S.D.N.Y. Mar. 8, 2019) ...........................................13, 27

*Leisrael v. Educ. for A Just Peace in the Middle E.,*
   66 F.4th 1007 (D.C. Cir. 2023).....................................................................................30

*Levine v. F.D.I.C.,*
   2 F.3d 476 (2d Cir. 1993)...............................................................................................21

*Liebowitz v. Bandshell Artist Mgmt.,*
    6 F.4th 267 (2d Cir. 2021) ...................................................................................32

*Livevideo.Ai Corp. v. Redstone,*
    2025 U.S. Dist. LEXIS 194990 (S.D.N.Y. Aug. 12, 2025)...............................27

*Manhart v. WESPAC Found., Inc.,*
    2025 U.S. Dist. LEXIS 152019 (N.D. Ill. Aug. 7, 2025)............................12, 18

*Margo v. Weiss,*
    213 F.3d 55 (2d Cir. 2000)...................................................................................24

*McCracken v. Natale,*
    2008 U.S. Dist. LEXIS 102498 (E.D.N.Y. Dec. 17, 2008) ...............................20

*Newman v. AP,*
    758 F. Supp. 3d 1357 (S.D. Fla. 2024) ...............................................................29

*Newman v. AP,*
    2025 U.S. Dist. LEXIS 195002 (S.D. Fla. Sep. 28, 2025) .................................29

*Parents v. Liberated Ethnic Stud. Model Curriculum Consortium,*
    2025 U.S. Dist. LEXIS 104609 (C.D. Cal. May 23, 2025) ...............................31

*Parizer v. AJP Educ. Found., Inc.,*
    2025 U.S. Dist. LEXIS 158917 (E.D. Va. Aug. 15, 2025)..................26, 27, 30

*Perry v. Erie Cty. Sup. Court,*
    2024 U.S. Dist. LEXIS 207160 (W.D.N.Y. Nov. 14, 2024) ..............................31

*Presbyterian Church of Sudan v. Talisman Energy, Inc.,*
    582 F.3d 244 (2d Cir. 2009)................................................................................15

*Ramashwar v. Espinoza,*
    2006 U.S. Dist. LEXIS 721 (S.D.N.Y. Jan. 6, 2006).......................................27

*RSM Prod. Corp. v. Fridman,*
    643 F. Supp. 2d 382 (S.D.N.Y. 2009) ................................................................21

*Schlaifer Nance & Co. v. Estate of Warhol,*
    194 F.3d 323 (2d Cir. 1999).............................................................................8, 31

*Schottenstein v. Schottenstein,*
    230 F.R.D. 355 (S.D.N.Y. 2005) ........................................................................24

*Siegel v. Sahar Aziz,*
    2025 N.J. Super. Unpub. LEXIS 1236 (Super. Ct. App. Div. July 7, 2025) ....................31

*Snyder v. Phelps,*
    562 U.S. 443 (2011)...........................................................................................20

*Sofaly v. Portfolio Recovery Assocs.,*
    155 F.4th 289 (3d Cir. 2025) .........................................................................24, 29

*StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.,*
    158 F.4th 1 (1st Cir. 2025)...........................................................................11, 20, 30

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,*
    682 F.3d 170 (2d Cir. 2012)........................................................................................7

*Streamlined Consultants, Inc. v. EBF Holdings, LLC,*
    2023 U.S. Dist. LEXIS 159199 (S.D.N.Y. Sep. 8, 2023)..........................................27, 28

*Twitter, Inc. v. Taamneh,*
    598 U.S. 471 (2023).......................................................................................... *passim*

*United States v. Osadzinski,*
    97 F.4th 484 (7th Cir. 2024) ......................................................................................19

*Universitas Educ., LLC v. Nova Grp., Inc.,*
    2016 U.S. Dist. LEXIS 72268 (S.D.N.Y. Mar. 31, 2016) .................................................29

*Univ. of Md. Students for Just. in Palestine v. Bd. of Regents of the Univ. Sys. of Md.,*
    2024 U.S. Dist. LEXIS 178359 (D. Md. Oct. 1, 2024)......................................................11

*Wright v. Ernst & Young LLP,*
    152 F.3d 169 (2d Cir. 1998)........................................................................................16

**Statutes**

18 U.S.C. § 2333...............................................................................................................18
18 U.S.C. § 2338B.............................................................................................................19
28 U.S.C. § 1927.....................................................................................................1, 8, 31

**Rules**

Fed. R. Civ. P. 11 ................................................................................................... *passim*
Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment........................................25, 28

**Other Authorities**

Alex Kane, *Israels Scheme To Defund the BDS Movement*, IN THESE TIMES (Nov. 11, 2019) ....29

American Association of University Professors, "Discriminating Against Dissent: The
    Weaponization of Civil Rights Law to Repress Campus Speech on Palestine" (Nov.
    2025) ................................................................................................................30, 31

Danielle Wallace, *Israeli Hostages' Families Sue Mahmoud Khalil, Columbia Organizers as
    Alleged 'Hamas' Propaganda Arm' in NYC*, FOX NEWS (Mar. 25, 2025) .......................13

Jesus Mesa, *Columbia Activists Had Prior Knowledge of Oct. 7, Bombshell Lawsuit Claims*,
    NEWSWEEK (Mar. 25, 2025)......................................................................................13

Jonathan Stempel, *Lawsuit Says Palestinian Advocates at Columbia University Further Hamas
    Propaganda*, REUTERS (Mar. 24, 2025)......................................................................13

"Antisemitism is Real," THE SEAN HANNITY SHOW, iHeartRadio (May 5, 2025) .......................13

Defendants Cameron Jones and Maryam Alwan respectfully submit this memorandum in support of their motion to sanction Plaintiffs' attorneys pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent power to protect the administration of justice.

## INTRODUCTION

This motion is not directed at Plaintiffs, nor does it diminish the horrific injuries they have suffered. It is directed at their counsel, who have exploited those injuries to conscript this Court into the service of political theater. Sanctions are warranted for three reasons.

First, this action was brought for an improper purpose and in bad faith. Rather than plead the elements of an aiding-and-abetting claim under the Anti-Terrorism Act ("ATA") or the Alien Tort Statute ("ATS"), Plaintiffs' counsel offer buzzwords, jeremiad, and fever-swamp conspiracies untethered to any cognizable legal theory. While the gaping pleading deficiencies supply the inference of bad faith, the Court need not rely on inference alone. Plaintiffs' counsel proudly confess their improper purpose: silencing campus speech about Israel with which they disagree. They proclaim that speech "demonizing" Israel is a "crime against humanity." And they openly seek liability for public advocacy and sloganeering which, under decades of First Amendment law, is immunized from civil liability.

Plaintiffs' counsel's litigation conduct only confirms their bad faith. They went on a press junket accusing Jones, Alwan, and the organizations they allegedly led of having had advance warning of the October 7 attacks—then quietly abandoned those allegations during motion practice. They persisted with this suit even after two courts dismissed substantively identical complaints. They ignored *five* Safe Harbor letters and forced two wasteful rounds of motions to dismiss. Plaintiffs' counsel are far too savvy to have believed that their claims stood any chance of

success. The inescapable conclusion is that they pursued these claims to harass and smear protestors whose viewpoints they find objectionable.

