**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IRIS WEINSTEIN HAGGAI, on her own behalf and on behalf of JUDITH LYNNE WEINSTEIN HAGGAI and GAD HAGGAI, JOHN DOE, RICHARD ROE, JANE MOE, SHLOMI ZIV, AYELET SAMERANO, on her own behalf and on behalf of YONATAN SAMERANO, TALIK GVILI, on her own behalf and on behalf of RAN GVILI, ROEE BARUCH, on his own behalf and on behalf of URIEL BARUCH, and JAMES POE, on his own behalf and on behalf of LEO POE, | Case No. 1:25-cv-02400-JAV<br><br>Hon. Jeannette A. Vargas<br><br>**JURY TRIAL DEMANDED** |

                                          Plaintiffs,

                          - against -

NERDEEN KISWANI, individually and as the
representative of WITHIN OUR LIFETIME-
UNITED FOR PALESTINE, MARYAM
ALWAN, individually and as the representative
of COLUMBIA STUDENTS FOR JUSTICE IN
PALESTINE, CAMERON JONES, individually
and as the representative of COLUMBIA-
BARNARD JEWISH VOICE FOR PEACE,
MAHMOUD KHALIL, individually and as the
representative of COLUMBIA UNIVERSITY
APARTHEID DIVEST, and TAREK
BAZROUK,

                                          Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS**
**JONES AND ALWAN'S JOINT MOTION FOR SANCTIONS**

## <u>TABLE OF CONTENTS</u>

Preliminary Statement ................................................................................................... 1

Background ...................................................................................................................... 2

    A.    Moving Defendants Serve Five Rule 11 Letters ....................................... 2
    B.    Defendants' Actionable Activity Continues to This Day ......................... 5

Argument ......................................................................................................................... 5

I.     The Motion is Procedurally Defective ................................................................ 5

    A.    The Motion Improperly Duplicates the Pending Dispositive Motions ................... 5
    B.    Moving Defendants Did Not Satisfy the Safe Harbor as to Numerous
        Contentions ........................................................................................ 7

II.    Rule 11 Sanctions Should Be Denied ................................................................. 8

    A.    Rule 11 Imposes Demanding Standards .................................................. 8
    B.    Plaintiffs' Claims Are Well-Supported ................................................... 9
    C.    Plaintiffs' Factual Contentions Are Proper ............................................ 15
    D.    The Claims Were Brought for a Proper Purpose .................................... 20
    E.    No Sanction Should Issue ....................................................................... 24

III.   Sanctions Should Be Denied Under § 1927 and the Court's Inherent Authority ............. 26

Conclusion ..................................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ammann v. Sharestates, Inc.*,
2024 WL 1956237 (E.D.N.Y. Mar. 21, 2024) ..................................................11

*An v. Despins*,
2023 WL 4931832 (S.D.N.Y. Aug. 2, 2023) ....................................................21

*Ashley v. Deutsche Bank Aktiengesellschaft*,
144 F.4th 420 (2d Cir. 2025) ................................................................11, 12, 13

*Atchley v. AstraZeneca UK Limited*,
_ F.4th _, 2026 WL 184415 (D.C. Circ. Jan. 23, 2026)..................................12

*In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*,
712 F. Supp. 2d 255 (S.D.N.Y. 2010)..............................................................20

*Beecher v. Riverdale Riding Corp.*,
2011 WL 3427196 (S.D.N.Y. Aug. 3, 2011) ...................................................17

*Black v. Ganieva*,
2022 WL 2354916 (S.D.N.Y. June 30, 2022) ..................................................26

*Bongiorno v. Baquet*,
2021 WL 4311169 (S.D.N.Y. Sept. 20, 2021) .................................................15

*Camreta v. Greene*,
563 U.S. 692 (2011)..........................................................................................25

*Castro v. Mitchell*,
727 F. Supp. 2d 302 (S.D.N.Y. 2010)................................................................7

*Chauvet v. Loc. 1199, Drug, Hosp. & Health Care Emps. Union*,
1996 WL 665610 (S.D.N.Y. Nov. 18, 1996)....................................................13

*City of Perry v. Procter & Gamble Co.*,
2017 WL 2656250 (S.D.N.Y. June 20, 2017) ...................................................8

*Collison v. Wandrd, LLC.*,
2024 WL 3252933 (S.D.N.Y. July 1, 2024) ....................................15, 17, 18, 19

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990)............................................................................................8

*Douglas v. Naik Consulting Grp., P.C.*,
2025 WL 2042430 (S.D.N.Y. July 21, 2025) ................................................1, 8

*ED Cap., LLC v. Bloomfield Inv. Res. Corp.*,
316 F.R.D. 77 (S.D.N.Y. 2016) .....................................................................7, 9

*Fishoff v. Coty Inc.*,
634 F.3d 647 (2d Cir. 2011)................................................................................9

*Fracht FWO Inc. v. TPR Holdings LLC*,
  2022 U.S. Dist. LEXIS 57355 (S.D.N.Y. Mar. 29, 2022) ....................................................10

*Freeman v. Stake.com*,
  2023 WL 7386354 (S.D.N.Y. Nov. 7, 2023)............................................................17, 20, 21

*Gap, Inc. v. Stone Int'l Trading, Inc.*,
  169 F.R.D. 584 (S.D.N.Y.), *aff'd*, 125 F.3d 845 (2d Cir. 1997) (unpublished) .....................19

*Gelicity UK Ltd. v. Jell-E-Bath, Inc.*,
  2014 WL 1330938 (E.D.N.Y. Apr. 1, 2014) ........................................................................27

*Gerber v. Herskovitz*,
  2022 WL 246881 (E.D. Mich. Jan. 25, 2022)........................................................................22

*Hadges v. Yonkers Racing Corp.*,
  48 F.3d 1320 (2d Cir. 1995)..................................................................................................19

*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983) ..............................................................................................10

*Hernandez v. Miller*,
  2022 WL 17584025 (S.D.N.Y. Dec. 12, 2022) .......................................................................6

*Hoatson v. New York Archdiocese*,
  2007 WL 431098 (S.D.N.Y. Feb. 8, 2007).............................................................................23

*Holder v. Humanitarian Law Proj.*,
  561 U.S. 1 (2010)..............................................................................................................13, 22

*Honickman v. BLOM Bank SAL*,
  6 F.4th 487 (2d Cir. 2021) .....................................................................................................11

*Jan v. People Media Project*,
  783 F. Supp. 3d 1300 (W.D. Wash. 2025)........................................................................25, 26

*JGIAP RH 160 LLC v. CRI Holding Corp.*,
  2023 WL 5979125 (E.D.N.Y. Aug. 16, 2023), *report and recommendation
  adopted*, 2023 WL 6307320 (E.D.N.Y. Sept. 28, 2023)..............................................21, 24, 27

*JM Holdings 1 LLC v. Quarters Holding GmbH*,
  2021 WL 860516 (S.D.N.Y. Mar. 8, 2021) ............................................................................21

*Jobar Holding Corp. v. Halio*,
  2025 WL 1512574 (2d Cir. May 28, 2025) ..............................................................................9

*Jones v. Combs*,
  759 F. Supp. 3d 534 (S.D.N.Y. 2024)....................................................................................27

*Kara Holding Corp. v. Getty Petroleum Mktg., Inc.*,
  2004 WL 1811427 (S.D.N.Y. Aug. 12, 2004).........................................................................7

*Katzman v. Victoria's Secret Catalogue*,
  167 F.R.D. 649 (S.D.N.Y. 1996) ...........................................................................................24

*Kaplan v. Lebanese Canadian Bank, SAL*,
  999 F.3d 842 (2d Cir. 2021)..............................................................................................11, 12

*Kingvision Pay-Per-View Ltd. v. Ramirez*,
2005 WL 1785113 (S.D.N.Y. July 28, 2005) .................................................19, 20

*Kiobel v. Millson*,
592 F.3d 78 (2d Cir. 2010) ..........................................................................15, 16

*In re Koper*,
2020 WL 5075549 (Bankr. E.D.N.Y. Aug. 25, 2020) ..........................................7

*Kumaran v. Northland Energy Trading, LLC*,
762 F. Supp. 3d 322 (S.D.N.Y. 2025) .................................................6, 19, 20

*Lavi v. UNRWA USA Nat'l Comm., Inc.*,
2025 WL 2300038 (D. Del. Aug. 8, 2025) ........................................................25

*Lawrence v. Richman Grp.*,
620 F.3d 153 (2d Cir. 2010) (per curiam) .........................................................7

*LCS Grp. v. Shire LLC*,
2019 WL 1234848, at *16 (S.D.N.Y. Mar. 8, 2019) .....................................24, 25

