UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IRIS WEINSTEIN HAGGAI *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>NERDEEN KISWANI *et al.*,<br><br>*Defendants*. | No. 25-Civ-2400 |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS JONES AND ALWAN'S JOINT MOTION FOR SANCTIONS**

Joseph Pace
PACE FREEMAN LLP
30 Wall Street, 8th Floor
New York, NY 10005
Tel: (917) 336-3948
joseph@pacefreeman.com

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1
ARGUMENT..........................................................................................................................2
   I.  THE RULE 11 MOTION IS PROCEDURALLY PROPER ................................................2
   II.  PLAINTIFFS' COUNSEL HAVE VIOLATED RULE 11 ...............................................3
      A.  Plaintiffs' Claims are Legally Frivolous......................................................................3
      B.  Plaintiffs' Counsel Have Violated Rule 11(b)(3) By Making Claims Devoid of
          Evidentiary Support .....................................................................................................7
      C.  Plaintiffs' Counsel Acted With an Improper Purpose....................................................9
      D.  Sanctions are Warranted ............................................................................................10
CONCLUSION....................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

Page(s)

*Ashley v. Deutsche Bank AG.*,
   144 F.4th 420 (2d Cir. 2025) ........................................................................................ 4

*Atchley v. Astrazeneca*,
   2026 U.S. App. LEXIS 1742 (D.C. Cir. Jan. 23, 2026) .................................................. 4

*Egerique v. Chowaiki*,
   No. 19 Civ. 3110 (KPF), 2020 U.S. Dist. LEXIS 73060 (S.D.N.Y. Apr. 24, 2020) .......... 3

*Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.*,
   No.: 2:24-cv-00985-APG-MDC, 2025 U.S. Dist. LEXIS 84645 (D. Nev. May 5, 2025)  11

*Goldman v. Barrett*,
   825 F. App'x 35 (2d Cir. 2020) ..................................................................................... 9

*Hernandez v. Miller*,
   No. 22-CV-6964 (VSB), 2022 U.S. Dist. LEXIS 223961 (S.D.N.Y. Dec. 12, 2022) ........ 2

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) .......................................................................................................... 6

*Kiobel v. Millson*,
   592 F.3d 78 (2d Cir. 2010) ............................................................................................ 7

*Kumaran v. Northland Energy Trading, L.L.C.*,
   762 F. Supp. 3d 322 (S.D.N.Y. 2025) ............................................................................ 2

*Landmark Ventures, Inc. v. Cohen*,
   No. 13 Civ. 9044 (JGK), 2014 U.S. Dist. LEXIS 165366 (S.D.N.Y. Nov. 25, 2014) ....... 2

*Lavi v. Unrwa USA Nat'l Comm., Inc.*,
   No. 24-312-RGA, 2025 U.S. Dist. LEXIS 153757 (D. Del. Aug. 8, 2025) ................... 11

*Newman v. AP*,
   758 F. Supp. 3d 1357 (S.D. Fla. 2024) ........................................................................ 11

*Parizer v. AJP Educ. Found., Inc.*,
   No. 1:24-cv-724 (RDA/IDD), 2025 U.S. Dist. LEXIS 158917 (E.D. Va. Aug. 15, 2025)  4

*Quinones v. City of Binghamton*,
   997 F.3d 461 (2d Cir. 2021) .......................................................................................... 3

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) ............................................................................................... 1,4,5

**Statutes**

18 U.S.C. § 2339B ........................................................................................................... 6

28 U.S.C. § 1927 .............................................................................................................. 2

## **INTRODUCTION**

Plaintiffs' counsel's[1] opposition brief is a case study in evasion. Unable to explain how their claims are warranted under existing aiding-and-abetting jurisprudence or advance a non-frivolous argument for modifying that law, they deflect with a pastiche of inapposite quotations from *Twitter v. Taamneh*, 598 U.S. 471 (2023). They note that "encouragement" can theoretically constitute aiding and abetting—but fail to explain how public protests directed at a domestic audience, 6,000 miles from Hamas's operations, qualify. They invoke *Twitter*'s recognition that "systemic and pervasive" aid can substitute for a concrete nexus between the aid and the attack—but do not claim to have alleged that level of assistance here. And they cite *Twitter*'s acknowledgment that selective promotion of terrorist content could, in the right case, state a claim—but do not allege that Jones and Alwan knowingly promoted Hamas content, let alone explain how any such promotion amounted to conscious and culpable participation in the attacks in Gaza that injured Plaintiffs.

