**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IRIS WEINSTEIN HAGGAI, on her own behalf and on behalf of JUDITH LYNNE WEINSTEIN HAGGAI and GAD HAGGAI, JOHN DOE, RICHARD ROE, JANE MOE, SHLOMI ZIV, AYELET SAMERANO, on her own behalf and on behalf of YONATAN SAMERANO, TALIK GVILI, on her own behalf and on behalf of RAN GVILI, ROEE BARUCH, on his own behalf and on behalf of URIEL BARUCH, and JAMES POE, on his own behalf and on behalf of LEO POE, | Case No. 1:25-cv-02400-JAV<br><br>Hon. Jeannette A. Vargas<br><br>**JURY TRIAL DEMANDED**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiffs,

- against -

NERDEEN KISWANI, individually and as the representative of WITHIN OUR LIFETIME-UNITED FOR PALESTINE, MARYAM ALWAN, individually and as the representative of COLUMBIA STUDENTS FOR JUSTICE IN PALESTINE, CAMERON JONES, individually and as the representative of COLUMBIA-BARNARD JEWISH VOICE FOR PEACE, MAHMOUD KHALIL, individually and as the representative of COLUMBIA UNIVERSITY APARTHEID DIVEST, and TAREK BAZROUK,

Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT TAREK BAZROUK'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

Preliminary Statement......................................................................................................1

Factual Allegations ..........................................................................................................2

Argument ..........................................................................................................................5

     I.      Standard of Review....................................................................................5
     II.     Bazrouk's Causation-Related Arguments Fail............................................8
     III.    Bazrouk's Alien Tort Statute Arguments Fail .........................................11

          A.     Plaintiffs Allege Violations of Actionable Universal Norms ....................11
          B.     Bazrouk's Extraterritoriality Argument Fails ............................................12
          C.     Bazrouk's "Unincorporated Association" Argument Fails.........................13
          D.     Plaintiffs State a Claim for Violating the Law of Nations.........................14

     IV.    Plaintiffs State a Claim Under the Antiterrorism Act............................16

          A.     The Complaint Alleges a Primary Violation .............................................16
          B.     The Complaint Alleges General Awareness...............................................17
          C.     The Complaint Alleges Knowing and Substantial Assistance...................17

     V.     The First Amendment Does Not Protect Bazrouk's Conduct...............................20
     VI.    Bazrouk's Brief Contains Problematic Citations....................................21

Conclusion .....................................................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Shimari v. CACI Premier Tech., Inc.*,
No. 25-1043, 2026 WL 693110 (4th Cir. Mar. 12, 2026)..........................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................................................................6

*Ashley v. Deutsche Bank Aktiengesellschaft*,
144 F.4th 420 (2d Cir. 2025) .....................................................................................................17

*Ateş v. Gülen*,
No. 15-cv-2354, 2016 WL 3568190 (M.D. Pa. June 29, 2016)................................................13

*Balintulo v. Daimler AG*,
727 F.3d 174 (2d Cir. 2013).......................................................................................................13

*Barahona v. LaSalle Mgmt. Co.*,
No. 23-cv-24, 2025 WL 961437 (M.D. Ga. Mar. 31, 2025)................................................7, 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................................................................5

*Benjamin v. Costco Wholesale Corp.*,
779 F. Supp. 3d 341 (E.D.N.Y. 2025) .......................................................................................21

*Billups v. Louisville Mun. Sch. Dist.*,
No. 24-cv-74, 2025 WL 3691871 (N.D. Miss. Dec. 19, 2025) ................................................21

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*,
754 F.2d 57 (2d Cir. 1985).........................................................................................................10

*Bohnak v. Marsh & McLennan Cos.*,
79 F.4th 276 (2d Cir. 2023) .........................................................................................................6

*Cabrera v. Schafer*,
178 F. Supp. 3d 69 (E.D.N.Y. 2016) ...........................................................................................7

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994)....................................................................................................................10

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002).........................................................................................................6

*Chiaramonte v. Animal Med. Ctr.*,
No. 13-CV-5117, 2014 WL 3611098 (S.D.N.Y. July 22, 2014)................................................6

*Collins v. Ne. Grocery, Inc.*,
149 F.4th 163 (2d Cir. 2025) .......................................................................................................9

*Copeland v. Twitter, Inc.*,
352 F. Supp. 3d 965 (N.D. Cal. 2018) .......................................................................................10

*Cromer Fin. Ltd. v. Berger*,
  137 F. Supp. 2d 452 (S.D.N.Y. 2001)..................................................................................11

*Dhinsa v. Krueger*,
  917 F.3d 70 (2d Cir. 2019)....................................................................................................9

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013)....................................................................................................7

*Finn v. Barney*,
  471 F. App'x 30 (2d Cir. 2012) ............................................................................................8

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*,
  479 F. Supp. 2d 349 (S.D.N.Y. 2007)..................................................................................11

*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983) ......................................................................................16, 17

*United States ex rel. Hart v. McKesson Corp.*,
  602 F. Supp. 3d 575 (S.D.N.Y. 2022)................................................................................7, 8

*In re High Fructose Corn Syrup Antitrust Litig.*,
  295 F.3d 651 (7th Cir. 2002) ..............................................................................................11

*HomeVestors of Am., Inc. v. Warner Bros. Discovery*,
  No. 22-CV-1583, 2023 WL 6880341 (D. Del. Oct. 18, 2023), *report and*
  *recommendation adopted*, 2023 WL 8826729 (D. Del. Dec. 21, 2023)..................................20

*Int'l Code Council, Inc. v. UpCodes Inc.*,
  43 F.4th 46 (2d Cir. 2022) ....................................................................................................6

*Jara v. Núñez*,
  878 F.3d 1268 (11th Cir. 2018) ..........................................................................................13

*Jesner v. Arab Bank, PLC*,
  584 U.S. 241 (2018)..............................................................................................................13

*K & K Prods., Inc. v. Walt Disney Studios Motion Pictures*,
  No. 20-CV-1753, 2021 WL 4394787 (D. Nev. Sep. 23, 2021), *aff'd*, No. 21-
  16740, 2022 WL 3585589 (9th Cir. Aug. 22, 2022)..............................................................20

*Kadic v. Karadzic*,
  70 F.3d 232 (2d Cir. 1995)..................................................................................................14

*Kelly-Brown v. Winfrey*,
  717 F.3d 295 (2d Cir. 2013)..................................................................................................6

*Khulumani v. Barclay Nat'l Bank, Ltd.*,
  504 F.3d 254 (2d Cir. 2007)................................................................................................12

*Kistler v. Stanley Black & Decker, Inc.*,
  No. 22-cv-966, 2024 WL 3292543 (D. Conn. July 3, 2024)..................................................22

*Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*
  No. 11-cv-8808, 2023 WL 6248363 (N.D. Ill. Sep. 19, 2023)..............................................11

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991).................................................................................................7

*Mastafa v. Chevron Corp.*,
    770 F.3d 170 (2d Cir. 2014)..............................................................................................13

*Mata v. Avianca, Inc.*,
    678 F. Supp. 3d 443 (S.D.N.Y. 2023)...............................................................................22

