UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| HAGGAI, *et al.*, | | |
| | *Plaintiffs*, | Case No. 1:25-cv-02400-JAV |
| v. | | |
| KISWANI, *et al.*, | | HON. JEANNETTE A. VARGAS |
| | *Defendants*. | |

**TAREK BAZROUK'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS**
**<u>PLAINTIFFS' SECOND AMENDED COMPLAINT</u>**

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................2, 5

*Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420 (2d Cir. 2025) ..............................4, 5

*Barahona v. LaSalle Management Co.*, No. 23-cv-24, 2025 WL 961437 (M.D. Ga. Mar. 31, 2025) ..................................................................................................................................9

*Doe I v. Cisco Systems, Inc.*, 73 F.4th 700 (9th Cir. 2023) ....................................................7, 8

*Finn v. Barney*, 471 F. App'x 30 (2d Cir. 2012) ..................................................................10

*Kistler v. Stanley Black & Decker, Inc.*, No. 22-cv-966, 2024 WL 3292543 (D. Conn. July 3, 2024) ..................................................................................................................................9

*Mastafa v. Australian Wheat Bd., Ltd.*, No. 07-cv-7955, 2008 WL 4378443 (S.D.N.Y. Sep. 25, 2008) ...............................................................................................................................1, 2

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244 (2d Cir. 2009)..................7

*Snyder v. Phelps*, 562 U.S. 443 (2011) ............................................................................6, 7

*Troell v. Binance Holdings, Ltd.*, No. 24-CV-7136 (JAV), 2026 WL 636849 (S.D.N.Y. Mar. 6, 2026) ............................................................................................................................ 1, 2, 3

*Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023) ....................................................................3

*United States ex rel. Hart v. McKesson Corp.*, 602 F. Supp. 3d 575 (S.D.N.Y. 2022)................10

**Table of Contents**

I.   INTRODUCTION ................................................................................. 1

II.  ARGUMENT ...................................................................................... 1

A.  Plaintiffs' Causation Arguments Fail .......................................................... 1

B.  The Jasta Claim Must Be Dismissed ......................................................... 2

   1.  This Court's Decision In *Troell* Compels Dismissal ................................. 2

   2.  *Ashley* Confirms That General Awareness Without Culpable Participation Is Insufficient .......................................................................................... 3

   3.  Plaintiffs' "Information And Belief" Intermediary Theory Cannot Survive *Iqbal*. ............................................................................................................. 5

   4.  *Taamneh* Requires Dismissal. ............................................................ 6

C.  The Ats Claim Must Be Dismissed .......................................................... 7

D.  The First Amendment Bars Plaintiffs' Claims .............................................. 8

E.  The Citation Errors Are Acknowledged And Are Harmless ........................... 9

III. CONCLUSION ................................................................................ 10

Case No. 1:25-cv-02400-JAV

## I.  INTRODUCTION

Plaintiffs' opposition to Tarek Bazrouk's motion to dismiss ("Opp.," Doc. No. 120) confirms that the Second Amended Complaint ("SAC," Doc. No. 66) does not contain a single plausible claim for relief against Mr. Bazrouk. Plaintiffs cannot identify a single act by Mr. Bazrouk that aided the October 7, 2023 events that allegedly injured them. Every allegation connecting Mr. Bazrouk to Hamas—the "intermediary" theory on which their entire case rests—is expressly pleaded "on information and belief" with no supporting facts. And this very Court has dismissed a Justice Against Sponsors of Terrorism Act (JASTA) claim resting on facts that dwarf anything alleged against Mr. Bazrouk, further substantiating that Plaintiffs' claims cannot be salvaged. *Troell v. Binance Holdings, Ltd.*, No. 24-CV-7136 (JAV), 2026 WL 636849 (S.D.N.Y. Mar. 6, 2026).

Plaintiffs devote their opposition to inconsequential quibbles with Mr. Bazrouk's motion, distracting from the core dispute. What matters is whether the SAC states a claim. It does not. Nor can the pleading deficiencies be remedied. The Court should dismiss the SAC with prejudice.