Second, Plaintiffs' claims are legally frivolous. To state an ATA or ATS aiding-and-abetting claim, Plaintiffs must allege that Jones, Alwan, and their respective organizations "consciously and culpably participated in" the October 7 attacks, the retention of hostages, and Hamas's attacks on IDF soldiers. *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 506 (2023). Instead, Plaintiffs' counsel plead a non sequitur. Rather than allege assistance to those attacks, they claim the students aided Hamas's *U.S.-facing* propaganda campaign. Rather than plead an intent to facilitate terrorism, Plaintiffs assert that the protestors sought to "sway public opinion" about Israel. Plaintiffs posit that the students coordinated with Hamas—only to concede that this isn't a basis for liability, but an answer to the students' anticipated First Amendment defense. That this coordination has no basis in fact or law is almost beside the point, since Plaintiffs haven't pled a claim *requiring* a defense.

The opposition to the motion to dismiss only underscores the claims' frivolousness. Rather than argue for any modification of existing law, Plaintiffs' counsel simply misrepresent it. Having pled themselves into a cul-de-sac by alleging only student participation in a domestic campaign to influence public opinion, counsel attempt to rewrite the complaint, asserting that the students "advised and encouraged" Hamas to commit the attacks that injured Plaintiffs. That theory appears nowhere in the complaint, which alleges neither communication *with* nor advocacy directed *at* Hamas. Nor do Plaintiffs attempt to defend the facially absurd proposition that generic protest slogans about "resistance"—uttered 6,000 miles away on college campuses—had any effect whatsoever on Hamas's capacity or willingness to commit terrorism. More fundamentally, this new framing is irreconcilable with the complaint's coordination theory. Taken together, Plaintiffs'

allegations amount to the claim that Hamas encouraged students to protest in order to encourage Hamas to commit terrorism—a recursive loop that is not merely implausible, but incoherent.

Third, the SAC is replete with scandalous allegations devoid of evidentiary support. They falsely assert that Jones and Alwan self-advertise as members of Hamas's "propaganda arm," that they assaulted students and janitors, that they aided the October 7 attacks—and the list goes on. Any one of these false allegations is grounds enough for sanctions.

* * *

The need for sanctions here is profound. This case is the latest in a series of failed copycat lawsuits that cynically enlist the ATA and ATS as props to slander campus critics of Israel as accessories to terrorism—and Plaintiffs' counsel are repeat offenders. It has done incalculable damage to Jones and Alwan, who will be forever dogged by the false accusation that they aided a massacre. Mere dismissal cannot un-ring that bell, nor will it deter future litigants from weaponizing federal laws to muzzle disfavored speech. Only substantial monetary sanctions—coupled with an order requiring a letter of apology—will make clear that federal courts will not tolerate such abuses.

## FACTS AND PROCEDURAL HISTORY

On March 24, 2025, Plaintiffs initiated this action against, *inter alia*, Jones, Alwan, and their student organizations (Columbia JVP and Columbia SJP, respectively), ostensibly for aiding and abetting the October 7 attacks and Hamas's subsequent retention of hostages and attacks on IDF soldiers in Gaza.

The Complaint, however, did not plead a single fact in support of this theory. Instead, Plaintiffs alleged that Jones and Alwan were part of a student protest movement that facilitated Hamas's U.S.-facing public relations campaign by staging protests and signing public petitions. The Complaint claimed (with no factual backing) that the two "advertise themselves" as part of

3

Hamas's New York City and Columbia Campus "propaganda arm," the purpose of which is to "perpetuate objectively false propaganda and terrorize institutions to sway public opinion against Israel and toward Hamas." Compl. ¶¶ 1, 4. It detailed disruptions the protests caused within New York City. *Id.* ¶¶ 94-182. But it never alleged that those protest activities aided the terrorist attacks in Gaza that injured Plaintiffs nor that Jones and Alwan intended to aid those attacks, as the ATA and ATS both require. Indeed, the Complaint didn't plead *any* facts about Jones and Alwan apart from (i) their roles as *de facto* leaders of Columbia JVP and Columbia SJP and (ii) Alwan's presence at the Encampment protest. Compl. ¶¶ 23-24, 124.

On May 8, 2025, Jones and Alwan served a Rule 11 Safe Harbor letter detailing the deficiencies in the Complaint, including its failure to (1) allege that Jones and Alwan personally engaged in any conduct constituting aiding-and-abetting; (2) plead that the student protest activities *writ large* aided Hamas's terrorist actions abroad; (3) plead *any* activities predating October 7; and (4) substantiate its inflammatory claim that student groups had foreknowledge of the October 7 attacks. The letter also explained that the claims were independently barred by the First Amendment. Ex. A, Pace Declaration. Per Rule 11(c)(2), Jones and Alwan demanded the withdrawal of the Complaint within 21 days. Plaintiffs' counsel never responded.[1]

On May 29, 2025—the day before the motions to dismiss deadline, *see* ECF No. 28— Plaintiffs filed an amended complaint ("FAC"), which added allegations that Jones and Alwan (1) participated in and coordinated unspecified "actions and events" by Columbia JVP and SJP, and represented their groups in discussions with university administrators, FAC ¶¶ 24-34; (2) had access to the email and Instagram accounts of their respective organizations, *id.* ¶¶ 29, 34; (3)

---

[1] Plaintiffs' counsel promised a response "in due course," then accidentally CC'ed undersigned counsel on an email discussing their plan to file an amended complaint. Ex. B at 2-3.

attended a half-dozen protests and a "Resistance 101" lecture, *id.* ¶¶ 66, 75, 113, 120-21, 135, 143, 154; and (4) described one of the protests as "cathartic" (Alwan) and "impactful" (Jones). *Id.* ¶¶ 122. The FAC also added conclusory allegations that all individual Defendants "participated directly" in "answer[ing] Hamas' call to action," *id.* ¶ 8, and clarified that the ATA and ATS claims targeted all Defendants, not merely the Associational Defendants. *Id.* ¶¶ 14-21, 220-21, 234-38; *see* ECF No. 37-1. Otherwise, the allegations remained unchanged.

On June 14, 2025, Jones and Alwan served a second Safe Harbor letter explaining that the FAC failed to cure the Complaint's deficiencies and noted the absence of any facts supporting Plaintiffs' coordination theory. Ex. C. Plaintiffs' counsel never responded. On June 19, 2025, Jones and Alwan moved to dismiss, elaborating on the defects flagged in the Safe Harbor letters. ECF Nos. 54-56, 61.

On July 14, 2025, Plaintiffs filed a Second Amended Complaint ("SAC"). The only substantive change consisted of the addition of a new defendant, Tarek Bazrouk, who had recently been convicted of antisemitic hate crimes. SAC ¶¶ 212-27.

On July 25, 2025, Jones and Alwan served a third Safe Harbor letter, Ex. D, reiterating the previously-identified defects and flagging the SAC's failure to plead that Jones, Alwan, or their respective organizations had any ties to Bazrouk. Again, Plaintiffs' counsel never responded. On August 3, 2025, Jones and Alwan moved again to dismiss. ECF Nos. 71-76.

On September 4, 2025, Plaintiffs filed a 92-page opposition ("Opp.") to Defendants' motions to dismiss. Conspicuously absent was any defense of the allegations that the students had prior knowledge of October 7 or aided those attacks. *See generally* ECF No. 90. The opposition also advanced an entirely new theory of aiding-and-abetting: whereas the SAC alleged that Hamas directed the students to implement its propaganda strategy domestically, SAC ¶¶ 5, 69, 93-94, 101,

128, 230, the opposition claimed that the students "advised and encouraged Hamas to keep [Plaintiff] Iris's parents hostage and to try to kill or capture [Plaintiffs] Moe, Doe, and Roe's brother," Opp. 38, 43, 56, 86.

On October 21, 2025, shortly after the motion to dismiss was fully briefed, Jones and Alwan filed their fourth Safe Harbor letter. Ex. E. Plaintiffs' counsel did not respond. On January 7, 2026, Jones and Alwan served a final letter, with a copy of the motion and supporting brief, asking for some acknowledgement by January 12, 2026. Ex. F. Once again, Jones and Alwan were met with silence.