*Lee v. Grand Sichuan E. (N.Y.) Inc.*,
2014 WL 199512 (S.D.N.Y. Jan. 17, 2014) .........................................6, 8, 26

*Lee v. Town of Southampton*,
2020 WL 1237198 (E.D.N.Y. Feb. 21, 2020), *report and recommendation
adopted*, 2020 WL 1234200 (E.D.N.Y. Mar. 13, 2020) ..........................................7

*Levy v. Penn Mutual Life Ins. Co.*,
2026 WL 91626 (S.D.N.Y. Jan. 13, 2026) ........................................................25

*Linde v. Arab Bank, PLC*,
882 F.3d 314 (2d Cir. 2018) ...........................................................................12

*Luv N' Care, Ltd.*,
2017 WL 3671039 (S.D.N.Y. Aug. 8, 2017) .......................................................6

*Manhart v. WESPAC Found.*,
2025 WL 2257408 (N.D. Ill. Aug. 7, 2025) .................................................13, 23

*Margo v. Weiss*,
213 F.3d 55 (2d Cir. 2000) ..............................................................................20

*Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*,
2025 WL 2916153 (S.D.N.Y. Oct. 14, 2025) .....................................................25

*McCracken v. Natale*,
2008 WL 5274317 (E.D.N.Y. Dec. 17, 2008) .....................................................14

*Morley v. Ciba–Geigy Corp.*,
66 F.3d 21 (2d Cir. 1995) .................................................................................9

*Navarro–Ayala v. Hernandez–Colon*,
3 F.3d 464 (1st Cir. 1993) ..............................................................................15

*Newman v. Associated Press*,
758 F. Supp. 3d 1357 (S.D. Fla. 2024) .............................................................25

*O'Brien v. Alexander,*
  101 F.3d 1479 (2d Cir. 1996)...........................................................................................15

*Oliveri v. Thompson,*
  803 F.2d 1265 (2d Cir. 1986)..............................................................................................8

*Parizer v. AJP Educ. Found., Inc.,*
  2025 WL 2382933 (E.D. Va. Aug. 15, 2025), *appeal filed*, No. 25-2366 (4th
  Cir. Nov. 7, 2025)......................................................................................................24, 25

*Park v. Seoul Broad. Sys. Co.,*
  2008 WL 619034 (S.D.N.Y. Mar. 6, 2008) ........................................................................8

*Passaic Daily News v. Blair,*
  308 A.2d 649 (N.J. 1973)..................................................................................................10

*Penzo v. Consol. Edison Co.,*
  2024 WL 4467412 (S.D.N.Y. Oct. 10, 2024) ...................................................................18

*Quinones v. City of Binghamton,*
  997 F.3d 461 (2d Cir. 2021)..............................................................................................11

*Revson v. Cinque & Cinque, P.C.,*
  221 F.3d 71 (2d Cir. 2000)................................................................................................27

*Rivera v. Kaplan,*
  2017 WL 3017713 (S.D.N.Y. July 13, 2017) ...................................................................10

*RSM Prod. Corp. v. Fridman,*
  643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010)......................20

*Safe-Strap Co. v. Koala Corp.,*
  270 F. Supp. 2d 407 (S.D.N.Y. 2003).................................................................................6

*Salameno v. Rawlings,*
  2022 WL 16962822 (S.D.N.Y. Nov. 16, 2022) ...........................................................17, 19

*Salvini v. ADVFN PLC,*
  2016 WL 1703414 (S.D.N.Y. Apr. 27, 2016) .....................................................................8

*Schlaifer Nance & Co. v. Est. of Warhol,*
  194 F.3d 323 (2d Cir. 1999)..............................................................................................15

*Sierra Club v. EPA,*
  322 F (D.C. Cir. 2003) .....................................................................................................10

*Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.,*
  186 F.3d 157 (2d Cir. 1999)..............................................................................................20

*Sorenson v. Wolfson,*
  170 F. Supp. 3d 622 (S.D.N.Y. 2016)..................................................................................8

*Storey v. Cello Holdings,*
  347 F.3d 370 (2d Cir. 2003) (Sotomayor, J.)............................................................. *passim*

*Streamlined Consultants, Inc. v. EBF Holdings,*
  2023 WL 5835748 (S.D.N.Y. Sept. 8, 2023)....................................................................25

*StreetEasy, Inc. v. Chertok*,
  752 F.3d 298 (2d Cir. 2014)..............................................................................7

*Sussman v. Bank of Israel*,
  56 F.3d 450 (2d Cir. 1995)................................................................20, 21, 26

*Tantaros v. Fox News Network LLC*,
  2018 WL 1662779 (S.D.N.Y. Mar. 16, 2018) ............................................8, 24

*In re Terrorists Attacks*,
  740 F. Supp. 2d 494 (S.D.N.Y. 2010) (cited at Mem. 9 n.3)...............................13

*Townsend v. Holman Consulting Corp.*,
  929 F.2d 1358 (9th Cir. 1990) (en banc) ............................................................20

*Twitter v. Taamneh*,
  598 U.S. 471 (2023)....................................................................9, 10, 11, 13

*Weinberg v. NSJP*,
  2026 WL 184302 (C.D. Cal. Jan. 20, 2026) ......................................................26

*Wright v. Ernst & Young LLP*,
  152 F.3d 169 (2d Cir. 1998)..............................................................................11

*Zeta Glob. Corp. v. Maropost Mktg. Cloud, Inc.*,
  610 F. Supp. 3d 535 (S.D.N.Y. 2022)..........................................................15, 17

## Other Authorities

Fed. R. Civ. P. 11(b) ..................................................................... *passim*

Fed. R. Civ. P. 11(c) ............................................................................5, 7

Plaintiffs respectfully submit this memorandum of law in opposition to the motion for sanctions ("Motion") filed by defendants Cameron Jones and Maryam Alwan ("Moving Defendants").[1]

## PRELIMINARY STATEMENT

This is a serious case, and it is understandable that tensions will run high. Plaintiffs were gravely injured in Hamas' terror crimes, and they have asserted that Defendants' well-publicized domestic disruptions aided and abetted Plaintiffs' injuries. Yet until now, the parties have litigated this action professionally. They have worked to present issues to the Court as efficiently as possible, and they have not burdened the Court with needless disputes or motion practice. Whether Plaintiffs state a claim is the subject of five fully briefed motions to dismiss. The right way forward is that the motions are decided in due course and the parties proceed accordingly.

Instead, Moving Defendants have sought sanctions. The Motion fails from every angle. Just as a matter of form, the Motion should be rejected as duplicative, premature, and improperly motivated. Moving Defendants' core objection is that the claims fail on the merits, which is properly addressed by the pending dispositive motions, not a redundant sanctions motion. From all that appears, the Motion is an improper attempt to shore up Moving Defendants' positions on the merits and to intimidate Plaintiffs into dropping their claims.

More importantly, the Motion is meritless. Rule 11 is for extreme cases. The standard is "purposefully high, so as not to stifle legal creativity and zealous advocacy." *Douglas v. Naik Consulting Grp., P.C.*, 2025 WL 2042430, at *5 (S.D.N.Y. July 21, 2025) (citation omitted).

---

[1] *See* Memorandum of Law in Support of Defendants Jones and Alwan's Joint Motion for Sanctions ("Mem."), ECF No. 108. Unless otherwise defined here, capitalized terms have the same meanings as in Plaintiffs' Consolidated Memorandum of Law in Opposition to Defendants' Motions to Dismiss, Motion to Strike, and Request for Judicial Notice ("Consolidated Opposition" or "Consol. Opp."), ECF No. 90.

Plaintiffs' counsel take their Rule 11 obligations very seriously. They carefully considered the objections raised by Moving Defendants, made adjustments where appropriate in two amended complaints, and properly rejected the rest as meritless. And they have defended the Second Amended Complaint in the proper way: by opposing the motions to dismiss. As the Consolidated Opposition shows, Plaintiffs' legal contentions have a firm foundation and their factual contentions are well-supported. Plaintiffs' claims are also brought for a proper purpose: to secure recovery for victims of Hamas' terror crimes from some of Hamas' key domestic supporters. Nothing in the Motion comes close to showing otherwise.

The Motion is, in short, baseless, and it is regrettable that Moving Defendants' counsel has taken matters to this level. Particularly troubling are the Motion's charges of misrepresentation and distortion. Mem. 12, 14. These serious accusations are wholly unfounded, and the Court should reject them in the strongest possible terms. Moving Defendants may have a different view of law, but they cannot unilaterally set the terms of the debate. Plaintiffs' positions are, at a minimum, well within bounds.

The Court should swiftly and emphatically deny the Motion.

## BACKGROUND

### A.    Moving Defendants Serve Five Rule 11 Letters

Over the past nine months, Moving Defendants served five Rule 11 letters. From the start, their principal objection has been to the merits of Plaintiffs' claims.