Their efforts to defend the falsehoods pervading their pleadings fare no better. They have not offered a scintilla of evidentiary support for their incendiary and categorically false claims that Jones and Alwan self-advertised as Hamas members, committed assault, led organizations that had foreknowledge of October 7, affiliated with Bazrouk, or coordinated with Hamas. They resurrect the claim that Columbia SJP's "suggestive" Instagram post announcing its first meeting of the semester shows its members knew the attacks were coming, despite having been put on notice in May 2025 that the screenshot they were relying on was doctored. Nor do they submit an affidavit detailing their pre-filing investigation or identify the facts providing good cause to believe that discovery would surface evidence supporting these claims.

---

[1] For brevity, Plaintiffs' counsel are referred to throughout as "Counsel."

The evidence of bad faith here is legion. The Court need look no further than the opposition itself, which characterizes Jones's mere presence at a protest as actionable conduct and demands discovery into whether he joined certain chants or "stood without objection." Opp. 12. This is not a case of creative advocacy by overzealous lawyers who got a little over their skis. It is a textbook example of litigation abuse that Rule 11 and § 1927 exist to guard against.

## ARGUMENT

### I.   THE RULE 11 MOTION IS PROCEDURALLY PROPER

Counsel's procedural objections are meritless. The motion does not 'improperly duplicate' the pending motions to dismiss—it explains why the legal and factual deficiencies are so extreme as to warrant sanctions *in addition to* dismissal. Nor is the motion premature. Unlike *Kumaran v. Northland Energy Trading, LLC*, 762 F. Supp. 3d 322 (S.D.N.Y. 2025), the motions to dismiss are fully briefed; and unlike *Hernandez v. Miller*, 2022 U.S. Dist. LEXIS 223961 (S.D.N.Y. Dec. 12, 2022), there is no pending motion for leave to amend that could moot the sanctions application. The Court should follow standard practice, consider the Rule 12(b)(6) and Rule 11 motions together, and grant them simultaneously. *See, e.g.*, *Landmark Ventures, Inc. v. Cohen*, 2014 U.S. Dist. LEXIS 165366, at *11 (S.D.N.Y. Nov. 25, 2014).

Counsel's Safe Harbor contentions are equally meritless. To start, they mischaracterize the letters' content. The May 8 Letter explained that the complaint was "riddled with factual errors" and flagged the self-advertise, assault, and foreknowledge allegations—none of which were corrected in subsequent complaints. Ex. A at 1-3. And, contrary to Counsel's claim (at 3), Jones and Alwan did not "whittle down" their objections after the first letter. Each successive letter incorporated by reference the uncorrected deficiencies identified in prior letters. Ex. C at 1-2; Ex. D at 1-2; Ex. E at 1. Nor is it true that Counsel lacked notice of the misstatements in the

2

Consolidated Opposition. Each misstatement was flagged in the motion to dismiss replies. *See* Ex. E, October 21 Letter at 1 (advising that the "bases for sanctions are set forth in our prior Rule 11 safe harbor letters" and ECF Nos. 99 and 102 (the replies)).

In any event, Counsel concede that the January 7 memorandum included all the Rule 11 violations pressed here.[2] They contend Jones and Alwan were required to wait 21 days, but no such wait is required where there is "no indication that [the opposing party] would have corrected or amended its frivolous arguments." *Egerique v. Chowaiki*, 2020 U.S. Dist. LEXIS 73060, at *88–89 (S.D.N.Y. Apr. 24, 2020). That is plainly the case here. Despite a request for acknowledgement by January 12, Counsel ignored this letter, just as they ignored the prior four; and their opposition confirms that they doggedly stand by every sanctionable claim.