*McCulloch v. Bd. of Trs. of SEIU Affiliates Officers & Emps. Pension Plan*,
    No. 17-cv-3927, 2018 WL 10602192 (S.D.N.Y. Sep. 29, 2018) ........................................6

*Merriam v. Demoulas*,
    No. 11-CV-10577, 2013 WL 2422789 (D. Mass. June 3, 2013)..........................................9

*Moore v. Hadestown Broadway LLC.*,
    722 F. Supp. 3d 229 (S.D.N.Y. 2024)...............................................................................20

*Mustafa v. Australian Wheat Bd.*,
    No. 07-cv-7955, 2008 WL 4378443 (S.D.N.Y. Sep. 25, 2008) ..........................................9

*Napear v. Bonneville Int'l Corp.*,
    669 F. Supp. 3d 948 (E.D. Cal. 2023)................................................................................7

*Northwell Health, Inc. v. Lexington Ins. Co.*,
    550 F. Supp. 3d 108 (S.D.N.Y. 2021)................................................................................6

*Nuvola, LLC v. Wright*,
    Court File No. 27-CV-HC-15-3802, 2025 Minn. Dist. LEXIS 5940 (Minn.
    Dist. Ct. Nov. 21, 2025).................................................................................................21

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006)..............................................................................11

*Presbyterian Church of Sudan v. Talisman Energy, Inc. (Talisman II)*,
    582 F.3d 244 (2d Cir. 2009).................................................................................12, 14, 15

*Raanan v. Binance Holdings Ltd.*,
    No. 24-CV-697, 2025 WL 605594 (S.D.N.Y. Feb. 25, 2025)......................................10, 17

*Ramirez v. Hermes B NY LLC*,
    No. 23-cv-1580, 2024 WL 217765 (S.D.N.Y. Jan. 19, 2024) ..........................................21

*In re Refco Inc. Sec. Litig.*,
    826 F. Supp. 2d 478 (S.D.N.Y. 2011)..............................................................................11

*SEC v. Apuzzo*,
    689 F.3d 204 (2d Cir. 2012).............................................................................................10

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976)...........................................................................................................9

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).........................................................................................................9

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008)..............................................................................................6

*Troell v. Binance Holdings, Ltd.*
　　No. 24-cv-7136 (JAV), 2026 WL 636849 (S.D.N.Y. Mar. 6, 2026)......................................20

*Twitter, Inc. v. Taamneh,*
　　598 U.S. 471 (2023)..................................................................................................10, 16, 17

*United States v. Int'l Longshoremen's Ass'n,*
　　518 F. Supp. 2d 422 (E.D.N.Y. 2007) ....................................................................................7

*Util. Metal Research, Inc. v. Generac Power Sys.,*
　　179 Fed. App'x 795 (2d Cir. 2006).........................................................................................5

*Zobay v. MTN Grp. Ltd.,*
　　695 F. Supp. 3d 301 (E.D.N.Y. 2023) ...................................................................................18

**Statutes**

18 U.S.C. § 2333(a) .........................................................................................................................10

**Other Authorities**

Fed. R. Evid. 201(b)............................................................................................................................8

v

Plaintiffs respectfully submit this memorandum of law in opposition to Defendant Tarek Bazrouk's motion to dismiss the Complaint (the "Motion").[1]

## PRELIMINARY STATEMENT

This is an action by victims of Hamas' terror crimes to hold some of its most important U.S. allies liable for aiding and abetting those crimes. In the previously filed Consolidated Opposition, Plaintiffs showed that eight Defendants—four pro-Hamas organizations and their leaders—are liable under the Antiterrorism Act and the Alien Tort Statute for providing Hamas with extensive propaganda and public relations services.[2] The final Defendant, Tarek Bazrouk, now also moves to dismiss the Complaint. Although Bazrouk is differently situated from the other Defendants in some respects, his arguments are equally meritless.

Despite Bazrouk's efforts to minimize his conduct, the facts speak for themselves. Bazrouk is an admitted violent felon who is serving a 17-month prison sentence. He pleaded guilty in open court to a conspiracy to commit hate crimes against Jews. A longtime member of Defendant Within Our Lifetime, Bazrouk physically attacked Jews at three different pro-Hamas disruptions organized by other Defendants, and he attended (and was arrested at) many others. For one of his assaults, he donned a Hamas-inspired headband. When he was apprehended, his phone contained extensive pro-Hamas propaganda, including updates from Hamas' military wing. Bazrouk also traveled to the West Bank and Jordan in fall of 2024; around that time, he sent a message implying he had family in Hamas, which made him "mad happy." Bazrouk, in short, is a violent criminal

---

[1] Tarek Bazrouk's Motion to Dismiss Plaintiffs' Second Amended Complaint ("Mem."), ECF No. 119. Unless otherwise defined herein, capitalized terms have the same meanings as in Plaintiffs' Consolidated Memorandum of Law in Opposition to Defendants' Motions to Dismiss, Motion to Strike, and Request for Judicial Notice ("Consolidated Opposition" or "Consol. Opp."), ECF No. 90.

[2] *See generally* Consolidated Opposition.

who is closely connected to the other Defendants and to Hamas. Based on those facts, Plaintiffs have alleged on information and belief that Defendants coordinate with Hamas through Bazrouk and others like him.

Bazrouk's papers are rife with inflammatory and offensive rhetoric, improper accusations, and conspiracy theorizing. This material has no place in litigation before this Court or any other. Plaintiffs trust that the Court will address this material as it deems proper and focus on showing that Bazrouk's arguments fail on the merits.

In particular, Bazrouk argues that the Complaint should be dismissed for lack of jurisdiction, failure to state a claim, and because his conduct is constitutionally protected. Many of Bazrouk's arguments are perfunctory and barely developed. Most of them appear to be borrowed from other parties, and the Consolidated Opposition has already demonstrated that they lack merit. Insofar as Bazrouk offers anything new, his contentions are unavailing. The Court should deny the defense motions and permit this action to proceed to discovery.

## FACTUAL ALLEGATIONS

The relevant factual allegations are as follows. On October 7, 2023, Hamas terrorists invaded Israel, murdered more than 1,200 innocent people, kidnapped another 200 innocents, and committed countless other atrocities. SAC ¶¶ 78–80. Hamas' unspeakable crimes included holding the bodies of their murdered victims hostage to use as bargaining chips. SAC ¶ 81.

Plaintiffs are victims of Hamas' crimes. U.S. Plaintiffs are Iris Weinstein Haggai, whose parents were kidnapped and murdered by Hamas, and whose remains were held hostage for nearly two years; John Doe and Richard Roe, who battled Hamas terrorists in and around Gaza after October 7; and Mary Moe, a Columbia student whose brother also fought Hamas after October 7. SAC ¶¶ 13–16, 82, 86–88. Israeli Plaintiffs are Ayelet Samerano, Talik Gvili, and Roee Baruch, whose sons and brother were murdered by Hamas and whose remains were held hostage; Shlomi

2

Ziv, who was kidnapped by Hamas and held hostage for 246 days; and James Poe, whose son Leo Poe was kidnapped and held hostage by Hamas for two years. SAC ¶¶ 17–21, 82.