## II.  ARGUMENT

### A. Plaintiffs' Causation Arguments Fail

Plaintiffs argue that traceability is automatically satisfied any time a complaint alleges aiding-and-abetting liability, relying on *Mastafa v. Australian Wheat Bd., Ltd.*, No. 07-cv-7955, 2008 WL 4378443 (S.D.N.Y. Sep. 25, 2008). *Mastafa* does not say that. The court held that "[t]he injuries resulting from the [primary actor's] acts are thus 'fairly traceable' to any who *aided and abetted* their commission." *Id.* at *2 (emphasis added). The critical phrase is "any who aided and abetted"—traceability flows from established aiding-and-abetting

liability, not from its mere invocation. Under Plaintiffs' reading, a plaintiff could establish Article III standing against any defendant simply by attaching an aiding-and-abetting label to a complaint, however conclusory. That is not the law: "Rule 8 does not empower [Plaintiffs] to plead the bare elements of [their] cause of action . . . and expect [their] complaint to survive a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). Because the SAC's aiding-and-abetting allegations against Mr. Bazrouk are not plausible for the reasons set forth below, they cannot establish traceability any more than they can establish liability.

**B.  The JASTA Claim Must Be Dismissed**

   1.   This Court's Decision in *Troell* Compels Dismissal

Plaintiffs relegate *Troell v. Binance Holdings* to a single footnote, arguing it is distinguishable because *Troell* involved 'indiscriminate' facilitation of vague terror connections on an anonymous transactional platform, whereas this case involves defendants who 'sought to form a common enterprise with Hamas.' Opp. 19 n.10. That distinction inverts the logic of *Troell* and makes the case against Mr. Bazrouk weaker, not stronger.

This Court granted dismissal of JASTA claims brought by 535 victims of 64 events—including the October 7, 2023 events—against Binance and its founder. *Troell*, 2026 WL 636849, at *1. The complaint alleged that Binance processed tens of millions of dollars in transactions for Hamas-identified wallets; that Binance's compliance officer knew ISIS accounts were on the platform and deliberately permitted flagged Hamas associates to leave with their funds; that Binance received direct reports of Hamas transactions and filed no SARs; and that internal communications showed Binance's CCO stating "Like come on. They are here for crime." *Id.* at *5-8. Binance had pleaded guilty to federal crimes. *Id.* at *7. This Court nonetheless held that these allegations were insufficient to plausibly allege

"defendants somehow consciously and culpably assisted" in the specific events that allegedly injured the plaintiffs. *Id.* at *17.

*Troell*'s key teaching—which Plaintiffs do not mention—is that providing assistance to a terrorist organization, *even with knowledge of the organization's terrorist activities*, is not enough. The complaint must allege that the defendant consciously and culpably participated in or substantially furthered the specific attacks at issue. *Id.* (quoting *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 503 (2023)).

Measured against *Troell*, the case against Mr. Bazrouk is not a close call. Binance allegedly processed $56 million in documented Hamas transactions. *See Troell*, 2026 WL 636849 at *21. Mr. Bazrouk transmitted nothing to Hamas. Binance's own compliance officers knew they were serving Hamas and took affirmative steps to retain flagged Hamas accounts. *Id.* at *7. The SAC does not allege a single communication between Mr. Bazrouk and Hamas whatsoever. The SAC's entire "evidence" of Mr. Bazrouk's Hamas connection are allegations of a text message that "implied" he had family in Hamas and made him "mad happy"; pro-Hamas propaganda on his phone; and membership in a group chat that received updates from a Hamas spokesperson. SAC ¶¶ 220-21. These facts fall far short of the record this Court found insufficient in *Troell*.

   2. *Ashley* Confirms That General Awareness Without Culpable Participation Is Insufficient

Plaintiffs invoke *Ashley v. Deutsche Bank Aktiengesellschaft* in support of their arguments. 144 F.4th 420 (2d Cir. 2025). But *Ashley* defeats their knowing-and-substantial-assistance theory.