## **LEGAL STANDARD**

### A.    Rule 11

Rule 11 authorizes courts to impose sanctions on an attorney who (1) files a complaint for "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," (2) advances claims and legal contentions that are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," or (3) makes "factual contentions" that lack "evidentiary support." Fed. R. Civ. P. 11(b).

Rule 11 does not require a finding of bad faith. *Jones v. Combs*, 759 F. Supp. 3d 534, 540 (S.D.N.Y. 2024). The standard is "objective unreasonableness and is not based on the subjective beliefs of the person making the statement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012). "It is not a defense that the offending party acted with a pure heart but an empty head." *Junwu Gong v. Sarnoff*, 2023 U.S. Dist. LEXIS 148971, at *31 (S.D.N.Y. Aug. 22, 2023).[2]

---

[2] Unless otherwise stated, quotations are cleaned up and internal citations are omitted.

"Rule 11 is particularly significant" in the context of claims that have "an almost inevitable stigmatizing effect on those named as defendants," and "[c]ourts have not hesitated to impose sanctions under Rule 11 when [such] claims have been found to have been frivolous." *Edmonds v. Seavey*, 2009 U.S. Dist. LEXIS 111915, at *10-11 (S.D.N.Y. Dec. 2, 2009) (citing cases); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655, 660 (S.D.N.Y. 1996).

B.     The Court's Inherent Power and Section 1927

This Court "possesses broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices." *Bakken Res., Inc. v. Edington*, 2019 U.S. Dist. LEXIS 55936, at *16 (S.D.N.Y. Mar. 29, 2019). The Court may exercise that power where the challenged claim (i) lacks "a colorable basis" and (ii) "was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999); *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143-44 (2d Cir. 2012). The Court may also order attorney's fees and costs under 28 U.S.C. § 1927, which penalizes counsel who "unreasonably and vexatiously" extend proceedings. *Schlaifer*, 194 F.3d at 336 ("only meaningful difference" between § 1927 and the Court's inherent sanction power is that § 1927 only authorizes awards "against attorneys").

**ARGUMENT**

I.     **THE COURT SHOULD SANCTION PLAINTIFFS' COUNSEL FOR THEIR REPEATED VIOLATIONS OF RULE 11**

A.     This Action Was Brought for an Improper Purpose

Several factors independently confirm Plaintiffs' counsel's improper purpose.

*First*, Plaintiffs' claims clearly lack any colorable basis. *An v. Despins*, 2023 U.S. Dist. LEXIS 134571, at *14 (S.D.N.Y. Aug. 2, 2023) ("improper purpose" may be inferred where a "complaint is so baseless as to suggest that there is an ulterior motive behind the lawsuit") (citing

cases). Plaintiffs (i) failed to allege that Jones, Alwan, or anyone within their organizations offered *any* assistance to Hamas—let alone "knowing and substantial" assistance to the specific attacks that injured Plaintiffs; (ii) failed to allege that these Defendants engaged in any protest activity with the purpose of facilitating those attacks; and (iii) predicated their claims entirely on protected speech. Given this trifecta of deficiencies, Plaintiffs' counsel cannot possibly have believed that their claims would survive a motion to dismiss.

*Second*, Plaintiffs' counsel all but confess to an improper purpose: silencing disfavored speech about Israel. *See Gerber v. Herskovitz*, 2022 U.S. Dist. LEXIS 14186, at *17 (E.D. Mich. Jan. 25, 2022) (sanctioning party for pursuing "meritless claims against the Protestor Defendants for the improper purpose of silencing speech with which Plaintiffs did not agree"). The SAC expressly targets public advocacy whose stated aims are to "sway public opinion," "influence public policy," and promote "divestment" from Israel. SAC ¶¶ 4, 66, 146-47, 168. Plaintiffs' counsel make the remarkable—and self-evidently false—assertion that speech "demonizing" Israel constitutes actionable "crimes against humanity . . . in violation of international law." SAC ¶ 259. And in their opposition to the motion to dismiss, Plaintiffs' counsel openly admit that they seek to penalize the students for sloganeering (*e.g.*, chanting "resistance," "from the river to the sea," and "by any means necessary") that courts have uniformly deemed immune from tort liability under the First Amendment. Opp. 4, 36-39, 45; Alwan MTD 22-23 (ECF No. 72); *see Gerwaski v. Nev. ex rel. Bd. of Regents of the NV Sys. of Higher Educ.*, 2025 U.S. Dist. LEXIS 84645, at *4-5, 21-22 (D. Nev. May 5, 2025) (chanting "from the river to the sea" and "long live the intifada" protected and cannot serve as basis for aiding-and-abetting claim); *StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.*, 158 F.4th 1, 11-20 (1st Cir. 2025) ("from the river to the sea" and "resistance is justice" and calls for "intifada" are protected chants); *Landau v. Corp. of Haverford*

*Coll.*, 789 F. Supp. 3d 401, 414 (E.D. Pa. 2025) (calls for "the complete dismantling of the apartheid settler colonial state of Israel, by all means necessary" protected).[3]

*Third*, Plaintiffs' improper purpose is further evident from the fact that the overwhelming majority of the SAC's allegations have zero bearing on Plaintiffs' ATA and ATS claims. *See, e.g.*, *Hoatson v. N.Y. Archdiocese*, 2007 U.S. Dist. LEXIS 9406, at *32 (S.D.N.Y. Feb. 8, 2007) (sanctions warranted where "bulk of the allegations dealing with sexual abuse are wholly irrelevant to" the cause of action). The SAC charges the student groups with foreknowledge of the October 7 attacks, SAC ¶ 105—a scandalous allegation that does no legal work, since Plaintiffs neither claim the groups aided those attacks nor connect the foreknowledge accusation to any element of the ATA or ATS. The SAC laboriously details Hamas's U.S.-directed "propaganda campaign," which it accuses the students of supporting, and expounds on the domestic disruptions that student protests caused. *See*, *e.g.*, SAC ¶¶ 1-2, 4-5, 8-12, 22-23, 43-77, 91-211, 230-31, 239, 257. But even Plaintiffs' counsel readily concede that the ATA and ATS don't confer causes of action for support rendered to "campaigns" (as opposed to specific acts of terrorism) or for domestic injuries. Opp. 13-14; Alwan MTD 16-18. Plaintiffs' counsel accuse the students of coordinating their protest

---

[3] *See also Kopmar v. Ass'n of Legal Aid Attys*., 2025 U.S. Dist. LEXIS 134446, at *18-20 (S.D.N.Y. July 15, 2025) (speech "about Israel and Palestine" is "entitled to special protection under the First Amendment," and resolution accusing Israel of being "a colonial apartheid occupation," engaged in "ethnic cleansing" and "genocide" constitutes protected speech); *Jan v. People Media Project*, 2025 U.S. Dist. LEXIS 18021, at *25-32 (W.D. Wash. Jan. 31, 2025) (dissemination of Hamas propaganda protected from ATS and ATA liability); *Boim v. Quranic Literacy Inst*., 291 F.3d 1000, 1026 (7th Cir. 2002) (individuals "may, with impunity, become members of Hamas, praise Hamas for its use of terrorism, and vigorously advocate the goals and philosophies of Hamas"); *In re Terrorist Attacks on September 11, 2001*, 740 F. Supp. 2d 494, 519 (S.D.N.Y. 2010) ("One is free to espouse support for a foreign terrorist organization, and to engage in independent advocacy as a means to sway others into adopting one's pro-terrorist point of view."); *Univ. of Md. Students for Just. in Palestine v. Bd. of Regents of the Univ. Sys. of Md*., 2024 U.S. Dist. LEXIS 178359, at *20-21 (D. Md. Oct. 1, 2024) (enjoining ban on SJP event on college campus, noting "significant First Amendment implications" of "[s]tudent demonstrations").

activities with Hamas, only to admit in opposition that coordination is "not an independent basis of liability," Opp. 71, but an answer to the students' anticipated First Amendment defense. This is akin to suing for battery without alleging harmful contact, and then spending dozens of pages describing the defendant as a violent reprobate and notorious rapist to neutralize the "anticipated defense" that the plaintiff consented to the touching. Since Plaintiffs failed to allege any basis for liability in the first place, the only possible function of the coordination allegation is to smear the student protestors. *Manhart v. WESPAC Found., Inc.*, 2025 U.S. Dist. LEXIS 152019, at *42 (N.D. Ill. Aug. 7, 2025) (finding improper purpose because "SAC is rife with allegations" about promoting Hamas propaganda "that are irrelevant to Plaintiff[s'] stated causes of action").