Moving Defendants served their first letter and notice of motion on May 3, 2025 ("First Letter," ECF No. 109-1). The First Letter asserted that the claims were unsupported, objected to certain rhetoric in Complaint, and identified supposed factual inaccuracies. On May 29, Plaintiffs filed the Amended Complaint ("AC," ECF No. 36). The Amended Complaint (among other things) bolstered Plaintiffs' allegations against Moving Defendants with further details about their conduct

and leadership of Columbia SJP and Columbia JVP. AC Redline ¶¶ 23–34, 66, 75, 113, 120–22, 135, 154, ECF No. 37-1. Plaintiffs reasserted their legal claims, which are grounded in established principles of secondary liability and consistent with the First Amendment. Plaintiffs also realleged the challenged rhetoric, which fairly characterizes Defendants' conduct.

On June 14, 2025, Moving Defendants served another Rule 11 letter and notice of motion, this time challenging the Amended Complaint ("Second Letter," ECF No. 109-3). As before, their principal objection was that the claims are allegedly weak. The Second Letter again objected to certain rhetoric, but it did not identify any factual inaccuracies. Among the rhetoric Moving Defendants attacked was the characterization of Defendants as "admitted terrorists," *id.* at 1, which had not prompted objection when it first appeared in the Complaint. *Compare* Complaint ¶ 1, ECF No. 1; First Letter 1, *with* AC ¶ 1; Second Letter 1. That characterization was, in any event, permissible, as the organizations Moving Defendants led received and enacted the NSJP Toolkit, a pro-Hamas and pro-October 7 screed that expresses unity with Hamas. *See* Consol. Opps. 21–23.

Five days after the Second Letter was sent, Defendants moved to dismiss the Amended Complaint. On July 14, 2025, Plaintiffs filed the Second Amended Complaint, the operative pleading, which added defendant Tarek Bazrouk and reasserted the same claims. SAC, ECF No. 66. The amended pleading does not include the "admitted terrorists" language. SAC Redline ¶ 1, ECF No. 66-2.

On July 25, 2025, Moving Defendants served yet another Rule 11 letter and notice of motion, this time challenging the Second Amended Complaint ("Third Letter," ECF No. 109-4). By this point, their objections were effectively whittled down to the assertion that the claims were supposedly weak, and they urged that sanctions were appropriate for the reasons given in their prior letters and "in the motions to dismiss." *Id.* at 1. Moving Defendants claimed that the only

"substantive changes" in the amended pleading related to Bazrouk, underscoring that the late objection to the "admitted terrorists" characterization is of little importance to them. *Id.* With the exception of Bazrouk, who Plaintiffs understand was recently served in detention by the United States Marshal, Defendants moved to dismiss the Second Amended Complaint. The motions have been fully briefed since October 17, 2025.

On October 21, 2025, Moving Defendants served still another Rule 11 letter and notice of motion, again challenging the Second Amended Complaint ("Fourth Letter," ECF No. 109-5). The Fourth Letter again confirms that their principal objection is that Plaintiffs' claims will allegedly fail on the merits. Indeed, the notice of motion asserts that sanctions are warranted because the Second Amended Complaint "fails to state an aiding-and-abetting claim under the Antiterrorism Act," "fails to state an aiding-and-abetting claim under the Alien Tort Statute," "raises allegations substantively identical to those that were rejected" in two out-of-circuit district court decisions, and "seeks to impose liability for speech that is protected under the First Amendment." *Id.* at 4. The Fourth Letter, the first filed after Defendants opposed the dispositive motions, did not challenge any contentions in the Consolidated Opposition. *Id.* at 1.

On January 7, 2026, Moving Defendants served their fifth and final Rule 11 letter and notice of motion ("Fifth Letter," ECF No. 109-6). Nothing had changed since their previous letter. Although the Fifth Letter continues to challenge Plaintiffs' claims, it differs in three relevant ways from prior letters. It was the first served with a memorandum of law, which confirmed that Moving Defendants' overarching objection is that they believe the claims are unsupported, as the as-filed brief places beyond doubt. *E.g.*, Mem. 7–8, 11–17, 20–22. It was also the first to seek sanctions based on contentions in the Consolidated Opposition. Mem. 8–10, 13–15, 19, 21. And whereas the prior letters had stated that Moving Defendants would comply with the 21-day safe harbor period,

*see* Fed. R. Civ. P. 11(c)(2), the Fifth Letter unilaterally imposed a five-day deadline to respond. *Compare* Fifth Letter 1, *with, e.g.*, Fourth Letter 1. A week after sending the Fifth Letter, Moving Defendants filed the Motion.

### B.    Defendants' Actionable Activity Continues to This Day

Since the dispositive motions were fully briefed, Defendants have continued to engage in relevant conduct. Of particular note is a disruption at a Queens synagogue, where protestors yelled "*We support Hamas here*" and "*Long live October 7*," prompting widespread condemnation.[2] That disruption took place on January 8, 2026, one day after the Fifth Letter was sent. A video of the event shows someone who strongly resembles defendant Cameron Jones—and who, on information and belief, is Cameron Jones—participating in the disruption.[3] Anyone who makes these statements is generally aware of his role in Hamas' terror enterprise, the second element of a JASTA claim. Whether Jones did so, or stood without objection with others who did, will be a matter for discovery.

### ARGUMENT

### I.    The Motion is Procedurally Defective

### A.    The Motion Improperly Duplicates the Pending Dispositive Motions

The Court should deny the Motion because it duplicates the pending dispositive motions. "Rule 11 should not be used to raise issues of legal sufficiency that more properly can be disposed of by a motion to dismiss, a motion for a more definite statement, or a motion for summary

---

[2] *See* ADL, Pro-Hamas Chant at Queens Synagogue Protest Signals Further Normalization of Terror Rhetoric, https://www.adl.org/resources/article/pro-hamas-chant-queens-synagogue-protest-signals-further-normalization-terror (Jan. 16, 2026) (emphasis added); Queens Daily Eagle, "Pols condemn 'Hamas' chants at Queens protest," https://queenseagle.com/all/2026/1/12/pols-condemn-hamas-chants-at-queens-protest (Jan. 12, 2026).

[3] *See* Instagram, @canarymission, https://www.instagram.com/reel/DTbMpQjD700/ (Jan. 12, 2026).

judgment." *Kumaran v. Northland Energy Trading, LLC*, 762 F. Supp. 3d 322, 337 (S.D.N.Y. 2025) (internal quotation marks and citation omitted). "Nor should Rule 11 motions be prepared to emphasize the merits of a party's position" or "to intimidate an adversary into withdrawing contentions that are fairly debatable." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendments. "[C]ourts frequently deny [Rule 11 motions] as premature when the motion would force a court to prejudge the merits of a party's legal arguments." *Hernandez v. Miller*, 2022 WL 17584025, at *1 (S.D.N.Y. Dec. 12, 2022) (collecting cases). "[E]ven when a court is faced with a frivolous action, it should consider dismissal through dispositive motions such as summary judgment as a 'first option' and only resort to 'the imposition of sanctions as a choice of last resort.'" *Id.* (quoting *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 419 (S.D.N.Y. 2003)).

"Faced with similar duplicative and premature Rule 11 motions, courts have warned attorneys 'to consider carefully the prudence of engaging in extensive and duplicative motion practice.'" *Id.* at *2 (quoting *Luv N' Care, Ltd.*, 2017 WL 3671039, at *16 (S.D.N.Y. Aug. 8, 2017)). Another court awarded sanctions where a Rule 11 motion was "entirely duplicative" of a dispositive motion and "plainly violate[d]" the precept that Rule 11 motions should not "be prepared to emphasize the merits of a party's position." *Lee v. Grand Sichuan E. (N.Y.) Inc.*, 2014 WL 199512, at *3 (S.D.N.Y. Jan. 17, 2014) (quoting *Kara Holding Corp. v. Getty Petroleum Mktg., Inc.*, 2004 WL 1811427, at *22 (S.D.N.Y. Aug. 12, 2004)).

Here, the Motion is redundant, premature, and improperly motivated. From the start, Moving Defendants' core objection was to the supposed weakness of the claims—to the point that one of their letters asserted that sanctions were proper because Plaintiffs supposedly failed to state a claim. Fourth Letter 4. That is also the core of the Motion as filed. *E.g.*, Mem. 7–8, 11–17, 20–22. The still-pending dispositive motions generated over 200 pages of briefing already addressing

those issues. From all that appears, the Motion was inappropriately filed to bolster Moving Defendants' dispositive motions or intimidate Plaintiffs into withdrawing their contentions. In all events, the Motion is improper and should be denied.