## II.   PLAINTIFFS' COUNSEL HAVE VIOLATED RULE 11

### A.   Plaintiffs' Claims are Legally Frivolous

Counsel (at 10) offer a disjointed scattershot of quotes from *Twitter* and then abruptly conclude that "*Twitter* supports liability here." Hardly. They note *Twitter*'s acknowledgement that aiding and abetting *can* take the form of encouragement and invoke the rule that courts can "consider claims that were not even enumerated in the complaint, where the relevant facts were alleged." Opp. 11 (citing *Quinones v. City of Binghamton*, 997 F.3d 461, 468 (2d Cir. 2021)). But these principles offer scant shelter here. Counsel cannot point to a single factual allegation in the SAC demonstrating that Jones, Alwan, or their respective organizations did or said anything which had the intent or effect of encouraging Hamas to commit the terrorist attacks that injured their Plaintiffs.[3]

---

[2] The only violation not noticed before January 7 was the false "veils" allegation.
[3] Counsel (at 10) resist the assertion that they amended their theory in opposition, insisting that their claim has always been predicating on "the provision of propaganda services." If so, the

3

Counsel's invocation of *Twitter*'s "near-common enterprise theory" discussion fully backfires. *Twitter* explained that a complaint must either allege (i) a "'concrete nexus between defendants' services'" and the specific injury-causing attack or (ii) that "defendants provided such 'systemic[] and pervasive[]' assistance to a terrorist group that they could be said to aid and abet every act of terrorism the group commits as part of a common enterprise." *Atchley v. Astrazeneca*, 2026 U.S. App. LEXIS 1742, at *24 (D.C. Cir. Jan. 23, 2026) (quoting *Twitter*, 598 U.S. at 501); *id.* at *34. The SAC manifestly fails to allege either. Indeed, throughout this litigation, Counsel has devoted precisely three sentences to the near-common enterprise theory, Opp. 10; Consolidated Opp. 44-45, and never made an argument why it applies here. If a bank's provision of money laundering services to a criminal group affiliated with a terrorist syndicate does not meet the "high bar" for systemic and pervasive assistance, *see Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420, 445 (2d Cir. 2025), chanting generic protest slogans on college campuses plainly cannot either. *See Parizer v. AJP Educ. Found., Inc.*, 2025 U.S. Dist. LEXIS 158917, at *73 (E.D. Va. Aug. 15, 2025) (rejecting identical claim that students could be held liable under "pervasive and systemic" aid theory).

Finally, Counsel cites *Twitter*'s recognition that a claim might be possible against a platform that "consciously and selectively chose to promote content provided by a particular terrorist group." 598 U.S. at 502. That dicta is triply inapplicable here. First, courts have already held that the specific content promotion at issue here is protected from tort liability. Sanctions Memo. 8-9. Second, even if it were otherwise, the SAC nowhere alleges that *Jones or Alwan* consciously promoted any "content provided by" Hamas. It does not allege that they distributed

---

Court's job is even easier since even Counsel concedes that no ATA or ATS aiding-and-abetting claim lies for assisting a terrorist organization's campaign to influence domestic opinion. Sanctions Memo. 9.

4

Hamas propaganda or used messaging they knew to have originated from Hamas.[4] Third, a content-promotion claim still requires substantiality and a "discernible nexus" between the content and the attack, such that the defendants can be said to have "participated in" that attack.[5] Sanctions Memo. 12; Alwan Reply 5. The SAC comes nowhere close.

As for the misrepresentations of law in the Consolidated Opposition, Counsel don't defend their assertion that speech "addressed to" an FTO is categorically unprotected, nor of their claim that "encouragement" needn't have affected the primary tortfeasor's willingness or ability to engage in terrorism to be actionable. Sanctions Memo. 14. The only assertion they defend is their claim that "intent is not always required" under JASTA. In light of *Atchley*, Jones and Alwan agree that this statement, as phrased, is not a sanctionable misrepresentation.[6] That, however, does not get Counsel very far—because even if intent isn't always required, it is unquestionably required *here* given the absence of any discernible nexus between the protests and the attacks. *See Twitter*, 598 U.S. at 506 ("[T]he more attenuated the nexus, the more courts should demand that plaintiffs show culpable participation through intentional aid that substantially furthered the tort."). The SAC, however, alleges neither intentional aid nor substantial furtherance of Hamas's terrorist attacks.