The Defendants include some of Hamas' most important partners and affiliates in the United States. SAC ¶ 6. Hamas has long relied on propaganda as one of its most important tools. SAC ¶¶ 43–45. For decades, through a variety of overlapping entities and individuals, Hamas has maintained the functional equivalent of a domestic propaganda firm. SAC ¶¶ 47–67. The four Associational Defendants are Within Our Lifetime, Columbia SJP, Columbia JVP, and CUAD, which together form the New York City branch of that domestic propaganda firm. SAC ¶¶ 6, 68–77. The Associational Defendants are sued through their respective leaders Nerdeen Kiswani, Maryam Alwan, Cameron Jones, and Mahmoud Khalil, who are also sued in their individual capacities. SAC ¶¶ 6, 22–35.

As set forth in the Complaint and the Consolidated Opposition, immediately after October 7, the Defendants discussed above launched an extensive and ongoing pro-Hamas campaign to whitewash Hamas' atrocities and encourage Hamas to commit and continue its crimes. Their conduct has included organizing pro-Hamas disruptions, often on or near the days Hamas requested them; distributing Hamas propaganda around New York City; expressing solidarity with the criminals who have inflicted countless horrors on Plaintiffs and thousands of others; and more. SAC ¶¶ 91–211; *see generally* Consol. Opp. 15–28, 36–43. Hamas knew of Defendants' "work" and was grateful for it; what's more, Defendants *knew* Hamas knew, and they rendered their services all the same. *E.g.*, SAC ¶¶ 115, 118, 130–37, 154–58; *see generally* Consol. Opp. 15–18.

It was in this milieu that Defendant Tarek Bazrouk committed his own misconduct. On information and belief, Bazrouk joined Within Our Lifetime no later than 2021. SAC ¶ 213. On April 15, 2024, Bazrouk, wearing a green Hamas-inspired headband, kicked a Jewish college

3

student in the stomach at a Within Our Lifetime event. SAC ¶ 214. On December 9, 2024, Bazrouk punched a Jewish student in the face at an event organized by CUAD and attended by members of Within Our Lifetime. SAC ¶ 215. And on January 6, 2025, Bazrouk punched a person wearing an Israeli flag and a Jewish star chain in his face and said "Fuck you, Nazi." SAC ¶ 216. Bazrouk also attended other pro-Hamas events, and he was arrested at six other disruptions that, on information and belief, were organized by the Associational Defendants. SAC ¶¶ 217–18.

In May 2025, Bazrouk was arrested and charged with hate crimes. SAC ¶ 212. The government's investigation revealed that Bazrouk's phone contained extensive pro-Hamas propaganda. SAC ¶ 220. Bazrouk was also a member of a group chat that received regular updates from the chief spokesperson of the al-Qassam Brigades, the military wing of Hamas. SAC ¶¶ 220, 57. Bazrouk traveled to the West Bank and Jordan in September and October 2024, and messages from around that time implied that members of Bazrouk's family were in Hamas. SAC ¶ 221. That made Bazrouk "mad happy." SAC ¶ 221. After Bazrouk's arrest, the government seized an astonishing $750,000 in cash, which Bazrouk and his counsel have implausibly maintained are the proceeds of his work at an unlicensed "smoke shop." SAC ¶ 222.

On June 11, 2025, Bazrouk pleaded guilty to one count of conspiracy to commit hate crimes based on the three attacks discussed above. SAC ¶ 223. In October 2025, Judge Richard M. Berman sentenced Bazrouk to 17 months' imprisonment.[3] And while Bazrouk acknowledged the seriousness of his crimes before Judge Berman, his memorandum of law before this Court is a case study in minimization. He does not admit to attacking anyone, to pleading guilty to violent crimes,

---

[3] *See* Judgment, *United States v. Bazrouk*, No. 25-cr-203 (RMB) (S.D.N.Y. Oct. 28, 2025); U.S. Dep't of Justice, "New York Man Sentenced to 17 Months In Prison For Hate Crimes After Repeatedly Assaulting Jewish Victims," https://www.justice.gov/usao-sdny/pr/new-york-man-sentenced-17-months-prison-hate-crimes-after-repeatedly-assaulting-jewish.

or even to being incarcerated. Instead, Bazrouk says he simply lost his cool. He claims he "fail[ed] to maintain his composure when confronted by three individuals" or "lost his composure during three encounters." Mem. 16, 20. He also downplays the seriousness of his conduct, conceding only that the *government* found it serious. Mem. 28. And Bazrouk, an admitted violent felon, even describes himself as an "individual[] of conscience" who "vigorously defend[s] Palestinian rights through lawful, protected advocacy." Mem. 3. But make no mistake: Bazrouk admitted in open court to committing violent crimes, and he is now serving his sentence.

Plaintiffs filed the operative complaint on July 14, 2025, which for the first time named Bazrouk as a defendant. Plaintiffs bring claims against Bazrouk for aiding and abetting Hamas' terror crimes under the Antiterrorism Act and aiding and abetting Hamas' crimes against humanity under the Alien Tort Statute. SAC ¶¶ 232–62. For the reasons below, Bazrouk's motion to dismiss should be denied.

## ARGUMENT

### I.       Standard of Review

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need only "'give the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Util. Metal Research, Inc. v. Generac Power Sys.*, 179 Fed. App'x 795, 797 (2d Cir. 2006) (summary order) (citation omitted). The Court must accept all factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[F]act-specific questions cannot be resolved on the pleadings." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022); *accord Kelly-Brown v. Winfrey*, 717 F.3d 295, 313 (2d Cir. 2013) ("Our role in considering a motion to dismiss is not to resolve these sorts of factual disputes."). Finally, where "standing is challenged on the basis of the pleadings,"

a court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 283 (2d Cir. 2023).

Although Bazrouk acknowledges these standards, he simultaneously argues that principles of judicial notice require the Court to disregard the allegations in the Complaint, Mem. 10–14, including "virtually every substantive allegation against Mr. Bazrouk," *id.* at 14. Bazrouk is wrong. The judicial notice doctrine applies only to "documents *outside* the pleadings." *Chiaramonte v. Animal Med. Ctr.*, No. 13-cv-5117, 2014 WL 3611098, at *4 (S.D.N.Y. July 22, 2014) (emphasis added) (citing *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008)). On a Rule 12(b)(6) motion, the "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Exhibits to the Complaint, no less than the Complaint itself, must be accepted as true. *See, e.g.*, *Northwell Health, Inc. v. Lexington Ins. Co.*, 550 F. Supp. 3d 108, 112 (S.D.N.Y. 2021) ("The following factual allegations, which are taken from the Complaint and its attached exhibits, are assumed true for purposes of the motion to dismiss."); *McCulloch v. Bd. of Trs. of SEIU Affiliates Officers & Emps. Pension Plan*, No. 17-cv-3927, 2018 WL 10602192, at *1 n.1 (S.D.N.Y. Sep. 29, 2018) (crediting "facts . . . drawn from the Complaint or exhibits attached thereto").