*Ashley* affirmed dismissal of JASTA claims even where an international bank was "generally aware" its services indirectly reached a terrorist organization. *Id.* at 440. The

Second Circuit held that general awareness is a necessary but insufficient condition for JASTA liability. *Id.* The knowing-and-substantial-assistance element requires a showing that the defendant "consciously tr[ied] to help or otherwise participate in the [] wrongdoing." *Id.* at 441. The court rejected the theory that banking services provided to intermediaries allegedly connected to terrorism constitute knowing and substantial assistance absent allegations that the defendant treated the intermediaries differently from other customers or "actively sought to associate" itself with the alleged wrongdoer's "operations" or to form "a near-common enterprise" with them. *Id.* at 443, 445. As *Ashley* makes plain, "'[p]lausibly' does not mean 'probably'; but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 447 (citation omitted).

Plaintiffs' *Halberstam* factor analysis fares no better. For instance, the presence at the time of the tort and duration factors suffice to defeat their claim. On presence: Mr. Bazrouk was in New York during protests in 2024 and 2025; the October 7 events occurred in Occupied Palestine in October 2023. Constructive presence through "propaganda services" months after the fact does not satisfy a factor designed to measure contemporaneous assistance to the primary actor. *See Ashley*, 144 F.4th at 442 ("[A]ny subsequently confirmed connection between the Companies and the intelligence agency did not taint the nature of SCB's services at the time it provided them. SCB's potential support to the intelligence agency was incidental."). On duration: alleging continuous Hamas affiliation from October 7, 2023 through a May 2025 arrest stacks inference upon inference and is precisely the kind of speculative chain *Iqbal* forbids.

Plaintiffs do not allege that Mr. Bazrouk treated anyone differently to further Hamas operations, transmitted anything to Hamas, or took any affirmative step to facilitate the

October 7 events. They allege three physical altercations in Manhattan that occurred in April 2024, December 2024, and January 2025—all *after* October 7, 2023. SAC ¶¶ 214-16. Detached, divorced, and downstream post-event conduct cannot logically constitute the substantial assistance that enabled the events that allegedly harmed Plaintiffs.

    3.   <u>Plaintiffs' "Information and Belief" Intermediary Theory Cannot Survive</u> <u>*Iqbal.*</u>

The centerpiece of the case against Mr. Bazrouk is SAC ¶¶ 225-27, alleging "on information and belief" that defendants "coordinate with Hamas through Mr. Bazrouk and others like him." This allegation—naked, unsupported, and expressly qualified as speculation—is the paradigm of what *Iqbal* forbids. "[N]aked assertion[s] devoid of further factual enhancement" do not state a claim. *Iqbal*, 556 U.S. at 678; *see also id.* ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

The three factual predicates offered to support this theory—speculation expressed in a text message about family, so-called propaganda on a phone, and subscription to an official group— are equally consistent with a person who holds strong political views, has family ties in the region, and follows Hamas-related press releases. As this Court recognized in *Troell*, "'[p]lausibly' does not mean 'probably.'" 2026 WL 636849, at *23 (quoting *Ashley*, 144 F.4th at 447). A plausible claim requires facts that push the inference toward liability, not away from it. None of the SAC's factual predicates do that.

Nor does the $750,000 in cash seized after Mr. Bazrouk's arrest change the calculus. Cash—however unexplained—does not establish that Mr. Bazrouk acted with the purpose of facilitating Hamas's actions against the unlawful Zionist occupation as *Talisman II* demands,

582 F.3d at 259, nor does it constitute knowing and substantial assistance to the specific October 7 events as *Taamneh* requires, 598 U.S. at 503.

    4.  *Taamneh* Requires Dismissal.

Under *Taamneh*, "the more attenuated the nexus [between the defendant's conduct and the events allegedly causing injury], the more courts should demand that plaintiffs show culpable participation through intentional aid that substantially furthered the tort. And, if a plaintiff's theory would hold a defendant liable for all the torts of an enterprise, then a showing of pervasive and systemic aid is required." 598 U.S. at 506.