*Fourth*, Plaintiffs' counsel's litigation conduct independently confirms their bad faith. Plaintiffs' counsel ignored the first Safe Harbor letter, forcing Jones and Alwan to waste time preparing motions to dismiss, which Plaintiffs' counsel mooted by filing their FAC *one day before* the motion to dismiss deadline. They then ignored two more letters, forcing Jones and Alwan to file two more motions to dismiss. Moreover, none of the successive complaints cured the defects flagged in the Safe Harbor letters; and when Plaintiffs finally exhausted their amendments and were forced to oppose the motions to dismiss, they quietly jettisoned their most scandalous claims: that the students had foreknowledge of the October 7 attacks and aided their commission. This bears all the hallmarks of a strategy to prolong the litigation and drive up defense costs. *See LCS Grp., LLC v. Shire LLC*, 2019 U.S. Dist. LEXIS 43255, at *45-46 (S.D.N.Y. Mar. 8, 2019) (plaintiffs violated Rule 11 by including frivolous claim "and then failed to prosecute that claim by refusing to address the merits in its opposition brief while simultaneously refusing to dismiss the claim with prejudice").

*Fifth*, an improper purpose is apparent from Plaintiffs' counsel's use of this lawsuit as a vehicle to defame student protestors in the media. Attorney David Schoen appeared on the Sean Hannity show and accused the student Defendants of "aiding and abetting Hamas's continued acts of terrorism."[4] Attorney Mark Goldfeder likewise told news outlets that the students were providing "material support for terror"[5] and that "the defendants' coordinating activities with Hamas was known because they have said so repeatedly"[6]—a claim which has no factual basis, in reality or in the SAC. *See Katzman*, 167 F.R.D. at 661 (sanctions warranted where plaintiff's counsel "appeared on several television programs and were quoted in several print media regarding their [frivolous] allegations . . . and the lawsuit they had commenced," thereby forcing defendants to "respond to a patently meritless complaint and to suffer unwarranted adverse publicity").

These factors, independently and combined, compel the conclusion that Plaintiffs' counsel filed this action not to vindicate any cognizable right under the ATA or ATS, but to harass and malign Jones, Alwan, and their student organizations.

B. <u>Plaintiffs' Claims are Legally Frivolous</u>

"Rule 11 mandates sanctions" for frivolous legal positions "where it is clear that: (1) a reasonable inquiry into the basis for a pleading has not been made; (2) under existing precedents there is no chance of success; and (3) no reasonable argument has been advanced to extend, modify

---

[4] THE SEAN HANNITY SHOW (May 5, 2025), https://news.iheart.com/featured/the-sean-hannity-show/content/2025-05-05-51-the-sean-hannity-show-antisemitism-is-real-may-5th-hour-2/ (Timestamp: 15:48)

[5] Danielle Wallace, *Israeli Hostages' Families Sue Mahmoud Khalil, Columbia Organizers as Alleged 'Hamas' Propaganda Arm' in NYC*, FOX NEWS (Mar. 25, 2025), *available at* https://perma.cc/8Q7S-CG65.

[6] Jonathan Stempel, *Lawsuit Says Palestinian Advocates at Columbia University Further Hamas Propaganda*, REUTERS (Mar. 24, 2025), *available at* https://www.reuters.com/world/us/lawsuit-says-palestinian-advocates-columbia-university-further-hamas-propaganda-2025-03-24/;    Jesus Mesa, *Columbia Activists Had Prior Knowledge of Oct. 7, Bombshell Lawsuit Claims*, NEWSWEEK (Mar. 25, 2025), *available at* https://www.newsweek.com/columbia-activists-had-prior-knowledge-oct-7-bombshell-lawsuit-claims-2050296.

or reverse the law." *Fracht FWO Inc. v. TPR Holdings LLC*, 2022 U.S. Dist. LEXIS 57355, at *1-2 (S.D.N.Y. Mar. 29, 2022). Plaintiffs' counsel have done something far worse than failing to make a reasonable inquiry: they have flouted and misrepresented controlling authority, knowingly pursued claims that "manifestly failed to meet even the most rudimentary requirements of any of the [elements]" of the ATS or ATA, and failed to make any non-frivolous arguments for modifying the law to fit their claims. *Katzman*, 167 F.R.D. at 660.

The myriad defects in Plaintiffs' claims have been thoroughly aired in Jones and Alwan's motions to dismiss and needn't be rehashed here. A few points will suffice.[7] *First*, the elements of an aiding-and-abetting claim are clear-cut and well-worn. A defendant must have "consciously and culpably participated in" the terrorist attacks that injured plaintiffs by providing "knowing and substantial assistance"—not to the foreign terrorist organization's "enterprise" or to a general "campaign," but to the specific, injury-causing attacks. *Twitter*, 598 U.S. at 494-95, 497; *Ashley v. Deutsche Bank AG.*, 144 F.4th 420, 447-48 (2d Cir. 2025). Concretely, this means Plaintiffs must allege (i) that Jones, Alwan, Columbia SJP, and Columbia JVP "helped [Hamas] to complete [the] *commission*" of the October 7 attacks, the holding of Iris's parents hostage, and the attacks on Moe, Doe, and Roe's brother in Gaza, *Twitter*, 598 U.S. at 488 (emphasis in original); and (ii) that these Defendants pursued their activism not in protest of Israel's treatment of Palestinians, but to "make [those attacks] succeed." *Twitter*, 598 U.S. at 496. Plaintiffs come nowhere close to pleading either prong.

---

[7] This analysis applies with even greater force to Plaintiffs' ATS claims, which require not only a purpose to facilitate terrorism but also "practical" assistance that had a "*substantial effect* on the perpetration of the crime." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 259 (2d Cir. 2009) (emphasis added).

Plaintiffs have never offered a remotely coherent account of how student protestors assisted these specific attacks. Instead, they have lurched from one frivolous theory to another. The SAC alleged that Hamas directed the students to "disrupt critical academic and economic centers" and "sway public opinion against Israel and toward Hamas" *in New York City*. *See, e.g.*, SAC ¶ 4, 66, 93. But, as explained, no ATA claim lies for this conduct. Rather than withdraw their claims, Plaintiffs' counsel flip the script in opposition, newly claiming that it was the *students* who directed *Hamas* to hold hostages and "try to kill or capture" IDF soldiers by offering "advice and encouragement." Opp. 38. It is axiomatic, however, that a plaintiff cannot rewrite their claim in opposition, *Wright v. Ernst & Young Llp*, 152 F.3d 169, 178 (2d Cir. 1998), and courts have not hesitated to sanction parties where "the arguments made in opposition . . . are both legally frivolous and obviously contradictory to the language of the pleading." *Ammann v. Sharestates, Inc.*, 2024 U.S. Dist. LEXIS 50808, at *28 (E.D.N.Y. Mar. 21, 2024).