**B.    Moving Defendants Did Not Satisfy the Safe Harbor as to Numerous Contentions**

Independently, the Motion must also be denied insofar as it challenges the Consolidated Opposition and certain other contentions identified below. Rule 11 creates a 21-day safe harbor period between the service and filing of a motion, *see* Fed. R. Civ. P. 11(c)(2), and "[a] motion that fails to comply with the safe harbor provision of Rule 11 must be denied." *Castro v. Mitchell*, 727 F. Supp. 2d 302, 306 (S.D.N.Y. 2010) (denying motion served and filed on the same day); *accord Lawrence v. Richman Grp.*, 620 F.3d 153, 154 (2d Cir. 2010) (per curiam) (vacating sanctions where movant did not comply with safe harbor); *ED Cap., LLC v. Bloomfield Inv. Res. Corp.*, 316 F.R.D. 77, 82 (S.D.N.Y. 2016) (denying motion for failure to comply with safe harbor). "Only conduct explicitly referred to in the instrument providing notice is sanctionable." *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 310 (2d Cir. 2014); *see, e.g.*, *Lee v. Town of Southampton*, 2020 WL 1237198, at *22 (E.D.N.Y. Feb. 21, 2020) (rejecting generalized notice as insufficiently definite to challenge "two specific allegations in the Complaint"), *report and recommendation adopted*, 2020 WL 1234200 (E.D.N.Y. Mar. 13, 2020); *In re Koper*, 2020 WL 5075549, at *13 (Bankr. E.D.N.Y. Aug. 25, 2020) (denying Rule 11 motion insofar as it challenged conduct postdating the Rule 11 notice). Here, although Moving Defendants served five notices, only the Fifth Letter specifically identified numerous contentions that the Motion challenges, including every challenged contention in the Consolidated Opposition. The Motion was, however, filed two weeks before the safe harbor expired. Because no safe harbor was given for these contentions, the Motion must be denied insofar as it attacks them.

## II.    Rule 11 Sanctions Should Be Denied

### A.    Rule 11 Imposes Demanding Standards

"Rule 11(b) requires an attorney to certify that a pleading is not presented for any improper purpose, is warranted by existing law or a nonfrivolous argument for extending or modifying law and has evidentiary support." *Douglas*, 2025 WL 2042430, at *5. "[I]t is well settled that the imposition of sanctions is reserved for 'extreme cases,'" *Tantaros v. Fox News Network LLC*, 2018 WL 1662779, at *4 (S.D.N.Y. Mar. 16, 2018) (quoting *Sorenson v. Wolfson,* 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016)), and "extraordinary circumstances." *Park v. Seoul Broad. Sys. Co.*, 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008). "[T]he court is to avoid hindsight and resolve all doubts in favor of the signer." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986). "[E]ven where a court finds that Rule 11 has been violated, the decision whether or not to impose sanctions is a matter for the court's discretion," which must be exercised with "caution and restraint." *Tantaros*, 2018 WL 1662779, at *3 (internal quotation marks and citation omitted).

Importantly, "[t]he Supreme Court has cautioned that Rule 11 'must be read in light of concerns that it will chill vigorous advocacy.'" *Lee*, 2014 WL 199512, at *1 (ellipsis omitted) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). "The standard for imposing Rule 11 sanctions . . . is purposefully high, so as not to stifle legal creativity and zealous advocacy." *Douglas*, 2025 WL 2042430, at *6 (internal quotation marks omitted) (quoting *City of Perry v. Procter & Gamble Co.*, 2017 WL 2656250, at *2 (S.D.N.Y. June 20, 2017)). For that reason, "[m]isunderstanding the law or attempting to extend the law to a novel application is not an appropriate basis for sanctions." *Salvini v. ADVFN PLC*, 2016 WL 1703414, at *4 (S.D.N.Y. Apr. 27, 2016).

Here, Moving Defendants seek sanctions on the grounds that the claims are frivolous, factually unsupported, and asserted for an improper purpose. *See* Fed. R. Civ. P. 11(b)(1), (b)(2), (b)(3). The Motion falls far short of Rule 11's demanding standards and should be denied.

### B.    Plaintiffs' Claims Are Well-Supported

The Court should reject Moving Defendants' arguments that Plaintiffs' claims are frivolous under Rule 11(b)(2). Mem 11–17. These arguments rehash contentions made in the dispositive motions, and they are unpersuasive for reasons already given at length.

Under Rule 11(b)(2), "[t]he operative question is whether the argument is frivolous, i.e., the legal position has 'no chance of success,' and there is 'no reasonable argument to extend, modify or reverse the law as it stands.'" *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) (quoting *Morley v. Ciba–Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995)). "Merely incorrect legal statements are not sanctionable under Rule 11(b)(2)," *Storey v. Cello Holdings*, 347 F.3d 370, 391 (2d Cir. 2003) (Sotomayor, J.), and "[t]he fact that a legal theory is a long-shot does not necessarily mean it is sanctionable," *Jobar Holding Corp. v. Halio*, 2025 WL 1512574, at *3 (2d Cir. May 28, 2025) (summary order) (quoting *Fishoff*, 634 F.3d at 654). "The extent to which a litigant has researched the issue and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account when determining whether Rule 11(b)(2) has been violated." *ED Cap.*, 316 F.R.D. at 81 (quoting Fed. R. Civ. P. 11 advisory committee's note to 1993 amendments).

Moving Defendants offer five reasons that the claims are frivolous. None holds water.

*First*, contrary to the Motion (Mem. 12–14), liability in this case rests on principles found on the face of *Twitter v. Taamneh*, 598 U.S. 471 (2023). *See* Consol. Opp. 34–48. *Twitter* hews to the traditional rules that aiding and abetting comes in "many forms" and includes "encouraging, soliciting or advising the commission of the offense." 598 U.S. at 490; *see also id.* at 492–93.

*Twitter* also accepts the "near-common enterprise theory" under which a "secondary defendant's role in an illicit enterprise can be so systemic that the secondary defendant is aiding and abetting every wrongful act committed by that enterprise." *Id.* at 502, 496 (citing *Halberstam v. Welch*, 705 F.2d 472, 487–88 (D.C. Cir. 1983)). And *Twitter* expresses the Supreme Court's view that, although the defendant's "mere passive nonfeasance" did not give rise to liability, *id.* at 500, "if a platform consciously and selectively chose to promote content provided by a particular terrorist group, perhaps it could be said to have culpably assisted the terrorist group," *id.* at 502 (citing *Passaic Daily News v. Blair*, 308 A.2d 649, 656 (N.J. 1973)). Although that statement was unnecessary to the holding, "carefully considered language of the Supreme Court" carries great weight. *Rivera v. Kaplan*, 2017 WL 3017713, at *2 (S.D.N.Y. July 13, 2017) (quoting *Sierra Club v. EPA*, 322 F,3d 718, 724 (D.C. Cir. 2003)). In short, *Twitter* supports liability here. At a minimum, it is not sanctionable to assert theories of liability described in a unanimous Supreme Court opinion.[4]

Nor have Plaintiffs somehow rewritten their claims through legal briefing. Mem. 12. The nub of this action is that Defendants aided and abetted Hamas's terror crimes through the provision of propaganda services. The specific conduct is alleged in the Second Amended Complaint, and the Consolidated Opposition explains why this conduct is actionable under multiple theories of liability. That is entirely proper and certainly not sanctionable. Indeed, the Second Circuit has

---

[4] *Fracht FWO Inc. v. TPR Holdings LLC* is readily distinguishable. *See* 2022 U.S. Dist. LEXIS 57355, at *2 (S.D.N.Y. Mar. 29, 2022) (claims frivolous where plaintiff opposed motion to dismiss by "cit[ing] seemingly random provisions of the ICA" but "no existing precedent to support its claims").

sustained claims that were not even enumerated in the complaint, where the relevant facts were alleged. *See Quinones v. City of Binghamton*, 997 F.3d 461, 468 (2d Cir. 2021).[5]

    *Second*, the Motion's inflammatory charge that Plaintiffs have "misrepresented" the law and engaged in "outright distortion" should be rejected out of hand. Mem. 12, 14. Plaintiffs' arguments speak for themselves and "distort" nothing. To take just one of the Motion's accusations, it is in fact the law that intent is not always required to state a JASTA claim. Although specific intent is required in a criminal case, the standard in a civil case is knowing and substantial assistance, and a stronger showing of one allows a lower showing of the other. *See Twitter*, 598 U.S. at 491–92. This analysis is "highly fact intensive" and "differs 'on a case by case basis.'" *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420, 443 (2d Cir. 2025) (quoting *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 500 (2d Cir. 2021)). The Second Circuit has specifically deemed it error to equate knowing and substantial assistance with intent. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 863 (2d Cir. 2021) ("[T]he district court's initial rationale does not properly reflect the *Halberstam* third element, which concerns not whether LCB 'intentionally supported Hizbollah in perpetrating the rocket attacks,' or acted 'pursuant to Hizbollah' agenda,' but rather concerns whether LCB aided and abetted Hizbollah by knowingly providing assistance—whether directly to Hizbollah or indirectly—and whether that assistance was substantial." (citation and brackets omitted)). A different aspect of the defendant's mental state is tested by the second element of a JASTA claim, general awareness. On this point, the

---

[5] Moving Defendants' cases are inapposite. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (not a sanctions case; argument that defendant made a fraudulent omission in 1996 not proper where complaint alleged that a 1995 document made false representations); *Ammann v. Sharestates, Inc.*, 2024 WL 1956237, at *11 (E.D.N.Y. Mar. 21, 2024) (awarding sanctions where arguments were "obviously contradictory to the language of the pleading").