---

[4] Alwan has already explained why Plaintiffs' theory—that Hamas acted through AMP/NSJP—breaks down at every level. *See* Alwan MTD 7–8. Counsel has never offered a rejoinder.

[5] While the Supreme Court didn't elaborate on this hypothetical, it's not difficult to conjure an actionable claim—for example, if a platform used its algorithm to promote bomb-making instructions or to boost posts that directed users to pages where they could make financial contributions to terrorist organizations.

[6] It is still not an accurate reflection of the law in this Circuit. *See Ashley*, 144 F.4th at 444; Sheila *Long v. MTN Grp.*, 2025 U.S. Dist. LEXIS 198279, at *16 (E.D.N.Y. Sep. 25, 2025) (ATA "defendant [must have] intended to further a terrorist organization's goals"); *Bonacasa v. Standard Chtd. PLC*, 2023 U.S. Dist. LEXIS 192964, at *18 (S.D.N.Y. Oct. 27, 2023) ("[T]he law requires that the defendant act 'with the intent of facilitating the offense's commission'") (quoting *Twitter*, 598 U.S. at 489-90).

Counsel's First Amendment arguments also miss the mark. They double down on the assertion that *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), stripped all coordinated speech-related activity of First Amendment protection, and they claim that its reasoning "sweeps beyond" 18 U.S.C. § 2339B violations. For reasons already explained, that is not a tenable reading of *Holder*.[7] But the soundness of their legal theory is ultimately beside the point since they don't remotely allege that Jones or Alwan coordinated with Hamas in the first place.

Counsel also fail to confront the sweeping implications of their theory. They effectively concede that it would eliminate any First Amendment defense to non-terrorism-related claims like nuisance, IIED, NIED, or Title VI—an outcome that would require a wholesale rewriting of First Amendment law. They insist (at 14) that the coordination requirement would prevent their theory from swallowing ordinary protest activity. That is cold comfort when, by Counsel's own account, organizing a protest against Israel's conduct in Gaza suffices to infer coordination with Hamas if the protest happens to fall on a day Hamas called for demonstrations. Nor do Counsel offer any other limiting principles. They suggest that Jones and Alwan fall on the "wrong side of [the] line" between independent and coordinated advocacy because "*various Defendants*" hosted a terrorist sympathizer and "coordinate[d] with Hamas through Bazrouk." Opp. 14 (emphasis added). But Jones and Alwan did neither of those things. *See, e.g.,* SAC ¶¶ 131-34 (alleging that CUAD, WOL, and Samidoun—not Jones and Alwan—"hosted" the terrorist "sympathizer").

---

[7] Nor does *In re Terrorist Attacks*, 740 F. Supp. 2d 494 (S.D.N.Y. 2010), advance Plaintiffs' position. That case arose under a pre-JASTA regime in which the Court treated § 2339B violations as giving rise to an automatic civil cause of action. *Id*. at 515-16. More importantly, it did not involve speech that would have been protected but-for coordination. The defendant there—an "al Qaeda front charity"—was alleged to have raised and laundered funds for al Qaeda, performed reconnaissance missions, funded and facilitated al Qaeda training camps, and disseminated literature for the express purpose of recruiting members. *Id*. at 519. Those allegations concerned operational and financial support to a terrorist organization, not expressive activity plausibly shielded by the First Amendment.

6

Finally, Counsel's passing attempt (at 14) to reconcile their "coordination" and "encouragement" theories is not remotely persuasive. Their response—that propaganda is "central to Hamas's strategy"—is a platitude, not an argument. The gravamen of the SAC is that Hamas supplied the students with propaganda to sway the American public against Israel and convince voters that terrorism was justified. Overlaying an encouragement theory on top of that requires the Court to accept that the students turned Hamas's own messaging *back on Hamas* to persuade it to commit the very terrorist attacks that it was attempting to justify to the world with its propaganda. That circular narrative refutes itself.