Bazrouk's various complaints about document authenticity, biased sources, and the like therefore miss the mark. This is a motion to dismiss, and the Court must accept the Plaintiffs' allegations and exhibits as true. Bazrouk's authorities are not to the contrary. Most involve efforts

by a *defendant* to bring in materials outside the complaint on a Rule 12(b)(6) motion.[4] Another arose on a post-jurisdictional discovery motion to dismiss for lack of personal jurisdiction, where the plaintiff was required to present "admissible evidence supporting jurisdiction" and could not rest solely on the complaint.[5] None of them disregards allegations in a complaint or exhibits to a complaint.[6]

It is, in fact, Bazrouk who runs afoul of the judicial notice rules. As Bazrouk's own authority explains, a court may "take judicial notice of a fact that 'is generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *McKesson Corp.*, 602 F. Supp. 3d at 590 (quoting Fed. R. Evid. 201(b)). This rule allows judicial notice of an "incontrovertible fact," not a "disputed fact." *Id.* at 591, 592. And "[b]ecause the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Id.* at 590–91 (quoting *Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) (summary order)). Despite these principles, Bazrouk cites a litany of materials outside the Complaint and its exhibits,

---

[4] *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (allowing court to take judicial notice of SEC filings submitted by defendant on a motion to dismiss a securities fraud complaint); *Napear v. Bonneville Int'l Corp.*, 669 F. Supp. 3d 948, 959 (E.D. Cal. 2023) (considering news articles and social media posts submitted by defendant, but not for their truth); *United States ex rel. Hart v. McKesson Corp.*, 602 F. Supp. 3d 575, 591 (S.D.N.Y. 2022) (refusing to consider material outside the complaint submitted by defendant); *Cabrera v. Schafer*, 178 F. Supp. 3d 69, 72 (E.D.N.Y. 2016) (same); *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 451–53 (E.D.N.Y. 2007) (considering materials submitted by the defendant only insofar as the plaintiff relied on, referenced, or incorporated them in the complaint).

[5] *Barahona v. LaSalle Mgmt. Co.*, No. 23-cv-24, 2025 WL 961437, at *4 (M.D. Ga. Mar. 31, 2025); *see generally Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013) (describing the different standards of review that apply to challenges to personal jurisdiction). Bazrouk's treatment of *Barahona* is discussed further below. *See infra* § VI.

[6] Bazrouk's final purported authority, "*Kistler v. Stanley Black & Decker, Inc.*, No. 23-cv-1580, 2024 WL 4370941, at *9 (S.D.N.Y. 2024)," Mem. 11, is separately treated below. *See infra* § VI.

7

including a transcript of his sentencing. *E.g.*, Mem. 1–2 nn. 3–9; *id.* at 4–6 nn.11–20; *id.* at 17–18. The Court cannot credit this material because it is not in the Complaint, attached to it, or integral to it. Nor did Plaintiffs rely on this material in drafting the Complaint. These are not the type of "incontrovertible facts" of which a Court may take judicial notice. *McKesson Corp.*, 602 F. Supp. 3d at 591. Although the Court can take notice of the fact that Bazrouk was sentenced to 17 months' imprisonment for his violent crimes, it cannot credit "the substance of the underlying information." *Id.*

In the end, this is an ordinary motion to dismiss. The standard of review is well established. The Court's mandate is to accept Plaintiffs' allegations and exhibits as true, reject Bazrouk's efforts to bring in outside materials, and evaluate whether the Complaint states a claim.

## II.      Bazrouk's Causation-Related Arguments Fail

The Court should reject Bazrouk's arguments that the claims fail for lack of a causal connection between his acts and Plaintiffs' injuries. Mem. 15–18. Although Bazrouk's confused argument blends Article III standing and proximate cause, Plaintiffs have already shown that the argument fails however it is framed. *See* Consol. Opp. 75–78, 48–50.

*Standing*. Viewed as a question of standing, Bazrouk's causation argument fails. "The irreducible constitutional minimum of standing consists of three elements: the individual initiating the suit must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019) (internal quotation marks omitted) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Like Columbia JVP and Kiswani, Bazrouk contests only the traceability requirement, arguing that Plaintiffs' "claimed injuries are not fairly traceable to his conduct in any way." Mem. 15.

8

In an aiding and abetting case, however, the traceability requirement is satisfied so long as the complaint alleges that the defendant is legally responsible for the injury. *See Mustafa v. Australian Wheat Bd.*, No. 07-cv-7955, 2008 WL 4378443, at *2–*3 (S.D.N.Y. Sep. 25, 2008) (Lynch, J.). That is because "[a]iding and abetting liability is not itself a tort but instead a generally applicable means of identifying who should be held responsible for a particular act." *Id.* at *2. "The injuries resulting from the [primary actor's] acts are thus fairly traceable to any who aided and abetted their commission." *Id.*; *accord, e.g.*, *Merriam v. Demoulas*, No. 11-cv-10577, 2013 WL 2422789, at *4 (D. Mass. June 3, 2013) (explaining that "Article III is satisfied" when "the plaintiff's injury is fairly traceable to acts for which the defendant may be held liable, even if the defendant did not directly cause or commit those acts"). Here, Plaintiffs have alleged injuries caused by Hamas terrorists and that Bazrouk is secondarily liable for those injuries. Plaintiffs therefore have standing.[7]

*Proximate cause*. Bazrouk's argument fares no better when analyzed as a question of proximate cause. JASTA does not require that the aider and abettor cause or proximately cause the plaintiff's injury. Although the statute requires an injury "by reason of" an international terror attack, 18 U.S.C. § 2333(a), Plaintiffs' injuries in Hamas terror attacks satisfy that requirement. An aider and abettor's liability is addressed through the analysis set forth in *Twitter, Inc. v. Taamneh*, which does not require proximate cause. *See* 598 U.S. 471, 597 (2023); *accord, e.g.*, *Raanan v. Binance Holdings Ltd.*, No. 24-CV-697, 2025 WL 605594, *18–*24 (S.D.N.Y. Feb. 25,

---

[7] Bazrouk's cases are readily distinguishable. Neither arose in the terrorism context or addresses standing to assert aiding-and-abetting claims. *See Collins v. Ne. Grocery, Inc.*, 149 F.4th 163, 171 (2d Cir. 2025) (evaluating standing to assert primary liability ERISA claims); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42–43 (1976) (finding that indigents who had been denied services by hospitals lacked standing to challenge a revenue ruling that gave tax benefits to those hospitals; no allegation that government aided and abetted the denials of service).

2025) (sustaining JASTA claim because Halberstam elements were satisfied without requiring proximate cause). Plaintiffs satisfy those requirements for reasons given below. *See infra* § IV.