Plaintiffs' theory is that Mr. Bazrouk served as a Hamas 'intermediary' (SAC ¶ 225) through whom Defendants 'coordinate with Hamas'—that is, that his advocacy and protest activity constituted knowing facilitation of Hamas's propaganda enterprise. *Taamneh* addressed precisely this theory: even where social media companies *knowingly* permitted ISIS to use their platforms to spread propaganda and recruit, the Supreme Court held that such passive general assistance was insufficient. 598 U.S. at 499-501. There is no principled distinction between Mr. Bazrouk attending a protest in New York and a social media company hosting Hamas content for hundreds of millions of users—and yet the latter was insufficient in *Taamneh*. If anything, the allegations here are significantly weaker. The nexus between Mr. Bazrouk's conduct and the October 7 attacks is not merely attenuated; it does not exist.

The First Amendment barrier is independently dispositive. The Supreme Court has held that speech on matters of public concern—including controversial political advocacy conducted in public spaces—"occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011)

(citation omitted). In *Snyder*, the Court barred all tort liability for a group that picketed a military funeral with signs reading "Thank God for Dead Soldiers" and "God Hates America"—speech the Court acknowledged was "particularly hurtful"—because it addressed matters of broad public concern in a public place. *Id.* at 456, 461. The Court further held that a jury finding of "outrageous" conduct cannot overcome this protection, because outrageousness is "a highly malleable standard" that would "allow a jury to impose liability on the basis of the jurors' tastes or views." *Id.* at 458. Plaintiffs here ask this Court to impose civil liability on Mr. Bazrouk for participating in public protests on one of the most debated political questions of our time—the U.S. full endorsement of the fascist ideology of Zionism and its blanket financial, political, and military support of the Zionist occupation, apartheid, and genocide in Palestine. The First Amendment does not permit it. "As a Nation we have chosen . . . to protect even hurtful speech on public issues to ensure that we do not stifle public debate." *Id.* at 461.

### C. The ATS Claim Must Be Dismissed

The Second Circuit in *Presbyterian Church of Sudan v. Talisman Energy, Inc.* ("*Talisman II*") held that the *mens rea* for ATS aiding-and-abetting liability requires that a defendant act with the *purpose* of facilitating violations of customary international law. 582 F.3d 244, 259 (2d Cir. 2009). This standard is more demanding than the "knowledge" standard applied by the Ninth Circuit in *Doe I v. Cisco Systems, Inc.*, 73 F.4th 700, 729 (9th Cir. 2023). The Second Circuit's *Talisman II* standard is what binds this Court.

Plaintiffs do not engage with *Talisman II*'s purpose requirement. They argue that the SAC "supports" an inference of Hamas affiliation. Opp. 14-15. Affiliation is not purpose. Even accepting every factual allegation as true, there is nothing from which to infer that Mr.

Bazrouk's *purpose* was to facilitate Hamas's actions in Gaza. The far more plausible inference—and the one *Iqbal* requires the Court to test—is that Mr. Bazrouk is a person who holds strong views about the Palestinian cause and expresses them through advocacy. That is not the *purpose* standard *Talisman II* demands. *See* 582 F.3d at 261-64 (affirming summary judgment because no evidence that defendant acted with purpose to facilitate government atrocities, as opposed to pursuing its own commercial oil development interests).

The ATS claims also fail because Plaintiffs have identified no act by Mr. Bazrouk—as opposed to political expression—that constitutes the actus reus of aiding and abetting under international law. *See Doe I*, 73 F.4th at 724-27 (*actus reus* requires "assistance with substantial effect on the perpetration of an international law violation").[1]

If fueling an air force conducting atrocities was insufficient to establish purpose under *Talisman*, attending protests that advance a political cause Mr. Bazrouk sincerely holds cannot possibly meet that threshold.