That problem aside, Plaintiffs' counsel simply swap one nonsensical theory for another. The "advice and encouragement" referenced in opposition consists entirely of generic protest slogans, *see* Opp. 43, 72 (citing SAC ¶¶ 102, 104, 106, 112, 173, 200), which countless cases have confirmed are shielded from tort liability. *See supra* Section I.A. None of these slogans mentions Hamas or Plaintiffs, much less calls upon Hamas to retain hostages or kill IDF soldiers.[8] None is alleged to have been communicated *to* or directed *at* Hamas. Plaintiffs' counsel don't bother defending the facially absurd proposition that these slogans had even a negligible effect on Hamas's terrorist operations in Gaza. And nowhere do Plaintiffs allege that Jones and Alwan used these slogans for the purpose of facilitating Hamas's terrorism, as the ATA requires; instead, they

---

[8] Where the word "Hamas" appears, it is because *Plaintiffs' counsel* have inserted it. SAC ¶¶ 102, 112.

plead themselves out of a claim by alleging that Defendants' purpose was domestic persuasion. Alwan MTD 21.

*Second,* rather than argue for a modification of law to fit their claims, Plaintiffs' counsel resort to outright distortion. *See Manhart*, 2025 U.S. Dist. LEXIS 152019, at *44-45 (sanctions warranted where plaintiff makes "false representations of law in support of his novel legal arguments"); *Chauvet v. Local 1199, Drug, Hosp. & Health Care Emples. Union*, 1996 U.S. Dist. LEXIS 17080, at *52 (S.D.N.Y. Nov. 14, 1996) (sanctions warranted where counsel "repeatedly misstated the law"). They falsely assert that the ATA doesn't require the students' supposed "advice and encouragement" to have affected Hamas's ability or willingness to commit terrorism. Opp. 45. That assertion is contrary to the statute, 18 U.S.C. § 2333(d) (requiring "substantial assistance"), contrary to the Restatement of Torts provision cited in Plaintiffs' own opposition, and manifestly wrong under *Twitter*, *Ashley*, and hornbook aiding-and-abetting law. *See* Alwan Reply 5-6 (ECF No. 99). Plaintiffs' counsel cite *Ashley* for the proposition that "intent is not always required" to state an ATA claim. Opp. 46. But *Ashley* held the precise opposite, *see* 144 F.4th at 444 ("a JASTA claim requires intent to further a terrorist organization's terrorist activities"), as has every other court. Alwan Reply 7 (citing cases). They falsely claim that the "'conscious[] and selective[]'" decision to "'promote content provided by [Hamas]'" is enough to state an aiding-and-abetting claim, Opp. 37 (quoting *Twitter*, 598 U.S. at 502), ignoring *Twitter*'s requirement that the promotion *actually aid* the act of international terrorism, Alwan Reply 5, and the uniform body of authority confirming that the "content" in question is immunized from liability. *See supra* Section I.A.[9]

---

[9] Plaintiffs' counsel also falsely claim that any speech or advocacy "addressed to" an FTO is categorically unprotected. Opp. 5, 60, 61, 63, 64, 66. No court has ever embraced that position. Plaintiffs' apparent source for that claim, *United States v. Osadzinski*, held something very

*Third*, Plaintiffs' counsel's attempt to sidestep the First Amendment is, itself, frivolous. Plaintiffs concede that the students' speech consists of public-facing political advocacy aimed at shaping public opinion on a matter of public concern—activity at the core of the First Amendment's protections. They don't assert that the advocacy constituted incitement, true threats, or fit into a category of unprotected speech based on its *content*. Instead, they argue that the students may not assert a First Amendment defense against civil tort liability because the advocacy was "coordinated." This assertion has no footing in First Amendment doctrine, *see* Alwan MTD 23; Alwan Reply 11-13—but even if it did, it has no *factual* basis in the SAC, which fails to allege that the students communicated with, took direction from, received compensation from, or otherwise engaged in any form of operational collaboration with Hamas. Moreover, the complaint's "coordination" and the opposition's "advice and encouragement" theories are fundamentally incompatible. In effect, Plaintiffs' counsel propose that Hamas directed American college protestors to take to the streets and chant coded slogans about "resistance" to advise and encourage Hamas to commit terrorism. That narrative—essentially, that Hamas enlisted others to incite itself—refutes itself. *McCracken v. Natale*, 2008 U.S. Dist. LEXIS 102498, at *15 (E.D.N.Y. Dec. 17, 2008) (complaint is frivolous where it "is replete with fantastic and delusional scenarios").

*Fourth*, the frivolousness of Plaintiffs' claim is evident from its implications. As explained elsewhere, under Plaintiffs' theory of liability, anyone who joined a protest—including pacifists and liberal Zionists troubled by Israel's conduct in Gaza—would be suable under the ATA. Alwan Reply 1-3. *But see Twitter,* 598 U.S. at 489 (admonishing that aiding-and-abetting liability is "cabin[ed] . . . to cases of truly culpable conduct."). And that is only the beginning. If all it takes

---

different: that no First Amendment defense exists to a 18 U.S.C. § 2338B charge based on "expressive activities . . . addressed to [an FTO]" where those activities "*amount[] to the provision of material support.*" 97 F.4th 484, 487 (7th Cir. 2024) (emphasis added).

to infer coordination and strip speech of its constitutional protections is marching on a day that Hamas called for worldwide protests or joining a protest after an FTO praises demonstrations, then private plaintiffs could sue protestors under any tort theory, including harassment, public nuisance, IIED, or Title VI. *But see Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (rejecting IIED claims predicated on speech about matters of public concern); *StandWithUs*, 158 F.4th at 11-20 (Title VI claims cannot be predicated on criticisms of Israel). In short, Plaintiffs' claims would require a foundational rewrite of both ATA and First Amendment jurisprudence. Plaintiffs do not acknowledge that fact—much less offer a non-frivolous argument for such a drastic departure from settled law.

*Finally,* while the SAC is frivolous in its entirety, the individual-capacity claims against Jones and Alwan stand out as singularly indefensible. Such claims require Jones and Alwan to have *personally* provided substantial assistance with the intent of facilitating the attacks that injured Plaintiffs. Alwan MTD 26. Plaintiffs make no attempt to meet that standard. Indeed, the SAC's individual capacity allegations against Jones and Alwan are preposterously thin. The totality of its allegations are as follows: Jones and Alwan were *de facto* leaders of student groups with a "horizontal leadership structure;"[10] they negotiated with Columbia administrators; they had access (albeit neither control nor exclusive access) to their groups' emails and social media accounts; they attended a few public protests and a workshop; one of them (Alwan) was arrested at the Encampment; and they characterized the protests as "impactful" or "cathartic." SAC ¶¶ 25, 29, 32-34, 67, 76, 113-14, 120-32, 136, 144, 154-55. Neither is alleged to have personally (i) communicated with Hamas; (ii) called on Hamas or anyone else to hold hostages or attack civilians; (iii) distributed Hamas propaganda; (iv) broke any laws (save refusing an order to

---

[10] *See* Alwan MTD 13.

disperse from the college commons) or committed any acts of violence; (v) made or endorsed any antisemitic remarks; (vi) interacted with or taken direction from anyone inside AMP/NSJP; (vii) had any inkling that Hamas was allegedly using AMP/NSJP to direct the protests; (viii) met, aided, or communicated with Bazrouk; or (ix) engaged in protest activities for any reason other than to express a genuinely-held belief that Israel's conduct toward the Palestinians was unlawful and unjust.