Second Circuit has put it plainly: "JASTA aiding-and-abetting liability, using *Halberstam*'s general awareness standard, does not require proof that the defendant had a specific intent." *Id.* at 863. Rather, the defendant need only "be generally aware of its role in some illegal activity from which the terrorist attack was foreseeable." *Ashley*, 144 F.4th at 438.

In fact, just last week, the D.C. Circuit rejected the argument that JASTA imposes a specific intent requirement. *Atchley v. AstraZeneca UK Limited*, _ F.4th _, 2026 WL 184415, at *10 (D.C. Circ. Jan. 23, 2026) ("Contrary to defendants' assertions, *Taamneh* did not read a specific intent requirement into the ATA."). In doing so, it adhered to the traditional distinction between criminal and civil aiding and abetting. *Id.* at *11 ("[C]ourts considering common law aiding-and-abetting claims have long distinguished the intent necessary to establish *criminal* aiding and abetting from the less stringent state-of-mind requirement for *civil* aiding and abetting.").

The Motion's contrary argument mistakenly focuses on shorthand statements stripped of context and divorced from this decisional law. The Second Circuit's decision in *Ashley* embraces the mental state standards discussed above, *see id.* at 438–39 & n.13, and its later references to "intent" are best understood as shorthand for those standards. *Id.* at 444. Notably, *Ashley*'s actual holding on this point was that the plaintiffs' "fungibility theory" is inconsistent with JASTA's "foreseeability principle," under which a defendant must "understand[], to some extent, the foreseeable consequences of the defendant's actions." *Id.* The case *Ashley* relies on for the "intent" language cited by the Motion, moreover, draws the traditional line between criminal and civil liability. *See Linde v. Arab Bank, PLC*, 882 F.3d 314, 329–30 & n.10 (2d Cir. 2018); *see also Kaplan*, 999 F.3d at 858–60 (interpreting this passage from *Linde*).

In short, Plaintiffs' position is neither frivolous nor a "distortion": it is the law. Moving Defendants' other "distortion" contentions likewise fail. Although Moving Defendants might read *Twitter* differently, Plaintiffs' reading is plainly within bounds. *See* Consol Opp. 34–37, 45–46 (discussing *Twitter*). The same is true of Plaintiffs' First Amendment position. *See* Consol. Opp. 60–65. These are properly subjects for the motions to dismiss.[6]

*Third*, for all Moving Defendants' bluster (Mem. 15; *see also* Mem. 8–9 & n.3), they simply fail to recognize that the Supreme Court has denied First Amendment protection to individuals who coordinate speech-related activities with a terror organization. *See Holder v. Humanitarian Law Proj.*, 561 U.S. 1 (2010). That is a constitutional holding that sweeps beyond the criminal statute at issue in *Holder*. Remarkably, Moving Defendants favorably cite a decision *supporting* Plaintiffs' position. *See In re Terrorists Attacks*, 740 F. Supp. 2d 494 (S.D.N.Y. 2010) (cited at Mem. 9 n.3). That case sustains a civil claim under the Antiterrorism Act over the defendant's First Amendment defense. *Id.* at 519–20. Although Moving Defendants quote it for its recognition that "independent advocacy" is allowed, *id.* at 519, they ignore the very next sentence, which draws the constitutional line at coordination. *Id.* ("Establishing meeting places, holding public forums, or issuing publications to disseminate virulent rhetoric is not actionable, under § 2333, *unless such services are being provided as support to a foreign terrorist organizations*." (emphasis added)); *see also* Consol. Opp. 68–69 (discussing the same case). Plaintiffs have persuasively explained why these and other authorities show that the First

---

[6] Moving Defendants' cases are nothing like this one. *See Manhart v. WESPAC Found.*, 2025 WL 2257408, at *16 (N.D. Ill. Aug. 7, 2025) (defendant "ascribe[d] nonexistent holdings to cases" and "claim[ed] that a non-precedential case establishes precedent"); *Chauvet v. Loc. 1199, Drug, Hosp. & Health Care Emps. Union*, 1996 WL 665610, at *17 (S.D.N.Y. Nov. 18, 1996) (plaintiff "completely misunderstands the purpose and operation of ERISA," advanced at least two "completely different, yet equally wrong, vision[s] of ERISA," and advanced positions that "defie[d] explanation or explication").

Amendment is no defense here and why Plaintiffs' coordination allegations are sufficient. Consol. Opp. 60–75.

Contrary to the Motion (Mem. 15), moreover, Plaintiffs' contentions that Defendants coordinated with and encouraged Hamas work in harmony. Propaganda is central to Hamas' strategy. SAC ¶¶ 44–45. There is an obvious difference between an infamous terror organization retroactively defending its crimes and putatively independent student organizations publicly encouraging them to commit and continue more.[7]

*Fourth*, Plaintiffs' contentions would not expose "anyone who joined a protest" to liability, but only those who coordinate their assistance with terror groups. Mem. 15. Defendants fall on the wrong side of that line. Plaintiffs allege that various Defendants repeatedly organized rallies in response to Hamas' calls for disruption abroad; hosted a terror sympathizer who declared that his "friends and brothers in Hamas" valued their "work"; led organizations closely associated with AMP/NSJP, Hamas' domestic propaganda wing; and coordinate with Hamas through Bazrouk and others like him. Consol. Mem. 63–65. In short, this is an extreme case that does not implicate the everyday rallygoer.

*Fifth*, contrary to the Motion (Mem. 16–17), the claims against Moving Defendants in their individual capacity are also well-supported. If the Consolidated Opposition addresses individual liability efficiently, that is simply a function of the relevant rules. Because Moving Defendants participated as leaders in the actionable conduct of their organizations, they are individually liable.

---

[7] The claims are nothing like the "fantastic and delusional" claims at issue in *McCracken v. Natale*, where the court sanctioned a pro se plaintiff with a history of asserting unmoored claims for "ignor[ing] its earlier dismissal with prejudice by maintaining a virtually identical, and equally unsubstantiated, complaint against Defendants." 2008 WL 5274317, at *6 (E.D.N.Y. Dec. 17, 2008).

*See* Consol. Opp. 50–52. These arguments are far from frivolous and are properly addressed by the dispositive motions.

Accordingly, the Court should deny sanctions under Rule 11(b)(2).[8]

### C.    Plaintiffs' Factual Contentions Are Proper

Moving Defendants' arguments under Rule 11(b)(3) are likewise meritless. Mem. 17–19.

The standard under Rule 11(b)(3), which governs "factual contentions," is demanding. Fed. R. Civ. P. 11(b)(3). "With regard to factual contentions, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.'" *Storey*, 347 F.3d at 388 (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996)). "Courts typically look for statements which rise to the level of direct falsehoods before they find that sanctions are warranted pursuant to Rule 11(b)(3)." *Zeta Glob. Corp. v. Maropost Mktg. Cloud, Inc.*, 610 F. Supp. 3d 535, 544 (S.D.N.Y. 2022) (quoting *Bongiorno v. Baquet*, 2021 WL 4311169, at *23 (S.D.N.Y. Sept. 20, 2021)). "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010) (quoting *Navarro–Ayala v. Hernandez–Colon,* 3 F.3d 464, 467 (1st Cir. 1993)). In evaluating a motion under Rule 11(b)(3), courts consider complete allegations read in context, not "fragmentary contentions [that] create[] the appearance of an unwarranted contention." *Storey*, 347 F.3d at 388; *accord Collison v. Wandrd, LLC*, 2024 WL 3252933, at *3 (S.D.N.Y. July 1, 2024) (analyzing challenged statement "in context"); *cf. Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 337–38 (2d Cir. 1999) (denying sanctions where "the facts in their totality belie the conclusion that SNC's claim lacked a colorable basis").

The challenged contentions readily withstand the Motion's objections.

---

[8] Moving Defendants' one-sentence objection to the Alien Tort Statute claim (Mem. 12 n.7) also fails. *See* Consol. Opp. 54–59.