B. <u>Plaintiffs' Counsel Have Violated Rule 11(b)(3) By Making Claims Devoid of Evidentiary Support</u>

The SAC and opposition to the motion to dismiss are bestrewn with objectively untrue statements that are utterly lacking in evidentiary support. Rather than submit an affidavit outlining their pre-filing investigation, Counsel rest on the footnotes in the SAC. But none of the sources in those footnotes supply even an information-and-belief basis for accusing Jones and Alwan (or their respective organizations) of "advertising" themselves as Hamas proxies, assaulting students, having advanced knowledge of October 7, coordinating with Hamas, or collaborating with Bazrouk. If the "face of the pleadings" reveal the extent of their investigation, as Counsel contend (at 19), then there is little question that sanctions should issue.

Counsel cite *Kiobel v. Millson*, 592 F.3d 78 (2d Cir. 2010), for the proposition that Rule 11 does not penalize "overstatements" or authorize an "overly literal reading of each factual statement." *Id.* at 83. That case is miles away from this one. There, the district court sanctioned a lawyer for alleging that opposing counsel paid a witness $15,195, when the actual amount was closer to $12,000. The Second Circuit reversed because the overstatement was immaterial and there was no evidence that the lawyer intentionally inflated the amount. *Id.* at 83. *Kiobel* thus

stands for the unremarkable proposition that sanctions should not be imposed for mistakes that are both innocent and harmless. Counsel's factual misrepresentations are neither.

*"Advertising" as "Hamas's propaganda arm."* Counsel opened three complaints with the statement: "[w]e know" that Defendants are "Hamas's propaganda arm in New York City and on the Columbia University campus . . . because they advertise themselves as such." Compl. ¶ 1; FAC ¶ 1; SAC ¶ 1. That statement admits of only one meaning: that Jones and Alwan publicly held themselves out as Hamas's agents. Counsel perfunctorily contend (at 16) that Jones and Alwan "expressed this sentiment . . . by their actions," if not "in so many words."[8] That makes little sense. The "propaganda arm" described in the complaints is not a metaphor or viewpoint, but an enterprise with a hierarchy and structure. Membership is not a "sentiment"—one either belongs or one doesn't. And Counsel cannot identify a single word or deed by Jones or Alwan acknowledging membership.

*"Terrorizing and assaulting."* Despite repeated warnings that the complaints inaccurately and indiscriminately accused *all Defendants* of assault, Counsel refused to correct or withdraw the allegation. Counsel respond (at 23) that Jones and Alwan understood that this allegation was false as to them. That is a strange defense: a defendant's ability to spot an objective falsehood does not excuse its inclusion in a pleading.

*Foreknowledge of October 7*. Jones and Alwan dismantled the supposed factual bases for this claim in their first Safe Harbor letter and put Counsel on notice that the "suggestive" Columbia SJP post they relied on was doctored. *See* Ex. A at 1-2; *see also* Alwan MTD 8-9. Counsel recite

---

[8] Counsel argue that one must take a "strained, overly literal, and context free reading of this contention" to assume that they meant that Jones and Alwan verbally confirmed their membership in the propaganda arm. Yet that is exactly how Counsel described the complaints' allegations to the press. *See* Sanctions Memo. 11.

those same "bases" in opposition, yet pointedly decline to explain how they support the inference of foreknowledge. Instead, they retreat behind information-and-belief pleading and speculate that discovery might have vindicated their claim. But information-and-belief pleading "does not relieve litigants from the obligation to conduct an appropriate investigation into the facts," nor is it "a license . . . to make claims . . . without any factual basis or justification." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. "[H]aving 'good reason' to believe the truth of an allegation is still a threshold requirement of filing a paper," and "an attorney may not rely on discovery to manufacture a claim that lacks factual support in the first instance." *Goldman v. Barrett*, 825 F. App'x 35, 38 (2d Cir. 2020).

*Aiding and abetting October 7*. Counsel's only response—that this is a legal dispute outside the parameters of Rule 11(b)(3)—misapprehends the issue. Embedded within the claim that Jones and Alwan aided and abetted October 7 is a factual assertion that those individuals did *something* to assist that attack. They emphatically did not.

*Coordination.* Like the aiding-and-abetting claim, this is not merely a Rule 11(b)(2) problem. Counsel made objectively false factual claims (that Defendants were part of Hamas's propaganda arm, took instruction from Hamas, communicated with Hamas via Bazrouk, *etc.*) to pad its legally baseless, inadequately pled coordination theory. Tellingly, Counsel offer no defense of any of those assertions as to Jones and Alwan.