As Plaintiffs have shown, the Antiterrorism Act requires proximate cause only in direct liability cases. *See* Consol. Opp. 48–50. Bazrouk's authorities do not alter that conclusion. Neither he nor any other Defendant has cited a case holding or suggesting that JASTA requires proof of proximate cause. Only one of Bazrouk's cases addresses claims under the Antiterrorism Act, and contrary to Bazrouk's description, it required proximate cause only for the direct liability claim and not for the JASTA claim. *See Copeland v. Twitter, Inc.*, 352 F. Supp. 3d 965, 973–76 (N.D. Cal. 2018). Bazrouk's remaining authorities are even less persuasive. His leading case was decided more than 30 years before JASTA was enacted, and it addresses proximate cause in the context of a private claim for aiding and abetting securities fraud. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir. 1985). The Supreme Court later abolished that cause of action, *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994), and the Second Circuit has since limited what was left of *Bloor*'s proximate cause holding. *See SEC v. Apuzzo*, 689 F.3d 204, 213 n.10 (2d Cir. 2012) (explaining that *Bloor* "addressed the lack of a causal link between the primary violation and injury to investors, not the lack of a distinct causal link between the aider's substantial assistance and the primary violation"). Plaintiffs' remaining authorities address securities fraud and claims under New York common law.[8] None affects the analysis under JASTA.

---

[8] *See In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 514–15 (S.D.N.Y. 2011) (common-law claims); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt.*, 479 F. Supp. 2d 349, 371 (S.D.N.Y. 2007) (securities fraud and common-law claims); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 202 (S.D.N.Y. 2006) (common-law claims); *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001) (common-law claims).

Finally, it is immaterial that the government supposedly has not charged Bazrouk with "Hamas-related offenses." Mem. 17. Bazrouk's misconduct *was* Hamas-related. After all, Bazrouk attacked Jews at pro-Hamas rallies after consuming vast amounts of Hamas propaganda, and he was delighted to learn he had family in Hamas. SAC ¶¶ 214–16, 220–21. In any event, "[a] decision not to bring charges is not necessarily the same thing as a clean bill of health. Sometimes the government decides not to bring charges even when it thinks that someone is guilty as sin." *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.* No. 11-cv-8808, 2023 WL 6248363, at *1 (N.D. Ill. Sep. 19, 2023). "Potential reasons include resource limitations, the relative importance of the matter compared to other matters, broader enforcement priorities, the complexity of the case, evidentiary problems, and the like." *Id.*; *accord In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 664–65 (7th Cir. 2002) (discussing reasons the government may not bring charges). The lack of additional charges against Bazrouk is therefore not a strike against the Complaint. On a motion to dismiss, with reasonable inferences drawn in Plaintiffs' favor, the Complaint plausibly alleges that Bazrouk is heavily involved in the Hamas-related conduct alleged in the Complaint.

Bazrouk's causation arguments should therefore be rejected.

## III.    Bazrouk's Alien Tort Statute Arguments Fail

Bazrouk makes numerous perfunctory attacks against Plaintiffs' claim under the Alien Tort Statute. Mem. 18–26. None holds water. As shown, the Court has jurisdiction over the claim for violating the law of nations, and the Complaint states a claim on the merits.

### A.  Plaintiffs Allege Violations of Actionable Universal Norms

Bazrouk first argues that the Court lacks subject matter jurisdiction because Plaintiffs have not asserted an actionable international norm. Mem. 19–20. Bazrouk is wrong. The Complaint alleges that Defendants aided and abetted Hamas' crimes against humanity. As shown, the Second Circuit has recognized that both crimes against humanity and aiding and abetting liability are

11

actionable norms. *See Presbyterian Church of Sudan v. Talisman Energy, Inc. (Talisman II)*, 582 F.3d 244, 256 (2d Cir. 2009) (crimes against humanity); *Khulumani v. Barclay Nat'l Bank, Ltd.*, 504 F.3d 254, 260 (2d Cir. 2007) (per curiam) (aiding and abetting); *see also* Consol. Opp. 53–54.[9] Nothing more is required. Bazrouk's assertion that terrorism is not an actionable norm aims at a strawman. Plaintiffs are not proceeding under a terrorism theory.

Equally meritless is Bazrouk's contention that there are sound reasons not to recognize Plaintiffs' claim. Mem. 20–21. Plaintiffs are not asking this Court to recognize a claim in the first instance. The Second Circuit has already done so. This Court need only apply *Talisman II* and *Khulumani* to reject Bazrouk's argument.

### B. Bazrouk's Extraterritoriality Argument Fails

Bazrouk also challenges jurisdiction on the ground that the Complaint alleges insufficient domestic conduct. Mem. 21–22. As Plaintiffs have shown, in an aiding and abetting case, only the abettor's conduct need be domestic, and there is no requirement that the plaintiff's injury be sustained in the United States. *See* Consol. Opp. 57–58 (citing, *e.g.*, *Mastafa v. Chevron Corp.*, 770 F.3d 170, 186 (2d Cir. 2014)). Nearly all Bazrouk's relevant conduct took place domestically: the attending of rallies, the violence against Jews, and the illicit acquisition of $750,000 in cash. It is irrelevant that this conduct took place after the horrors of October 7, 2023. As explained, Plaintiffs were injured by Hamas' crimes against humanity for months and years afterward, as they and their loved ones languished in Hamas captivity. *See* Consol. Opp. 10–14. Because Bazrouk's conduct aided and abetted those crimes and took place within the United States, the Court has jurisdiction.

---

[9] Although "the Courts of Appeals are so far united in finding that aiding and abetting liability claims may proceed under the ATS," *Al Shimari v. CACI Premier Tech., Inc.*, No. 25-1043, 2026 WL 693110, at *11 (4th Cir. Mar. 12, 2026), the Supreme Court recently granted review in a case presenting that question. *Cisco Sys., Inc. v. Doe*, No. 24-856 (U.S. Jan. 9, 2026).

Bazrouk's cases are readily distinguishable. In one, the only domestic connection was that defendants were "American nationals" and "defendants' conduct affront[ed] significant American interests." *Balintulo v. Daimler AG*, 727 F.3d 174, 189 (2d Cir. 2013). Another agrees that "'actions from within the United States', such as 'aiding and abetting and conspiring' with a foreign tortfeasor," can support jurisdiction, and it denies jurisdiction for lack of "*any* relevant conduct . . . on American soil." *Jara v. Núñez*, 878 F.3d 1268, 1273 (11th Cir. 2018) (quoting *Doe v. Drummond Co., Inc.*, 782 F.3d 576, 601 (11th Cir. 2015)). In a third, the only domestic activity was a speech that was "recorded in the United States" but that was "aired" and "directed at individuals" in Turkey. *Ateş v. Gülen*, No. 15-cv-2354, 2016 WL 3568190, at *14 (M.D. Pa. June 29, 2016). Here, Bazrouk acted in New York.

## C. Bazrouk's "Unincorporated Association" Argument Fails

Bazrouk further argues that there is no international norm for holding someone liable as a "member of a domestic unincorporated advocacy corporation." Mem. 23. Bazrouk appears to be trying to claim the protection of the rule that a foreign corporation cannot be held liable under the Alien Tort Statute. *See Jesner v. Arab Bank, PLC*, 584 U.S. 241 (2018). This argument is specious. Plaintiffs sue Bazrouk in his individual capacity for his personal misconduct. It will break no new ground to hold him liable. *See, e.g.*, *Kadic v. Karadzic*, 70 F.3d 232, 236 (2d Cir. 1995) ("[W]e hold that . . . that [individual defendant] Karadžić may be found liable for genocide, war crimes, and crimes against humanity in his private capacity . . . ."). Bazrouk's contrary argument rests on the premise that he has been sued "solely" as a member of Within Our Lifetime. Mem. 22. It is unclear what he means, but the premise is wrong. The Complaint could not be clearer: "Defendant Tarek Bazrouk is sued in his individual capacity." SAC ¶ 36.