### D. The First Amendment Bars Plaintiffs' Claims

Plaintiffs' coordination-with-Hamas theory is the only theory that could potentially remove Mr. Bazrouk's conduct from First Amendment protection. But that theory is pleaded exclusively "on information and belief," without a single supporting fact. As explained above, *Iqbal* does not permit conclusory assertions to substitute for factual allegations. Stripped of the unsupported intermediary theory, what remains is participation in political protest (protected), expression of political views (protected), and three unrelated physical

---

[1] The Supreme Court recently granted certiorari in *Cisco Systems, Inc. v. Doe*, No. 24-856 (U.S. Jan. 9, 2026), to consider whether ATS aiding-and-abetting liability exists at all. That pending grant is an independent reason to dismiss the ATS claim without leave to amend. Permitting further amendment into a legal landscape the Supreme Court is actively reconsidering would be futile and prejudicial.

assaults for which Mr. Bazrouk has already been convicted and sentenced. The physical assaults are not protected—but they are also not the "conscious, voluntary, and culpable participation" in Hamas's planning and execution of the October 7 events that JASTA and *Taamneh* require.

### E. The Citation Errors Are Acknowledged and Are Harmless

Plaintiffs make a fuss about "problematic citations" in Mr. Bazrouk's motion that are "the hallmarks of an AI-generated hallucination." Opp. 21. But both citations included the correct Westlaw citation—directing the Court and Plaintiffs to the correct cases—and, critically, Mr. Bazrouk did not advance any made-up legal authority.

True, the opening brief cited *Kistler v. Stanley Black & Decker, Inc.* with the wrong court and docket number and pincite. The correct citation is No. 22-cv-966, 2024 WL 3292543, at *5 (D. Conn. July 3, 2024), as Plaintiffs confirm. Opp. 21. The brief likewise cited *Barahona v. LaSalle Management Co.* with the wrong court. The correct citation is No. 23-cv-24, 2025 WL 961437 (M.D. Ga. Mar. 31, 2025), as Plaintiffs identified. Opp. 22. Both errors are regretted.

Both errors are harmless. The propositions for which *Kistler* and *Barahona* were cited—that a court takes judicial notice only of "incontrovertible facts" and not disputed ones, and that a plaintiff must present admissible evidence on a post-jurisdictional-discovery motion to dismiss—are correct statements of law, confirmed by Plaintiffs' own citations to the corrected versions of those same cases, as well as by *United States ex rel. Hart v. McKesson Corp.*, 602 F. Supp. 3d 575, 590-92 (S.D.N.Y. 2022), and *Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012), on which Plaintiffs themselves rely. *See* Opp. 7-8. No cited proposition is abandoned. More importantly, the tangent Plaintiffs go on is a distraction from the merits of

their case; citation errors do not transform a legally insufficient complaint into a legally sufficient one.

## III.    CONCLUSION

For these reasons, and those stated in Mr. Bazrouk's opening brief, the Second Amended Complaint should be dismissed as to all Defendants. Leave to amend should be denied. Plaintiffs have had three opportunities to plead their claims. The absence of any factual basis for the "intermediary" theory is not a pleading deficiency that amendment will cure—it reflects that no such facts exist.

Respectfully submitted,

| | |
|---|---|
| ____*/s/Abdel-Rahman Hamed*____ | _____*/s/ Tyler Abboud*_____ |
| ABDEL-RAHMAN HAMED, ESQ. | TYLER D. ABBOUD, ESQ. |
| NY Bar No. 5575352 | NY Bar No. 5674783 |
| **Hamed Law** | 685 Third Avenue, 18th Floor |
| 1215 31st St. NW, # 25085 | New York, NY 10017 |
| Washington, D.C. 20027 | (720) 252-9782 |
| (202) 888-8846 | tyler.abboud25@gmail.com |
| Advocates@HamedLaw.com | |

*Attorneys for Defendant Tarek Bazrouk, Pro Bono Publico*

### CERTIFICATE OF COMPLIANCE

In compliance with Local Rule 7.1(c) and the Court's Individual Rules, this memorandum contains 3,073 words and is formatted in 12-point proportionally spaced typeface.

_____*/s/Abdel-Rahman Hamed*_____
ABDEL-RAHMAN HAMED, ESQ.
*Attorney for Defendant Tarek Bazrouk*