The individual capacity claims against Jones and Alwan are not just weak—they are throwaways, devoid of the slightest thread of factual support, unsupported by any law, untethered to the elements of the causes of action, and transparently designed to harass and smear rather than vindicate a legal right.[11]

C.  Plaintiffs' Factual Claims are Utterly Lacking in Support

Under Rule 11, pleadings must "have evidentiary support." Fed. R. Civ. P. 11(b)(3). "[A]n attorney may not transcend the facts of a given case" nor "concoct 'facts' that are not well grounded." *Levine v. F.D.I.C.*, 2 F.3d 476, 479 (2d Cir. 1993). When defending against a motion under Rule 11(b)(3), an "attorney may submit an affidavit averring reliance on objectively reasonable representations of the client prior to filing." *Kingvision Pay-Per-View Ltd. v. Ramierez*, 2005 U.S. Dist. LEXIS 15015, at *9 (S.D.N.Y. July 28, 2005). "Conversely, the failure to submit such an affidavit strongly suggests that no [pre-filing] inquiry was made and consequently that no evidentiary support exists." *Id.* Regardless, "an attorney may not base an allegation solely on a client's representation if it is objectively unreasonable to believe that the representation could support the allegation." *Goldman v. Barrett*, 825 F. App'x 35, 38 (2d Cir. 2020); *Kiobel v. Millson*,

---

[11] One sign of the indefensibility of the individual-capacity claims is Plaintiffs' counsel's failure to make any real effort to defend them. Plaintiffs' counsel devote less than two pages of their 92-page opposition to these claims. Opp. 50-52. By comparison, Plaintiffs devote nearly twice that amount to critiquing the NSJP Toolkit's anti-Israel slant. Opp. 21-24.

592 F.3d 78, 81 (2d Cir. 2010) (sanctions appropriate where factual claims are "utterly lacking in support").

"[M]aterial allegations central to the viability of the entire pleading" warrant additional scrutiny, *In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 264 (S.D.N.Y. 2010), as do "false and scandalous" allegations. *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 409 n.28 (S.D.N.Y. 2009) (allegation of criminal contempt conviction was a "prima facie violation" of Rule 11 because the claim was "false and scandalous" and pulled "from a newspaper article with no effort made to verify through judicial records"), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).

The SAC is rife with claims that have no factual support, in reality or in the complaint itself, including the following:

- That Jones and Alwan "advertise themselves" as part of "Hamas' propaganda arm in New York and on the Columbia University campus." SAC ¶ 1.[12]

- That Jones and Alwan "terroriz[ed] and assault[ed] Jewish students, unlawfully [took] over and damage[d] public and university property on Columbia's campus, and physically assault[ed] Columbia employees." *Id.*

- That Jones and Alwan "act[ed] behind veils and largely seek to be anonymous individually yet seek to intimidate as a group." SAC ¶ 1. *Compare id.* ¶ 24-28, 32-33 (describing Jones and Alwan's public, non-anonymous advocacy).

- That the student groups that Jones and Alwan allegedly led had foreknowledge of the October 7 attacks. SAC ¶ 105; Alwan MTD 8-9.

---

[12] Plaintiffs cannot weasel out of this falsehood by noting that they leveled these allegations against "Defendants" as a group rather than referencing Jones and Alwan by name. Plaintiffs defined Defendants to include Jones and Alwan and refused to correct their group pleading even after Jones and Alwan twice flagged its impropriety. Ex C at 1; Alwan MTD 6 & n.10.

- That Jones and Alwan aided and abetted the October 7 attacks. SAC ¶¶ 229, 259. Excepting Jones and Alwan's appearance at a handful of apparently unremarkable protests, the SAC doesn't describe any activities by them or their organizations prior to October 7.

- That Jones, Alwan, and their organizations coordinated their activities with Hamas. SAC ¶¶ 10-11, 227, 229. Plaintiffs' counsel speculate that the students were following Hamas's orders because they protested on days when Hamas called for demonstrations. Alwan has already explained why this theory is baseless, Alwan MTD 18, 24; Alwan Reply 13-14, and courts have sanctioned parties for far less scandalous allegations grounded in nothing more than "conjecture and speculation." *See Craig v. City of New York*, 2022 U.S. Dist. LEXIS 110649, at *26-40 (E.D.N.Y. June 22, 2022) (imposing sanctions where party filed disqualification motion speculating that attorney had committed criminal misconduct); *Junwu Gong*, 2023 U.S. Dist. LEXIS 148971, at *41 (imposing sanctions where plaintiff speculated without basis that defendants had colluded with police).

Plaintiffs' opposition is likewise riddled with baseless claims, including that Jones and Alwan "have a close relationship to Hamas," Opp. 43, and that Jones and Alwan count Defendant Bazrouk "among their ranks" and "coordinate with Hamas through Bazrouk and others like him." Opp. 3-4, 29. Any one of these false allegations independently supports sanctions.

D. <u>Monetary Sanctions, Including Attorney's Fees, and an Apology Letter are Warranted</u>

"Once a court determines that Rule 11(b) has been violated, it may in its discretion impose sanctions limited to what is sufficient to deter repetition of such conduct." *Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000). It is "well settled" that courts may order a violator to pay the other side's attorneys' fees, and that "awarding attorneys' fees as a sanction is particularly appropriate for improper purpose violations." *Ammann*, 2024 U.S. Dist. LEXIS 50808, at *30-31 (citing cases); *Schottenstein v. Schottenstein*, 230 F.R.D. 355, 362-63 (S.D.N.Y. 2005). Courts may also order the offending party to write a letter of apology. *Sofaly v. Portfolio Recovery Assocs.*, 155 F.4th 289 (3d Cir. 2025).

In deciding the propriety and form of sanctions, courts may consider the following list of factors:

19

Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [and] what amount is needed to deter similar activity by other litigants.

Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Every one of these factors counsels in favor of an order requiring payment of Jones and Alwan's attorneys' fees—at a minimum—and a public letter of apology.

<u>Willfulness</u>. The evidence of willfulness is overwhelming. Plaintiffs' counsel are highly sophisticated attorneys who could not have harbored any illusions that their claims would survive a motion to dismiss. Jones and Alwan notified Plaintiffs' counsel of the defects in their claims *seven* separate times: five times through Rule 11 Safe Harbor letters, which Plaintiffs' counsel ignored entirely, and twice via motions to dismiss that would have been unnecessary had Plaintiffs' counsel heeded the letters. Courts routinely award fees where, as here, a party's refusal to respond to a Safe Harbor letter forces needless motion practice. *See Ammann*, 2024 U.S. Dist. LEXIS 50808, at *24-25; *Cameau v. Nat'l Recovery Agency, Inc.*, 2018 U.S. Dist. LEXIS 168227, at *9 (E.D.N.Y. Sept. 28, 2018). Courts have likewise found willfulness where, as here, a party asserts, reasserts, then belatedly retreats from frivolous claims—as Plaintiffs' counsel did with the October 7 allegations. *See Easy Fin., LLC v. Churchill Mra Funding I LLC*, 2024 U.S. Dist. LEXIS 160020, at *68 (S.D.N.Y. Sept. 5, 2024).