*"Advertise" contention.* The assertion that Defendants "advertise themselves" as "Hamas' propaganda arm in New York City and on the Columbia University campus," made in the introduction to the pleading, SAC ¶ 1, is proper for reasons already given. Consol. Opp. 89. If Defendants have not expressed this sentiment in so many words, they have done so by their actions, as alleged in detail in the body of the pleading. It requires a strained, overly literal, and context-free reading of this contention to find anything improper in it. *See Kiobel*, 592 F.3d at 83; *Storey*, 347 F.3d at 388.

*"Terrorizing and assaulting" contention.* For much the same reasons, the pleading fairly asserts that "[t]heir [Defendants'] self-described acts in furtherance of their goals to assist Hamas have included terrorizing and assaulting Jewish students, unlawfully taking over and damaging public and university property on Columbia's campus, and physically assaulting Columbia employees." SAC ¶ 1.[9] Violence, intimidation, and property damage did indeed accompany many of the disruptions that the Associational Defendants organized and promoted. *E.g.*, SAC ¶¶ 152–53, 186, 209, 215–216. It is thus entirely fair to say in the introduction to the pleading that Defendants' conduct included these activities. And although Moving Defendants pretend that they were individually accused of this conduct for purposes of this argument, they understand perfectly well that they were not. *See* Mem. 16–17 (arguing that "[n]either is alleged to have personally . . . broken any laws (save refusing an order to disperse from the college commons) or committed any acts of violence").

*"Act behind veils" contention.* The assertion that "They [Defendants] act behind veils and largely seek to be anonymous individually yet seek to intimidate as a group" is also proper. SAC

---

[9] No safe harbor was provided for this contention, which was first identified in the memorandum of law accompanying the Fifth Letter. *See supra* § I.B.

¶ 1.[10] The Motion's challenge to this statement is mystifying. It is obviously possible to both largely conceal one's identity and to act publicly at times. *Cf. Freeman v. Stake.com*, 2023 WL 7386354, at *3 (S.D.N.Y. Nov. 7, 2023) (no sanctions to simultaneously call an entity a "partnership" and "no longer a partnership" where "the descriptors appear within a broader narrative of evolving business ventures and relationships"). That is what is alleged here. Although Moving Defendants often acted openly as the face of their organizations, many disruptors concealed their identities. *E.g.*, SAC ¶¶ 113, 152, 189, 210, 214. That approach is, moreover, consistent with some of the promotional material advertising Defendants' events, which depicts anonymous and masked protestors. *E.g.*, SAC ¶¶ 192, 205–06.

*Foreknowledge contention.* Equally fair is the allegation that the Associational Defendants—a defined term that does not include Moving Defendants—had prior knowledge of the October 7 attack. SAC ¶¶ 6, 105. "'A plaintiff is not required to know at the time of pleading all facts necessary to establish the claim, and thus may make allegations based on information and belief' without those allegations becoming sanctionable under Rule 11." *Salameno v. Rawlings*, 2022 WL 16962822, at *4 (S.D.N.Y. Nov. 16, 2022) (brackets, ellipsis, and internal quotation marks omitted) (quoting *Beecher v. Riverdale Riding Corp.*, 2011 WL 3427196, at *5 (S.D.N.Y. Aug. 3, 2011)); *accord Collison*, 2024 WL 3252933, at *3 (deeming information-and-belief allegation not sanctionable where Defendants did "not establish that the complaint's allegation is the kind of 'direct falsehood' typically necessary before a court finds that sanctions are warranted" (quoting *Zeta Glob. Corp.*, 610 F. Supp. 3d at 544)). Here, the challenged allegation is made on information and belief, and it specifies three bases for that belief: the swift distribution of the NSJP Toolkit and the signing of the Towfan Al-Aqsa Statement, the inclusion of paraglider graphics in

---

[10] No safe harbor was provided this contention, either. *See supra* n.9.

the NSJP Toolkit, and a suggestive post from Columbia SJP's Instagram account from a short time before the October 7 attack commenced. SAC ¶ 105. Although it is unknown whether discovery will bear out this allegation, it is far from "utterly lacking in support," *Storey*, 347 F.3d at 388, or a "direct falsehood," *Collison*, 2024 WL 3252933, at *3.

*Aiding and abetting contentions*. The Motion's challenge to the aiding-and-abetting contentions (Mem. 19) likewise fails. Rule 11(b)(3) governs factual contentions and does not apply to a statement that "mak[es] a legal argument." *Storey*, 347 F.3d at 388, 390; *accord Penzo v. Consol. Edison Co.*, 2024 WL 4467412, at *2 (S.D.N.Y. Oct. 10, 2024) (providing that "statements that are merely argument do not violate Rule 11" (ellipsis, brackets, and internal quotation marks omitted)). Arguments are governed instead by Rule 11(b)(2), which addresses "claims, defenses, and legal contentions." Fed. R. Civ. P. 11(b)(2). The assertion that Moving Defendants aided and abetted Hamas' crimes is a claim or legal contention, so any Rule 11(b)(3) challenge fails. Viewed under Rule 11(b)(2), the challenge fails because the contention is non-frivolous. *See supra* § II.B.

*Coordination contentions*. The contentions that Defendants coordinated their activities with Hamas are also proper. Mem. 19. Insofar as Moving Defendants object to the legal conclusion that Defendants coordinated with Hamas—the rejoinder to their flawed First Amendment defense—the challenge is not cognizable under Rule 11(b)(3). *See Storey*, 347 F.3d at 390. Viewed under Rule 11(b)(2), the challenge fails for the reasons above. *See supra* § II.B. Insofar as Moving Defendants challenge the factual contentions, they are well-pleaded for reasons already given and amply support an inference of coordination. *See* Consol. Opp. 60–75.

*Contentions in the Consolidated Opposition*. Finally, the challenges to statements in the Consolidated Opposition fail. Mem. 19. No safe harbor was provided for these assertions, which were specifically identified for the first time by the memorandum of law accompanying the Fifth

Letter. *See supra* § I.B. The statements are proper in any event. They consist of Plaintiffs' fair characterizations of allegations in the Second Amended Complaint and arguments that the Court should accept certain information-and-belief allegations as true. For example, the Motion asserts that Plaintiffs should be sanctioned for asserting that Moving Defendants "coordinate with Hamas through Bazrouk and others like him." Mem. 19. In full, the challenged sentence reads: "More than that, the Court should also accept Plaintiffs' information-and-belief allegations that Defendants coordinate with Hamas through Bazrouk and others like him." Consol Opp. 29. The relevant allegations in the Second Amended Complaint are asserted on information and belief, SAC ¶¶ 225–227, and the bases for that belief are alleged in the preceding paragraphs. SAC ¶¶ 212–224. This approach is proper. *See Collison*, 2024 WL 3252933, at *3; *Salameno*, 2022 WL 16962822, at *4.

Finally, the Motion mistakenly argues that an affidavit describing counsel's pre-filing investigation is required to ward off a "strong suggest[ion]" that the investigation was inadequate. Mem. 17 (quoting *Kingvision Pay-Per-View Ltd. v. Ramierez*, 2005 WL 1785113, at *3 (S.D.N.Y. July 28, 2005)). Plaintiffs' thorough investigation is apparent from the face of the pleadings, which meticulously document their sources. In any event, where, as here, "an objectively reasonable evidentiary basis for a claim has been demonstrated," "no inquiry into the adequacy of the attorney's pre-filing investigation is necessary." *Gap, Inc. v. Stone Int'l Trading, Inc.*, 169 F.R.D. 584, 589 (S.D.N.Y.), *aff'd*, 125 F.3d 845 (2d Cir. 1997) (unpublished); *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329 (2d Cir. 1995) (same); *cf. Kumaran*, 762 F. Supp. 3d at 337 n.8

("[T]here is no basis to require such an affidavit unless and until the Court find the Counterclaims to be frivolous.").[11]

The Rule 11(b)(3) challenges therefore fail.[12]

## D.    The Claims Were Brought for a Proper Purpose

The claims were brought for a proper purpose: to secure recovery for victims of Hamas' terror crimes from some of Hamas' key domestic supporters. The Motion's contrary arguments do not withstand scrutiny. Mem. 7–11.

"'The standard for triggering the award of fees under Rule 11 is objective unreasonableness,' and is not based on the subjective beliefs of the person making the statement." *Storey*, 347 F.3d at 387 (citation omitted) (quoting *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000)); *accord Freeman*, 2023 WL 7386354, at *3 ("As with Rules 11(b)(2) and (3), the objective reasonableness standard applies."). "A determination of improper purpose must be supported by a determination of frivolousness when a complaint is at issue." *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995) (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc)); *accord Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 176–77 (2d Cir. 1999) (vacating improper purpose sanctions predicated solely on legal frivolousness); *Storey*, 347 F.3d at 393 ("Without objectively unreasonable statements,

---

[11] *Kingvision* is consistent. It considers the lack of a pre-filing affidavit only after finding "neither the record nor Thillet provides any evidentiary support for the factual allegations," which "merely makes broad, conclusory allegations of fact." 2005 WL 1785113, at *3.