*Bazrouk connection*. Rather than identify the evidentiary basis for alleging that Jones and Alwan "count [Bazrouk] among their ranks" or "coordinate with Hamas through Bazrouk and others like him," Counsel insist that these statements were a "fair characterization of the [SAC]." That is wholly non-responsive. The sanctionable conduct here is not how the opposition describes the pleading—it is that the pleading itself advances factual claims untethered from reality.

9

C. <u>Plaintiffs' Counsel Acted With an Improper Purpose</u>

None of Counsel's arguments counter the inference that this case was brought for an improper purpose. They ask this Court to believe that they never sought to silence independent advocacy against Israel because they say as much in the SAC. That reassurance rings hollow coming from counsel who have filed a complaint which indiscriminately recasts the entire student protest movement as a coordinated campaign based on nothing more than conspiracy theories and rank speculation.

Counsel's insistence that their real purpose was securing relief for victims of Hamas terrorism is also impossible to square with the content of the SAC, which details the disturbances that the protests caused on Columbia's campus, but fails to link those disturbances to the terrorist attacks that caused their clients' injuries. And Counsel still cannot explain the relevance of their sensationalist claim that the students knew about October 7 beforehand. Even if the foreknowledge claim were true (which it isn't), it wouldn't establish that the students aided those attacks: prior warning is not aid and the SAC doesn't allege that Jones, Alwan, or their organizations did anything prior to October 7 that qualifies as assistance under any definition of the term. Counsel's only answer (at 22-23)—that prior knowledge of the attacks is relevant because it shows that the students promoted Hamas's propaganda "with full knowledge of [the] horrors" of October 7—is just empty verbiage.

As for Counsel's claim that they responded to the Safe Harbor letters by amending the complaints, the record speaks for itself. Counsel never corrected the myriad factual misrepresentations that are the subject of this motion; never removed the sensationalist claims that had no bearing on their ATA and ATS claims; and never added any facts supporting the inference that Jones and Alwan coordinated with Hamas, encouraged Hamas, or aided its terrorist operations.

10

D. <u>Sanctions are Warranted</u>

As set forth in the opening brief, each discretionary factor counsels in favor of heavy monetary sanctions and a court-ordered apology. Counsel resist this conclusion by jousting at straw men. They argue (at 24-25) that *Parizer* and *Gerwaski v. Nev. ex rel. Bd. of Regents of the NV Sys. of Higher Educ.*, 2025 U.S. Dist. LEXIS 84645 (D. Nev. May 5, 2025), are not binding on this Court, and they insist that they cannot be called "repeat offenders" because they haven't been sanctioned and their other complaints were dismissed without prejudice. These arguments miss the point. *Parizer*, *Gerwaski*, *Lavi v. Unrwa USA Nat'l Comm., Inc.*, 2025 U.S. Dist. LEXIS 153757 (D. Del. Aug. 8, 2025), and *Newman v. AP*, 758 F. Supp. 3d 1357 (S.D. Fla. 2024), are probative of willfulness because they demonstrate that Counsel know exactly what the ATA and ATS require, persist in advancing facially deficient claims against pro-Palestinian groups, and leverage liberal amendment rules to keep meritless cases alive. And they demonstrate that dismissal alone will not stop Counsel from refiling baseless claims against those they deem politically undesirable. Only sanctions will.

## CONCLUSION

For the foregoing reasons, the Court should impose sanctions under Rule 11, the Court's inherent authority, and § 1927.

Dated: February 4, 2026
      New York, NY

                                 Respectfully submitted,

                                 <u>/S/ Joseph Pace</u>
                                 PACE FREEMAN LLP
                                 30 Wall Street, 8th Floor
                                 New York, NY 10005
                                 Tel: (917) 336-3948
                                 joseph@pacefreeman.com

## **CERTIFICATE OF COMPLIANCE**

      I certify that this Memorandum of Law complies with Local Rule 7.1(c) in that it contains 3,498 words, excluding the Table of Authorities and Table of Contents. This certification is based on the word count function of Microsoft Word.

/S/ Joseph Pace