13

### D.  Plaintiffs State a Claim for Violating the Law of Nations

Finally, the Court should reject Bazrouk's arguments on the merits and sustain Plaintiffs' claim. Mem. 20, 23–26. Plaintiffs have previously set forth the requirements for aiding-and-abetting liability under the Alien Tort Statute. *See* Consol. Opp. 54–57. Bazrouk, no less than the other Defendants, is subject to liability under those standards.

*Practical assistance.* Contrary to Bazrouk's argument (Mem. 23–24), Plaintiffs sufficiently allege that he provided "practical assistance" to Hamas, the required conduct for aiding and abetting liability. *Talisman II*, 582 F.3d at 259. Bazrouk was a regular and enthusiastic participant in the events at the heart of this case. At the relevant times, Bazrouk was an avid consumer of Hamas propaganda, SAC ¶ 220; he was a member of Within Our Lifetime, a pro-Hamas organization that organized disruptions for the benefit of Hamas, SAC ¶ 213; and he attended, at a minimum, nine pro-Hamas events organized by the Associational Defendants, including events near Columbia. SAC ¶¶ 214–18. At three of them, he brutally attacked Jews, crimes for which he pleaded guilty and is now serving a substantial prison sentence. SAC ¶¶ 214–16, 223. Notably, Plaintiffs are aware of these events only because of his arrests and conviction; it is a reasonable inference that he attended many other disruptions. Bazrouk performed these pro-Hamas services even as Israeli Plaintiffs and their loved ones were held captive by Hamas. That is practical assistance to Hamas' crimes.

Were more required, the Complaint also alleges on information and belief that Bazrouk acted as an intermediary between the other Defendants and Hamas. SAC ¶¶ 225–27. Although Bazrouk challenges these allegations as conclusory (Mem. 20), he—like the other Defendants before him—wholly fails to engage with the standard for evaluating information-and-belief allegations. Plaintiffs have already shown in detail why those standards require the Court to credit

14

these allegations. *See* Consol. Opp. 29–31. And with those allegations taken as true, there can be no doubt that Bazrouk provided practical assistance to Hamas.

*Purpose of facilitating the crime.* Contrary to the Motion (Mem. 20, 24), Plaintiffs likewise sufficiently allege that Bazrouk acted with "the purpose of facilitating the commission of [the] crime." *Talisman II*, 582 F.3d at 259. Because of Bazrouk's criminal case, the allegations of his intent are unusually robust for this stage of the litigation. Bazrouk is fervently pro-Hamas. In the fall of 2024, Bazrouk sent text messages implying that he had family members in Hamas, which made him "mad happy." SAC ¶ 221. When the government arrested him for hate crimes, his phone contained "extensive . . . pro-Hamas and pro-Hizballah propaganda." SAC ¶ 220. Bazrouk even received "regular updates" from the chief spokesperson person of the al-Qassam Brigades, the military wing of Hamas. SAC ¶¶ 220, 57. And, of course, the rallies Bazrouk attended were pro-Hamas disruptions, he was a member of a virulently pro-Hamas organization, and he put Hamas' messages into practice by roaming the streets of New York and beating up Jews. SAC ¶¶ 214–16. These allegations amply support the inference that Bazrouk acted with the intent of further Hamas' crimes against humanity.

Bazrouk's remaining arguments lack merit.

*First*, although the provenance and purpose of Bazrouk's $750,000 remains unclear, at this stage of the litigation the Court should not credit Bazrouk's "innocent" explanation that it was the proceeds from an illegal drug market. Mem. 25. Given Bazrouk's extensive Hamas connections and his involvement in Defendants' wrongful acts, it is a reasonable inference that the cash had a bad, Hamas-related purpose. Discovery will confirm what the purpose was. *Second*, although Bazrouk gestures at a constitutional argument (Mem. 25), he fails to develop one, and the Court should reject it. Insofar as Bazrouk is arguing that the Complaint must allege that he personally

15

had the requisite mental state, Plaintiffs meet that standard for reasons already given. *Third*, insofar as Bazrouk's unsupported sixth point (Mem. 25–26) raises any new arguments, they fail as insufficiently developed. Insofar as this point merely summarizes his other arguments, they fail for reasons previously stated.

Accordingly, the Complaint states a claim under the Alien Tort Statute.

## IV.    Plaintiffs State a Claim Under the Antiterrorism Act

Bazrouk's challenges to the Antiterrorism Act claim likewise lack merit. Mem. 26–28. U.S. Plaintiffs have already shown why they state a claim against other Defendants. *See* Consol. Opp. 9–31. For many of the same reasons, they also state a claim against Bazrouk. To the extent that Bazrouk raises any new arguments, they are unavailing.

### A.  The Complaint Alleges a Primary Violation

Bazrouk incorrectly contends that the Complaint does not allege the first element of aiding and abetting. Mem. 27. The first element is that "the party whom the defendant aids must perform a wrongful act that causes an injury." *Twitter*, 598 U.S. at 486 (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)). Contrary to Bazrouk's argument, the question is simply whether there was a primary violation—an act of international terrorism that harmed the Plaintiffs—and not whether the secondary defendant caused the terror attack. *See, e.g.*, *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420 (2d Cir. 2025) (characterizing the first element as whether "the terrorists whom the Banks purportedly indirectly aided—the Syndicate—committed the attacks that caused Plaintiffs' injuries"). Here, the terror acts include kidnappings and armed encounters with Hamas terrorists, all intended to influence government policy and conduct. SAC ¶¶ 13–16, 81, 86–88, 90. As demonstrated, this conduct readily qualifies as acts of international terrorism. *See* Consol. Opp. 10–13.

16

### B. The Complaint Alleges General Awareness

Bazrouk unpersuasively argues (Mem. 27) that the Complaint does not allege that he was "generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance." *Twitter*, 598 U.S. at 486 (quoting *Halberstam*, 705 F.2d at 477). "The 'general awareness' requirement is not an exacting one." *Raanan*, 2025 WL 605594, at *19; *see also* Consol. Opp. 14–15. A plaintiff need only allege that a defendant knew it was "playing some sort of role in [the terrorist organization's] enterprise." *Twitter*, 598 U.S. at 497. The Complaint clears this low bar. Bazrouk is a member of Within Our Lifetime, a pro-Hamas organization, SAC ¶¶ 22, 36, 75; he was part of a group chat that received updates from the Hamas military wing, SAC ¶ 220; his phone contained extensive pro-Hamas propaganda, SAC ¶¶ 220; he was "mad happy" that he had family in Hamas itself, SAC ¶ 221; and he regularly participated in pro-Hamas demonstrations, where he beat up Jews, SAC ¶¶ 214–18. Bazrouk even wore a Hamas-inspired headband at one his attacks. SAC ¶ 214. Were any more needed, the Complaint alleges on information and belief that Bazrouk communicates and coordinates with Hamas itself. SAC ¶¶ 225–27. The Court must accept these well-supported allegations as true for reasons already given, and which no Defendant—now including Bazrouk himself—has meaningfully challenged. *See* Consol. Opp. 29–31. These allegations readily show that Bazrouk was generally aware of his role in Hamas' terror enterprise.