Furthermore, Plaintiffs' counsel persisted even after their substantively identical claims against NSJP and AMP were dismissed in parallel litigation. *See Parizer v. AJP Educ. Found., Inc.*, 2025 U.S. Dist. LEXIS 158917 (E.D. Va. Aug. 15, 2025).[13] Counsel will no doubt protest, as they

---

[13] That action was brought by Greenberg Traurig and Holtzman Vogel.

did in their opposition to the motion to dismiss, that *Parizer* is distinguishable because the plaintiffs there were "primarily injured" on October 7 while the alleged actionable conduct "mainly occurred" afterward. Opp. 59. That is no answer. The same problem infects Plaintiffs' claims that Jones and Alwan aided October 7—and counsel's persistence in advancing temporally impossible theories across multiple lawsuits bespeaks a stubborn contempt for basic principles of law and causation. Nor was *Parizer* as limited as Plaintiffs' counsel have suggested. In fact, that decision rejected the very theories Plaintiffs press here, including that (i) identically pled "public relations activities aided and abetted Hamas in carrying out the specific October 7, 2023 attack (or subsequent or continuing Hamas violations)," *id.* at \*59; (ii) the Toolkit's "clip-art" graphics support the inference that the students had advance warning of the October 7 attacks, *id.* at \*60; (iii) Hamas's praise for the protests supported the inference that protestors "assisted with Hamas's October 7, 2023 attack or subsequent violations of international law," *id.* at \*62; and (iv) there is a "definable nexus" between student protests and Hamas's attacks on or after October 7. *Id.* at \*72.

Three weeks after the order of dismissal in *Parizer*, Plaintiffs' counsel filed their opposition in the instant matter. Their decision to press forward reflects not confusion or negligence, but willful disregard for settled law. *See Streamlined Consultants, Inc. v. EBF Holdings, LLC*, 2023 U.S. Dist. LEXIS 159199, at \*32 (S.D.N.Y. Sep. 8, 2023) (sanctions appropriate "where a party persists in raising previously rejected claims or defenses") (citing cases); *LCS Grp., LLC*, 2019 U.S. Dist. LEXIS 43255, at \*49 (need for deterrence heightened where plaintiff pursue claims "based on the same underlying transaction and occurrence" as prior dismissed action); *Livevideo.Ai Corp. v. Redstone*, 2025 U.S. Dist. LEXIS 194990, at \*45 (S.D.N.Y. Aug. 12, 2025) (sanctions warranted "where the plaintiff has a history of harassing perceived enemies by

relitigating failed claims, and has followed the same playbook in the case at bar"); *Ramashwar v. Espinoza*, 2006 U.S. Dist. LEXIS 721, at *23 (S.D.N.Y. Jan. 6, 2006) (same).

<u>Pattern of activity</u>. Plaintiffs' counsel's disregard for Rule 11 was not an isolated event. They filed three frivolous complaints, followed by a 92-page opposition that mischaracterized key points of law.

<u>Infected the entire pleading</u>. The deficiencies in the SAC go to the core of the claims: Plaintiffs have pursued aiding-and-abetting claims, premised on protected speech, without alleging aid, abetment, or any conduct that would strip the speech of its First Amendment protections.

<u>Similar conduct in other litigation</u>. Plaintiffs' counsel are repeat offenders. This cohort of lawyers has filed numerous meritless ATA and ATS claims against groups they regard as anti-Israel. *See Parizer*, 2025 U.S. Dist. LEXIS 158917; *Lavi v. Unrwa USA Nat'l Comm., Inc.*, 2025 U.S. Dist. LEXIS 153757 (D. Del. Aug. 8, 2025) (dismissing claims that UNRWA's private fundraiser aided and abetted October 7 because complaint failing to plead (i) general awareness, (ii) that donor funds reached Hamas, or (iii) intent to facilitate terrorism);[14] *Newman v. AP*, 758 F. Supp. 3d 1357 (S.D. Fla. 2024) (dismissing claims that Associated Press aided and abetted October 7 by purchasing photographs from freelance photographers because complaint failed to (i) plead general awareness, (ii) that any AP money flowed to Hamas, or (iii) intent to aid Hamas).[15] This pattern of filing deficient ATA and ATS claims across multiple jurisdictions strongly counsels in

---

[14] That action was brought by Attorneys Schoen and Goldfeder and Holtzman Vogel. Undeterred by the order of dismissal, Goldfeder refiled a substantively identical lawsuit against UNRWA USA in the District of Columbia. Amend. Compl., *Estate of Sivan Sh'arabany v. UNRWA et al.*, 25-cv-2490(RCL) (D.D.C.) (ECF Nos. 8, 14-1).

[15] That action, brought by Attorneys Schoen and Goldfeder, exemplifies Plaintiffs' counsel's practice of using the amendment process to unreasonably and vexatiously extend proceedings. *Newman v. AP*, 2025 U.S. Dist. LEXIS 195002 (S.D. Fla. Sep. 28, 2025) (criticizing plaintiffs for failing to "cure [the] fundamental issues" in claim "[d]espite two prior deficient complaints" and leave to amend after dismissal).

favor of sanctions. *Junwu Gong*, 2023 U.S. Dist. LEXIS 148971, at *45 (sanctions warranted where plaintiffs' counsel had "engaged in repeated frivolous litigation in this Court and [elsewhere]").

Intent to injure. The claims' complete lack of merit, coupled with Plaintiffs' counsel's incendiary public statements, confirm that this action was brought to tarnish Jones' and Alwan's reputations and impose crushing litigation costs as punishment for engaging in disfavored speech about Israel.

Courts have liberally imposed Rule 11 sanctions where frivolous claims inflict severe reputational harm. *See Streamlined Consultants*, *2023* U.S. Dist. LEXIS 159199, at *33 (citing cases). It is hard to overstate the reputational consequences of being branded a self-proclaimed Hamas foot-soldier and an accessory to a massacre—as a college undergraduate. Jones and Alwan have already endured harassment and doxxing; and because of Plaintiffs' counsel's media efforts, these allegations will be among the first thing any prospective employer or landlord learns about them. Mere dismissal—which will likely receive a fraction of the news coverage as the complaint itself—cannot wipe away that blight. Were these accusations made outside the shelter of the litigation privilege, a defamation claim would lie. *See, e.g.*, *Elhanafi v. Fox Television Stations, Inc.*, 966 N.Y.S.2d 345, 345 (Sup. Ct. 2012) (labeling individuals "terrorists" or "terrorist sympathizers or abettors" is defamatory). Here, however, sanctions provide the only deterrent.

Plaintiffs' counsel's improper purpose also underscores the necessity of an order directing the payment of attorney's fees to Jones and Alwan. While the objective of Rule 11 sanctions is deterrence, not compensation, *see Caisse Nationale de Crédit Agricole–CNCA v. Valcorp, Inc*., 28 F.3d 259, 266 (2d Cir. 1994), those interests converge where, as here, the purpose of the misconduct is to impose litigation costs on the opposing party. *See* Fed. R. Civ. P. 11 advisory

committee's note to 1993 amendment (noting that while the default is to require payment of a fine to the court, "under unusual circumstances . . . deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation"). Absent that relief, Plaintiffs' counsel will retain every incentive to deploy frivolous claims to burden disfavored advocacy with ruinous legal fees.

<u>Effect on litigation process</u>. Plaintiffs' counsel's misconduct has prolonged this litigation by forcing Jones and Alwan to file two motions to dismiss to fend off frivolous claims.

<u>Counsel's legal training</u>. As explained above, Plaintiffs' counsel are highly sophisticated lawyers with extensive ATA and ATS experience.