[12] Moving Defendants' authorities are distinguishable, as each involved the type of direct falsehood that can support sanctions. *In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 264 (S.D.N.Y. 2010) (awarding sanctions where alleged emails that were "the crux of the entire complaint" "simply did not exist"); *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 409 n.28 (S.D.N.Y. 2009) (not a sanctions case; stating in dicta that an "irrelevant and incorrect" contention that a party had been "convicted in the Spring of 2007 of criminal contempt" is a "prima facie violation of Fed. R. Civ. P. 11(b)'s requirement of reasonable inquiry"), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) (summary order).

economic disparity and a greater litigiousness do not alone amount to improper purpose."). Additionally, "in assessing whether a violation of Rule 11(b)(1) has occurred, courts must consider whether a filing has multiple purposes." *Freeman*, 2023 WL 7386354, at *3. "A party should not be penalized for or deterred from seeking and obtaining warranted judicial relief merely because one of his multiple purposes in seeking that relief may have been improper." *Sussman*, 56 F.3d at 459. "[E]ven if one of a plaintiff's multiple purposes in bringing suit is improper, sanctions are not warranted." *JGIAP RH 160 LLC v. CRI Holding Corp.*, 2023 WL 5979125, at *20 (E.D.N.Y. Aug. 16, 2023), *report and recommendation adopted*, 2023 WL 6307320 (E.D.N.Y. Sept. 28, 2023).

The Motion's Rule 11(b)(1) challenges fail under these standards.

*First*, far from lacking any colorable basis (Mem. 7–8), Plaintiffs' claims are well-supported. This dooms the Rule 11(b)(1) arguments out of the gate. *See JM Holdings 1 LLC v. Quarters Holding GmbH*, 2021 WL 860516, at *8 (S.D.N.Y. Mar. 8, 2021) ("Since Quarters has failed to demonstrate that Plaintiffs' claims are frivolous, it does not matter what motive Plaintiffs had for filing the complaint."). The Court need go no further.[13]

*Second*, the Motion claims that Plaintiffs improperly seek to "silenc[e] disfavored speech about Israel," Mem. 8, going so far as to assert that Plaintiffs "proclaim that speech 'demonizing' Israel is a 'crime against humanity,'" Mem. 1. In reality, the Second Amended Complaint identifies Hamas' crimes against humanity as "kidnapping and imprisoning civilian hostages, attacking civilian populations, and holding human remains to use as bargaining chips." SAC ¶ 249. That is what Defendants are alleged to have aided and abetted. Although Defendants certainly also

---

[13] *An v. Despins* is nothing like this case and aptly demonstrates the type of extreme misconduct required for sanctions. *See* 2023 WL 4931832, at *6–*7 (S.D.N.Y. Aug. 2, 2023) (inferring an improper purpose where plaintiffs "failed to withdraw their complaint" in violation of an injunction and where plaintiffs' "true preoccupation" was with "trying to 'defend'" a non-party "by harassing those perceived to be his adversaries").

assisted Hamas in demonizing Israel, *see* SAC ¶ 259, it requires a willful misreading to say the complaint equates critical speech with a crime against humanity. Hyperbole aside, this argument merely repackages Defendants' flawed First Amendment contentions. Plaintiffs have repeatedly recognized that the First Amendment protects independent pro-terror advocacy, abhorrent as that advocacy is, and do not seek to "silence" independent advocacy with this lawsuit. SAC ¶¶ 12, 228–231; Consol. Opp. 5, 60. Here, Plaintiffs allege that Defendants' misconduct is not protected because it was coordinated with a terror group. *See* Consol. Opp. 60–65.[14]

 *Third*, it requires a willful misreading of the Second Amended Complaint to assert that its allegations are irrelevant to the claims. Mem. 9. The acts of terrorism in this case include Hamas' kidnapping and holding hostage of certain Plaintiffs and Hamas' armed encounters with others. That conduct mainly occurred after the October 7 attack started. The theory of the case is that Defendants aided and abetted theses acts of terrorism by providing Hamas with public relations services, by encouraging Hamas to commit and continue terror crimes, and by consciously and selectively promoting Hamas' terror message. The allegations in the Second Amended Complaint are highly apposite to this theory.

 The Motion's focus on foreknowledge is misplaced. Contrary to the Motion's accusations (Mem. 9–10), Plaintiffs have stood by their foreknowledge allegations and have explained exactly how they relate to the elements of their claims. Consol. Opp. 24 (citing SAC ¶ 105), 44 (citing SAC ¶¶ 101–06). Plaintiffs have also explained why foreknowledge, though relevant, is not central

---

[14] Moving Defendants' cases do nothing to show an improper purpose. Only one is a sanctions case, and it is readily distinguishable. *See Gerber v. Herskovitz*, 2022 WL 246881, at *3, *6 (E.D. Mich. Jan. 25, 2022) (inferring improper purpose where "it was clear that Plaintiffs' claims against Protestor Defendants were groundless" and the plaintiffs' First Amendment contentions were "baseless[]"). Here, by contrast, Plaintiffs' claims are far from frivolous and their First Amendment contentions are grounded in *Holder* and cases applying it. The parties' dispute over the scope of the First Amendment is properly decided in the dispositive motions.

to this case. Consol Opp. 59–60 & n.29. By the end of October 7, 2023, Hamas' terror crimes were known around the world. And with full knowledge of these horrors, Defendants encouraged Hamas to commit and continue its crimes against Plaintiffs and others, performed public relations services for Hamas, and selectively amplified Hamas' pro-terror message.[15]

*Fourth*, far from "ignor[ing]" Moving Defendants (Mem. 10), Plaintiffs have responded in the appropriate way: by opposing the dispositive motions that their Rule 11 papers duplicate. No further defense of the pleadings is needed.

Moving Defendants' argument also overlooks the fact that each amended complaint reflected adjustments that were germane to their letters. The First Letter, for example, argued that the Complaint insufficiently alleged Moving Defendants' individual conduct or leadership of their organizations, and the Amended Complaint added allegations on each point. *Compare* First Letter 1–2, *with* AC Redline ¶¶ 23–34, 66, 75, 113, 120–22, 135, 154. The First Letter also asserted that the Complaint mistakenly identified defendant Maryam Alwan as the speaker in a video of "Maryam (Columbia SJP, She/Her)," and the Amended Complaint did not include that allegation. *Compare* First Letter 1 n.1, *with* AC Redline ¶ 126. And the Second Letter objected, albeit belatedly, to the "admitted terrorists" rhetoric, and the Second Amended Complaint does not use that term. *Compare* Second Letter 1, *with* SAC Redline ¶ 1. Plaintiffs thus have neither ignored

---

[15] Moving Defendants' cases are distinguishable. *Manhart* arose out of a two-and-a-half hour "blockade" of a freeway, and the "propaganda" allegations were obviously irrelevant to the false imprisonment and other common-law claims at issue. 2025 WL 2257408, at *15. In *Hoatson v. New York Archdiocese*, the court awarded sanctions where "there is little in the lengthy and prolix complaint that has anything to do with the claimed RICO violation." 2007 WL 431098, at *10 (S.D.N.Y. Feb. 8, 2007). Here, the propaganda allegations form the heart of the challenged conduct and are directly relevant to the asserted claims.

Moving Defendants' letters nor improperly "prolong[ed] the litigation." Mem. 10. If anything, it is this duplicative and premature Motion that has improperly multiplied the proceedings.[16]

*Fifth*, Moving Defendants' protests about media appearances discussing this action do not move the needle. Mem. 11. "[F]iling and publicizing a lawsuit, and thereby exerting considerable pressure on a defendant to settle, does not, by itself, suggest that a case was brought for an improper purpose." *Tantaros*, 2018 WL 1662779, at *4. Here, the challenged comments were little more than summary descriptions of non-frivolous pleadings. Even if they somehow revealed an improper purpose (they do not), sanctions should be denied. *See JGIAP RH 160 LLC*, 2023 WL 5979125, at *20.[17]

### E.    No Sanction Should Issue

Because Plaintiffs satisfy Rule 11, the Court should not award sanctions, much less the unserious request for eleven times attorney's fees and a public apology. Mem. 24. In any event, the Motion's arguments addressed to the Court's discretion are unpersuasive. Mem. 19–26. These arguments largely rehash arguments that fail for reasons given above that need not be repeated. Insofar as Moving Defendants develop any new contentions, they are unavailing.