### C. The Complaint Alleges Knowing and Substantial Assistance

Bazrouk's underdeveloped challenge to the knowing and substantial assistance element likewise fails. Mem. 27–28. The requirements for knowing and substantial assistance have been set forth in detail and need not be repeated. *See* Consol. Opp. 34–36. The allegations in the Complaint meet these standards.

Plaintiffs begin with the factors measuring substantial assistance, as the same facts show that Bazrouk acted knowingly. *See* Consol. Opp. 36–43. Each of these factors favor liability.

*Nature of the act assisted*. Hamas' terror crimes are so "extraordinarily blameworthy" that "even relatively trivial aid could count as substantial." *Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 349 (E.D.N.Y. 2023).

*Amount and kind of assistance.* Bazrouk was an enthusiastic and regular participant at pro-Hamas demonstrations around New York, where he put Hamas' anti-Jewish rhetoric into practice, a form of propaganda service that supports liability. SAC ¶¶ 214–118; *see* Consol. Opp. 36–41.

*Presence at the time of the tort.* Hamas received the benefit of Bazrouk's propaganda services even if Bazrouk was not physically present in Gaza. That is sufficient for this factor to favor Plaintiffs. *See* Consol. Opp. 41–42.

*Relationship with Hamas*. Bazrouk has a close relationship with Hamas. Bazrouk is "mad happy" to have family in Hamas, he received updates from Hamas' military wing, he had pro-Hamas propaganda on his phone when he was arrested, and he was wearing Hamas-inspired gear when he committed one of his crimes. SAC ¶¶ 214, 220–21. Plaintiffs' allegations that Bazrouk coordinates and communicates with Hamas place this factor beyond any doubt. SAC ¶¶ 225–27.

*Defendant's state of mind*. The same facts create a strong inference that Bazrouk performed his services to Hamas with a highly culpable state of mind. Bazrouk was no weekend warrior. His conduct and the contents of his phone confirm that he acted with the intent to support Hamas in the commission of its crimes against U.S. Plaintiffs.

*Duration of assistance*. Bazrouk's misconduct spanned many months. He rendered his assistance from at least April 15, 2024, the date of his first admitted crime, to January 6, 2025, the date of his last. SAC ¶¶ 214–16. And on a motion to dismiss, it is reasonable to infer that his

18

misconduct spanned at least October 7, 2023 to his arrest in May 2025, during which time Iris'

parents were held hostages and other U.S. Plaintiffs battled Hamas terrorists in and around Gaza.

SAC ¶¶ 13–16, 86–88, 212. Bazrouk was a member of Within Our Lifetime since at least 2021,

and he was arrested at six other pro-Hamas disruptions at times currently unknown to the Plaintiffs.

SAC ¶¶ 213, 218. This readily supports the inference that he began acting far sooner than his first

known attack and continued his misconduct until he was apprehended.

Finally, Bazrouk's assistance to Hamas was knowing. Hamas' crimes were open and

notorious, and Bazrouk avidly followed Hamas' doings. There is no doubt that he knowingly (in

fact, intentionally) aided Hamas in committing its crimes. *See* Consol. Opp. 44.[10]

\* \* \*

In short, the Complaint sufficiently alleges that Bazrouk consciously, voluntarily, and

culpably participated in Hamas' crimes. Accordingly, Plaintiffs state a claim under the

Antiterrorism Act.

---

[10] The Court's decision in *Troell v. Binance Holdings, Ltd.* is readily distinguishable. No. 24-cv-7136 (JAV), 2026 WL 636849 (S.D.N.Y. Mar. 6, 2026). *Troell* dismissed a JASTA aiding-and-abetting claim for insufficient allegations of knowing and substantial assistance and granted leave to amend. *Id.* at *16–*22, *25. In that case, liability was "predominantly premised on the allegation that individuals and entities with terrorist affiliations were permitted to transact" on the defendants' cryptocurrency platform. *Id.* at *17. The complaint, however, provided little or no information about the timing of any transactions, the identity of the individuals transacting, their connection to the terror group, or whether the defendants should have known about any terror connection. *Id.* at *17–*19. The defendants, moreover, "*indiscriminately* permitted illicit activity" on their platform. *Id.* at *21 (emphasis added). But this case is not about secretive transactions processed on behalf of anonymous clients with vague terror connections. Hamas' terror crimes against the Plaintiffs (and countless others) were open and notorious. All knew of Hamas' October 7 invasion and the plight of the hostages held by Hamas terrorist for months and years afterward. Bazrouk, and every other Defendant, by their conduct and words encouraged Hamas to commit and continue those very crimes and rendered valuable pro-Hamas propaganda services around New York. This case therefore has what *Troell* lacked: allegations that the Defendants "sought to form a common enterprise with Hamas," that they "took . . . step[s] to encourage or solicit an[] FTO to commit a terrorist attack," and that they acted "with the intent to specifically encourage or aid terrorist attacks against Americans." *Id.* at *21, *22.

19

**V.    The First Amendment Does Not Protect Bazrouk's Conduct**

Finally, Bazrouk's First Amendment argument fails. Mem. 28–29. Bazrouk's contentions are more rhetorical than analytical, and they fail to grapple with arguments Plaintiffs have already developed at length. *See* Consol. Opp. 60–75. Briefly, although the First Amendment protects independent advocacy, it does not shield speech, advocacy, and services addressed to or coordinated with a terror group—and it obviously does not protect violence. The Complaint alleges the latter. Plaintiffs allege that Bazrouk personally communicated with and coordinated with Hamas and that he did so on behalf of the other Defendants, and Bazrouk has admitted to committing violent crimes against Jews in the streets of New York. SAC ¶¶ 214–16, 223, 225–27. This takes his conduct outside the protection of the First Amendment.

Bazrouk's authorities do not alter that conclusion. One decision *rejects* a First Amendment defense in a trademark case. *HomeVestors of Am., Inc. v. Warner Bros. Discovery*, No. 22-CV-1583, 2023 WL 6880341, at *6 (D. Del. Oct. 18, 2023), *report and recommendation adopted*, 2023 WL 8826729, at *2 (D. Del. Dec. 21, 2023). Another rejects claims of racial discrimination in casting decisions because "creative decisions about what story to tell when [defendant] stages the Musical fall squarely within the protection of the First Amendment." *Moore v. Hadestown Broadway LLC*, 722 F. Supp. 3d 229, 259 (S.D.N.Y. 2024). Still another accepts the defendant's First Amendment-based argument that its use of the plaintiff's likeness in an action figure was "transformative." *K & K Prods., Inc. v. Walt Disney Studios Motion Pictures*, No. 20-CV-1753, 2021 WL 4394787, at *7 (D. Nev. Sep. 23, 2021), *aff'd*, No. 21-16740, 2022 WL 3585589 (9th Cir. Aug. 22, 2022). These decisions have no bearing on the issues in this case.