<u>Financial resources</u>. Courts must consider "what amount, given the financial resources of the responsible person, is needed to deter that person from repetition." *Id*. Plaintiffs' counsel include two large law firms,[16] a solo practitioner, a nonprofit organization, and an entity—the International Legal Forum—which reportedly receives funds from the Israeli government.[17] The danger is not that these lawyers lack the funds to pay a fine, but that an attorney's fee award will be too trivial an expense to deter further abuse—especially if diffused across Plaintiffs' eleven attorneys. To ensure effective deterrence, the Court should impose sanctions severally rather than jointly, requiring each attorney to pay an amount equal to or exceeding Jones and Alwan's fees. *See Universitas Educ., LLC v. Nova Grp., Inc*., 2016 U.S. Dist. LEXIS 72268, at *17 (S.D.N.Y. Mar. 31, 2016) (recommending additional sanctions where attorneys' fees and requirement that

---

[16] Greenberg Traurig boasts of 51 offices worldwide, https://www.gtlaw.com/en/professionals?, and Holtzman Vogel has seven in the United States. https://www.holtzmanvogel.com/firm/about
[17] Alex Kane, *Israel's Scheme To Defund the BDS Movement*, In These Times Nov. 11, 2019, *available at* https://perma.cc/STX4-SF3Y.

party seek advanced permission to file "are not adequate on their own to deter future" misconduct). Moreover, in addition to monetary sanctions, the Court should require Plaintiffs' counsel to write a public letter of apology to Jones and Alwan for pursuing these baseless claims. *See Sofaly*, 155 F.4th at 293-95.

    <u>General Deterrence.</u> The need for general deterrence here is profound. Fed. R. Civ. P. 11(c)(4) (sanctions warranted to "deter repetition of the [improper] conduct or comparable conduct by others similarly situated.").

    This case is not a one-off. It is just the latest chapter in a concerted campaign to enlist the courts to target and muzzle critics of Israel. This is the *third* lawsuit alleging that U.S. college protestors aided and abetted the October 7 attacks by acting as Hamas's "propaganda arm" in the United States, *see Gerwaski*, 2025 U.S. Dist. LEXIS 84645; *Parizer*, 2025 U.S. Dist. LEXIS 158917, and the *eighth* complaint setting forth this frivolous theory. ECF Nos. 1, 36, 66; *Gerwaski*, 24-cv-985(APG) (D. Nev) (ECF Nos. 1, 6, 79); *Parizer*, 24-cv-724(RDA) (E.D. Va.) (ECF Nos. 1, 24). It is the latest in a line of failed ATA and ATS cases attempting to recast support for Palestinian causes as material support for terrorism. *See, e.g.*, *Leisrael v. Educ. for A Just Peace in the Middle E.*, 66 F.4th 1007, 1016 (D.C. Cir. 2023) (upholding dismissal of ATA aiding-and-abetting claim against group that funded boycott campaign against Israel, noting that the claim "fail[ed] at every turn"); *Lavi*, 2025 U.S. Dist. LEXIS 153757. And it is part of a flurry of lawsuits after October 7 seeking to impose civil liability for criticism of Israel on U.S. college campuses. *See, e.g.*, *Landau*, 789 F. Supp. 3d at 411-16 (dismissing Title VI claim premised on campus protests against Israel); *accord StandWithUs*, 158 F.4th at 11-20; *Canel v. Art Inst. of Chi.*, 2025 U.S. Dist. LEXIS 30309, at *25 (N.D. Ill. Feb. 20, 2025); *Eyal Yakoby v. Trs. of the Univ. of Pa.*, 2025 U.S. Dist. LEXIS 103709 (E.D. Pa. June 2, 2025); *see also Gassman v. Cook Cty.*, 2025 U.S.

Dist. LEXIS 199304, at *11-12 (N.D. Ill. Oct. 8, 2025) (noting that speech about the Israeli-Palestinian conflict is "under nationwide assault at the present historical moment"); *see generally* American Association of University Professors, "Discriminating Against Dissent: The Weaponization of Civil Rights Law to Repress Campus Speech on Palestine" (Nov. 2025), (describing surge in Title VI lawsuits and complaints targeting speech critical of Israel or Zionism).[18]

There exists an entire plaintiff's bar devoted to these failed efforts, *see id.* at 13, 18-19[19]—many of whom have displayed a willingness to pursue the same discredited theories no matter how many times courts dismiss them. If the past two years have revealed anything, it is that mere dismissal without sanction cannot, and does not, deter abuse.

## II.    THE COURT SHOULD IMPOSE SANCTIONS UNDER § 1927 AND THE COURT'S INHERENT AUTHORITY

Sanctions are warranted under § 1927 and the Court's inherent authority where there is "clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims

---

[18] *Available at* https://www.aaup.org/sites/default/files/2025-11/Discriminating-Against-Dissent_0.pdf.

[19] Some of these groups openly advertise their intent to use litigation to silence criticism of Israel. *See, e.g.*, Zahor Legal Institute, https://zachorlegal.org (proclaiming commitment to "using the law to battle . . . the delegitimization of Israel"). Another group, the Deborah Project, describes itself as a Jewish "civil rights" organization willing to "go [to] court . . . when the other side won't see reason." *See* https://www.deborahproject.org/#impact. But a Lexis search turns up no favorable judgments secured by that group and multiple instances where it has been chastised or sanctioned for bringing meritless lawsuits targeting protected speech. *See, e.g.*, *Parents v. Liberated Ethnic Stud. Model Curriculum Consortium*, 2025 U.S. Dist. LEXIS 104609 (C.D. Cal. May 23, 2025) (assessing anti-SLAPP fees in action challenging school curriculum plans deemed critical of Zionism); *Landau*, 789 F. Supp. 3d at 431 (criticizing plaintiffs for offering "emotional rhetoric," but failing after three complaints and "several rounds of briefing" to plead that university's tolerance of anti-Israel speech violated Title VI); *see also Siegel v. Sahar Aziz*, 2025 N.J. Super. Unpub. LEXIS 1236 (Super. Ct. App. Div. July 7, 2025) (affirming dismissal of ethics complaint against education board member who "criticized Israel and Zionism").

were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000).

Here, these factors work in tandem. For reasons already explained, Plaintiffs' claims are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Schlaifer*, 194 F.3d at 336; *Perry v. Erie Cty. Sup. Court*, 2024 U.S. Dist. LEXIS 207160, at *6 (W.D.N.Y. Nov. 14, 2024) ("by asserting patently baseless claim . . . [plaintiff] could only have intended to harass"). Plaintiffs' counsel's extra-judicial conduct, their explicit targeting of political speech, their repeated amendments (which failed to improve upon the claims, but forced additional motion-to-dismiss practice), and their refusal to respond to the Safe Harbor letters confirm counsel's intent to harass Defendants and prolong these proceedings. Accordingly, the Court should award all "attorney's fees reasonably incurred" in connection with litigating the motions to dismiss and with bringing the instant sanctions application. *Jones v. Haynes*, 2025 U.S. Dist. LEXIS 219146, at *57 (S.D.N.Y. Oct. 10, 2025); *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 287 (2d Cir. 2021).

## CONCLUSION

For the foregoing reasons, the Court should require each Plaintiffs' attorney to (i) pay Jones and Alwan an amount equal to or exceeding their attorney's fees, and (ii) publish a letter of apology.

Dated:  January 14, 2026
        New York, NY

                                        Respectfully submitted,

                                        /S/ Joseph Pace
                                        PACE FREEMAN LLP
                                        30 Wall Street, 8th Floor
                                        New York, NY 10005
                                        Tel: (917) 336-3948
                                        joseph@pacefreeman.com

## **CERTIFICATE OF COMPLIANCE**

I certify that this Memorandum of Law contains 8,744 words, excluding the Table of Authorities and Table of Contents. This certification is based on the word count function of Microsoft Word.

<u>/S/ Joseph Pace</u>