*Willfulness*. Contrary to the Motion, *Parizer* and *Gerwaski* do not require Plaintiffs to abandon this case. Mem. 20–22. The Court is free to reach a different result because those decisions are distinguishable,[18] and it would be free to do so even if they were not. "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same

---

[16] *LCS Grp. v. Shire LLC* is readily distinguishable, as the plaintiff refused to defend a frivolous claim but would not dismiss it with prejudice. 2019 WL 1234848, at *16 (S.D.N.Y. Mar. 8, 2019). Here, Plaintiffs stand by their claims, which are far from frivolous.

[17] *Katzman v. Victoria's Secret Catalogue* is distinguishable; it was not media appearances alone, but also "the total lack of substance in the Plaintiffs' RICO claims and the egregious and unjustified neglect of the required statutory elements" that suggested an improper purpose. 167 F.R.D. 649, 661 (S.D.N.Y. 1996).

[18] Consol. Opp. 59–60, 73 (discussing *Parizer* and *Gerwaski*).

judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *see, e.g.*, *Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*, 2025 WL 2916153, at *5 n.3 (S.D.N.Y. Oct. 14, 2025) (Vargas, J.) ("This Court is not bound by case law in a different district that falls outside of the Second Circuit."); *cf. Levy v. Penn Mutual Life Ins. Co.*, 2026 WL 91626, at *5 (S.D.N.Y. Jan. 13, 2026) (faulting defendants for "wrongly attempt[ing] to give [a district court decision] an authority it cannot possess"). In short, two out-of-circuit district court do not create "settled law," Mem. 21, and the Court can and should sustain Plaintiffs' claims.[19]

*Similar conduct in other litigation*. The accusation that Plaintiffs' counsel are "repeat offenders" should be rejected out of hand. Mem. 22. The Motion cites no evidence of any misconduct in this action or any other. None of the three cited decisions—which were brought by different, if partially overlapping, groups of attorneys—find any fault in litigation conduct. All three dismissed claims *without* prejudice, and one is now on appeal. *See Lavi v. UNRWA USA Nat'l Comm., Inc.*, 2025 WL 2300038, at *10 (D. Del. Aug. 8, 2025); *Parizer v. AJP Educ. Found., Inc.*, 2025 WL 2382933, at *10 (E.D. Va. Aug. 15, 2025), *appeal filed*, No. 25-2366 (4th Cir. Nov. 7, 2025); *Newman v. Associated Press*, 758 F. Supp. 3d 1357, 1382 (S.D. Fla. 2024). Other actions have enjoyed more success. *See Jan v. People Media Project*, 783 F. Supp. 3d 1300, 1303 (W.D. Wash. 2025) (sustaining claim that "Defendants aided and abetted their [Plaintiffs'] kidnapping and Hamas's acts of terrorism"). This body of work does not remotely support sanctions.

---

[19] Moving Defendants' cases are readily distinguishable. *See, e.g.*, *Streamlined Consultants, Inc. v. EBF Holdings*, 2023 WL 5835748, at *10 (S.D.N.Y. Sept. 8, 2023) (awarding sanctions for reasserting "usurious loan" claim after the court had previously ruled "there is no usurious loan in this case"); *LCS Grp.*, 2019 WL 1234848, at *17 (prior district court decision had "made clear that any attempt to relitigate the IPR in district court would be frivolous and abusive, yet LCS filed this action alleging, inter alia, fraud based on the IPR petition").

*Intent to injure*. There is no intent to injure the Defendants; Plaintiffs' claims were brought for a proper purpose. *See supra* § II.D. It is immaterial that the claims might subject the Moving Defendants to reputational harm or litigation costs. Plaintiffs have done no more than describe the conduct of the Defendants and other relevant actors, make information-and-belief allegations grounded in identified contentions, and argue why that conduct supports liability. Once again, these claims and contentions are far from frivolous. *Cf. Black v. Ganieva*, 2022 WL 2354916, at *11 (S.D.N.Y. June 30, 2022) ("[W]here a complaint 'is not held to lack foundation in law or fact,' the 'filing of the complaint with a view to exerting pressure on defendants through the generation of adverse and economically disadvantageous publicity' is insufficient to show improper purpose." (quoting *Sussman*, 56 F. at 459)).

*General deterrence*. The Court should reject Moving Defendants' efforts to locate this lawsuit in a broader line of cases that, they say, improperly seeks to "muzzle critics of Israel." Mem. 25. This case, like any other, must be judged on its own merits. The First Amendment is not a defense to the claims in this action, and the Court can and should reach a different result than those reached in the non-binding and distinguishable cases they cite. Moreover, insofar as Moving Defendants have identified a real litigation trend, it is not so one-sided as they suggest. Just last week, another court sustained civil rights claims against NSJP and another organization for conduct that Moving Defendants would doubtless claim is protected activity. *See Weinberg v. NSJP*, 2026 WL 184302, at *1–*2, *6–*11 (C.D. Cal. Jan. 20, 2026); *see also, e.g.*, *Jan*, 783 F. Supp. 3d 1300 (sustaining ATS claims). It would inappropriately "chill vigorous advocacy" to issue sanctions in these circumstances. *Lee*, 2014 WL 199512, at *1.

## III.    Sanctions Should Be Denied Under § 1927 and the Court's Inherent Authority

Finally, sanctions under 28 U.S.C. § 1927 and the Court's inherent authority are not warranted. Mem. 26–27. "Under either the court's inherent authority or section 1927, a court 'must

find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *JGIAP RH 160 LLC*, 2023 WL 5979125, at *23 (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000)); *accord Jones v. Combs*, 759 F. Supp. 3d 534, 539 (S.D.N.Y. 2024). "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." *JGIAP RH 160 LLC*, 2023 WL 5979125, at *23 (quoting *Gelicity UK Ltd. v. Jell-E-Bath, Inc.*, 2014 WL 1330938, at *4 (E.D.N.Y. Apr. 1, 2014)). The claims are far from frivolous and were brought for a proper purpose. *See supra* § II. The Motion marshals no persuasive evidence, much less the requisite clear evidence, to the contrary.

## <u>CONCLUSION</u>

The Motion is entirely without merit, and it is regrettable that Moving Defendants' counsel has taken matters to this level. The Court should address the merits of Plaintiffs' claims in the pending dispositive motions and swiftly deny the sanctions motion as unfounded and improper.

Dated:  January 28, 2026
         New York, New York

                                          Respectfully submitted,

/s/Scott J. Bornstein                     /s/ Richard A. Edlin
SCOTT J. BORNSTEIN                        RICHARD A. EDLIN

**GREENBERG TRAURIG, LLP**                **HOLTZMAN VOGEL BARAN**
SCOTT J. BORNSTEIN                        **TORCHINSKY & JOSEFIAK, PLLC**
bornsteins@gtlaw.com                      JASON TORCHINSKY (*pro hac vice*)
RICHARD A. EDLIN                          jtorchinsky@holtzmanvogel.com
edlinr@gtlaw.com                          SUSAN GREENE
One Vanderbilt Avenue                     sgreene@holtzmanvogel.com
New York, New York 10017                  N.Y. Bar No. 4687349
T. 212.801.9200                           2300 N. Street NW, Suite 643
                                          Washington D.C. 20037
**GREENBERG TRAURIG, P.A.**               T. 202.737.8808
ZACHARY NEEDELL*
zachary.needell@gtlaw.com                 **NATIONAL JEWISH ADVOCACY**
401 East Las Olas                         **CENTER**
Boulevard, Suite 2000                     MARK GOLDFEDER*
Fort Lauderdale, Florida                  mark@njaclaw.org
33301                                     BEN SCHLAGER*
T. 954.765.0500                           ben@njaclaw.org
                                          ANAT ALON-BECK*
**SCHOEN LAW FIRM, LLC**                  Anat@njaclaw.org
DAVID SCHOEN                              ARIELLE F. KLEPACH*
N.Y. Bar No. 2700847                      Arielle@njaclaw.org
schoenlawfirm@gmail.com                   LAUREN ISRAELOVITCH
2800 Zelda Road, Suite 100-6             lauren@njaclaw.org
Montgomery, Alabama 36106                 National Jewish Advocacy Center, Inc.
T. 334.395.6611                           International Legal Forum
F. 917.591.7586                           3 Times Square
                                          New York, NY 10036
                                          T. (800) 269-9895
                                          F: (800) 758-5232

*Pro Hac Vice Application Forthcoming*

## WORD COUNT CERTIFICATION

I certify that the foregoing memorandum of law complies with Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern District of New York and Rule 5.A of the Court's Individual Rules and Practices in Civil Cases because it contains 8,660 words, based on the word-processing program used to prepare this document and excluding the caption, table of contents, table of authorities, signature block, and this certification.

*/s/ Richard A. Edlin*
Richard A. Edlin