Nor does Bazrouk's rhetoric move the needle. For example, Bazrouk urges that Plaintiffs are trying to "criminalize Mr. Bazrouk's protected speech" and claims without support that this case is part of a trend to "suppress pro-Palestinian speech." Mem. 29. But this is a civil suit, and

20

Plaintiffs are doing no more than seeking to hold Bazrouk liable for aiding and abetting Hamas' heinous crimes. The First Amendment does not protect Bazrouk's conduct, and the Court should reject his constitutional defense.

## VI.    Bazrouk's Brief Contains Problematic Citations

Plaintiffs close by raising an issue that has become alarmingly common: unverifiable citations. Consistent with a growing body of law, Plaintiffs respectfully bring this to the Court's attention in the spirit of "assist[ing] in maintaining the integrity of the judicial process."[11]

So far as Plaintiffs can determine, one of Bazrouk's cited authorities does not exist. The citation appears in his brief as follows: "*Kistler v. Stanley Black & Decker, Inc.*, No. 23-cv-1580, 2024 WL 4370941, at *9 (S.D.N.Y. 2024)." Mem. 11. This citation, offered in support of Bazrouk's judicial notice argument, has the hallmarks of an AI-generated hallucination. *See generally Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341 (E.D.N.Y. 2025). There is no case named *Kistler v. Stanley Black & Decker* in this District; the cited index number points to the *Ramirez v. Hermes B NY LLC* litigation, which has produced a single, inapposite decision[12]; and the Westlaw citation yields no result. Although a decision titled *Kistler v. Stanley Black & Decker* exists, it has a different index number, a different Westlaw citation, and it was issued by a different court. *See Kistler v. Stanley Black & Decker, Inc.*, No. 22-cv-966, 2024 WL 3292543 (D. Conn. July 3, 2024). The pincite in Bazrouk's citation, if applied to the District of Connecticut case,

---

[11] *Billups v. Louisville Mun. Sch. Dist.*, No. 24-cv-74, 2025 WL 3691871, at *8 (N.D. Miss. Dec. 19, 2025); *accord Nuvola, LLC v. Wright*, Court File No. 27-CV-HC-15-3802, 2025 Minn. Dist. LEXIS 5940, *14–15 (Minn. Dist. Ct. Nov. 21, 2025) ("The Court should not be left as the last line of defense against citations to fictional cases in briefs filed with the court. . . . [T]he Court reminds counsel that it is the obligation of counsel on both sides to respond to each other's arguments, including completing a basic cite-check of the cases cited by the other side.").

[12] *Ramirez v. Hermes B NY LLC*, No. 23-cv-1580, 2024 WL 217765, at *1 (S.D.N.Y. Jan. 19, 2024) (approving settlement in FLSA case; no discussion of judicial notice).

points to a discussion of ERISA. *Id.* at *9. Although the decision elsewhere touches on judicial notice, its discussion concerns a defendant's efforts to bring in outside materials, *id.* at *6, and it does not support Bazrouk's argument that a court can disregard allegations in a complaint or its exhibits.

Bazrouk's citation to *Barahona*, discussed above, is also problematic. *See supra* n.5. Bazrouk cites it like so: "*Barahona v. LaSalle Mgmt. Co.*, No. 23-cv-1012, 2025 WL 961437, at *5-6 (S.D.N.Y. Mar. 31, 2025)." Mem. 12–13. But *Barahona* was decided by the Middle District of Georgia, and its index number is No. 23-cv-24. Whether Bazrouk's misattribution of *Barahona* to this District is an artifact of unverified AI output or an attempt to artificially boost its relevance is unclear. Either way, Bazrouk has a responsibility to ensure his citations are accurate.

The mischiefs of these practices are by now well known. Among other harms, "[t]he Court's time is taken from other important endeavors," and "[t]he opposing party wastes time and money in exposing the deception." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023). One of Bazrouk's lawyers has admitted to submitting similar bad citations in another case, where he publicly "commit[ted] to never making this mistake again, before this Court or any other one."[13] Although no action is requested from the Court at this time, Plaintiffs reserve all rights.

---

[13] Defendant Hannah Shraim's Reply to Plaintiff's Response to Her Motion to Dismiss Plaintiff's Complaint, at 10, *Faoro v. Jewish Voice for Peace, Inc.*, No. 25-cv-289-ABJ (D.D.C. filed Sep. 3, 2025); *see also* Plaintiff Faoro's Omnibus Response in Opposition to Defendants' Rule 12 Motions, at 44–46, *Faoro v. Jewish Voice for Peace, Inc.*, No. 25-cv-289-ABJ (D.D.C. filed July 30, 2025) (identifying the bad citations).

22

## CONCLUSION

The Court should deny Bazrouk's motion.[14]

Dated: March 23, 2026
New York, New York

Respectfully submitted,

/s/ Scott J. Bornstein
SCOTT J. BORNSTEIN

/s/ Richard A. Edlin
RICHARD A. EDLIN

**GREENBERG TRAURIG, LLP**
SCOTT J. BORNSTEIN
bornsteins@gtlaw.com
RICHARD A. EDLIN
edlinr@gtlaw.com
One Vanderbilt Avenue
New York, New York 10017
T. 212.801.9200

**GREENBERG TRAURIG, P.A.**
ZACHARY NEEDELL*
zachary.needell@gtlaw.com
401 East Las Olas
Boulevard, Suite 2000
Fort Lauderdale, Florida
33301
T. 954.765.0500

**SCHOEN LAW FIRM, LLC**
DAVID SCHOEN
S.D.N.Y. Bar No. DS 0860
schoenlawfirm@gmail.com
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
T. 917.941.7952
F. 917.591.7586

**HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC**
JASON TORCHINSKY (*pro hac vice*)
jtorchinsky@holtzmanvogel.com
SUSAN GREENE
sgreene@holtzmanvogel.com
N.Y. Bar No. 4687349
2300 N. Street NW, Suite 643
Washington D.C. 20037
T. 202.737.8808

**NATIONAL JEWISH ADVOCACY
CENTER**
MARK GOLDFEDER*
mark@njaclaw.org
BEN SCHLAGER*
ben@njaclaw.org
ANAT ALON-BECK*
Anat@njaclaw.org
ARIELLE F. KLEPACH*
Arielle@njaclaw.org
LAUREN ISRAELOVITCH
lauren@njaclaw.org
National Jewish Advocacy Center, Inc.
International Legal Forum
3 Times Square
New York, NY 10036
T. (800) 269-9895
F: (800) 758-5232

*Pro Hac Vice Application Forthcoming*

---

[14] In the alternative, Plaintiffs respectfully request leave to amend. *See* Consol. Opp. 87–88.

## <u>WORD COUNT CERTIFICATION</u>

I certify that the foregoing memorandum of law complies with Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern District of New York and Rule 5.A of the Court's Individual Rules and Practices in Civil Cases because it contains 7,456 words, based on the word-processing program used to prepare this document and excluding the caption, table of contents, table of authorities, signature block, and this certification.

/s/ *Richard A. Edlin*
Richard A. Edlin

24